UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Federal Trade Commission, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 25 CV 50017 |
| | ) Judge Iain D. Johnston |
| Deere & Company, | ) |
| | ) |
| Defendant. | ) |

## ORDER

The Court has reviewed the parties' Joint Rule 26(f) Report. The Court thanks counsel for the thorough Report. And the Court apologizes for the delay in getting back to the parties. But as counsel for the FTC is aware, there's a lot of uncertainty in the world right now and the Court wanted to wait until at least the continuing resolution issue was resolved before scheduling dates in this action. Absent the passage of the continuing resolution, the Court's practice is to enter automatic stays for all cases involving the United States Government. (The fact that there is a standard operating procedure for such circumstances says a lot about things. See comment above about "uncertainty in the world.")

The Court would like to set a telephonic status for Wednesday, March 26, 2025, at 1:30 PM to discuss issues raised in the Report. The Court would rather have the hearing in person but realizes that the tight schedule, budgets, number of counsel, and distant locations would make that difficult. Unless the Court hears otherwise, the status will be telephonic.

1

The Court now realizes that coordinating the discovery schedule in this action with the MDL is a fool's errand. No doubt, coordination was the Court's hope, but the Court also hopes the White Sox won't stink in 2025. Neither is remotely likely to occur. But even assuming this action's case management order is divorced from Case Management Order No. 5, which was recently entered in the MDL, there are still fundamental concerns with the proposals in the Report. Deere's counsel will remember much of what the Court is about to say because they were present at the initial hearing for the MDL. The Court's practice is to set a reasonable discovery schedule and then to engage in active case management so that the dates established by the case management order are met. Never-ending extensions are evidence of bad scheduling or bad case management or both. The schedule anticipated by the Report is aggressive. Perhaps, the schedule could be characterized as hopelessly optimistic. Here's just an example.

Under the Report's proposal, fact discovery would close on December 15, 2025. The "Deadline for substantial completion of all document productions" is set for October 15, 2025. Operating under the assumption that no attorneys worth their salt would take a deposition before being confident that they first had all the relevant documents, depositions would not start until October 16, 2025, at the earliest. The Report further proposes that each side may take up to 25 depositions of third-party witnesses. (Attorneys who don't take every single available deposition are rarer than unicorns.) The Report also anticipates between 5 and 10 depositions of Deere employees and between 14 and 28 hours of Rule 30(b)(6)

depositions. This means there would likely be a **minimum** of 55 depositions for third parties and Deere employees and basically two full days for representative depositions. All of that would have to be accomplished in essentially 60 days. That's the minimum. And this minimum leaves no margin for error. (What if there's a "document snag"? By that the Court means what if any one of these 55 plus witnesses identifies a document that had yet to be produced? Document snags are an unwelcome but fairly common occurrence in large actions.) Upon reflection, do counsel really think that this schedule is reasonable and that the dates will likely stick? The Court has significant doubts. This example alone should cause further reflection on the proposed dates in the Report. Again, to counsel's credit, it's likely that they were attempting to coordinate with the MDL case management order. But Case Management Order No. 5 contains a fact discovery cut-off date of May 19, 2025. So, from jump, the coordination is off. And that's just one concern. There are many more.

The Court is also mindful of various statements made by different FTC counsel in other actions, noting staffing and other concerns at the FTC. The Court sincerely hopes that FTC counsel in this case have a reasonable confidence level about staffing. The Court's limited interaction with FTC counsel has established that they are very knowledgeable and skilled attorneys who shouldn't have to worry about job security.

Additionally, if any party has any concerns about any relationship the Court has with Gary Feinerman, those can be discussed. Because Mr. Feinerman has

3

appeared in the MDL, too, MDL counsel should feel free to attend the status to raise any concerns. The Court doesn't believe that the Canons of Judicial Conduct require recusal but will address any concerns that might exist. The Court sincerely hopes that all counsel recognize that this Court takes conflicts seriously. If time permits and counsel are truly receptive (and not just humoring), the Court can even bore them with a war story involving the Circuit Court of Cook County, which is forever burned into the Court's memory.

Entered: March 19, 2025            By:_____
                                                  Iain D. Johnston
                                                  U.S. District Judge