**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

---

FEDERAL TRADE COMMISSION, *et al.*,

                    *Plaintiffs,*

v.

DEERE & COMPANY,

                    *Defendant.*

Case No.: 3:25-cv-50017

Hon. Iain D. Johnston

---

**CITED AUTHORITY FROM ELECTRONIC DATABASES IN SUPPORT OF
PLAINTIFFS' RESPONSE TO AGCO CORPORATION'S MOTION
FOR RECONSIDERATION AND STAY**

**<u>Tab</u>**

1.      *United States v. Aetna Inc.,* No. 1:16-cv-01494, 2016 U.S. Dist. LEXIS 194989 (D.D.C.

       Sep. 14, 2016)

# Tab 1

## *United States v. Aetna Inc.*

United States District Court for the District of Columbia

September 14, 2016, Decided; September 14, 2016, Filed

Case No. 1:16-cv-01494 (JDB)

**Reporter**

2016 U.S. Dist. LEXIS 194989 *

UNITED STATES OF AMERICA, et al., Plaintiffs, v. AETNA INC. and HUMANA INC., Defendants.

**Prior History:** *United States v. Aetna Inc., 2016 U.S. Dist. LEXIS 191730, 2016 WL 8738420 (D.D.C., Sept. 5, 2016)*

**Counsel:** **[\*1]** For Special Master, United States of America, Plaintiff: Craig William Conrath, Dylan Matthew Carson, Eric J. Mahr, Miriam Rose Vishio, Peter Joseph Mucchetti, Ryan M. Kantor, LEAD ATTORNEYS, Barry James Joyce, Bennett Jorg Matelson, Eric Damian Welsh, Justin T. Heipp, Matthew David Siegel, Patricia Leigh Sindel, Samer Makram Musallam, Sanford Marshall Adler, U.S. DEPARTMENT OF JUSTICE, Washington, DC USA; Eyitayo Oritsematosan St. Matthew-Daniel, LEAD ATTORNEY, U.S. DEPARTMENT OF JUSTICE, Washington, DC USA; Yvette F. Tarlov, U.S. DEPARTMENT OF JUSTICE, Washington, DC USA.

For State of Delaware, Plaintiff: Michael Andrew Undorf, LEAD ATTORNEY, DEPARTMENT OF JUSTICE-DE, Wilmington, DE USA.

For District of Columbia, Plaintiff: Catherine Anne Jackson, LEAD ATTORNEY, OFFICE OF ATTORNEY GENERAL/DC, Washington, DC USA; Elizabeth Sarah Gere, LEAD ATTORNEY, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, DC USA.

For State of Florida, Plaintiff: Christopher R. Hunt, Rachel Michelle Steinman, Timothy Michael Fraser, LEAD ATTORNEYS, OFFICE OF THE ATTORNEY GENERAL/FL, Tallahassee, FL USA; Lizabeth A. Brady, LEAD ATTORNEY, OFFICE OF ATTORNEY GENERAL/FL, Tallahassee, FL USA. **[\*2]**

For State of Georgia, Plaintiff: Daniel Stephen Walsh, Monica Anne Sullivan, LEAD ATTORNEYS, OFFICE OF ATTORNEY GENERAL/GA, Atlanta, GA USA.

For State of Illinois, Plaintiff: Robert W. Pratt, LEAD ATTORNEY, OFFICE OF ATTORNEY GENERAL/IL, Chicago, IL USA; Elizabeth Louise Maxeiner, OFFICE OF THE ATTORNEY GENERAL - STATE OF ILLINOIS, Chicago, IL USA.

For State of Iowa, Plaintiff: Layne M. Lindebak, LEAD ATTORNEY, ATTORNEY GENERAL'S OFFICE FOR THE STATE OF IOWA, Des Moines, IA USA.

For State of Ohio, Plaintiff: Beth Ann Finnerty, Brian Francesco Jordan, Thomas Nathaniel Anger, LEAD ATTORNEYS, OFFICE OF THE ATTORNEY GENERAL/OH, Columbus, OH USA.

For Commonwealth of Pennsylvania, Plaintiff: Aaron L. Schwartz, LEAD ATTORNEY, COMMONWEALTH OF PENNSYLVANIA OFFICE OF ATTORNEY GENERAL, Harrisburg, PA USA; James A. Donahue, III, LEAD ATTORNEY, PENNSYLVANIA OFFICE OF THE ATTORNEY GENERAL, Harrisburg, PA USA; Jennifer Ann Thomson, LEAD ATTORNEY, OFFICE OF

ATTORNEY GENERAL/PA, Harrisburg, PA USA; Tracy Wright Wertz, LEAD ATTORNEY, PENNSYLVANIA OFFICE OF ATTORNEY GENERAL, Harrisburg, PA USA.

For Commonwealth of Virginia, Plaintiff: Sarah Oxenham Allen, Tyler Timothy Henry, LEAD ATTORNEYS, OFFICE OF THE [*3] ATTORNEY GENERAL/VA, Richmond, VA USA.

For Aetna Inc., Defendant: Christopher Nathan Thatch, John M. Majoras, Michael S. Fried, LEAD ATTORNEYS, JONES DAY, Washington, DC USA; Aaron M. Healey, PRO HAC VICE, JONES DAY, Columbus, OH USA; Alex P. Middleton, Erin L. Shencopp, Paula W. Render, PRO HAC VICE, JONES DAY, Chicago, IL USA; Frederick P. Santarelli, Thomas B. Helbig, PRO HAC VICE, ELLIOT GREENLEAF, P.C., Blue Bell, PA USA; Michael R. Shumaker, PRO HAC VICE, Geoffrey S Irwin, JONES DAY, Washington, DC USA; Jeremy J. Gray, JONES DAY, Chicago, IL USA; Thomas Demitrack, PRO HAC VICE, JONES DAY, Cleveland, OH USA.

For Humana Inc., Defendant: Arthur Norman Lerner, Astor Henry Lloyd Heaven, III, Kent Alan Gardiner, Shari Ross Lahlou, Shawn R. Johnson, LEAD ATTORNEYS, David Martin Schnorrenberg, CROWELL & MORING LLP, Washington, DC USA; Christie L. Stahlke, Joseph M. Miller, PRO HAC VICE, CROWELL & MORING LLP, Washington, DC USA; Connor T. Lynch, Cynthia A. Merrill, PRO HAC VICE, O'MELVENY & MYERS LLP, Los Angeles, CA USA; Edward D. Hassi, Kenneth R. O'Rourke, PRO HAC VICE, Katrina M. Robson, O'MELVENY & MYERS LLP, Washington, DC USA; Jeffrey J. Fowler, PRO HAC VICE, O'MELVENY & MYERS LLP, [*4] Los Angeles, CA USA; Richard G. Parker, GIBSON, DUNN & CRUTCHER, LLP, Washington, DC USA.

For Blue Cross And Blue Shield of Florida, Inc., Health Options, Inc., Movants: Jessica Lynn Farmer, LEAD ATTORNEY, HOLLAND & KNIGHT LLP, Washington, DC USA; Jerome W. Hoffman, PRO HAC VICE, HOLLAND & KNIGHT LLP, Tallahassee, FL USA; Timothy J. Conner, PRO HAC VICE, HOLLAND & KNIGHT, LLP, Jacksonville, Fl.

For Guidewell Mutual Holding Corporation, Movant: Jessica Lynn Farmer, LEAD ATTORNEY, HOLLAND & KNIGHT LLP, Washington, DC USA; James Buchanan Camden, MCDERMOTT WILL & EMERY LLP, Washington, DC USA; Jerome W. Hoffman, PRO HAC VICE, HOLLAND & KNIGHT LLP, Tallahassee, FL USA; Timothy J. Conner, PRO HAC VICE, HOLLAND & KNIGHT, LLP, Jacksonville, Fl.

For Advocate Health Care Network, Movant: Kenneth M Vorrasi, LEAD ATTORNEY, DRINKER BIDDLE & REATH LLP, Washington, DC USA.

For Baylor Scott & White Holdings, Duke University Health System, Inc., Iowa Health System, doing business as UNITYPOINT HEALTH, Movants: Caroline M. Mew, Perkins Coie LLP, Washington, DC USA.

For Aon Plc, Movant: Amanda P. Reeves, LEAD ATTORNEY, LATHAM & WATKINS LLP, Washington, DC USA.

For Unitedhealth Group Incorporated, Movant: Matthew [*5] M. Shors, LEAD ATTORNEY, UNITEDHEALTH GROUP INCORPORATED, Minnetonka, MN USA; Christopher R. Zaetta, U.S. DEPARTMENT OF JUSTICE, Washington, DC USA.

For Health Alliance Medical Plans, Inc., Movant: John C. De Koker, III, PRO HAC VICE, HINSHAW & CULBERTSON LLP, Chicago, IL USA; Matthew J. O'Hara, PRO HAC VICE, FREEBORN & PETERS LLP, Chicago, IL USA.

For Upmc Health Plan, Inc., Movant: Gordon Samuel Woodward, LEAD ATTORNEY, SCHNADER HARRISON SEGAL & LEWIS LLP, Washington, DC USA.

For Catholic Health Initiatives, Movant: Herbert F Allen, LEAD ATTORNEY, POLSINELLI, PC, Washington, DC USA.

For Molina Healthcare, Inc., Movant: David R. Garcia, LEAD ATTORNEY, PRO HAC VICE, ZUMPANO, PATRICIOS & WINKER, P.A., Coral Gables, FL USA; J. Aaron George, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Washington, DC USA.

For Tidewater Management Group, Inc., Todd C. Fincher, Movants: Amy E Richardson, LEAD ATTORNEY, HARRIS, WILTSHIRE, & GRANNIS LLP, Washington, DC USA; Emily Elizabeth Erixson, Stephen Daniel Feldman, PRO HAC VICE, ELLIS & WINTERS LLP, Raleigh, NC USA.

For Blue Cross And Blue Shield Association, Movant: Ian Robert Conner, LEAD ATTORNEY, KIRKLAND & ELLIS LLP, Washington, DC USA.

For Centene Corporation, [*6] Movant: Steven M Albertson, LEAD ATTORNEY, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Washington, DC USA.

For Wellcare Health Plans, Inc., Movant: Robert L. Littlehale, LEAD ATTORNEY, Kirkland & Ellis LLP, Washington, DC USA.

For Cigna Corp., Movant: Joseph J. Bial, LEAD ATTORNEY, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Washington, DC USA.

For Deloitte Consulting Llp, Movant: Katherine M. Ruffing, LEAD ATTORNEY, DLA PIPER LLP (US), Washington, DC USA.

For Anthem, Inc., Movant: John Derrick Martin, LEAD ATTORNEY, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, SC USA.

**Judges:** Hon. Richard A. Levie (Ret.), Special Master.

**Opinion by:** Richard A. Levie

# Opinion

## SPECIAL MASTER REPORT AND RECOMMENDATION NO. 2

Pending before the Special Master is non-party UnitedHealth Group Inc.'s ("United" or "UnitedHealth") Motion to Amend the Protective Order and non-party Aon PLC's ("Aon") Motion for Additional Relief Under the Protective Order. For the reasons that follow, the Special Master recommends that the Court deny both Motions.

### I. **Background**

The Motions at issue concern documents which Aon and UnitedHealth separately provided to the Department of Justice (DOJ) in response to civil investigative demands (CIDs) issued during [*7] the DOJ investigation into the proposed mergers between Aetna, Inc. and Humana Inc., and between Anthem Inc. and Cigna Corp. (*See* Aon Mot. at 1-2; United Mot. at 2). Aon and United describe the information at

issue as "confidential and competitively sensitive" (Aon Mot. at 2) and "highly confidential documents and data" (United Mot. at 2).

Following the filing of the complaint in both *United States et al. v. Aetna Inc. et al.*, Case No. 1:16-cv-1494(JDB) and *United States et al. v. Anthem Inc. et al.*, Case No. 1:16-cv-1493(ABJ), Aon and United separately informed Plaintiffs that they objected to the production of these documents and/or data to the Defendants in these matters under the current terms of the Protective Orders applicable to each case.

The Order Appointing the Special Master to this case grants the Special Master authority over, *inter alia*, scheduling matters and "motions for protective order." (Dkt. No. 53 at ¶ 2). On September 2, 2016, the Special Master issued Special Master Order No. 2, which directed United and Aon to submit formal motions regarding any concerns with the Protective Order by September 8, 2016. (Dkt. No. 92 at ¶ 1). United and Aon timely filed such Motions. **[*8]** Plaintiffs and Defendants in this case submitted responses, and United and Aon each submitted reply briefs. The Special Master has reviewed all of the arguments presented in these papers. This Opinion follows.[1]

## II. **Legal Standard**

Although "protective orders are not permanent or immutable and may be modified to serve important efficiency or fairness goals," the party or, in this case, non-party, which seeks to modify a protective order bears the burden of showing that good cause exists to justify the desired change. [*U.S. ex rel Pogue v. Diabetes Treatment Ctrs. of Am., 2004 U.S. Dist. LEXIS 18763,2004 WL 2009414 at *2 (D.D.C. May 17, 2004)*( citations omitted); *Infineon Tech. A.G. v. Green Power Tech Ltd., 247 F.R.D. 1, 2 (D.D.C. 2005)*(Bates, J.)(citations omitted)]. "'Good cause' implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order." [*Infineon Tech., 247 F.R.D. at 2* (citing *Bayer AG & Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 464 (S.D.N.Y.1995))].*

To show good cause, the party seeking to modify the protective order must provide specific facts showing the particular harm that is likely to occur in the absence of such an order and that this harm outweighs the opposing side's interests in preparing for trial. As one court has put it,

> Good cause exists under *Rule 26(c)* when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden **[*9]** or expense, but the party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. Accordingly, courts apply a balancing test, weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial.

[*Huthance v. District of Columbia, 255 F.R.D. 285, 296 (D.D.C. 2008)* (quoting *Fonville v. District of Columbia, 230 F.R.D. 38, 40 (D.D.C.2005)* and *Doe v. District of Columbia, 230 F.R.D. 47, 50 (D.D.C. 2005))].*

## III. **UnitedHealth Motion**

---

[1] The currently applicable Amended Protective Order in this case was signed and docketed on September 12, 2016 [Dkt. 108]. This Amended Order includes certain protections designed to afford greater protection to non-parties. After Aon and United filed their respective Motions, the parties to this case informed both Aon and United of the pending amendments to the Protective Order and both Aon and United confirmed that the pending changes did not resolve their concerns.

a. **Arguments**

UnitedHealth seeks three modifications to the Protective Order.

First, it asks that paragraph C (5) of the Protective Order, regarding the production of investigation materials, be modified to permit the non-party which produced such materials to designate as "beyond the scope of permissible discovery," and therefore as non-producible to Defendants, any documents submitted by that non-party to Plaintiffs during the investigation stage of this case. [United Mot. at 2-6 and Exh. 2 (Proposed Amended Protective Order) at ¶ C(5)].

United contends that this limitation is appropriate in this case because it produced to DOJ "extensive" information from "multiple distinct business lines encompassing virtually all of United's products **[*10]** and covering much of the United States," even though DOJ has elected to challenge the Aetna-Humana merger based only on particular geographic areas and products. (*Id.* at 2). According to United, disclosure of what it describes as "irrelevant confidential information" to Defendants "increases the risk of significant and irreversible competitive harm." (*Id.* at 3).

Plaintiffs object to this request as likely to delay and "further burden[ ] an already rushed discovery process," noting that United "cites no precedent for this unusual and unnecessary request." (Pl. Resp. at 2). According to Plaintiffs, the current protective order adequately "safeguards confidential information from unauthorized disclosure — particularly in this case, where in-house counsel will not receive confidential information." (*Id.*)

Defendants likewise object to United's request, arguing that permitting a non-party to designate information as irrelevant, and therefore not producible, would grant Plaintiffs the benefit of a potentially "significant amount of information... that would be off-limits to defendants." (Def. Resp. at 2). Defendants note that "the extent of this disadvantage [to Defendants] would largely be determined by third **[*11]** parties who may very well oppose the merger at issue here." (*Id.*) In addition, Defendants contend that granting United's request would inject "needless delay ... into this litigation." (*Id* at 2).

Second, United asks that paragraphs E(1)(c-f), concerning permitted disclosure of confidential information, be modified to expressly preclude disclosure to any outside counsel and/or outside professionals involved in Defendants' competitive decision making.[2] (*Id.* at 7). In addition, United asks that a new paragraph be added to the Protective Order which would prohibit any outside counsel or professional having access to a non-party's confidential information from participating in any Defendant's competitive decision-making for a period of two years after receipt of that information. [United Mot. Exh. 2 (Proposed Amended Protective Order) at ¶ E(5)]. United argues that such protective measures are appropriate because "the law firms and other outside professionals involved in these cases frequently represent one or more of the health insurers in litigation and non-litigation matters." (*Id.* at 7).

Plaintiffs object to the inclusion of the two-year moratorium because it "threatens to burden the service providers in this **[*12]** case by limiting the future engagements they can undertake, irrespective of the risk of misuse of Confidential Information." (Pl. Resp. at 3). Plaintiffs note that the Protective Order already requires that Confidential Information be used "solely for the prosecution and defense of this Action and not for any business, commercial, [or] competitive purpose." [*Id.* (citing Protective Order at ¶ E(4))].

---

[2] Disclosure of any confidential material to in-house counsel is prohibited pursuant to Special Master Report & Recommendation No. 1 (Dkt. No. 93).

Defendants object to requiring that any individual who accesses or uses confidential information certify that he or she is not involved in Defendants' competitive decision making, and to imposing a two-year moratorium on such use. (Def. Resp. at 4-5). Defendants argue that United has presented no evidence suggesting that any outside professionals are or might be involved in Defendants' competitive decision making, contending instead that United "merely speculates that there might be some unspecified confidential information that *might* be useful to Defendants in future, undefined decision-making that *might* involve the advice of outside counsel or outside professionals." [*Id.* at 5 (emphasis in original)]. In addition, Defendants contend that United's proposed modifications would impose a "substantial **[*13]** burden" on Defendants' relationship with outside counsel and professionals, and may "force Defendants to develop new relationships [with new outside counsel or professionals] at this late stage, placing them at a serious litigation disadvantage." (*Id.* at 6).

Finally, United asks that the Protective Orders be modified to require the parties to provide non-parties who provided confidential information with a list of all individuals who accessed that information during these proceedings and to certify that such information was destroyed at the conclusion of the case. (*Id.* at 8). United argues that "these are reasonable safeguards and are designed to encourage the parties to limit the disclosure of Confidential Information in the first place to the minimum amount necessary and to the minimum number of individuals necessary to prosecute and defend the cases." (*Id*).

Plaintiffs object to this request in its entirety. (Pl. Resp. at 4). Plaintiffs represent that "complying with such a provision ... would create an enormous administrative burden, given the large number of Protected Persons and individuals working on this matter." (*Id*). According to Plaintiffs, United "has made no showing" which would "justify **[*14]** this unnecessary burden." (*Id.*)

Defendants do not object to certifying that all confidential information has been destroyed following the close of litigation. (Def. Resp. at 7). Defendants do object to providing non-parties with a list of all individuals who accessed the non-party's confidential information. (*Id.* at 8). Defendants argue that this requirement would impose a "significant" burden on them because it would require the parties to "record 'all persons' — including every associate, paralegal, secretary, expert or vendor support staff, etc. — who accessed confidential information, and the particular third party whose confidential information that person accessed. And the parties would have to maintain this information in separate lists to be eventually produced to each third party." (*Id*). Defendants represent that, to date, "well over one hundred" individuals have accessed non-party confidential information. (*Id.*)

## b. Discussion

United has not shown "good cause" to modify the protective order to accommodate any of its requests because it has failed to show specific facts to support its broad allegations that it will suffer harm under the Protective Order currently in effect.

United's first **[*15]** request asks that DOJ be forced to limit its production of United investigation materials to only the documents and information relevant to this case, arguing that such a provision is necessary in order to protect United's confidential information. United alleges that what it describes as its "irrelevant Confidential Information" comprises "some of United's most competitively-sensitive information that in the hands of a direct competitor would expose United to severe and irreversible

competitive harm," (United Reply at 1). United, however, has not provided any specific facts suggesting, let alone demonstrating, that its information may in fact be given to any its direct competitors.

It is significant that the current Protective Order expressly limits disclosure to Defendants' outside counsel, retained experts, outside vendors, and outside trial consultants. [Amended Protective Order (Dkt. 108) at ¶ E (1)(c-f)]. It does not permit disclosure to Defendants' in-house counsel or to any direct employee of either of the Defendant companies. Moreover, the Order clearly limits recipients of confidential information to use of that information "solely for the prosecution and defense of this Action [*16] and not for any business, commercial, or competitive purpose, or in any other litigation proceeding." [*Id.* at ¶ E(4)].

The current Protective Order therefore limits both *who* may use United's confidential information (outside counsel, experts, and vendors only) and *how* they may use it (exclusively for purposes of this litigation). It is not evident, therefore, how information such as "United's business plans detailing how and where it intends to compete in the near future, pricing and product strategy, member and customer information, product design information, profit and loss data and projections and provider rate information" (United Mot. at 4) may be provided to any individual who may be in the position to use this information to Defendants' advantage or to United's disadvantage, and United has provided no "specific demonstration of facts" showing how this may be the case. [*Huthnance, 255 F.R.D. at 296* (citations omitted)].

Likewise, even assuming, *arguendo*, that some individual who might be in a position to advise Aetna or Humana regarding competitive decision making was to come into possession of the confidential information at issue, United has not put forth any concrete evidence suggesting that such individual [*17] might use that information improperly. Indeed, such improper use would defy both the Protective Order's requirement that the information be used solely for purposes of this litigation, and the attestation that each recipient of confidential information has signed or will sign in which he or she agrees to be bound by the terms of the Protective Order. Finally, while United alleges that disclosure of its information "puts United at risk of severe and irreparable competitive harm," it has failed to describe precisely *what* harm it believes it might incur.

United's justification for its need for entry of this provision is, therefore, speculative at best. "[T]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify" entry of a protective order. [*Alexander v. F.B.I., 186 F.R.D. 71, 75 (D.D.C. 1998)* (quoting *Prozina Shipping Co., Ltd. v. Thirty—Four Automobiles, 179 F.R.D. 41, (D.Mass.1988))]*. United's abstract assertions fall far short of satisfying this "heavy burden."[3]

---

[3] Moreover, United provides no precedent for its proposal that it — a non-party which is not directly involved in this matter — be permitted to unilaterally determine what material is and is not relevant in this case. **Rule 26 of the Federal Rules of Civil Procedure** limits production of materials to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Even following the December 2015 revisions to this rule, numerous Courts in this District and in others have concluded that "relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.'" [*United States ex rel. Shamesh v. CA, Inc., 314 F.R.D. 1, 8 (D.D.C. 2016)* (quoting *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978))*; see *Green v. Cosby, 314 F.R.D. 164, 171 (E.D. Pa. 2016)*; *Henry v. Morgan's Hotel Group, Inc., 2016 U.S. Dist. LEXIS 8406, 2016 WL 303114 at *3 (S.D.N.Y Jan. 25, 2016)]*. Likewise, the rule provides that "Information within this scope of discovery need not be admissible in evidence to be discoverable." [*Fed. R. Civ. P. 26 (b)(1)*].

As a non-party to this matter, United is not privy to all of the details regarding the claims and defenses at issue here. Its proposal would remove from the parties and potentially the Court and Special Master the authority to determine what is relevant for purposes of discovery,

By contrast, United's proposal is likely to significantly delay to these proceedings. Fact discovery began in these proceedings nearly one month ago, and is due to be complete by October 19, 2016. [*See* Case Management Order (Dkt. No. 55) at 1-2]. Putting aside **[\*18]** the fact that many non-party documents have already been produced to opposing counsel, permitting nonparties now to reconsider and potentially re-designate as "irrelevant" material that they have provided to the government will severely impair this schedule. Indeed, even permitting only one party — United, let alone possibly multiple parties — to re-designate its material will result in significant interruption to these proceedings because the parties would have the right to challenge any designation by United [or others], resulting in continued litigation and delay. Given United's failure to show any specific need for re-designation of documents, such delay is not justifiable here and its general assertions of potential harm are not persuasive.

United's second request - to require outside Counsel and other outside professionals who access Confidential Information to verify that they are not involved in Defendants' competitive decision making and will not be for two years - should also be denied because United has not shown a specific need for such restrictions to be expressly included in the Protective Order. In Special Master Report and Recommendation No. 1, the Special Master recommended **[\*19]** against permitting particular in-house counsel to access non-party confidential information in part because "[w]here in-house counsel are involved in competitive decision making ... the risk of inadvertent disclosure is obviously higher than for retained counsel.'" [R&R No. 1 (Dkt. No. 93) at 9 (quoting *F.T.C. v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 2016 WL 770099 at *3 (N.D. Ill. Feb. 29, 2016))].

The concerns relevant to in-house counsel are not applicable to those of outside counsel, however. A company's in-house counsel, and in particular the in-house counsel identified by Aetna and Humana who were at issue in Report & Recommendation No. 1, have many duties and obligations to their clients, including providing advice regarding competitively sensitive matters such as litigation with healthcare providers and/or contract negotiations regarding reimbursement rates.

By contrast, the outside counsel and outside professionals who Defendants have retained for purposes of this case have one primary obligation: to represent Defendants during the pendency of this litigation and, possibly, throughout the merger process. United has not presented any specific examples showing that any outside counsel or outside professional has had or is likely to have any involvement in Defendants' competitive **[\*20]** decision making beyond these duties. The risk of inadvertent disclosure is also much lower with such individuals because the entire scope of their duties pertains to this litigation. There is no reason to believe — and United has not come forth with any specific facts - that they will be in a position to disclose accidentally competitively sensitive information, and particularly not in any manner that may harm United, which is a non-party to this litigation.

Moreover, here again by way of existing protection, the current Protective Order expressly restricts any individual who obtains confidential information through this litigation to using that information solely for purposes of this litigation. United has not shown that this limitation will be insufficient to prevent any intentional or inadvertent disclosure of confidential information.

For these same reasons, the Special Master recommends against amending the Protective Order to ban any person who received confidential information from participating in Defendants' competitive decision-making or from providing consulting services in the health insurance industry to any competitor of a non-

and grant it the unilateral right to deny Defendants certain materials. This proposal risks permitting United to run roughshod over **Rule 26**, thereby severely hampering Defendants' ability to litigate this case.

party for a period of two years after conclusion **[\*21]** of this litigation. United has not provided any specific facts showing that it is likely to incur harm if this provision is not included, or that the current Order's limitation on use of confidential information is somehow inadequate. In these circumstances, to apply the constraints sought on possible future work without any evidence and only speculation is not warranted.

Indeed, in support of its allegations that additional protections are warranted in this case, United relies only upon a single case from 1986 in which the Seventh Circuit concluded that a district court did not err when it imposed a protective order limiting information that could be disclosed to particular trial counsel for a hospital. [*See Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., 784 F.2d 1325, 1345-46 (7th Cir. 1986)]*. In that case, however, the Seventh Circuit specifically noted that "Counsel for the Hospitals [plaintiffs] regularly represented [the plaintiffs] in price negotiations with [particular insurance companies]." (*Id. at 1346*). There is no evidence here that Defendants' outside counsel or any outside experts, vendors, or other professionals represent Defendants on any matter other than the instant antitrust litigation. *Ball Memorial* therefore is not applicable to this case.

Finally, United has **[\*22]** failed to show good cause to amend the Protective Order to require the parties to provide all non-parties who produced confidential information with a list detailing the name, employer, and title of all persons who accessed the non-party's confidential information, and to certify that all confidential material has been destroyed. United argues that these are "reasonable safeguard and are designed to encourage the parties to limit the disclosure of Confidential Information in the first place to the minimum amount necessary and to the minimum number of individual necessary to prosecute and defend the cases." (United Mot. at 8).

The standard for amending a protective order, however, is not whether a proffered change is "reasonable," but, rather, whether it is necessary in order to avert a particular harm. United has not shown what harm it believes it will incur if its desired provision is not included, nor has it provided any specific facts in support of that request. As noted above, the current Protective Order limits the distribution and use of the confidential information in this case, and United has not shown why it does not currently provide adequate safeguards.

By contrast, Plaintiffs **[\*23]** and Defendants have shown that providing the type of information that United seeks is likely to place a significant burden upon them. Plaintiffs represent that "teams of people at [DOJ], Defendants' outside counsel, 17 states and the District of Columbia, and multiple vendors and consultants" have already accessed confidential information. (Pl. Resp. at 4). Defendants indicate that "surely ... well over one hundred" individuals have accessed the confidential information of at approximately seventy-five third parties. (Def. Resp. at 8). Requiring the parties to detail each individual who has accessed or will access confidential information would place a burden on the parties that would far outweigh the benefit that doing so may afford United.

For all of these reasons, the Special Master concludes that United has not shown good cause in the form of demonstrating specific facts justifying amending the Protective Order in the way that it seeks.

## IV. Aon's Motion to Amend the Protective Order

### a. Arguments

In contrast to UnitedHealth, Aon seeks only one modification to the Protective Order. Aon asks that the Protective Order be amended to create two tiers of confidentiality: "Confidential Information" [*24] and "Highly Confidential Information." (Aon Mot. at 1). Aon's proposal would permit non-parties to designate as "highly confidential" "information that a Protected Person reasonably believes to be so competitively sensitive that it would cause competitive harm if such information were disclosed to the Defendants or their competitors." (*Id.*) The parties would be permitted to disclose this information only to the Court and its employees; Plaintiffs' attorneys and employees; Defendants' outside counsel and employees; and to experts, providing that the parties provide non-parties with three days' notice before disclosing the information to experts. (*Id. at 2*).[4] Finally, the parties would only be permitted to transmit such information "by secure transmission which means any encryption or password protection." (*Id. at 2*).

Aon is a professional services firm which, among other services, advises clients regarding the selection of insurance products. (*Id. at 2*). As part of this service, it produces what it labels "Confidential Reports" containing "pricing information for both sets of merging companies (Aetna / Humana and Anthem / Cigna) *and their competitors*." [*Id.* (emphasis in original)]. Aon's request that the Protective [*25] Order be amended to establish two tiers of confidentiality is primarily designed to protect these reports, which it has already produced to the Plaintiffs in this matter. According to Aon, "keeping this information confidential is critical to the success of Aon's business model." (*Id at 3*). It explains that it "only provided the Aon Confidential Reports to DOJ in response to a CID and by secure transmission, and only following several consultations with DOJ regarding, and in reliance on, the strict confidentiality laws and regulations governing it." (*Id*)

Aon argues that the current Protective Order is not sufficient to safeguard Aon's interest in protecting these documents because "the list of persons / entities to which Confidential Information may be disclosed is overbroad." (*Id. at 4*). According to Aon, "[s]uch broad distribution does not appropriately balance Aon's interest in 'avoiding the inadvertent use or disclosure of' the Aon Confidential Reports with the parties' need to litigate their cases." [*Id. at 5* (citing *FTC v. Sysco, 83 F. Supp. 3d 1, 8 (D.D.C. 2015))]*.

Plaintiffs object to Aon's request, arguing that the proposed modifications are "unnecessary and unworkable." (Pl. Resp. at 2). Plaintiffs note that the Court has previously rejected a [*26] two-tiered approach to confidentiality. (*See* Pl. Resp. at 2 and Exh. B). They argue that altering the Protective Order to adopt such a system now will untenably delay discovery by permitting all non-parties to re-designate materials already provided. (*Id.* at 3). In addition, Plaintiffs oppose Aon's proposals because they would "prevent the parties from using outside vendors, trial consultants, or taking effective depositions of Protected Parties," thereby "hamstring[ing] the parties and mak[ing] litigating these cases unmanageable." (*Id.*) Defendants also oppose Aon's requests. Defendants argue that Aon has not met its burden of "establishing that the existing Protective Order is inadequate." (Def. Resp. at 10).

Defendants note that Aon does not "identify even a single reason that any particular category of individuals should not be include on the list of eligible recipients of confidential information." (*Id*). According to Defendants, Aon's proposal ignores the safeguards already established in the current Protective Order. (*Id* at 10-11). Defendants further contend that the proposed modifications would be

---

[4] The Amended Protective Order currently permits confidential information to be disclosed to these four groups, as well as to outside vendors or service providers retained by any Party; outside trial consultants; any mediator or arbitrator engaged by the parties or appointed by the Court; individuals who have previously had lawful access to the confidential information; and "persons who counsel for Plaintiffs or Defendants believe in good faith previously received or had access to the document." [Protective Order (Dkt. 108) at ¶¶ E (1) (a-i)].

2016 U.S. Dist. LEXIS 194989, *26

burdensome and inefficient, noting that permitting non-parties to redesignate already produced materials [*27] and requiring a three-day delay, and possible additional litigation, before materials can be disclosed to experts, will delay the discovery process. (*Id* at 11). Likewise, Defendants argue that prohibiting disclosure to trial consultants and outside vendors will "impede the efficient litigation of this matter." Finally, Defendants argue that "Aon's request that all confidential information be transmitted securely is unnecessary" because "all confidential information is already adequately protected under the terms of the Protective Order." (*Id* at 13).

### b. Discussion

Aon has not met its burden to show good cause justifying amending the Protective Order because as it has not shown that it is likely to suffer any particular harm if the Order is not amended. Aon has, to be sure, shown that the material it produced to the government is confidential and competitively sensitive. It has not provided any "specific demonstration of facts" showing the harm that it is likely to suffer in the absence of its desired modifications, however.

Rather, Aon argues, broadly, that "in any litigation there is always a risk of inadvertent disclosure," noting that it has "committed to its health insurer partners that it will do [*28] everything possible to safeguard the information, and to competition more generally." (Aon Reply at 3). Any risk of inadvertent disclosure of competitive information, however, is minimal here because none of the insurance companies involved will actually view the documents at issue. Thus, for example, Aon's concern that "Aetna ... could see Anthem's reports, and Cigna could see Humana's reports" (Aon Reply at 3) is without merit because neither Aetna nor Cigna employees will actually see these reports. To the contrary, the Protective Order limits disclosure to only outside counsel and outside professionals, and restricts the use of that material solely to purposes related to this litigation. Any risk of inadvertent disclosure is far lower with respect to these outside counsel and professionals than it would be with respect to in-house employees.

Moreover, each individual who has reviewed or had access to material has been or will be required to sign the "Agreement Concerning Confidentiality," confirming that he or she has read the Protective Order and agrees to be bound by its terms. This Agreement likewise serves to provide an additional safeguard against improper disclosure of Aon's [*29] reports, as every individual who signs it avers that he or she "understands that ... failure to abide by the terms of the Stipulated Protective Order ... will subject me, without limitation to civil and criminal penalties for contempt of Court." [Amended Protective Order (Dkt. 108) Appendix A at ¶ 3].

Finally, Aon has not shown "good cause" for its request that its information be transmitted by "secure transmission," meaning "any encryption or password protection." First, this request is predicated on Aon's earlier request that it be permitted to designate the reports at issue as "highly confidential." For the reasons just stated, it is not appropriate to establish two tiers of confidentiality in this case. Second, Aon has not provided specific examples of the harm that it theoretically believes may flow from failure to require such secured transmission. There is no allegation, for example, that any party is being careless with confidential information, or that any party is unusually vulnerable to electronic hacking or similar threats. Rather, Aon states only that its request is not unduly burdensome. Relative degree of burdensomeness, however, is not the sole element of the "good cause" [*30] standard; rather, an entity must provide specific examples of the feared harm in order to obtain additional protection. Aon has failed to make this showing.

The cases that Aon presents do not compel an alternate conclusion. In *State of New York v. Microsoft Corp.*, the court determined that a protective order did not sufficiently safeguard materials to the extent that it permitted Microsoft's *in-house* counsel to view non-party documents. [2002 WL 31628220 at *2 (D.D.C. Nov. 18, 2002)]. In *F.T.C. v. OSF Healthcare System*, the court concluded that, because particular commercial information qualified as competitively sensitive, it should be sealed from public view. The court, however, did not limit counsel involved in litigating that case from accessing the material at issue. [2012 WL 1144620 at *3 (N.D. Ill. 2012)]. Likewise, while the court in *FTC v. Sysco Corporation* concluded it "must strike a balance between Sysco's ability to prepare and present its defense and the interest of third parties in avoiding the inadvertent use or disclosure of their confidential information," it actually concluded that permitting three of the four suggested in-house counsel to access confidential information adequately resolved this concern. *[83 F. Supp. 3d 1, 4 (D.D.C. 2015)]*. In this case, the operative Protective Order **[*31]** does not permit any in-house counsel to access confidential information, and Aon has not shown that permitting access to the individuals listed in section E of the Order poses any cognizable risk of harm to Aon.

By contrast, creating the two-tiered system that Aon seeks significantly risks delaying the discovery process in this case, thereby hindering the parties' ability to prepare for trial. This case is proceeding on an exceptionally expedited timeline, with fact discovery scheduled to conclude in just over a month and expert discovery set to begin before that. Given this schedule, it is virtually unthinkable that the parties can effectively prepare for litigation without reliance on outside vendors and trial consultants. Segregating the material that Aon alone has produced will likewise impose a substantial time burden and obligate the parties expend time devising alternate methods of processing this material.

Likewise, even assuming that Aon had shown some reason that establishing a three-day delay before production to experts might avoid some specific harm to Aon's interest, a three-day period in this case is much more impactful than it might be to a case with a longer discovery **[*32]** period.[5] For the same reason, permitting all non-parties to re-designate material already produced is unrealistic.


## V. Conclusion

For the foregoing **[*33]** reasons, the Special Master recommends that the Court deny non-party UnitedHealth's Motion to Amend the Protective Order and further recommends that the Court deny non-party Aon's Motion for Additional Relief Under the Protective Orders.


## VI. Certification

———————————————

[5] Aon cites to three cases which have required non-party notification prior to disclosure of confidential documents to experts. Those cases are not on point here. In *Gerffert Co. v. Dean*, advance notice of disclosure to experts was required because "problems in [the] case [had] already occurred with respect to confidences and secrets." [*2012 U.S. Dist. LEXIS 78824, 2012 WL 2054243 at *5 (E.D.N.Y. June 6, 2012)]*. As stated above, there have been no allegations that any party to this case has been careless with or has misused any confidential information. In *Genentech Inc. v. Bowen*, the court concluded that the party seeking entry of a protective order had provided specific examples of the harm that it was likely to suffer were a protective order not entered. [*1987 U.S. Dist. LEXIS 16914, 1987 WL 10500 at *2 [D.D.C. Apr. 21, 1987)]*. Aon has not provided any such specific examples here, nor has it shown that the existing Order is insufficient to protect its interests. Finally, in *Bank of New York v. Meridien BIAO Bank Tanzania Limited*, the court concluded that "exceptional circumstances" justified requiring one party to inform its opponent before disclosing materials to non-testifying experts. [*171 F.R.D. 135, 145 (S.D.N.Y. 1997)]*. No such "exceptional circumstances" are present here.

2016 U.S. Dist. LEXIS 194989, *33

Because this recommendation involves a provision in the Protective Order entered by the Court, the Special Master, pursuant to paragraph 5 of the appointment order (Dkt. No. 53) certifies this Report and Recommendation for appeal to the Court. UnitedHealth, Aon. Pursuant to paragraph 5, UnitedHealth and Aon have 48 hours from the entry of this Report and Recommendation in ECF to file a brief. If one or both of the non-parties elects not to appeal to the Court, they are requested to notify the Court and the parties as soon as possible.

September 14, 2016

/s/ Hon. Richard A. Levie (Ret.)

Hon. Richard A. Levie (Ret.)

Special Master

**End of Document**