# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, STATE OF ARIZONA, ATTORNEY GENERAL DANA NESSEL on behalf of THE PEOPLE OF MICHIGAN, STATE OF MINNESOTA, and STATE OF WISCONSIN,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEERE & COMPANY,<br><br>*Defendant* | Case No. 3:25-cv-50017<br><br>Hon. Iain D. Johnston |

**CITED AUTHORITY FROM ELECTRONIC DATABASES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO AGCO CORPORATION'S MOTION FOR CERTIFICATION OF AN ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)**

**Tab**

1. *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 16-cv-4161, 2017 U.S. Dist. LEXIS 189229 (N.D. Ill. Nov. 15, 2017)

2. *City of Joliet v. Mid-City Nat'l Bank*, No. 05 C 6746, 2008 U.S. Dist. LEXIS 48710 (N.D. Ill. June 13, 2008)

3. *Clay v. Union Pac. R.R. Co.*, No. 24-cv-4194, 2025 U.S. Dist. LEXIS 109672 (N.D. Ill. June 10, 2025)

4. *CMB Exp., LLC v. Atteberry*, No. 4:13-cv-04051-SLD-JEH, 2017 U.S. Dist. LEXIS 98010 (C.D. Ill. June 26, 2017)

5.      *Emley v. Wal-Mart Stores, Inc.*, No. 1:17-cv-02350, 2020 U.S. Dist. LEXIS 3723 (S.D. Ind. Jan. 8, 2020)

6.      *Flynn v. Exelon Corp*, No. 19 C 8209, 2022 U.S. Dist. LEXIS 15806 (N.D. Ill. Jan. 28, 2022)

7.      *FTC v. Walmart Inc.*, No. 22-cv-3372, 2024 U.S. Dist. LEXIS 223661 (N.D. Ill. Oct. 18, 2024)

8.      *Green v. Meeks*, No. 20-cv-00463-SPM, 2023 U.S. Dist. LEXIS 177355 (S.D. Ill. Oct. 2, 2023)

9.      *Gripper v. City of Springfield*, No. 04-3215, 2005 U.S. Dist. LEXIS 56560 (C.D. Ill. Aug. 9, 2005)

10.     *Hollinger Int'l v. Hollinger Inc.*, No. 04 C 0698, 2005 U.S. Dist. LEXIS 4511 (N.D. Ill. Feb. 3, 2005)

11.     *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 U.S. Dist. LEXIS 160411 (N.D. Ill. Sept. 28, 2017)

12.     *In re Graphics Processing Units Antitrust Litig. ("GPUs")*, 2007 U.S. Dist. LEXIS 57982 (N.D. Cal. July 24, 2007)

13.     *Mahajni v. Vu Do*, No. 24-cv-416-pp, 2025 U.S. Dist. LEXIS 42426 (E.D. Wis. Mar. 10, 2025)

14.     *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP-99-690, 2000 U.S. Dist. LEXIS 8098 (S.D. Ind. Mar. 7, 2000)

15.     *Moomaw v. Geosnapshot Pty Ltd.*, No. 3:23-cv-1321-DWD, 2025 U.S. Dist. LEXIS 41010 (S.D. Ill. Mar. 6, 2025)

16. *Patrick v. Pyod, LLC*, No. 1:14-cv539-RLY-TAB, 2014 U.S. Dist. LEXIS 149483 (S.D. Ind. Oct. 20, 2014)

17. *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331 (N.D. Ill. Jan. 6, 2005)

18. *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 U.S. Dist. LEXIS 109394 (N.D. Ill. June 21, 2022)

19. *Sante Fe Indus., Inc. v. Yorke*, No. 90 C 5359, 1991 U.S. Dist. LEXIS 1637 (N.D. Ill. Feb. 7, 1991)

20. *United States v. Moglia*, No. 02-c-6131, 2004 U.S. Dist. LEXIS 10424 (N.D. Ill. June 2, 2004)

21. *Wise v. SLM Corp.*, No. 14-CV-1426-SMY-DGW, 2015 U.S. Dist. LEXIS 139045 (S.D. Ill. Oct. 13, 2015)

# Tab 1

## *Allstate Ins. Co. v. Electrolux Home Prods.*

United States District Court for the Northern District of Illinois, Eastern Division

November 15, 2017, Decided; November 15, 2017, Filed

Case No. 16-cv-4161

**Reporter**

2017 U.S. Dist. LEXIS 189229 *; 2017 WL 5478297

ALLSTATE INSURANCE CO., a/s/o JORGE PINA, Plaintiff, v. ELECTROLUX HOME PRODUCTS, INC. et al., Defendants.

**Counsel:** [*1] For Allstate Insurance Company, a/s/o Jorge J. Pina, Plaintiff: Clayton Bradley Krapfl, LEAD ATTORNEY, Keis George LLP, Chicago, IL; Patrick Joseph O'malley, LEAD ATTORNEY, Keis George Llp, Cleveland, OH.

For Electrolux Home Products, Inc., Defendant: Brian James Hunt, LEAD ATTORNEY, The Hunt Law Group, Chicago, IL; Alexander C Ion, O'Hagan Meyer LLC, Chicago, IL; Brian H Myers, The Hunt Law Group, Llc, Chicago, IL; Rebecca Marie Biernat, PRO HAC VICE, Tucker Ellis Llp, San Francisco, CA.

For John Does, (1-10), Defendant: Brian James Hunt, LEAD ATTORNEY, The Hunt Law Group, Chicago, IL.

**Judges:** Robert M. Dow, Jr., United States District Judge.

**Opinion by:** Robert M. Dow, Jr.

# Opinion

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion to quash the subpoena issued to non-party the Wright Group, Inc., filed by Plaintiff Allstate Insurance Company ("Plaintiff") [18] and a motion to quash that same subpoena filed by non-party Wright Group, Inc. ("Wright Group") [24]. Defendant Electrolux Home Products, Inc. ("Defendant") opposes both motions. See [22], [26]. Plaintiff also filed a reply in support of its motion. [See 25.] For the reasons stated below, both Plaintiff's motion [18] and Wright Group's motion [*2] [24] are granted in part and denied in part. Wright Group shall produce documents responsive to the subpoena as set forth below.

## I. Background

This products liability action relates to a fire at Plaintiff's insured's property that Plaintiff alleges was caused by a defective dryer manufactured and distributed by Defendant. [See 1.] On November 29, 2016, Plaintiff identified Michael Stoddard and Ronald Parsons of the Wright Group as its testifying expert witnesses. [13.] Plaintiff amended this disclosure on May 26, 2017, to remove Mr. Parsons's name, leaving Mr. Stoddard as the only identified expert from the Wright Group. [17.] Mr. Stoddard issued an expert report in this case dated November 23, 2016. [See 22, Exhibit B (Stoddard Report).] Mr. Stoddard was deposed on May 31, 2017. [See 22, Exhibit C (Stoddard Deposition).]

On May 4, 2017, Defendant issued a *Federal Rule of Civil Procedure ("Rule") 45* subpoena to Wright Group requesting various categories of documents. The categories disputed in this motion request production of billing records and invoices for dryer storage and expert consulting on behalf of Plaintiff that is unrelated to the instant case,[1] corporate ownership records,[2] and information regarding the compensation [*3] of Wright

---

[1] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[a]ny and all billing records from the Wright Group for storage for all dryers stored on behalf of Allstate Insurance Company in 2016-2017," "Wright Group's invoices from 2007 to the present for expert consulting regarding Electrolux-manufactured dryers on behalf of Allstate Insurance Company for any claim," and "Wright Group's invoices from 2007 to the present for the storage of Electrolux-manufactured dryers stored on behalf of Allstate Insurance Company for any claim").

[2] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[d]ocuments identifying the board of directors of the Wright Group, Inc.," "[d]ocuments identifying the officers of the Wright Group, Inc.," and "[d]ocuments identifying all owners of the Wright Group, Inc.").

2017 U.S. Dist. LEXIS 189229, *3

Group employees.[3] Plaintiff filed a motion to quash the subpoena and for an entry of a protective order on May 26, 2017 [18], and Defendant filed an objection [22]. Wright Group then moved for entry of a protective order or to quash this same subpoena on July 25, 2017 [24], and Defendant again filed an objection [26].

Plaintiff and Wright Group broadly argue that these requests are not reasonably calculated to lead to the discovery of admissible evidence, would be unduly burdensome to comply with for Wright Group, and are seemingly meant to harass Wright Group employees.

Defendant argues that an expert witness's potential biases are relevant and discoverable. According to Defendant, although Mr. Stoddard is Plaintiff's testifying expert here, the Wright Group produced its expert report through the collective efforts of all of its employees, including Mr. Parsons, and is therefore the true "expert witness." To support this argument, Defendant points to deposition testimony from Mr. Stoddard indicating that Wright Group employees work together on fire analyses and developing test protocols. [See 22 at 3-8.] Defendant also points to the fact that Mr. Parsons and Mr. Stoddard have co-signed [*4] substantially similar expert reports in several factually similar cases against Defendant and argues that the report in this case, like these substantially similar reports, is really co-authored by both Mr. Parsons and Mr. Stoddard. [See *id.* at 2.] Defendant argues that the requested documents are relevant to the potential biases of Wright Group as an entity and are therefore discoverable. Defendant further argues that the requested categories of documents are particularly necessary because Mr. Parsons's credibility has been called into question in a motion for civil contempt pending in the Western District of Louisiana. [See 22, Exhibit M (*Sonnier* Motion).]

## II. Legal Standard

*Rule 26(b)(1)* provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." *Fed. R. Civ. P. 26(b)(1)*.[4] A district court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Fed. R. Civ. P. 26(c)(1)*. The party moving for entry of a protective order bears the burden of showing that good cause exists. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd., 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015)*; *Sloan Valve Co. v. Zurn Indus., 2012 U.S. Dist. LEXIS 161749, 2012 WL 5499412, at *1 (N.D. Ill. Nov. 13, 2012)*. The district court has broad discretion as to whether a protective order under *Rule 26(c)* is appropriate. [*5] *Sloan Valve Co., 2012 U.S. Dist. LEXIS 161749, 2012 WL 5499412, at *1*.

*Rule 45* governs the issuance of subpoenas during litigation. *Rule 45(a)* allows a party to issue a subpoena commanding a person to produce designated documents at a specified time and place. *Fed. R. Civ. P. 45(a)(1)(A)(iii)*. "The scope of material obtainable pursuant to a *Rule 45* subpoena is as broad as what is otherwise permitted under *Rule 26(b)(1)*." *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd., 2017 U.S. Dist. LEXIS 124437, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017)* (internal quotation marks and citation omitted).

Under *Rule 45(d)*, the district court "[o]n timely motion" must quash or modify a subpoena that "subjects a person to undue burden." *Fed. R. Civ. P. 45(d)(3)(A)(iv)*. A burden is considered undue when "the burden of compliance * * * would exceed the benefit of production of the material sought by [the subpoena]." *Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 927 (7th Cir. 2004)*. To assess whether such an undue burden exists, the court considers numerous factors, including "the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, [and] whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source[.]" *Mosely v. City of Chi., 252 F.R.D. 421, 427 (N.D. Ill. 2008)*. Non-parties generally are entitled to greater protection under *Rule 45* when making this assessment. See *Patterson v. Burge, 2005 U.S. Dist. LEXIS 1331, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005)*. A party moving to quash has the burden of

---

[3] [See 18, Exhibit 1 (Wright Group Subpoena), at 3] (requesting production of "[d]ocuments stating compensation policies for Fire Analysts of the Wright Group, Inc." and "[d]ocuments stating any bonus structure or policies for Fire Analysts of the Wright Group, Inc.").

[4] To the extent that the moving parties focus on whether the discovery requests at issue "are reasonably calculated to lead to the discovery of admissible evidence," they point to the wrong standard. That language was contained in a prior version of *Rule 26*, but was omitted from the current rule, which took effect on December 1, 2015.

demonstrating that an undue burden exists. [*6] *Pac. Century Int'l, Ltd. v. Does 1-37, 282 F.R.D. 189, 193 (N.D. Ill. 2012).* Ultimately, the decision whether to quash or modify a subpoena is within the discretion of the district court. See *Griffin v. Foley, 542 F.3d 209, 223-24 (7th Cir. 2008)*; *Nw. Mem'l Hosp., 362 F.3d at 928*.

## III. Analysis

### A. Procedural Issues

As a threshold matter, the Court must address the procedural objections that Defendant has raised to both motions. See [22], [26].

### 1. Plaintiff's Motion

Regarding Plaintiff's motion [18], Defendant argues that Plaintiff lacks standing under *Rule 45* to challenge a subpoena issued to non-party the Wright Group. [22 at 11-13.] Plaintiff does not address this issue in its motion. The Court agrees that Plaintiff lacks standing based on *Rule 45* because a party generally has no standing to move to quash a subpoena issued to a third party. See *Parker v. Four Seasons Hotels, Ltd., 291 F.R.D. 181, 186-87 (N.D. Ill. 2013)*; *Wi-LAN, Inc. v. LG Elecs., Inc., 2011 U.S. Dist. LEXIS 4606, 2011 WL 148058, at *3 (N.D. Ill. Jan. 18, 2011)*. As an exception, a party does have standing to move to quash a non-party subpoena "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)*; see also *Parker, 291 F.R.D. at 187* (examples of such legitimate interests include "the assertion of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party"). Plaintiff has not argued that it has any legitimate interest that would be infringed by the subpoena [*7] to the Wright Group but instead challenges the subpoena only on the grounds that it seeks irrelevant information and compliance with the subpoena would be unduly burdensome. But "[s]uch objections are for the subpoena recipients to make." *Parker, 291 F.R.D. at 187*. As a non-recipient of the subpoena, Plaintiff has no interest in any undue burden that compliance would require, and Plaintiff thus has no standing to object on that basis.

The Court's inquiry is not over, though, because

Plaintiff's motion also requests a protective order pursuant to *Rule 26(c)*. [See 18 at 6.] District courts have found that a party who lacks standing under *Rule 45* to challenge a subpoena may "achieve a similar end under *Rule 26*" by requesting a protective order relating to document requests served on a third party. *Mfr. Direct, LLC v. Directbuy, Inc., 2007 U.S. Dist. LEXIS 10250, 2007 WL 496382, at *3 (N.D. Ind. Feb. 12, 2007)* (concluding that the weight of authority in the Seventh Circuit allows a party who lacks standing under *Rule 45* to still move for a protective order under *Rule 26*); *Hobley v. Chi. Police Commander Burge, 445 F. Supp. 2d 990, 993 n.4 (N.D. Ill. 2006)* ("Defendants assert that Plaintiffs lack standing to move to quash the [non-party] subpoenas * * * [but] [i]t is not necessary to decide that issue, since Plaintiffs undoubtedly have standing to seek a protective order under [*Rule*] *26(c)*."); *Special Mkts. Ins. Consultants, Inc. v. Lynch, 2012 U.S. Dist. LEXIS 61088, 2012 WL 1565348, at *1-2 (N.D. Ill. May 2, 2012)* (party had standing to object to non-party subpoena under *Rule 26(c)(1)*); *Vodak v. City of Chi., 2006 U.S. Dist. LEXIS 82656, 2006 WL 3267428, at *6 (N.D. Ill. Nov. 9, 2006)* [*8] (considering the merits of a motion for a protective order barring a non-party's deposition filed by the plaintiff); *Cusumano v. NRB, Inc., 1998 U.S. Dist. LEXIS 15418, 1998 WL 673833, at *4 (N.D. Ill. Sept. 23, 1998)* (finding that because defendant had sought a protective order under *Rule 26* rather than *Rule 45*, defendant had standing to object to a non-party subpoena). See also *Smith v. HCSC-Blood Ctr., Inc., 2010 U.S. Dist. LEXIS 111065, 2010 WL 4104669, at *2 (E.D. Pa. Oct. 18, 2010)* (denying motion to quash subpoenas issued by another district court based on a lack of jurisdiction, but noting that "because defendants have also sought a protective order with respect to the information sought by these subpoenas, our review of this matter has not yet concluded"). Therefore, because Plaintiff has standing to seek a protective order under *Rule 26*, the Court will proceed to consider the merits of Plaintiff's motion.[5]

---

[5] The Court notes that Plaintiff has not complied with **Rule 26**'s requirement that a motion for a protective order include a certification that it has conferred or attempted to confer with Defendant in an effort to resolve the dispute without court action. See **Fed. R. Civ. P. 26(c)(1)**. However, in the interest of moving the case forward expeditiously (see *Fed. R. Civ. P. 1*), the Court declines to deny the motion solely on that ground in order to address other issues with the subpoena itself. See *Parungao v. Cmty. Health Sys., Inc., 2015 U.S. Dist. LEXIS 154652, 2015 WL 7195909, at *1 (N.D. Ill. Nov. 16, 2015)*. Cf. *Charvat v. Travel Servs., 2015 U.S. Dist. LEXIS 472, 2015 WL 76901, at *2 (N.D. Ill. Jan. 5, 2015)* (denying a party's motion

## 2. Wright Group's Motion

Regarding Wright Group's motion [24], Defendant argues that it should be dismissed as untimely because the motion was not filed before the time for compliance with the subpoena. [See 26 at 2-3.]

*Rule 45(d)(3)* states that a court must quash or modify a subpoena on "timely" motion. *Fed. R. Civ. P. 45(d)(3)*. The word "timely" is not defined in the rule. Other courts in this district have held that a motion to quash "must be made at or before the time of compliance." *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc., 2009 U.S. Dist. LEXIS 92917, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009)*; see also *Flagstar Bank, FSB v. Freestar Bank, N.A., 2009 U.S. Dist. LEXIS 76842, 2009 WL 2706965, at *3 (N.D. Ill. Aug. 25, 2009)* (noting that because *Rule 45* prescribes no compliance time for a subpoena, the reasonableness of the time for compliance chosen must be determined on a case-by-case basis). Some courts have also reasoned that the lack of a definition for "timely" in the federal rules points to discretion on the part of the district court to determine whether a motion to quash is considered timely. See *Woodard v. Victory Records, Inc., 2014 U.S. Dist. LEXIS 69512, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014)* (concluding that, "[w]hile the court does not wish to condone a party's failure to challenge a subpoena within the time delineated [*9] by the rules," the conduct between the parties indicated that the time for compliance had not yet lapsed); see also *Ace Hardware Corp. v. Celebration Ace Hardware, LLC, 2009 U.S. Dist. LEXIS 94721, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009)* (exercising discretion to consider the merits of a motion to quash even though it was not filed until over a month after compliance was due).

Here, the subpoena to Wright Group was served on May 24, 2017, and the time for compliance was set as May 24, 2017. Wright Group's motion to quash was filed on July 25, 2017, two months after the time set for compliance. However, because the Court has concluded that it will proceed to the merits of Plaintiff's motion (see n.5, *supra*), the Court will exercise its discretion to entertain the additional arguments made by Wright Group in its motion.

## B. The Wright Group Subpoena's Disputed

## Requests

Regarding the merits of the Wright Group subpoena, Defendant argues that all of the documents it has requested are relevant to the issue of Wright Group's expert bias and are therefore discoverable. Defendant further argues that because Mr. Stoddard's work as an expert in this case is the product of Wright Group employees' collective efforts, its requests for documents relevant to Wright Group's bias are proper. [See 22 at 14-18.]

An expert witness's [*10] potential biases are a relevant topic of inquiry and are thus within the scope of discovery. See, e.g., *Behler v. Hanlon, 199 F.R.D. 553, 561-63 (D. Md. 2001)* (ordering production of expert witness's gross income for preceding five years earned as an expert, a list of cases in which the expert provided such services for preceding five years, and the name of each insurance company for which expert provided services for preceding ten years); *Spencer v. United States, 2003 U.S. Dist. LEXIS 25277, 2003 WL 23484640, at *11-12 (D. Kan. Dec. 16, 2003)* (finding that information regarding expert's annual income from litigation consulting is within the scope of permissible discovery); *Butler v. Rigsby, 1998 U.S. Dist. LEXIS 4618, 1998 WL 164857, at *4 (E.D. La. Apr. 7, 1998)* (finding that magistrate judge's decision to allow discovery of expert witness's net income and percentage of net income that is litigation-related was not clearly erroneous because this information is relevant to show bias). See also *Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto Ins. Co., 2011 U.S. Dist. LEXIS 111668, 2011 WL 4507417, at *5 (E.D. Mich. Sept. 29, 2011)* ("[E]xpert witnesses in the business of furnishing litigation support * * * may have a motive to slant testimony to favor their customers and promote the continuation of their consultation business."). A party seeking such discovery should point to something that demonstrates that the requested documents are both relevant and proportional to the needs of the case, as *Rule 26* dictates.

To support its request, Defendant here relies on aspects of Mr. Stoddard's [*11] report and deposition testimony suggesting that the expert report in this case is the product of "collective efforts" of Wright Group employees, on the apparent relationship between Plaintiff and Wright Group in similar cases, and on a motion filed in a case in the Western District of Louisiana seeking to hold Mr. Parsons, another Wright Group employee, in civil contempt.

---

to quash based on lack of standing but *sua sponte* quashing the subpoena based on undue burden concerns).

2017 U.S. Dist. LEXIS 189229, *11

The issues of expert bias raised by Defendant are relevant to this case. Defendant has demonstrated, and the Wright Group has not contested, that its employees (including Mr. Stoddard) have served as experts on several other substantially similar cases involving this Plaintiff and this Defendant. See [22 at 2-9]; [24 at 8]. The Court is hesitant to impute the potential bias of all Wright Group employees onto the one Wright Group employee identified as a testifying expert in this case. See, e.g., *Silgan Containers v. Nat'l Union Fire Ins., 2011 U.S. Dist. LEXIS 35010, 2011 WL 1058861, at *5-7 (N.D. Cal. Mar. 23, 2011)* (compelling production of information relevant to expert witness's bias, but refusing to compel the production of that same information from the expert's company because "the court cannot assume that [the expert's] potential bias is co-extensive with his affiliation with [his firm]"). But Mr. Stoddard's employment with a company [*12] that has worked with Plaintiff extensively in similar cases and has earned income from both expert and storage services from this Plaintiff certainly is relevant to his own bias.[6] See *Burger v. Allstate Ins. Co., 2009 U.S. Dist. LEXIS 47929, 2009 WL 1587396, at *2 (E.D. Mich. June 8, 2009)* (a party "should be entitled to obtain information relating to the volume of work these expert witnesses perform" for the other party in similar cases). The Court will therefore consider the relevance of, and objections to, each disputed category.

**1. Billing Records and Invoices for Dryer Storage and Expert Consulting**

Plaintiff and Wright Group argue that the request for billing records over a 10 year period is irrelevant and overly broad and that searching for those records would be unduly burdensome and expensive. These documents are relevant for the reasons explained above. Moreover, neither Plaintiff nor the Wright Group has persuasively demonstrated why producing these records would constitute an undue burden. See *Papst Licensing GmbH & Co. KG v. Apple, Inc., 2017 U.S. Dist. LEXIS 51274, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017)* ("[O]ne claiming undue burden must do more than intone the phrase."). That being said, taking into account the proportionality principle, the Court will

limit the durational scope of the materials to be produced, which will reduce the burden on Wright Group. See *McCall v. State Farm. Mut. Auto. Ins. Co., 2017 U.S. Dist. LEXIS 117250, 2017 WL 3174914, at *8-9 (D. Nev. July 26, 2017)*; *Silgan Containers, 2011 U.S. Dist. LEXIS 35010, 2011 WL 1058861, at *5-7*; *Behler, 199 F.R.D. at 562*. In particular, [*13] Wright Group need only produce at this time (1) its billing records for storage of all dryers stored on behalf of Plaintiff in the past year; (2) invoices from 2012 to the present for expert consulting regarding Defendant-manufactured dryers on behalf of Plaintiff; and (3) invoices from 2012 to the present for storage of Defendant-manufactured dryers on behalf of Plaintiff.

**2. Corporate Ownership Records**

Plaintiff and Wright Group argue that the corporate records of Wright Group are also irrelevant, and that this information is available to Defendant through other means.

The Court agrees that this information does not need to be produced. Its relevance to the issue of Mr. Stoddard's bias is minimal at best, and it is available to Defendant through the Massachusetts Secretary of State. [See 18 at 8.] Therefore, Wright Group need not produce any documents in response to this request.

**3. Compensation of Wright Group Employees**

Plaintiff and Wright Group argue that the personal financial records of Wright Group employees are irrelevant and have been requested solely to harass Wright Group employees. However, the way the Court reads these requests, Defendant is not asking for the personal financial [*14] records of Mr. Stoddard or any other Wright Group analysts. Rather, Defendant requests documents stating any compensation or bonus policies that are used internally at the Wright Group. This information, if it exists, would be "relevant to show its potential bias or motive to retain [analysts] who will render opinions favorable to the insurer." *McCall, 2017 U.S. Dist. LEXIS 117250, 2017 WL 3174914, at *8*. The production of such general policies would not unduly harass any Wright Group employees because they would not include any of their personal information. Therefore, Wright Group only needs to produce documents, to the extent they exist, stating any general compensation or bonus policies for its fire analysts.

---

[6] The Court will not accord any weight to the allegations in the filing from the *Sonnier* case that Defendant has attached to its opposition, as there has been no ruling on the allegations contained within that document. [See 22 Exhibit M (*Sonnier* Motion).]

**IV. Conclusion**

For the reasons stated above, both Plaintiff's motion [18] and Wright Group's motion [24] are granted in part and denied in part. Wright Group shall produce documents responsive to the subpoena as follows: (1) billing records from the Wright Group for storage of all dryers stored on behalf of Plaintiff in the past year; (2) invoices from 2012 to the present for expert consulting regarding Defendant-manufactured dryers on behalf of Plaintiff; (3) invoices from 2012 to the present for storage of Defendant-manufactured dryers [*15] on behalf of Plaintiff; and (4) documents, to the extent that they exist, stating any general compensation or bonus policies for its fire analysts.

Dated: November 15, 2017

/s/ Robert M. Dow, Jr.

Robert M. Dow, Jr.

United States District Judge

---

**End of Document**

# Tab 2

## *City of Joliet v. Mid-City Nat'l Bank*

United States District Court for the Northern District of Illinois, Eastern Division

June 13, 2008, Decided; June 13, 2008, Filed

05 C 6746

**Reporter**
2008 U.S. Dist. LEXIS 48710 *; 2008 WL 4889038

CITY OF JOLIET, an Illinois Municipal Corporation, Plaintiff, v. MID-CITY NATIONAL BANK, et al., Defendants.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Judgment entered by, in part *City of Joliet v. Mid-City Nat'l Bank of Chi., 2012 U.S. Dist. LEXIS 24941 (N.D. Ill., Feb. 22, 2012)*

**Prior History:** *City of Joliet v. Mid-City Nat'l Bank, 2008 U.S. Dist. LEXIS 24924 (N.D. Ill., Mar. 27, 2008)*

**Counsel:** [*1] For Maurice Crowder, Defendant (2): Elliot M. Samuels, LEAD ATTORNEY, Chicago, IL; John C. Legutki, LEAD ATTORNEY, Attorney at Law, Chicago, IL.

For USA, Plaintiff: Tinos Diamantatos, LEAD ATTORNEY, AUSA, United States Attorney's Office (NDIL), Chicago, IL; Pretrial Services; Probation Department.

**Judges:** Hon. Charles R. Norgle, Judge.

**Opinion by:** Charles R. Norgle

# Opinion

**OPINION AND ORDER**

Before the court are Defendants New West/New Bluff's and the United States Department of Housing and Urban Development's ("HUD") Petitions for Interlocutory Appeal. For the following reasons, the Petitions are granted.

## I. BACKGROUND

On August 3, 2007, the court entered an order granting the City of Joliet's Motion for Judgment on the Pleadings with regard to the *Supremacy Clause* defense. The court denied HUD's Motion for Reconsideration on March 18, 2008. On March 25, 2008, the court denied HUD's Motion for Summary Judgment. [1] HUD's Motion for Summary Judgment was based on the *Contracts Clause* and the *Property Clause of the United States Constitution*, and the doctrine of intergovernmental immunity. In separate Petitions, Defendants New West/New Bluff and HUD now petition the court to certify the court's orders of August 3, 2007, [*2] March 18, 2008, and March 25, 2008 for interlocutory appeal pursuant to *28 U.S.C. § 1292(b)*.

## II. DISCUSSION

### A. Standard of Decision

The movant seeking the grant of a motion to certify an interlocutory order for immediate appeal pursuant to *28 U.S.C. § 1292(b)* bears a heavy burden, as only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Fisons Limited v. United States, 458 F.2d 1241, 1248 (7th Cir.1972)*. The statutory text of *28 U.S.C. § 1292(b)* provides, *inter alia:*

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

See also *In re Ford Motor Co., 344 F.3d 648, 653 (7th Cir. 2002)*; *Ahrenholz v. Bd. of Trs. of the U. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)*. "There are four statutory criteria for the grant [*3] of a *section 1292(b)* petition to guide the district court: there must be a question of *law,*

---

[1] A full Opinion issued on March 27, 2008.

it must be *controlling,* it must be *contestable,* and its resolution must promise to *speed up* the litigation." *Ahrenholz, 219 F.3d at 675*. "There is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." Id. When a district court certifies an order for interlocutory appeal, the court should identify the question it believes meets the criteria for interlocutory review. See *In the Matter of Arthur J. Hamilton, 122 F.3d 13, 14 (7th Cir. 1997)*.

## B. *28 U.S.C. § 1292(b)* Criteria

### 1. Question of Law

The first statutory criterion under *§ 1292(b)* is that the court be presented with a question of law. In Ahrenholz, the Seventh Circuit provided a definition of "question of law," stating that a "'question of law' as used in *section 1292(b)* has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine . . . ." *219 F.3d at 676*. The Seventh Circuit then emphasized that the framers of *§ 1292(b)* intended the term "question of law" to refer to "'pure' question[s] of [*4] law rather than merely to an issue that might be free from a factual contest." *Id. at 676-77*.

Here, Defendants present the court with the question of whether the *Supremacy Clause,* the *Contracts Clause,* or the *Property Clause of the United States Constitution,* or the doctrine of intergovernmental immunity, preempts and/or prohibits a municipality from exercising its powers of eminent domain over privately owned property in which the federal government claims an interest, and which property is subject to Regulatory Agreements required by the National Housing Act ("NHA") and the Multifamily Assisted Housing Reform and Affordability Act ("MAHRA"). The court finds that this question presents an "abstract issue of law . . . suitable for determination by an appellate court without a trial record." See *Ahrenholz, 219 F.3d at 677*; see also *Hamilton, 122 F.3d at 14*. The court therefore determines that Defendants have properly articulated a question of law within the meaning of *§ 1292(b).*

### 2. Controlling

The second statutory criterion under *§ 1292(b)* is that the question of law be controlling. A question of law is controlling "if its resolution is quite likely to affect the further course of the [*5] litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp., v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 659 (7th Cir 1996)*. Here, if the Seventh Circuit were to determine that Joliet's condemnation action was preempted and/or prohibited, the district court would likely be required to dismiss this case. The court therefore determines that the question presented for interlocutory appeal is controlling.

### 3. Contestable

The third statutory criterion under *§ 1292(b)* is that the question of law be contestable, i.e., that substantial grounds for a difference of opinion on the issue exist. An issue is contestable within the meaning of *§ 1292(b)* if there is a "difficult central question of law which is not settled by controlling authority," and a "substantial likelihood" exists that the district court's ruling will be reversed on appeal. *In re Brand Name Prescription Drugs Antitrust Litigation, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995)*.

Defendants assert that neither the Seventh Circuit nor any other Circuit Court of Appeals has specifically addressed the preemption arguments raised in this case in relation to the NHA and the MAHRA. The court agrees. While the court is loath to [*6] determine that there is a "substantial likelihood" that it will be reversed on appeal, the court determines that the issue presented in Defendants' Petitions is contestable.

### 4. Materially Advance the Litigation

The fourth statutory criterion under *§ 1292(b)* is that resolution of the question of law "may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*; see also *Ahrenholz, 219 F.3d at 675*. As the court has already indicated, should Defendants prevail on this issue, the court may well be required to dismiss this case. The court therefore determines that resolving the issue of law presented by Defendants has the potential to materially advance this litigation.

### 5. Timeliness

Although there is no statutorily imposed time frame for filing a petition for interlocutory review with the district court, such requests must be filed within a reasonable

period of time after the entry of the order for which such review is sought. *Ahrenholz, 219 F.3d at 675*. The New West/New Bluff Defendants filed their Petition for Interlocutory Review on April 11, 2008. HUD filed its Petition on May 14, 2008. The orders sought to be certified for interlocutory appeal were entered on [*7] August 3, 2007, March 18, 2008, and March 25, 2008. The court finds that Defendants have filed their Petitions for Interlocutory Review within a reasonable time.

## III. CONCLUSION

For the foregoing reasons, the court certifies its August 3, 2007, March 18, 2008, and March 25, 2008 orders for interlocutory review. The question the court believes meets the criteria for interlocutory review by the Seventh Circuit is the following: whether the *Supremacy Clause*, the *Contracts Clause*, or the *Property Clause of the United States Constitution*, or the doctrine of intergovernmental immunity, preempts and/or prohibits a municipality from exercising its powers of eminent domain over privately owned property in which the federal government claims an interest, and which property is subject to Regulatory Agreements required by the NHA the MAHRA.

IT IS SO ORDERED.

/s/ Charles Ronald Norgle

CHARLES RONALD NORGLE, Judge

United States District Court

Dated: June 13, 2008

# Tab 3

# *Clay v. Union Pac. R.R. Co.*

United States District Court for the Northern District of Illinois, Eastern Division

June 10, 2025, Decided; June 10, 2025, Filed

No. 24 CV 4194

**Reporter**

2025 U.S. Dist. LEXIS 109672 *; 2025 LX 190453

REGINALD CLAY, Plaintiff, v. UNION PACIFIC RAILROAD COMPANY, Defendants.

**Subsequent History:** Appeal filed, 06/20/2025

**Counsel:** [*1] For Reginald Clay, Plaintiff: Daniel A. Edelman, LEAD ATTORNEY, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL; Alexandra Rose Huzyk, Dulijaza Clark, Edelman, Combs, Latturner & Goodwin, Chicago, IL.

For Union Pacific Railroad Company, Defendant: Gary Feinerman, Johanna Margaret Spellman, Sean M. Berkowitz, Latham & Watkins LLP, Chicago, IL; Kathryn Running, Latham & Watkins Llp, Chicago, IL.

**Judges:** Georgia N. Alexakis, United States District Judge.

**Opinion by:** Georgia N. Alexakis

# Opinion

## Memorandum Opinion and Order

Reginald Clay brought this suit against Union Pacific Railroad Company ("Union Pacific"), alleging violations of the *Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 et seq.* The Court denied Union Pacific's motion for partial summary judgment, [37], after concluding that the 2024 amendment to BIPA, *see 740 ILCS 14/20* (amended August 2, 2024), was not retroactive. *See* [55].

Union Pacific now requests that the Court certify its decision for an interlocutory appeal pursuant to *28 U.S.C. § 1292(b)*. [58]. For the reasons set forth below, the motion to certify is granted.

## I. Legal Standards

A district court follows "four statutory criteria" in determining whether a *§ 1292(b)* petition should be granted: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution [*2] must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)*. Under *§ 1292(b)*, "question of law" refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id. at 676*. A question of law is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc., 86 F.3d 656, 659 (7th Cir. 1996)*. A question of law is contested "when a controlling court has not definitively decided an issue [and] the party requesting certification [can] demonstrate that a 'substantial likelihood' exists that the district court ruling will be reversed on appeal." *Padilla v. Dish Network L.L.C., 12-CV-7350, 2014 U.S. Dist. LEXIS 16869, 2014 WL 539746, at *5 (N.D. Ill. Feb. 11, 2014)*. "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there." *Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012)*. Rather, it is enough that "uncertainty about status of ... [a] claim" might "delay settlement ... and by doing so further protract the litigation." *Id.*

The Seventh Circuit also identifies "a [fifth] nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz, 219 F.3d at 675-76*.

## II. Background

Clay is a truck driver who visited Union Pacific facilities during his work. [*3] [1] ¶ 5. Clay alleges that Union Pacific required him to register his fingerprint information and scan his fingerprints upon entering or exiting Union Pacific facilities and that Union Pacific did not disclose what was done with this information or how

2025 U.S. Dist. LEXIS 109672, *3

it would be stored. *Id.* ¶¶ 6-8. Clay sued Union Pacific under BIPA on April 16, 2024, and Union Pacific removed to federal court on May 21, 2024. [1].

In August 2024, the Illinois legislature amended BIPA to clarify that when an entity subject to the Act "in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection" in violation of the Act, the entity "has committed a single violation ... for which the aggrieved person is entitled to, at most, one recovery." *740 ILCS 14/20(b)*, *(c)*, *as amended* by SB 2979, Public Act 103-0769. This displaced the previous rule of *Cothron v. White Castle Sys., Inc.*, which allowed "per scan" recovery. *2023 IL 128004 ¶ 24, 466 Ill. Dec. 85, 216 N.E.3d 918*.

On November 4, 2024, Union Pacific moved for partial summary judgment, arguing that under the 2024 BIPA amendment Clay was now entitled to recover for at most a single BIPA violation, rather than [*4] the "per-scan" theory endorsed in *Cothron*. [37] at 4-8. Relying on its earlier decision in *Schwartz v. Supply Network, Inc., 23 CV 14319, 2024 U.S. Dist. LEXIS 213002, 2024 WL 4871408 (N.D. Ill. Nov. 22, 2024)*, the Court concluded in its order of April 10, 2025, that because the BIPA amendment was substantive rather than procedural it was not retroactive under Illinois law, and thus did not apply to Clay's claim. [55] at 2.

Union Pacific now requests certification of the Court's order for interlocutory appeal. [58]. Clay opposes certification. [63].

### III. Analysis

Clay's opposition to certification contests only two of the five requirements for certification. [63] at 2 ("In the present case, Defendant failed to meet two of the five requirements for certification.") The Court agrees with Union Pacific that the remaining three are met. Whether the 2024 amendment is retroactive is undoubtedly "a question of the meaning of a statutory or constitutional provision." *Ahrenholz, 219 F.3d at 676*. It presents "an abstract issue of law ... suitable for determination by an appellate court without a trial record." *Id. at 677*. This question of retroactivity also "is quite likely to affect the further course of the litigation," *Sokaogon, 86 F.3d at 659*, and is thus controlling. As Union Pacific explains, if the Seventh Circuit were to conclude that Clay was entitled only to [*5] one recovery, "that holding ... would

render irrelevant certain types of evidence, including expert testimony regarding the facts and circumstances surrounding each occasion on which [Clay] allegedly had his finger scanned; and whether the technology at issue captured 'biometric identifiers' or 'biometric information' every time a scan occurred, or whether any such information vanished virtually instantaneously." [58] at 4. In addition, certainty about the retroactivity of the 2024 amendment would "materially advance the ultimate termination of the litigation," *28 U.S.C. § 1292(b)*, by, for example, encouraging settlement, *see Sterk, 672 F.3d at 536*. *See also* [58] at 3-4, 6-7.

That leaves whether the certification request is timely and whether the legal question is contestable. Clay argues that Union Pacific "failed to submit its motion in a reasonable time." [63] at 2. Acknowledging that there is no fixed time under *§ 1292*, Clay contends that the 28 days between the Court's order and Union Pacific's motion for certification is "inexcusably dilatory" and "illustrative of an ongoing pattern of delay." *Id.* at 3.

The Court disagrees that the motion is untimely. Clay relies primarily on *Green v. Meeks*, which observes that "requests filed [*6] more than a month or so after the order sought to be appealed are often deemed untimely." *No. 20-CV-00463-SPM, 2023 U.S. Dist. LEXIS 177355, 2023 WL 6393023, at *2 (S.D. Ill. Oct. 2, 2023)*; [63] at 2. But Union Pacific filed its motion within a month, and the only case Clay cites where one month was found to be an unjustified delay involved the *§ 1292(b)* motion being filed "fourteen days after the court ordered the [defendant] to file its answer to the [Plaintiff's] second amended complaint." *Morton Coll. Bd. of Trs. of Illinois Cmty. Coll. Dist. No. 527 v. Town of Cicero, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998)*. Unlike the movant in *Cicero*, Union Pacific has not run afoul of any court-imposed deadlines. *See* [57]. The Court does not consider 28 days to be unreasonable in preparing a motion to certify for interlocutory appeal a novel question of state law, especially when Clay points to no prejudice he suffered as a result.[1] The Court therefore concludes that the motion is timely.

Finally, although the Court shares Clay's view that its April 10 order was "correctly reasoned," [63] at 4, its confidence does not mean that *BIPA* retroactivity is not

---

[1] Indeed, the Court directed the parties to continue written discovery pending resolution of the certification motion, [62], and as it notes at the conclusion of this order, instructs the parties to continue those efforts until the Seventh Circuit resolves Union Pacific's request for interlocutory review.

2025 U.S. Dist. LEXIS 109672, *6

"contestable" within the meaning of *§ 1292*. It is true that "judges within the Northern District of Illinois and Illinois state courts overwhelmingly have held that the BIPA amendment does not apply retroactively to pending cases," *id.* (listing cases), so no current dispute [*7] exists among the courts. But this consensus does not mean there is no "substantial ground for difference of opinion" about retroactivity." *28 U.S.C. § 1292(b)*; *see also* *Rivera v. Google Inc., No. 16 C 02714, 2017 U.S. Dist. LEXIS 239553, 2017 WL 11895720, at *1 (N.D. Ill. June 27, 2017)* ("[A]n interlocutory-appeal certification requires only a 'substantial' ground for difference of opinion, not that the district court be convinced that it came this/close to getting the wrong answer."). As the Court noted in *Schwartz*, "the line between substance and procedure 'may often be unclear.'" *2024 U.S. Dist. LEXIS 213002, 2024 WL 4871408, at *5* (quoting *Deicke Ctr. v. Illinois Health Facilities Planning Bd., 389 Ill. App. 3d 300, 303, 906 N.E.2d 64, 329 Ill. Dec. 219 (1st Dist. 2009)*). This observation does not change the Court's confidence in its earlier decision, nor is a change of mind necessary to certify an interlocutory appeal. *United Airlines, Inc. v. Mesa Airlines, Inc., No. 97 C 4455, 1999 U.S. Dist. LEXIS 16256, 1999 WL 1144962, at *1 (N.D. Ill. Oct. 5, 1999)* ("Since reasonable minds might differ with my view, although of course they would be wrong, I conclude that there are substantial grounds for a difference of opinion."). Rather, it is an acknowledgement of the novelty and complexity of the legal issue.

Union Pacific thus meets all four statutory criteria for an interlocutory appeal, as well as the "nonstatutory" timeliness requirement.

## IV. Conclusion

For the foregoing reasons, the Court grants Union Pacific's motion for certification of the April 10, 2025 order for interlocutory appeal. [58]. Union Pacific has 10 days from the entry of [*8] these findings to request the Seventh Circuit's interlocutory review of the certified question. If granted, the Court will stay the case pending interlocutory review. Until the Seventh Circuit resolves any request for interlocutory review, however, the parties must continue their progress on written discovery. [62]. The Court vacates the 6/26/25 hearing on Union Pacific's motion.

/s/ Georgia N. Alexakis

Georgia N. Alexakis

United States District Judge

Date: 6/10/25

---

**End of Document**

# Tab 4

# *CMB Exp., LLC v. Atteberry*

United States District Court for the Central District of Illinois, Rock Island Division

June 26, 2017, Decided; June 26, 2017, E-Filed

Case No. 4:13-cv-04051-SLD-JEH

**Reporter**

2017 U.S. Dist. LEXIS 98010 *; 2017 WL 2766440

CMB EXPORT, LLC, CMB SUMMIT, LLC, d/b/a CMB REGIONAL CENTERS, Plaintiffs, v. KIMBERLY ATTEBERRY, CHRISTOPHER ATTEBERRY, and VERMILLION CONSULTING, LLC, Defendants.

**Prior History:** *CMB Exp., LLC v. Atteberry, 2014 U.S. Dist. LEXIS 116095 (C.D. Ill., Aug. 20, 2014)*

**Counsel:** [*1] For CMB Export, LLC, CMB Summit, LLC, d/b/a CMB Regional Centers, Plaintiffs: Cynthia S Muehling, James F Hendricks, Jr., Judith S Sherwin, John J Michels, Jr, LEWIS BRISBOIS BISGAARD & SMITH LLP, Chicago, IL.

For Kimberly Atteberry, Christopher Atteberry, I, Vermillion Consulting, LLC, Defendants: Robert B McMonagle, Andrea D Mason, Jason J O'Rourke, Jeffrey Bryan Lang, LANE & WATERMAN LLP, Davenport, IA.

For Civitas Capital Group, Interested Party: Thomas Jesse Arkell, LEAD ATTORNEY, DUNN WILLARD ARKELL BUGG PATTERSON & HERR LLP, Bloomington, IL; Michelle Ann Reed, AKIN GUMP STRAUSS HAUER & FELD LLP, Dallas, TX.

For EB5 Capital, Interested Party: Scott T Mendeloff, LEAD ATTORNEY, GREENBERG TRAURIG LLP, Chicago, IL.

For CanAm Enterprises, LLC, Interested Party: Ira J Kurzban, Edward F Ramos, KURZBAN KURZBAN WEINGER TETZELI & PRATT P.A., Miami, FL.

**Judges:** SARA DARROW, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SARA DARROW

# Opinion

ORDER

Before the Court are Plaintiffs' CMB Export LLC's and CMB Summit LLC's (collectively, "CMB") motion to certify the Court's September 29, 2016 Order for interlocutory appeal, ECF No. 102; and its motion seeking leave to reply to Defendants' response, ECF No. 106. For the reasons that follow, [*2] both motions are DENIED.

## BACKGROUND

The Court has already detailed, in the Order at issue in the instant motion, the factual background of this case, Sept. 29, 2016 Order 1-8, ECF No. 1, and will not repeat that account here. Generally, the case concerns the efforts of CMB, which helps foreign nationals invest money in order to qualify for EB-5 visas, to recover against a former employee who, it asserts, sabotaged its business and left with proprietary client lists and other information she was not entitled to take. *See* Compl. ¶¶ 1-32, ECF No. 1.

The September 29, 2016 Order affirmed the magistrate judge's discovery ruling as to materials of which CMB sought discovery. CMB had argued that its erstwhile employee, Defendant Kimberly Atteberry, who started her own EB-5 visa consulting firm, Defendant Vermillion Consulting, LLC ("Vermillion"), had shared various forms of proprietary information with third-party competitors of CMB after she left, and that because evidence of this sharing would support CMB's claims against Defendants, CMB should be permitted broad discovery of documents Atteberry and Vermillion had shared with the third-party competitors. *See* CMB Mot. Compel Discovery, ECF [*3] No. 56. The magistrate judge initially granted CMB's motion to compel discovery of the contested documents, Jul. 27, 2015 Minute Entry, ECF No. 63, but after Defendants filed a motion for reconsideration, ECF No. 66, and after several of the third parties specially appeared seeking to protect assertedly private communications they had had with Defendants, ECF Nos. 67, 71, the magistrate judge altered his earlier ruling. He did so

2017 U.S. Dist. LEXIS 98010, *3

to this extent. . . That, as it relates to these third parties, discovery that the plaintiff seeks from the defendant. . . they must make a specific showing through motion with the courts—specific—as to how the discovery sought relates to their claim in this case as to a stolen trade secret.

So, I need specifics. You have got to . . . link it up to some evidence that you have that is going to give the Court a basis to believe that the information you seek is more than a fishing expedition because right now what this looks like is a long-line fishing expedition of grand order.

Oct 20, 2015 Tr. 50, ECF No. 87.

CMB's objection to that ruling made plain its quandary: having evidently turned up no incriminating material in any other documents Defendants produced in [*4] the course of discovery, it now had "nowhere else to go to discover Atteberry's and Vermillion's documents." Mem. Supp. Obj. 5, ECF No. 85. But the Court was unpersuaded. It noted that *Federal Rule of Civil Procedure 26(b)(1)* authorizes discovery of information relevant to claims or defenses, but that such discovery must be "proportional to the needs of the case, considering . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Sept. 29, 2016 Order 11. The Court decided that the magistrate judge had appropriately balanced the interest of the third parties and Vermillion/Atteberry against CMB's need for discovery by requiring that, as to any request for documents that Defendants or third parties claimed to be confidential, CMB would have to point to specific facts that gave it reason to think discovery would prove fruitful. *Id.* at 10-11. The Court held that this ruling was, at the least, not clearly erroneous, *id.* at 10, and declined to disturb it, *id.* at 11. The Court also distinguished the scenario from *Gotham Holdings, LP v. Health Grades, Inc., 580 F.3d 664 (7th Cir. 2009)*, in which the Seventh Circuit held that *Rule 26* trumped a contractual privacy [*5] agreement as to a specific document of which one party to litigation sought discovery. In CMB's case, the Court explained, the magistrate judge had appropriately required a threshold showing of relevance as to a certain class of documents before he would grant discovery, rather than allowing a litigant's right to discovery under the Federal Rules of Civil Procedure to be barred by a private contract, as had happened in the district court in *Gotham Holdings. Sept. 29, 2016 Order* 11-12.

## DISCUSSION

### I. Legal Standard on a Motion for Certification of Interlocutory Appeal

Ordinarily, a district court's orders that do not terminate an action or otherwise give rise to a final, appealable judgment are not immediately appealable. *See Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994)* (describing "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered" (citation omitted)). These non-final orders are termed interlocutory orders. Certain kinds of interlocutory orders, however, may be appealed immediately, like injunctions, *28 U.S.C. § 1292(a)(1)*, and a district judge may also certify other interlocutory orders for immediate appeal when she "shall be of the opinion that such order involves a controlling question [*6] of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," *id. § 1292(b)*. Thus, "[t]here are four statutory criteria for the grant of a *section 1292(b)* petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois, 219 F.3d 674, 675 (7th Cir. 2000)*. A party seeking immediate appeal of an interlocutory order "bears a heavy burden, as only 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.'" *City of Joliet v. Mid-City Nat'l Bank, No. 05 C 6746, 2008 U.S. Dist. LEXIS 48710, 2008 WL 4889038, at *1 (N.D. Ill. June 13, 2008)* (quoting *Fisons Limited v. United States, 458 F.2d 1241, 1248 (7th Cir. 1972))*.

### II. Analysis

CMB argues that there is a controlling question of law, Mem. Supp. Mot. Certify 3-4, ECF No. 103; that there is substantial ground for difference of opinion, *id.* at 4-5; and that certification would materially advance the ultimate termination of the litigation, *id.* at 5-6. Defendants respond that there is no controlling question of law presented, Resp. Mot. Certify 24; that there is not substantial ground for disagreement because the law is clear, *id.* at 4-6; and that CMB's other offered ground for

interlocutory appeal are inapposite, *id.* at 6-10.

The [*7] Court need proceed no further than CMB's first argument, however, because CMB does not raise a question of law. *See Ahrenholz, 219 F.3d at 676* ("The *[§ 1292(b)* factors] are conjunctive, not disjunctive."). While the criteria of *§ 1292(b)* "are not as crystalline as they might be," *id.*, the rule is clear: a question of law is a question about "the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *id.*, rather than merely a question about whether a party has met a burden prescribed by established law, or made a showing required by a longstanding and settled rule. *See Malbrough v. Crown Equip. Corp., 392 F.3d 135, 136 (5th Cir. 2004)* (holding that denial of a defendant's motion for summary judgment because plaintiff had shown genuine issue of material fact did not present a pure question of law); *Ahrenholz, 219 F.3d at 676-77* (same); *cf. In re Text Messaging Antitrust Litig., 630 F.3d 622, 626 (7th Cir. 2010)* (holding that denial of motion to dismiss under the then-recently announced *Twombly* pleading standard presented a question of law for interlocutory appeal, but noting that application of "well-settled legal standards" to alleged facts at the pleading stage would not). Only if a question arises as to whether such a burden has been met or showing made *because of* an uncertainty about the meaning of the rule applied does a party seeking interlocutory appeal [*8] successfully address himself to a "question of law." *See, e.g., Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev., 291 F.3d 1000, 1007 (7th Cir. 2002)* (agreeing with district court that denial of a motion to dismiss was appropriate for interlocutory review where, inter alia, the denial rested on the court's legal determination that *18 U.S.C. §§ 2332* and *2333* created a cause of action for aiding and abetting terrorism). Otherwise, appeals courts are presented with not the "abstract question of law, timely sought," *Ahrenholz, 219 F.3d at 677*, that they are well suited to decide and that *§ 1292(b)* refers to them, but with a question that requires them to "hunt[] though the record," *id.*, in an attempt to recompile the district court's basis for making a fact-bound ruling.

Here, CMB merely received an adverse discovery ruling on the basis of a standard—the keystone federal rule for discovery rulings—that is beyond settled. The magistrate judge applied *Rule 26(b)(1)* to determine that CMB had not made a showing of relevance sufficient to overcome the other factors involved in the discoverability determination (most relevantly, the burden and expense of proposed discovery). There is no question about what the rule means; just about its application here, with which CMB of course disagrees. CMB tries to reframe the simple application of the standard [*9] as a question of law by stating that the question presented is "the question of what level of evidence does a trade secret plaintiff needs to show before it's allowed to obtain information from a party opponent and third party competitors, in order to determine what proprietary information was taken or used by that trade secret defendant." Mem. Supp. Mot. Certify Appeal 1. The phrasing of the question reveals its dependence on the facts of this case rather than the rule of civil procedure. The magistrate judge determined "what level of evidence" was needed (his answer: some). There is no question about what *Rule 26(b)(1)*'s requirement that discovery sought be "proportional to the needs of the case" means, or how the court's exercise of discretion is conditioned by the factors thereafter enumerated (the importance of the issues, amount in controversy, etc.). Indeed, what CMB seeks is a review of the magistrate judge's exercise of his discretion—a review which the district judge has already supplied, *see* Sept. 29, 2016 Order, but which is not further available from the court of appeals in plenary fashion until the entry of a final judgment. Because CMB can identify no question of law, it must wait [*10] for a final judgment to obtain appellate review.

**CONCLUSION**

Accordingly, Plaintiffs' motion to certify the Court's September 29, 2016 Order for interlocutory appeal, ECF No. 102, and its motion seeking leave to reply to Defendants' s/ Sara Darrow response, ECF No. 106, are DENIED.

Entered this 26th day of June, 2017.

/s/ Sara Darrow

SARA DARROW

UNITED STATES DISTRICT JUDGE

*End of Document*

# Tab 5

# *Emley v. Wal-Mart Stores, Inc.*

United States District Court for the Southern District of Indiana, Indianapolis Division

January 8, 2020, Decided; January 8, 2020, Filed

No. 1:17-cv-02350-SEB-TAB

**Reporter**

2020 U.S. Dist. LEXIS 3723 *; CCH Prod. Liab. Rep. P20,791; 2020 WL 108374

DONNA EMLEY, DENNIS EMLEY, Plaintiffs, v. WAL-MART STORES, INC., L.N.K. INTERNATIONAL, INC., L. PERRIGO COMPANY, Defendants.

**Subsequent History:** Reconsideration denied by *Emley v. Wal-Mart Stores, 2020 U.S. Dist. LEXIS 17090 (S.D. Ind., Jan. 31, 2020)*

**Prior History:** *Emley v. Wal-Mart Stores, Inc., 2019 U.S. Dist. LEXIS 107727 (S.D. Ind., June 27, 2019)*

**Counsel:** [*1] For DONNA EMLEY, DENNIS EMLEY, Plaintiffs: Charles Andrew Childers, CHILDERS, SCHLUETER & SMITH, LLC, Atlanta, GA; Jeff S. Gibson, COHEN & MALAD LLP, Indianapolis, IN; Jonathan Andrew Knoll, COHEN & MALAD LLP, Indianapolis, IN; Neil Edwards, CHILDERS, SCHLUETER & SMITH, LLC, Atlanta, GA.

For WAL-MART STORES, INC., Defendant: Haley Johnston, FROST BROWN TODD LLC (Indianapolis), Indianapolis, IN; Matthew Reed King, FROST BROWN TODD LLC, Indianapolis, IN.

For L.N.K. INTERNATIONAL, INC., Defendant: Logan C. Hughes, REMINGER CO., LPA - College Park, Indianapolis, IN.

For L. PERRIGO COMPANY, Defendant: Bonnie J. Beavan, GOODELL DEVRIES LEECH & DANN LLP, Baltimore, MD; Mary Nold Larimore, ICE MILLER LLP (Indianapolis), Indianapolis, IN; Richard M. Barnes, GOODELL, DEVRIES, LEECH & DANN, LLP, Baltimore, MD; Shevon Rockett, GOODELL DEVRIES LEECH & DANN, LLP, Philadelphia.

**Judges:** SARAH EVANS BARKER, United States District Judge.

**Opinion by:** SARAH EVANS BARKER

# Opinion

**ORDER DENYING DEFENDANTS' PETITION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER *28 U.S.C. § 1292(b)***

This cause is before the Court on Defendants' Petition to Certify Order for Interlocutory Appeal[1] [Dkt. 202; Dkt. 204], filed on July 26, 2019, pursuant to *28 U.S.C. § 1292(b)* and *Rule of App. Proc. 5(a)(3)* [*2] . Defendants seek certification for interlocutory appeal of this Court's Entry on Motions for Summary Judgment [Dkt. 199] with respect to the single issue of whether Plaintiffs' state law failure-to-warn claims are preempted by federal law. For the reasons detailed in this entry, Defendants' Motion is **DENIED**.[2]

## Background

The facts are largely undisputed and thus shall be reviewed only briefly here for purposes of this ruling. On June 11, 2015, and again on June 12, 2015, Plaintiff Donna Emley ingested two pills from a bottle of Equate-brand acetaminophen manufactured by Defendant Perrigo, which she had purchased from a Wal-Mart near her home in Fort Wayne, Indiana in 2013. On June 13, 2015, Ms. Emley noticed she had a mild rash that worsened overnight, and her eyes became itchy and watery. Believing she was suffering from an allergic reaction to something she had encountered during her recent travels to a farm in Kentucky, she thought Benadryl would help. Her husband, Plaintiff Dennis

---

[1] Defendants L. Perrigo Company ("Perrigo") and Wal-Mart Stores, Inc. ("Wal-Mart") filed this petition on July 26, 2019. Defendant L.N.K. International, Inc. ("L.N.K.") moved to join the petition as well as its co-defendants' reply brief. [Dkt. 204, Dkt. 256]. L.N.K.'s Motions to Join are **granted**.

[2] On December 20, 2019, Plaintiffs filed a Notice of Supplemental Authority in support of its opposition to Defendants' Petition for Certification, which Defendant Perrigo sought to strike. [Dkt. 319, Dkt. 321]. Because the Court has not relied on Plaintiffs' newly submitted evidence in ruling on Defendants' petition, we **deny as moot** the Motion to Strike.

2020 U.S. Dist. LEXIS 3723, *2

Emley, purchased Equate-brand Severe Allergy and Sinus Headache medicine from a Wal-Mart in Tennessee. This product, manufactured by Defendant L.N.K., also contained acetaminophen. [*3]

On June 14, 2015, after Ms. Emley's symptoms had yet to improve, she sought medical treatment at an urgent care center in Bowling Green, Kentucky. The attending physician directed Ms. Emley to the Bowling Green Medical Center where she was admitted for what turned into a five-day stay. On June 19, 2015, Ms. Emley was transferred to the Vanderbilt University Medical Center where she was diagnosed with Toxic Epidermal Necrolysis, a severe skin disorder associated with acetaminophen. She remained hospitalized for nearly a month.

Ms. Emley has brought several state law claims against Defendants. Relevant here, she has alleged that the Equate products were defective under the *Indiana Products Liability Act*, *Ind. Code. Ann. § 34-20-1-1*, because their labels did not contain an adequate warning regarding acetaminophen's risk of severe skin reactions. Defendants moved for summary judgment and invoked the affirmative defense of "impossibility preemption," arguing that compliance with federal regulations, specifically those relating to the *Food, Drug, and Cosmetic Act ("FDCA")*, *21 U.S.C. § 301 et seq*, foreclosed their liability for failure to add any such warning.

On June 27, 2019, we issued an order granting in part and denying in part Defendants' [*4] motions for summary judgment ("Summary Judgment Order"). We specifically rejected Defendants' contention that federal regulations preempted Defendants' addition of an allergy warning to the labels of their acetaminophen products. Defendants now seek amendment of the Summary Judgment Order to include language, pursuant to *28 U.S.C. § 1292(b)*, allowing the following question to be addressed on immediate interlocutory appeal: Are Plaintiffs' failure-to-warn claims against Defendants preempted by federal law?

## Analysis

District courts are empowered to certify an otherwise unappealable non-final order for immediate appellate review if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

litigation." *28 U.S.C. § 1292(b)*. As the Seventh Circuit has explained, the statute contemplates that certification for interlocutory appeal is appropriate only when certain criteria are present: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Board of Trustees, 219 F.3d 674, 675 (7th Cir. 2000)* (*emphasis in original*). Additionally, the *section 1292(b)* petition [*5] "must be filed within a reasonable time after the order sought to be appealed." *Ahrenholz, 219 F.3d at 675-76* (emphasis in original). Unless all five criteria are met, the district court is not authorized to certify its order for an immediate appeal. *Id. at 676*.

The party moving for interlocutory appeal bears the heavy burden of persuading the court "that **exceptional circumstances** justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Bridgestone/ Firestone, Inc. Tires Prod. Liab. Litig., 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002)* (emphasis in original). Interlocutory certification is the exception, not the rule, and thus should only be granted "sparingly, and with discrimination." *Whitmore v. Symons Int'l Group, Inc., No. 1:09-CV-391-RLY-TAB, 2012 U.S. Dist. LEXIS 113566, 2012 WL 3308990, at *1 (S.D. Ind. Aug. 13, 2012)*, and should not be invoked "merely to provide a review of difficult rulings in hard cases." *Bridgestone/Firestone, Inc. 212 F. Supp. 2d at 909*. We address each of these prerequisites to certification below.

### 1. Whether the Preemption Question is One of Law

According to the Seventh Circuit's guidance, "question of law' as used in *section 1292(b)* refers to a question as to the meaning of a statutory or constitutional provision, regulations, or common law doctrine. *Ahrenholz, 219 F.3d at 676*. Accordingly, an interlocutory appeal is permissible only when the contested issue is "a 'pure' question of law rather than merely [*6] an issue that might be free from factual contest." *Id.* As the *Ahrenholz* Court directed, "[D]istrict judges should . . . remember that 'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted." *Id.*

Defendants here seek *section 1292(b)* certification of the question of whether federal regulations preempted their compliance with Indiana's products liability statute with specific reference to the labeling requirements. They contend that this question, which involves the

2020 U.S. Dist. LEXIS 3723, *6

interpretation of federal regulations, presents a pure question of law. We agree. As such, the issue presented is of the type that readily qualifies as abstract and wholly legal, as the Seventh Circuit has directed. *Id. at 677* (*citing United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605 (7th Cir. 2000))*.

Plaintiffs disagree with this conclusion, arguing that "not all preemption questions" are purely legal, particularly if they are of a "fact intensive nature." Plaintiffs cite the "scores of exhibits" Defendants have attached to their summary judgment briefs as evidence of particular circumstances which would compel the appellate court to "hunt through the record" to conduct a fact-sensitive inquiry in order to provide appellate review of this Court's decision. [*7]

Plaintiffs' argument ignores the fact that our Summary Judgment Order did not turn on the factual circumstances underlying the issue of whether Defendants could have provided the disputed warning. Instead, our preemption ruling relied entirely on a legal interpretation of the relevant regulations, FDA guidance, and applicable case law. Utilizing this same approach, the Seventh Circuit could resolve the preemption issue here "quickly and cleanly" without reviewing any factual findings. This question presented is thus precisely the type of abstract legal issue contemplated by *section 1292(b)*. *In re Text Messaging Antitrust Litig., 630 F.3d 622, 626 (7th Cir. 2010)*.

*2. Whether the Preemption Question is Controlling and Contestable*

Plaintiffs have not advanced an argument as to whether the preemption question before us is controlling. We have no difficulty concluding that a resolution of the issue presented "is quite likely to affect the further course of the litigation." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 659 (7th Cir. 1996)*. We thus concur with Defendants that the preemption question here is, indeed, controlling and shall next address whether it is contestable pursuant to *section 1292(b)*, that is, the dominant dispute between the parties.

To resolve this issue, we begin with a brief review of our prior decision which Defendants seek to certify. [*8]

**A. This Court's Rejection of Defendants' Preemption Defense on Summary Judgment**

As observed at summary judgment, federal law provides several options to manufacturers for marketing drugs. Each option has its own distinct regulatory framework. Depending on the regulatory framework applicable to a specific drug, a manufacturer may be authorized to add warnings to drug labels unilaterally without FDA permission, or, conversely, may be barred from adding any such warnings. Consequently, the question of whether a manufacturer is preempted from complying with state law depends on how the drug may be marketed under its applicable regulatory framework.

For example, in *Wyeth v. Levine*, the Supreme Court held that the manufacturer of a drug being sold pursuant to an approved New Drug Application ("NDA") was not preempted by federal law from complying with duties to warn imposed by state law. *555 U.S. at 571* (holding that "absent clear evidence that the FDA would not have approved a change to [the drug's] label, [it would] not conclude that it was impossible for Wyeth to comply with both federal and state requirements.") In contrast, the Supreme Court in *PLVA Inc. v. Mensing* reached the opposite result with regard [*9] to the manufacturers of generic drugs marketed under an Abbreviated New Drug Application ("ANDA"). *564 U.S. 604, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011)* (holding that generic drugs have a "duty of sameness" to match their labels "at all times [to] the corresponding brand-name drug labels.") *PLIVA, 564 U.S. at 618*.

Acetaminophen was not approved pursuant to the NDA or ANDA processes, which were the regulatory schemes under review by the Supreme Court in *Wyeth* and *PLIVA*, respectively. Rather, it is manufactured and sold pursuant to the Over-the-Counter ("OTC") Drug Monograph Review Process. As explained in full in our Summary Judgment Order, the monograph process is an entirely separate regulatory system developed to allow marketing of particular OTC drugs generally recognized as safe and effective. A final monograph "constitutes final agency action from which appeal lies to the courts." *21 C.F.R. § 330.10(a)(11)*.

To date, however, no final monograph for acetaminophen has been enacted. Thus, acetaminophen is regulated by a tentative final monograph issued more than thirty years ago.[3] This tentative final monograph does not contain any

---

[3] Internal Analgesic, Antipyretic, and Antirheumatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph," *53 Fed. Reg. 46204 (Nov. 16, 1988)*.

2020 U.S. Dist. LEXIS 3723, *9

warnings relating to severe skin reactions such as the one allegedly suffered by Ms. Emley. However, the FDA has issued Communications and Guidance regarding [*10] the need for such warnings. Most relevant here, the FDA issued a document entitled "Guidance for Industry: Recommended Warning for Over-the-Counter Acetaminophen-Containing Drug Products and Labeling Statements Regarding Serious Skin Reactions" ("The Guidance") in November 2014.[4] This Guidance stated that the FDA "does not intend to object to the marketing of products containing the following warning language:"

> Allergy alert: Acetaminophen may cause severe skin reactions. Symptoms may include:
> ● Skin reddening
> ● Blisters
> ● Rash
> If a skin reaction occurs, stop use and seek medical help right away.

The Guidance also contained the following disclaimer:

> This guidance represents the current thinking of the Food and Drug Administration (FDA or Agency) on this topic. It does not establish any rights for any person and is not binding on the FDA or the public.

We thus recognized in our Summary Judgment Order that the preemption issue "hinge[d] on whether the Defendants had the ability to unilaterally add the warning at issue to the labels of their products prior to the issuance of the Guidance without violating federal law."

Defendants, relying on 21 C.F.R. § 330.1(c)(2), argued that they were legally bound to use only the [*11] "exact language" of the warnings established in the "applicable monograph," i.e., the tentative final monograph for acetaminophen, and to follow other federal regulations related to monographs. Any failure to do so would result in their products being deemed "misbranded," and subject to FDA enforcement actions, fines, or criminal penalties. Plaintiffs rejected Defendants' regulatory interpretation, arguing that the term "applicable monograph" in section 331 was a reference to a final, not tentative monograph. Accordingly, we addressed whether this provision demands precise compliance when the monograph at issue had yet to be finalized.

After careful review of the applicable regulatory scheme, in light of the FDA's Guidance, we concluded that it

does not, for the following reasons: the relevant regulations do not authorize any enforcement actions based on non-compliance until after a monograph is finalized, see 21 C.F.R. § 330.10(a)(9); 21 C.F.R. § 330.10(b); Defendants had failed to identify any manufacturer or distributor operating under a tentative final monograph that had ever faced regulatory consequences for deviating from the "exact language" of a tentative final monograph;[5] a tentative final monograph, by its very terms, has the [*12] legal status of a proposed rule and thus does not, as we have said, wield the force and effect of federal law; acetaminophen was not subject to 21 C.F.R. § 330.13(b)(2), which authorizes regulatory action against manufacturers of certain drugs that are not labeled in compliance with their corresponding tentative final monographs; and, finally, draft guidance issued by the FDA in 2011 indicated that obligations to comply with marketing requirements set out in a monograph do not attach until a final monograph becomes effective.

Citing *Wyeth*, we concluded that we lacked any "clear evidence" that Defendants would have faced adverse regulatory action by deviating from the exact language of the tentative final monograph by adding an allergy warning to the acetaminophen products. Accordingly, we held the doctrine of impossibility preemption did not shield Defendants' from liability. This is the ruling which Defendants seek to have reviewed on a preliminary basis by the Court of Appeals.

## B. Contestability of the Issue

---

[4] The Guidance can be found at https://www.fda.gov/media/90572/download.

[5] At summary judgment, Defendants asserted that "the FDA has, in fact, taken regulatory action based upon the wording of drug warnings that it found to deviate from a tentative final monograph," citing to an FDA warning letter issued to Quadex Pharmaceuticals, LLC, in 2011 [Dkt. 86-20, Exh. 19]. We rejected this argument, finding that "the FDA's position in that letter was not that the product at issue was misbranded simply because its label was different from that proposed in the applicable tentative final monograph; rather, the FDA found that the label contained statements that were misleading." In support of the present motion, Defendants disagree with our interpretation of this letter, reasserting that the FDA has, in fact, taken such regulatory action. We again reject Defendant's contention; nothing in the letter indicates that the FDA sought to take regulatory action simply because the product's label deviated from its tentative final monograph; the FDA issued the letter, with respect to the product's labeling, because the label conflated two forms of herpes, which rendered it misleading.

2020 U.S. Dist. LEXIS 3723, *12

To justify an interlocutory appeal, *section 1292(b)* requires that there be a "substantial ground for difference of opinion" as to the correct outcome. The parties' disagreements reach this issue as well as to what this [*13] standard actually demands. They are not alone in their disagreements; the district courts in our Circuit have reached inconsistent conclusions as to what this standard entails, and the Seventh Circuit has not yet expressly addressed the matter. *Nat. Res. Def. Counsel v. Illinois Power Res., LLC, No. 1:13-CV-01181-JBM-TSH, 2016 U.S. Dist. LEXIS 198159, 2016 WL 9650981, at *5 (C.D. Ill. Nov. 2, 2016)* ("Courts have differed in their interpretations of contestable . . .[It] is the most difficult of the four requirements to determine."); *Van Straaten v. Shell Oil Prod. Co., LLC, 813 F. Supp. 2d 1005, 1020 (N.D. Ill. 2011), rev'd and remanded on other grounds, 678 F.3d 486 (7th Cir. 2012)* ("Courts have adopted different definitions of 'contestable.'").

"Ironically," wrote one of our sister courts, "there may be substantial grounds of difference of opinion regarding the standard which governs whether an issue of law is 'contestable.'" *In re Archdiocese of Milwaukee, 496 B.R. 905, 912 (E.D. Wis. 2013), rev'd and remanded on other grounds*; *Listecki v. Official Comm. of Unsecured Creditors, 780 F.3d 731 (7th Cir. 2015)*. However, the prevailing approach adopted by district courts, including ours, is to impose a rigid standard for "contestability" which can be satisfied only in rare circumstances, such as when there is a "substantial likelihood" that the district court's order would be reversed on appeal. *See Van Straaten, 813 F. Supp. 2d at 1021*; *Novelty, Inc. v. Mt. View Mktg., No. 1:07-CV-01229-SEB-JMS, 2010 U.S. Dist. LEXIS 35082, 2010 WL 11561280, at *7 (S.D. Ind. Jan. 29, 2010)*; *City of Joliet v. Mid-City Nat'l Bank, No. 05-C-6746, 2008 U.S. Dist. LEXIS 48710, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008)*. We share this view that an issue is not contestable merely [*14] because reasonable judicial minds could differ, nor is an issue contestable when the court is unguided by binding precedent. As we previously ruled:

> [T]he mere lack of judicial precedent on the issues does not establish substantial ground for difference of opinion. Indeed, if interlocutory appeals were permissible whenever there is merely the lack of judicial precedent, the effect would be no more than to obtain an appellate stamp of approval on the ruling(s) by the trial court. Instead, we examine the strength of the arguments in opposition to the challenged ruling. This analysis includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for

certification.

*BridgeStone/Firestone, 212 F. Supp. 2d at 910*.

While Defendants' request for permission to take an interlocutory appeal outlines the basis for their disagreement with our Summary Judgment Order, it does not support a finding that there are substantial grounds for differences among judicial opinions as to the merits of these arguments.

Defendants rely on the lack of Seventh Circuit or Supreme Court precedent on the precise question before us in arguing that the issues are contestable. This does not suffice, however, since district [*15] courts, without contrary direction from the Seventh Circuit, have routinely held that a party seeking to establish the element of "contestability" must show more than the mere lack of precedent.[6] *Id. See also Metlife Investors USA Ins. Co. v. Estate of Lindsey, No. 2:16-CV-00097, 2018 U.S. Dist. LEXIS 25671, 2018 WL 925252, at *2 (N.D. Ind. Feb. 15, 2018)*; *Webster v. Ctr. for Diagnostic Imaging, Inc., No. 1:16-CV-02677-JMS-DML, 2017 U.S. Dist. LEXIS 191991, 2017 WL 5598286, at *3 (S.D. Ind. Nov. 21, 2017)*; *Patrick v.*

---

[6] Defendants rely on *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev., 291 F.3d 1000, 1001 (7th Cir. 2002)* to argue that an issue is contestable if it has not been settled by controlling authority. There, the Seventh Circuit accepted an interlocutory appeal for "questions of first impression" regarding the interpretation of a federal statute. The *Boim* court did not address whether purely legal questions of first impression are always contestable. However, we do not believe that the Seventh Circuit intended to create such a *per se* rule. Indeed, later that same year, the Seventh Circuit rejected a party's plea that this Court abused its discretion in *Firestone/Bridgestone* when it denied certification of an order for interlocutory appeal. *In re Ford Motor Co., Bridgestone/Firestone N. Am. Tire, LLC, 344 F.3d 648, 654-55 (7th Cir. 2003)*. The standard established by *Firestone/Bridgestone*—that the lack of judicial precedent does not render an issue contestable—has been regularly applied by district courts in this Circuit when evaluating petitions for interlocutory appeal. Defendants also cite *In re Text Messaging Antitrust Litig. 630 F.3d 622, 626 (7th Cir. 2010)*. That case, however, is clearly distinguishable. There, the Seventh Circuit observed that federal litigation was in such "ferment" after pleading standards were altered by the Supreme Court's decisions in *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)* and *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)* that an interlocutory appeal could provide necessary guidance. Here, no such "ferment" exists.

*Pyod, LLC, 2014 U.S. Dist. LEXIS 149483, 2014 WL 5343284, at *1 (S.D. Ind. Oct. 20, 2014)*; *Anderson v. Foster, No. 13-CV-256-JPS, 2013 U.S. Dist. LEXIS 121847, 2013 WL 4523228, at *3 (E.D. Wis. Aug. 27, 2013)*; *Olympia Exp., Inc. v. Linee Aeree Italiane S.P.A., 437 F. Supp. 2d 780, 791 (N.D. Ill. 2006)*, rev'd on other grounds, *509 F.3d 347 (7th Cir. 2007)*; *Bzdawka v. Milwaukee County, No. 04-C-0193, 2006 U.S. Dist. LEXIS 29112, 2006 WL 8444975, at *1 (E.D. Wis. Apr. 6, 2006)*; *United States v. NL Indus., No. 91-CV-578-JLF, 2005 U.S. Dist. LEXIS 52757, 2005 WL 8173717, at *1 (S.D. Ill. July 12, 2005)*.

While questions left unanswered by controlling authorities may suffice in exceptional circumstances to warrant an interlocutory appeal, we are not relieved by that void from determining if such uncertainty warrants an exception to the normal, preferred course of litigation that culminates in a final appeal. *Section 1292(b)* requests are *not* to be granted merely to resolve difficult questions of law. *See Pugh v. NCAA, No. 1:15-CV-01747-TWP-DKL, 2016 U.S. Dist. LEXIS 168174, 2016 WL 7100606, at *6 (S.D. Ind. Dec. 6, 2016)*; *Olympia Exp., Inc., 437 F. Supp. 2d at 791*; *Bzdawka, 2006 U.S. Dist. LEXIS 29112, 2006 WL 8444975, at *1 (E.D. Wis. Apr. 6, 2006)*; *BridgeStone/Firestone, 212 F. Supp. 2d at 910*.

Regarding the strength of Defendants' arguments against our holding, we examine whether other courts have reached conclusions on the merits that are contrary to our own. *MetLife Inv'rs USA Ins. Co., 2018 U.S. Dist. LEXIS 25671, 2018 WL 925252, at *2*; *Thompson v. Burnett, No. 1:15-CV-01712-TWP-DML, 2017 U.S. Dist. LEXIS 211928, 2017 WL 6606536, at *2 (S.D. Ind. Dec. 27, 2017)*; *Collier v. Caraway, No. 2:14-CV-00365-JMS-MJD, 2017 U.S. Dist. LEXIS 98719, 2017 WL 2774493, at *2 (S.D. Ind. June 26, 2017)* [*16] ; *Anderson v. Foster, 2013 U.S. Dist. LEXIS 121847, 2013 WL 4523228, at *3*; *Olympia Exp., Inc., 437 F. Supp. 2d at 791*; *United States v. NL Indus., 2005 U.S. Dist. LEXIS 52757, 2005 WL 8173717, at *1*; *BridgeStone/Firestone, 212 F. Supp. 2d at 910*. Our review discloses that they have not.

Apparently, only one case, *Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.), 144 F. Supp. 3d 699 (E.D. Pa. 2015)*, addresses whether a tentative final monograph possesses the force of federal law sufficient to preempt state law. In *Tylenol*, the plaintiff alleged that the manufacturer of Tylenol (which contains acetaminophen) failed to warn users of the risk of liver damage associated with consuming acetaminophen. That court's holding, unlike ours, turned on an examination of the particular facts: the manufacturer had, in fact, changed its product's label, thus undermining the claim that it was "impossible" to do so. Although the court's discussion could likely have ended there, it noted: "Furthermore, Extra Strength Tylenol was and still is regulated by the Tentative Final Monograph (TFM) which is only a proposed rule." As explained by the FDA in a letter to the manufacturer regarding the alterations of dosage information on a label: "Under a TFM, manufacturers market products at their own risk and are able to make voluntary adjustments taking into context the information presented in the proposed TFM." Thus, the court concluded, "the onus [is] on them[.]" *Id. at 730*.

While Plaintiffs rely on these excerpts of [*17] the *Tylenol* decision to argue that the Eastern District of Pennsylvania's analysis aligns with our own, Defendants attempt to distinguish the *Tylenol* case while concurrently asserting that a close reading of that decision actually undercuts our holding. Defendants transmute the FDA's statement in its letter that voluntarily adjustments to products' labels should "tak[e] into context the information presented in the proposed TFM" into an indication that the FDA mandates precise compliance with tentative final monographs. Thus, argue Defendants, the evidence cited by the *Tylenol* court contradicts our holding. We disagree with this approach. Nothing in the letter establishes that the FDA unequivocally mandates that manufacturers match the "exact language" of tentative final monographs, nor did the *Tylenol* court infer as much from the letter. The letter also does not undermine the conclusions we reached as did the Eastern District of Pennsylvania that the legal effect of a tentative final monograph is that simply of a proposed rule. We agree that there are some aspects of the decision in *Tylenol* that make it distinguishable from our case, but those distinctions do no undermine our case. [*18]

In any event, this single holding does not compel a decision to grant Defendants' petition for interlocutory appeal. Defendants' challenges to our regulatory interpretation holding that "applicable monograph" means "final monograph" is unpersuasive. Defendants fault us for failing to give the undefined term "applicable monograph" its plain and unambiguous meaning, per the definition of "applicable" in Black's Law Dictionary, which they argue is broad enough to encompass the tentative final monograph without disrupting the

2020 U.S. Dist. LEXIS 3723, *18

regulatory framework.[7]

We concede that questions of statutory interpretation can make an issue ripe for contestability, but certification of an appeal is not available merely because reasonable minds might differ as to issues of statutory construction. *See Pugh v. NCAA, 2016 U.S. Dist. LEXIS 168174, 2016 WL 7100606, at *6; Bridgestone/Firestone, 212 F. Supp. 2d at 909* (rejecting Defendants' argument that the contestability prong is satisfied whenever a "reasonable appellate judge could vote for reversal" because "for any difficult question of law, there are at least two supportable positions"). Here, Defendants' argument as to why "applicable monograph" should include "tentative monograph" does not foreclose alternate reasonable inferences to the effect that "applicable monograph" [*19] does *not* include tentative final monographs. We have held: Based on the plain language of the relevant regulations, the "exact language" requirement and the consequences for non-compliance do not attach until the effective date of the monograph, which does not exist until a monograph is finalized. This interpretation reflects reading the regulations "as a whole," not "a series of unrelated and isolated provisions." *Arreola-Castillo v. United States, 889 F.3d 378, 386 (7th Cir. 2018)*. Defendants have not quarreled with this reasoning.

Our interpretation further is consistent with the obvious fact that the tentative final monograph, as a proposed rule, does not have the force and effect of federal law and consequently the power of preemption. This highlights the flaw in Defendants' legal theory. If the tentative final monograph *did* have the force and effect of a final regulation, then Defendants would not have been permitted to deviate from its "exact language" by virtue of the non-binding guidance from the FDA—which would not supersede codified federal regulations such as the "exact language" provision. This approach would effectively undermine the entire regulatory rule-making process.

Like the *Wyeth* court, we struggle to validate Defendants' fear of [*20] regulatory action when no such action, following the issuance of the tentative final monograph in 1988, has *ever* been charged against a manufacturer who, absent some independent basis, merely added a warning to a drug marketed under a tentative final monograph. *Wyeth, 555 U.S. at 570* ("And the very idea that the FDA would bring an enforcement action against a manufacturer for strengthening a warning pursuant to the CBE regulation is difficult to accept—neither Wyeth nor the United States has identified a case in which the FDA has done so."). We reject Defendants' attempts to invoke such fear that our Court's ruling will prevent the FDA from taking *any* regulatory action against manufacturers operating under tentative final monographs; as explained in our Summary Judgment Order, the FDA maintains the ability to take enforcement actions against such manufacturers if it believed labels are improper or misleading in some way.

Defendants stress the "novelty" of the issues presented here but fail to establish how novelty alone warrants a departure from the preferred course of litigation culminating in an appeal. While the relevant regulations do leave ample room for reasonable disagreement as to the [*21] meaning of the term "applicable monograph," this disagreement, unsupported by conflicting authorities, does not indicate a substantial likelihood that our Summary Judgment Order would be reversed on appeal. Accordingly, we hold that the issue of whether Plaintiffs' failure-to-warn claims are preempted by federal law is not "contestable."

## CONCLUSION

Because the criteria for interlocutory appeal are conjunctive, not disjunctive, and Defendants have failed to satisfy all of those requirements, their request for immediate interlocutory appeal must be denied. *Ahrenholz, 219 F.3d at 676*. Defendants' Petition for Certification of Interlocutory Appeal [Dkt. 202] is accordingly **DENIED**.

Defendant L.N.K.'s Motions to Join [Dkt. 204, Dkt. 256] are **GRANTED**. Defendant Perrigo's Motion to Strike [Dkt. 321] is **DENIED AS MOOT**.

IT IS SO ORDERED.

Date: 1/8/2020

/s/ Sarah Evans Barker

SARAH EVANS BARKER, JUDGE

United States District Court

---

[7] Black's Law Dictionary (11th ed. 2019) defines the term "applicable" as: "1. Capable of being applied; fit and right to be applied. 2. (Of a rule, regulation, law, etc.) affecting or relating to a particular person, group, or situation; having direct relevance."

2020 U.S. Dist. LEXIS 3723, *21

Southern District of Indiana

---

**End of Document**

# Tab 6

# *Flynn v. Exelon Corp.*

United States District Court for the Northern District of Illinois, Eastern Division

January 28, 2022, Decided; January 28, 2022, Filed

No. 19 C 8209

**Reporter**
2022 U.S. Dist. LEXIS 15806 *; 2022 WL 267915

JOSHUA FLYNN, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. EXELON CORPORATION et al., Defendants.

**Prior History:** *Flynn v. Exelon Corp., 2021 U.S. Dist. LEXIS 76257, 2021 WL 1561712 (N.D. Ill., Apr. 21, 2021)*

**Counsel:** [*1] For Joshua Flynn, Individually and On Behalf of All Others Similarly Situated, Plaintiff: J. Alexander Hood, II, Jeremy Alan Lieberman, Pomerantz Llp, New York, NY; Jared Matthew Schneider, Louis Carey Ludwig, Pomerantz LLP, Chicago, IL.

For Local 295 IBT Employer Group Pension Trust Fund, Plaintiff: Frank Anthony Richter, LEAD ATTORNEY, Robbins Geller Rudman & Dowd, Chicago, IL; James E Barz, LEAD ATTORNEY, Brian E. Cochran, Cameran Gilliam, Gina Buschatzke, Robbins Geller Rudman & Dowd LLP, Chicago, IL; Danielle S. Myers, Robbins Geller Rudman & Dowd LLP, San Diego, CA.

For Exelon Corporation, Christopher M. Crane, Joseph Dominguez, Defendants: Jaran Ryal Moten, LEAD ATTORNEY, Mark E. Schneider, Kirkland & Ellis Llp, Chicago, IL; Evelyn Blacklock, Kyla Jackson, Sandra C Goldstein, Stefan Howard Atkinson, PRO HAC VICE, Kirkland & Ellis LLP, New York, NY.

For Joseph Nigro, Jeanne M. Jones, Defendants: Jaran Ryal Moten, LEAD ATTORNEY, Kirkland & Ellis Llp, Chicago, IL; Evelyn Blacklock, Kyla Jackson, Sandra C Goldstein, Stefan Howard Atkinson, PRO HAC VICE, Kirkland & Ellis LLP, New York, NY.

For Anne Pramaggiore, Defendant: David Andrew Gordon, Scott R. Lassar, LEAD ATTORNEYS, Sidley Austin [*2] LLP (Chicago), Chicago, IL; Jennifer Martin Wheeler, Sidley Austin Llp, Chicago, IL.

For Commonwealth Edison Company, Defendants: William Von Hoene, Defendants: Mark E. Schneider, Kirkland & Ellis LLP, Chicago, IL.

For Karen Fischer, Movant: Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Greater Pennsylvania Carpenters' Pension Fund, Movant: Francis P. Mcconville, LEAD ATTORNEY, PRO HAC VICE, Labaton Sucharow LLP, New York, NY; Carol V Gilden, Cohen Milstein Sellers & Toll PLLC, Chicago, IL.

For Steamfitters Local 449 Pension Plan, Movant: Carol V Gilden, Cohen Milstein Sellers & Toll PLLC, Chicago, IL.

**Judges:** Virginia M. Kendall, United States District Judge.

**Opinion by:** Virginia M. Kendall

# Opinion

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion under *28 U.S.C. § 1292(b)* to certify an interlocutory appeal from the Court's denial of Defendants' motion to dismiss. (Dkt. 114).[1] This Court recently denied in large part Defendants' Motions to Dismiss (Dkt. 100), finding that Plaintiff has met the heightened pleading standard for federal securities fraud claims and adequately alleged a violation of *§ 10(b) of the Exchange Act* and Securities and Exchange Commission ("SEC") *Rule 10b-5*, as well as *§ 20(a) of the Exchange Act*. The [*3] Court found that Plaintiff's allegations regarding Defendant Anne Pramaggiore's statements during the August 2019

---

[1] "Defendants" refers to all the defendants in the case. Defendants Exelon Corporation ("Exelon") and its controlled subsidiary the Commonwealth Edison Company ("ComEd"); Exelon's Chief Executive Officer Christopher M. Crane; Exelon's Chief Strategy Officer ("CSO"), William A. Von Hoene, Jr.; and ComEd's CEO, Joseph Dominguez initially moved for certification of interlocutory appeal (Dkt. 115), and Exelon's former CEO of Exelon Utilities, Anne Pramaggiore, joined the motion later. (*See* Dkts. 117, 121).

conference call did not satisfy the requirements of the PSLRA and those claims were dismissed. Defendants now move for certification for an interlocutory appeal on two grounds: (1) whether alleged violations of Items 105 and 303 of SEC Regulation S-K can give rise to a private right of action under *Section 10(b) of the Securities Exchange Act of 1934*; and (2) whether Items 105 and 303 impose an affirmative duty to disclose any and all regulatory noncompliance. Because Defendants have failed to meet their burden under *§ 1292(b)*, the Court declines to grant certification of an interlocutory appeal.

## BACKGROUND

The Court assumes familiarity with the facts as they were outlined in its previous Memorandum Opinion & Order. (Dkt. 100). In that Opinion, the Court determined that Plaintiff pleaded with the requisite particularity to attribute the allegedly false statements to each Defendant, (*id.* at 7-14); that Plaintiff adequately pleaded that Defendants were under a duty to disclose, (*id.* at 15-18); and that Plaintiff adequately pleaded scienter, (*id.* at 19-22). The Court dismissed Plaintiff's claims as to Defendant Pramaggiore's [*4] statements during the August 2019 conference call because these statements did not satisfy the requirements of the PSLRA. (*Id.* at 14-15). Defendants now seek an interlocutory appeal of that decision.

## LEGAL STANDARD

*Section 1292(b)* allows the Court to certify for immediate interlocutory appeal otherwise unappealable orders that involve "a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*. There are four requirements: "there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)*. Unless all these criteria are satisfied, the district court may not certify its order for an immediate appeal under *§ 1292(b)*. *See id.* The decision of whether to allow an immediate interlocutory appeal of a non-final order pursuant to *§ 1292(b)* is within the discretion of the district court. *Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 47, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995)*; *see also Shenzhen Buxiang Network Technology Co., LTD*

*v. Bodum USA, Inc., 20-cv-1726, 2021 U.S. Dist. LEXIS 13239, 2021 WL 243574, *1 (N.D. Ill. Jan. 25, 2021)*.

## DISCUSSION

The Court will analyze each requirement for interlocutory appeals in turn.[2]

## I. A Controlling Question of Law

The first issue is whether the questions presented for certification create a controlling [*5] question of law. "A question of law is controlling if its resolution is likely to affect the course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 658 (7th Cir. 1996)*). The question of law must be a "pure" question, "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz, 219 F.3d at 676-77*. The Seventh Circuit has instructed to "remember that 'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted." *Id. at 677*.

The parties do not dispute in their briefing that Defendants' first question — whether alleged violations of Items 105 and 303 of Regulation S-K can give rise to a private right of action under *Section 10(b)* - is a controlling question of law. The Plaintiff takes issue with the second question, however, arguing that the issue of whether Items 105 and 303 impose a duty to disclose any regulatory noncompliance in a company's SEC forms is a question of fact, and not of law. Plaintiff compares the instant case to the denial of certification of an interlocutory appeal in *In re Facebook, Inc. IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 538 (S.D.N.Y. 2013)*. In *In re Facebook*, the district court denied a [*6] motion to certify an interlocutory appeal finding that the defendants were seeking to appeal the application of facts to law and not a pure question of law.

---

[2] Plaintiff advises that "Lead Plaintiff does not concede that any of the four criteria are met, but since all four must be met, Lead Plaintiff focuses its argument on the criteria that are most clearly lacking." (Dkt. 124 at 3 n.2). Therefore, the Court only addresses Plaintiff's arguments as to each of the two questions Defendants have presented in their Motion.

2022 U.S. Dist. LEXIS 15806, *6

A question is one "of law" where it "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz, 219 F.3d at 676*. Defendants' second question is one of regulatory interpretation, asking whether the language of Items 105 and 303 impose a duty to disclose any regulatory noncompliance in their SEC Forms. Resolution of this question would not require the Seventh Circuit to dig into the record or to grapple with the facts before this Court. That the facts of this case will eventually turn upon this regulatory interpretation does not immediately make it a mixed issue of fact and law. As the Defendants have presented it, their second question is one of pure law as it seeks to resolve the interpretation of a regulation that is before the Court. Therefore, Defendants satisfy the "controlling question of law" requirement.

## II. A Contestable Question of Law

The parties dispute whether Defendants' first question — whether violations of Items 105 and 303 can form the basis of a *§ 10(b)* claim — meets the [*7] "contestable" standard for an interlocutory appeal. The issue of what constitutes "contestable" is itself one open to interpretation. *Van Straaten v. Shell Oil Prod. Co., LLC, 813 F. Supp. 2d 1005, 1020 (N.D. Ill. 2011), rev'd and remanded on other grounds, 678 F.3d 486 (7th Cir. 2012)* ("Courts have adopted different definitions of 'contestable.'"). Ultimately, a district court's order is contestable "if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Calvin v. Sheriff of Will Cty., No. 03-cv-3086, 2006 U.S. Dist. LEXIS 27341, 2006 WL 1005141, at *4 (N.D. Ill. Apr. 14, 2006)* (quoting *United States v. Moglia, No. 02-cv-6131, 2004 U.S. Dist. LEXIS 10424, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004)*). *See also Feit Electric Co., Inc. v. CFL Tech. LLC, 13-cv-09339, 2019 U.S. Dist. LEXIS 218865, 2019 WL 7020496, at *2 (N.D. Ill. Dec. 20, 2019)* (citing *In re Brand Name Prescription Drugs Antitrust Litig., 878 F. Supp. 1078, 1081 (N.D. Ill. 1995)* (explaining that the contestability element requires movants to "demonstrate that a 'substantial likelihood' exists that the district court ruling will be reversed if appealed" where a controlling court of appeals has not decided an issue). The likelihood of reversal is greater where there are a substantial number of decisions conflicting with the district court's order regarding the controlling question of law. *Id.* (citing *In re Kmart Corp., No. 04-cv-4978, 2004*

*U.S. Dist. LEXIS 19829, 2004 WL 2222265, at *2 (N.D. Ill. Oct. 1, 2004)*).

Defendants have not met this heavy burden. Defendants' primary basis for seeking an interlocutory appeal is this Court's statement in its Opinion that "the [*8] Seventh Circuit has yet to rule on this issue." (Dkt. 114 at 5 (citing Dkt. 100 at 16)). They correctly note that there is currently a Circuit split on the matter. In response, Plaintiff points out that a district court within this Circuit recently analyzed this very issue when presented with a motion for interlocutory appeal in *Shah v. Zimmer Biomet Holdings, Inc., No. 3:16-cv-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245, 2019 WL 762510 (S.D. Ind. Feb. 20, 2019)*. The *Zimmer* court analyzed the Circuit split and ultimately denied the motion, finding that the question presented was "not particularly contestable." *Zimmer, 2019 U.S. Dist. LEXIS 27245, 2019 WL 762510, at *3-7*. Defendants counter that *Zimmer* applied the wrong standard. They assail *Zimmer*'s reasoning that the Seventh Circuit would "likely" adopt what the *Zimmer* court itself deemed to be the "more persuasive" side of a circuit split. (Dkt. 126 at 4.)

In the end, the *Zimmer* court's reasoning is sound. The fact that there is a circuit split on the matter does not necessarily make it contestable. *See, e.g., Hall v. Zenk, 692 F.3d 793, 799 (7th Cir. 2012)* (explaining that a circuit split does not always preclude a finding that the law is "clearly established"); *Falcon v. City of Chicago, No. 17-cv-5991, 2018 U.S. Dist. LEXIS 136715, 2018 WL 3853988, at *2 (N.D. Ill. Aug. 13, 2018)*. Furthermore, Defendants have failed to show that "a 'substantial likelihood' exists that the district court ruling will be reversed if appealed." *Feit Electric Co., Inc., 2019 U.S. Dist. LEXIS 218865, 2019 WL 7020496 at *2*. Defendants have not proffered any argument to indicate that this Court's earlier ruling [*9] would be reversed — let alone an argument as to the likelihood of such an event. The Court therefore denies certification of an interlocutory appeal as to the question of whether violations of Items 105 and 303 can form the basis of a *§ 10(b)* claim because the issue does not reach the high threshold of contestability.

## III. Speed of Litigation

Finally, the Court looks to the speed of litigation. Interlocutory appeals should only be certified when "immediate appeal from the order may materially advance the ultimate termination of the litigation." *28*

2022 U.S. Dist. LEXIS 15806, *9

U.S.C. § 1292(b). Alternatively stated, the interlocutory appeal must "promise to *speed up* the litigation." *Ahrenholz, 219 F.3d at 675* (emphasis in original). The Seventh Circuit has stated that *§ 1292(b)* must be used sparingly "lest interlocutory review increase the time and expense required for litigation." *Asher v. Baxter Int'l., Inc., 505 F.3d 736, 741 (7th Cir. 2007).* Interlocutory appeals are "frowned on in the federal judicial system," *Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012),* because they "too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system." *Herdrich v. Pegram, 154 F.3d 362, 368 (7th Cir. 1998),* rev'd on other grounds, *530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000).*

Defendants argue that certifying the interlocutory appeal would speed up litigation as it would resolve issues that could potentially streamline class [*10] certification. Defendants argue that resolving the two questions in Defendants' favor, "thereby removing plaintiff's Items 105 and 303 claims from the case, would preclude plaintiff from relying on the *Affiliated Ute* presumption of reliance to obtain class certification.[3] If plaintiff must rely only on the more onerous fraud-on-the-market presumption, it will be less likely to have a class certified, in whole or in part." (Dkt. 115 at 15). Even under Defendants' best argument, however, only a minor question as to *one* part of the overarching litigation — namely, class certification — would potentially be resolved. Moreover, even if Plaintiff were to be precluded from relying on the *Affiliated Ute* presumption, Defendants acknowledge that Plaintiff could still obtain class certification under a different theory. (Dkt. 114 at 2 ("[I]f defendants prevail on either issue, plaintiff would be categorically unable to rely at the class certification stage on one of the two presumptions of reliance that it invokes in its complaint.")).

It is true that "[t]he promise to speed up the litigation

does not require that the interlocutory appeal resolve the matter in its entirety; it is sufficient [*11] that an interlocutory appeal would remove uncertainty about the status of a claim that might delay settlement or resolution." *F.D.I.C. v. Mahajan, No. 11-cv-7590, 2013 U.S. Dist. LEXIS 99450, 2013 WL 3771419, at *3 (N.D. Ill. July 16, 2013)* (citing *Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012)).* Yet even under a generous interpretation of Defendants' arguments, there is only the potential that resolving the issues in Defendants' favor could bear upon class certification and there are still other arguments under which Plaintiffs could proceed toward that same end. This case is already proceeding towards discovery and there is no argument that resolving the two questions presented for interlocutory appeal would bear upon the remaining issues of the case. As Plaintiff points out, dismissal of Items 105 and 303 as a basis for liability will not reduce discovery, make proving falsity more difficult, nor "speed up" the litigation. (Dkt. 124 at 8 (citing *Siegal v. GEICO Casualty Co., 20-cv-04306, 2021 U.S. Dist. LEXIS 110856, 2021 WL 2413155, at *3 (N.D. Ill. June 14, 2021)*)). The fact that the resolution of these issues could potentially impact class certification does not meet the high burden of showing that their resolution could "head off protracted, costly litigation." *Ahrenholz, 219 F.3d at 677.* Indeed, the risk appears much greater that *granting* the interlocutory appeal would protract the litigation. Defendants all but openly admit that there are [*12] other avenues for class certification even if the Seventh Circuit resolved the two questions in Defendants' favor, and there would still remain further claims and questions for this Court to determine moving forward. Certification would do nothing more than needlessly elongate this litigation and waste the resources of an already overburdened judicial system. See *Herdrich v. Pegram, 154 F.3d at 368.* The Court denies certification of an interlocutory appeal on this ground.

## CONCLUSION

Defendants have presented two questions for certification of interlocutory appeal: (1) whether alleged violations of Items 105 and 303 of Regulation S-K can give rise to a private right of action under *Section 10(b) of the Securities Exchange Act of 1934;* and (2) whether Items 105 and 303 impose an affirmative duty to disclose any and all regulatory noncompliance. Defendants have not met their burden of meeting the requisites for certification of appeal. In particular, they have failed to demonstrate that certification of an

---

[3] In *Affiliated Ute*, the Supreme Court held that in securities cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972).* Instead, in certain cases, what must be shown to establish that defendant's conduct was the cause of plaintiff's purchase is that "the facts withheld [are] material in the sense that a reasonable investor might have considered them important in the making of [his] decision." *Id. at 153-54. See also Wright v. Heizer Corp., 560 F.2d 236, 249 (7th Cir. 1977)* (citing *Affiliated Ute, 406 U.S. 128 at 153*).

2022 U.S. Dist. LEXIS 15806, *12

interlocutory appeal would speed up the litigation. In fact, certification would greatly slow litigation down with little impact on the ultimate resolution of the case. Therefore, Defendants' Motion for Certification for Interlocutory Appeal [Dkt. 114] is denied. [*13]

/s/ Virginia M. Kendall

Virginia M. Kendall

United States District Judge

Date: January 28, 2022

**End of Document**

# Tab 7

# *FTC v. Walmart Inc.*

United States District Court for the Northern District of Illinois, Eastern Division

October 18, 2024, Decided; October 18, 2024, Filed

No. 22 CV 3372

**Reporter**

2024 U.S. Dist. LEXIS 223661 *; 2024 LX 26356; 2024 WL 5054916

FEDERAL TRADE COMMISSION, Plaintiff, v. WALMART INC., Defendant.

**Prior History:** *FTC v. Walmart Inc., 2024 U.S. Dist. LEXIS 117532, 2024 WL 3292800 (N.D. Ill., July 3, 2024)*

**Counsel:** [*1] For Chamber of Commerce of the United States of America, Retail Litigation Center, Inc., Amici: Kevin Benjamin Goldstein, Linda T. Coberly, LEAD ATTORNEY, Winston & Strawn LLP, Chicago, IL.

For Federal Trade Commission, Plaintiff: Karen D. Dodge, LEAD ATTORNEY, Matthew Gene Schiltz, Rachel F. Sifuentes, Federal Trade Commission, Chicago, IL; Purba Mukerjee, Federal Trade Commission Midwest Region, Chicago, IL.

For Jennifer L. Mascott, Amicus: Jennifer Lee Mascott, LEAD ATTORNEY, PRO HAC VICE, Separation of Powers Clinic Scalia Law School, Arlington, VA; R. Trent McCotter, LEAD ATTORNEY, PRO HAC VICE, The Catholic University of America, Washington, DC.

For New Civil Liberties Alliance, Amicus: Gregory Dolin, LEAD ATTORNEY, New Civil Liberties Alliance, Arlington, VA.

For Walmart Inc., a corporation, Defendant: Blake Stafford, LEAD ATTORNEY, PRO HAC VICE, Latham & Watkins LLP, Washington D.C., DC; Drew R Wisniewski, Jessica Lynn Saba, PRO HAC VICE, Roman Martinez, PRO HAC VICE, Latham & Watkins Llp, Washington, DC; Hashim M Mooppan, LEAD ATTORNEY, PRO HAC VICE, Krista Perry Heckmann, PRO HAC VICE, JONES DAY, Washington, DC; Johanna Margaret Spellman, Sean M. Berkowitz, LEAD ATTORNEY, Latham [*2] & Watkins LLP, Chicago, IL.

**Judges:** Manish S. Shah, United States District Judge.

**Opinion by:** Manish S. Shah

# Opinion

## ORDER

Plaintiff's motion for reconsideration [86] is denied. Defendant's motion for certification under *28 U.S.C. § 1292(b) [81]* is granted. This court certifies its orders denying Walmart's motions to dismiss, [52] and [78], for interlocutory review under *28 U.S.C. § 1292(b)*. Discovery is stayed.

## STATEMENT

The Federal Trade Commission correctly points out, [86] at 2, that knowledge and intent can be alleged generally under *Federal Rule of Civil Procedure 9(b)*.[*] The FTC asks me to reconsider the dismissal of its claim under the Telemarketing Sales Rule because, in its view, it incorrectly held the amended complaint to a higher pleading standard. *See Kahn v. Walmart Inc., 107 F.4th 585, 604 (7th Cir. 2024)*. The FTC is also correct that there is no heightened plausibility requirement under *Rule 9(b)* and inferences in its favor need not be the only possible inferences. But I don't agree that I manifestly misapplied these settled propositions when reviewing the amended complaint. I accepted the allegation that Walmart knew its money transfer services were used by fraudsters. [78] at 34-35. But I concluded, and still do conclude, that knowledge about a specific telemarketing scheme is necessary and missing from the relevant portions of the amended [*3] complaint. *See* [78] at 33-38. The motion to reconsider is denied.

Walmart moves to certify an interlocutory appeal from the orders denying its motions to dismiss the Section 5 claim. As I concluded the first time Walmart asked, [68], there are contestable controlling legal questions raised by the orders: e.g., whether Congress unconstitutionally

---

[*] Bracketed numbers refer to entries on the district court docket.

2024 U.S. Dist. LEXIS 223661, *3

granted executive power to the FTC when it allowed the FTC to bring certain lawsuits; and what remedy follows from a separation-of-powers violation of the sort alleged here (while *Humphrey's Executor v. United States, 295 U.S. 602, 55 S. Ct. 869, 79 L. Ed. 1611 (1935)*, remains binding precedent).

Now that I've dismissed the Telemarketing Sales Rule claim with prejudice, the viability of the FTC's Section 5 claim is only issue in the case, and an appeal would materially advance the litigation. The FTC is frustrated by the delays in this case and its inability to press ahead to prove up the merits of its charge that Walmart is hurting consumers. It thinks Walmart's appellate issues are futile. I agree with the FTC that resolution of the statutory interpretation question about what "unfair" under Section 5 means would not materially advance this litigation, because discovery and merits briefing would be necessary to apply fully the statutory test, whatever it [*4] means. And I agree with the FTC that my interpretation of Section 13(b)'s requirement for injunctive relief is not a controlling legal question because the allegations of the amended complaint suffice under either proffered interpretation.

But as lawyerly as Walmart's framing of the constitutional issue is, it nevertheless is a question that I think needs definitive resolution and is tricky enough to leave substantial ground for difference of opinion. The needle Walmart is trying to thread concerns the exercise of executive power and corresponding remedies for the exercise of powers unlawfully possessed. That's not foreclosed by *Collins v. Yellen, 594 U.S. 220, 258-260, 141 S. Ct. 1761, 210 L. Ed. 2d 432 (2021)*. An authoritative answer would advance this case by telling Walmart and the FTC whether this kind of suit is possible. No discovery is necessary, and because I conclude that only the Section 5 claim is viable anyway, it would not unnecessarily prolong the case or result in piecemeal appeals.

Of course, the court of appeals makes its own assessment about whether these (or any) challenges by Walmart to my orders are appropriate for briefing and resolution now. *See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205 (1996), 116 S. Ct. 619, 133 L. Ed. 2d 578* (appellate jurisdiction applies to the order certified to the court of appeals and is not tied to the particular [*5] question formulated by the district court); *In re Lion Air Flight JT 610 Crash, 110 F.4th 1007, 1011 (7th Cir. 2024)* (reaching a question that the district court declined to certify).

The motion to certify the orders denying dismissal of the Section 5 claim for interlocutory appeal is granted.

/s/ Manish S. Shah

Manish S. Shah

United States District Judge

Dated: 10/18/24

---

**End of Document**

# Tab 8

# *Green v. Meeks*

United States District Court for the Southern District of Illinois

October 2, 2023, Decided; October 2, 2023, Filed

Case No. 20-cv-00463-SPM

**Reporter**

2023 U.S. Dist. LEXIS 177355 *; 2023 WL 6393023

VICTORIA GREEN, as Administrator of the Estate of Craigory Green, Plaintiff, v. STEVEN MEEKS, et al., Defendants.

**Prior History:** *Green v. Meeks, 2020 U.S. Dist. LEXIS 162145, 2020 WL 5292045 (S.D. Ill., Sept. 4, 2020)*

**Counsel:** [*1] For Victoria Green, as Administrator of the Estate of Craigory Green, Plaintiff: Sarah Copeland Grady, LEAD ATTORNEY, David Aaron Schmutzer, Howard Kaplan, Kaplan & Grady, Chicago, IL.

For Steven Meeks, Gail Walls, Erin Mears-Attig, Defendants: Kyrstin Beasley, LEAD ATTORNEY, Illinois Attorney General-Belleville- 4, Belleville, IL; Rachel D. Schwarzlose, Attorney General's Office-Springfield, IL, Springfield, IL.

For Mohammed Siddiqui, Michael Moldenhauer, Vipin Shah, Mary Zimmer, Wexford Health Sources, Inc., Defendants: Timothy P. Dugan, LEAD ATTORNEY, Alison J. Matusofsky, Ryan C. Wallis, Cassiday Schade, LLP - St. Louis, St. Louis, MO.

**Judges:** STEPHEN P. MCGLYNN, United States District Judge.

**Opinion by:** STEPHEN P. MCGLYNN

# Opinion

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge**:

Pending before the Court is Defendants', Wexford Health Sources, Inc., Mohammed Siddiqui, M.D., Vipin Shah, M.D., Michael Moldenhauer, N.P., and Mary Jo Zimmer, N.P. ("Wexford Defendants"), Motion for Certification of Interlocutory Appeal Pursuant to *28 U.S.C 1292(b)* (Doc. 240). Plaintiff Victoria Green filed her response in opposition (Doc. 243). For the following

reasons, the motion is **DENIED**.

On February 1, 2023, this Court entered an Order regarding two [*2] of Green's Motions to Compel the Wexford Defendants to produce specific documents they had claimed were privileged (Doc. 212). Specifically, the Court held that the peer-review privilege created by the Illinois Medical Studies Act ("IMSA") did not apply in federal civil rights cases (*Id.*). The Court further held that the Wexford Defendants failed to demonstrate that the documents claimed were protected by the work product privilege. (*Id.*).

The Wexford Defendants did not seek to certify an interlocutory appeal from that order but instead asked the Court to reconsider its ruling (Doc. 215). The motion to reconsider did not include a request for a *§ 1292(b)* finding (*Id.*). The Court denied the motion for reconsideration on September 5, 2023 (Doc. 237).

## DISCUSSION

*28 U.S.C. § 1292 (b)* provides an exception to the general rule that appellate courts may only hear appeals from final decisions of district courts:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance [*3] the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order...."

The Seventh Circuit summarized *§ 1292(b)*'s requirements in *Ahrenholz v. Board of Trustees of University of Illinois, 219 F.3d 674, 675-76 (7th Cir.*

2023 U.S. Dist. LEXIS 177355, *3

*2000)*:

There are four statutory criteria for the grant of a *section 1292(b)* petition .... there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation ... [t]here is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed."

Federal law expresses strong policy against piecemeal appeals. *Switzerland Cheese Assoc. v. Horne's Market, 385 U.S. 23, 24, 87 S. Ct. 193, 17 L. Ed. 2d 23 (1966)*. Interlocutory appeals are generally "frowned on" in the federal judicial system because of their potential to interrupt and delay litigation. *Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012)*; *see Asher v. Baxter Int'l Inc., 505 F.3d 736, 741 (7th Cir. 2007)* (cautioning that interlocutory review "must be used sparingly lest [it] increase the time and expense required for litigation").

In this case, the Wexford defendants purportedly seek a certificate of appeal to address whether attorney-client, [*4] work product and/or common interest privilege(s) apply, claiming they involve controlling questions of law with substantial ground for difference of opinion (Doc. 241). The Wexford defendants further claim that an immediate appeal will materially advance the ultimate termination of this litigation (*Id.*). However, this Court disagrees.

The Wexford defendants are grossly misstating this Court's Order of February 1, 2023 (Doc. 212). While this Court did determine that Illinois' peer-review privilege under the *Illinois Medical Studies Act ("IMSA"), 735 ILCS 5/8-2101, et seq.*, did not apply to the documents in question, the Court did not determine that attorney-client, work product, and/or common privilege did not apply (*Id.*, p. 7). Instead, the Court held that the Wexford defendants had not met their burden to "establish that the work product privilege applies" (*Id.*, p. 8*)*.

As for materially advancing the ultimate termination of this lawsuit, that could not be further from the truth. In fact, just two days after the filing of this motion, the parties jointly sought additional time to complete discovery (Doc. 238). Thus, if anything, an interlocutory appeal would slow down this litigation, as it often does. *See Asher v. Baxter Int'l Inc., 505 F.3d 736, 741 (7th Cir. 2007)* (cautioning that interlocutory review "must [*5] be used sparingly lest [it] increase the time and expense required for litigation"); *Herdrich v. Pegram, 154 F.3d 362, 368 (7th Cir. 1998)* (observing that interlocutory appeals "all too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system" (citations omitted)), *rev'd on other grounds, 530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)*.

As another ground for denial, the Court finds that the Wexford Defendants' motion for a certificate of appealability is not timely. It is clear that the order the Wexford Defendants wish to appeal is not the September 15, 2023 order denying reconsideration but the February 1, 2023 order. "With regard to timeliness, the standard in the Seventh Circuit is that [a *section 1292(b)* motion] should be filed promptly after the original order unless a good reason for the delay is given. *Weir v. Propst, 915 F.2d 283, 286 (7th Cir.1990)*. While there is no explicit time limit provided by the statute for seeking a certificate of appealability, requests filed more than a month or so after the order sought to be appealed are often deemed untimely. *See, e.g., Sterk v. Path, Inc., No. 13 CV 2330, 2014 U.S. Dist. LEXIS 183878, 2014 WL 8813657, at *3 (N.D. Ill. Aug. 8, 2014)* (delay of two weeks timely); *Abrams v. Van Kampen Funds, Inc., No. 01 C 7538, 2002 U.S. Dist. LEXIS 16022, 2002 WL 1989401, at *1 (N.D. Ill. Aug. 27, 2002)* (two month delay considered "inexcusably dilatory"); *Morton Coll. Bd. of Trustees of Illinois Cmty. Coll. Dist. No. 527 v. Town of Cicero, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998)* (month delay untimely). Failure to comply with this requirement can be sufficient grounds to refuse permission to [*6] appeal. *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc., 202 F.3d 957, 958 (7th Cir. 2000)*.

In this case, the original Order was denied on February 1, 2023; however, the Motion for Certificate of Appeal was not filed until September 15, 2023, which was 226 days, albeit 10 days after the Order was entered denying motion for reconsideration. The Court also finds that resolution of the question of law would not expedite resolution of the suit.

## CONCLUSION

For the reasons set forth above, the Wexford Defendants Motion for Certificate of Appealability (Doc. 240) is **DENIED**. The Wexford Defendants are again **ORDERED** to produce the documents at issue within 7 days, or by October 9, 2023.

**IT IS SO ORDERED**.

**DATED: October 2, 2023**

*/s/ Stephen P. McGlynn*

**STEPHEN P. MCGLYNN**

**United States District Judge**

---

**End of Document**

# Tab 9

## *Gripper v. City of Springfield*

United States District Court for the Central District of Illinois, Springfield Division

August 9, 2005, Decided; August 10, 2005, E-Filed

No. 04-3215

**Reporter**
2005 U.S. Dist. LEXIS 56560 *

SARAH GRIPPER, Plaintiff, vs. CITY OF SPRINGFIELD, ILLINOIS, a Municipal Corporation, Defendant.

**Prior History:** *Gripper v. City of Springfield, 2005 U.S. Dist. LEXIS 56573 (C.D. Ill., Feb. 7, 2005)*

**Counsel:** [*1] For Sarah Gripper, Plaintiff, Counter Defendant: A Courtney Cox, LEAD ATTORNEY, HART & HART, Benton, IL.

For City of Springfield, Illinois, a Municipal Corporation, Defendant: Frank Martinez, SOUTHERN ILLINOIS UNIVERSITY SCHOOL OF MEDICINE, Springfield, IL; James A Lang, ILLINOIS ATTORNEY GENERAL, Chicago, IL.

For City of Springfield, Illinois, a Municipal Corporation, Counter Claimant: James A Lang, ILLINOIS ATTORNEY GENERAL, Chicago, IL.

**Judges:** Richard Mills, United States District Judge.

**Opinion by:** Richard Mills

# Opinion

ORDER

RICHARD MILLS, U.S. District Judge:

In an Order entered on June 23, 2005, the Court granted the Plaintiff's motion to compel pursuant to *Federal Rule of Civil Procedure 37*. Pending before the Court is the Plaintiff's second motion to compel [d/e 23] and the Defendant's motion for certification for leave to appeal the Order of June 23, 2005 [d/e 26].

In its previous Order, the Court directed the City of Springfield, Illinois, to provide certain discovery information to the Plaintiff, in accordance with the Federal Rules of Civil Procedure. The Plaintiff alleges that following the entry of the previous Order granting

her motion to compel, she made inquiries as to when the City would comply with her discovery requests. The Plaintiff [*2] states she received word from counsel for the City that it was considering asking the Court to reconsider its previous Order, and that the City could not say when or if it would provide the requested information. The Plaintiff's counsel informed the City that he would file another motion to compel. That motion was filed on July 8, 2005. Pursuant to that motion, the Plaintiff asks the Court to direct the City to comply with the Order of June 23, 2005, and to provide the requested information to her within a specified time period.

In its response, the City states that it filed on July 21, 2005 a motion for certification for leave to appeal the Court's Order regarding the scope of discovery. The City notes that if that motion is granted, the scope of discovery will then be limited. It requests that the Plaintiff's second motion to compel be denied for those reasons.

In its motion for certification for leave to appeal, the City requests that the Court amend and certify its June 23, 2005 Order, thereby allowing for immediate interlocutory appeal regarding the following question: Whether the Court properly expanded the scope of discovery regarding employees who are not similarly situated as [*3] the Plaintiff and are not in the same employing unit as the Plaintiff, and in allowing a temporal time limit of ten years dating back to 1995 in order for the Plaintiff to prove allegations of patterns, practices, and policies of racial discrimination by the City.

For an order to be certified, the Court must find that it presents a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*. *Section 1292(b)* allows a district court to certify an order for immediate appeal if the order involves the following: (1) a controlling question of law; (2) it must be contestable; and (3) the resolution of the question must promise to speed up the litigation. All of

2005 U.S. Dist. LEXIS 56560, *3

these criteria must be met for the district court to certify an order for immediate appeal. The request for leave to appeal must also be filed within a reasonable time after the order sought to be appealed. See *Ahrenholz v. Board of Trustees of University of Illinois, 219 F.3d 674, 675-76 (7th Cir. 2000)*. A "question of law" as used in *§ 1292(b)* refers "to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id. at 676*.

In support of its motion, the City alleges [*4] that it has met the statutory criteria. It contends that the question regarding the scope and limits of discovery involves an analysis of common law doctrine interpreted in numerous federal court decisions. The City also asserts that the issues presented for certification are contestable in that there are substantial grounds for a difference of opinion on the issues. The City claims that there is a "substantial likelihood" that the Court's decision will be reversed on appeal. The City notes that it cited numerous cases in its response to the motion to compel which demonstrate that there is a "substantial likelihood" that the Court's previous Order will be reversed on appeal. It contends that these cases are contrary to the Court's analysis of the following issues: (1) whether discovery should be expanded to other city departments; (2) whether it should involve other city employees who are not similarly situated as the Plaintiff; and (3) whether the temporal limits of discovery should date back to 1995.

The City contends that this Court ignored various precedents which it alleges would have prevented the expanded discovery sought because the Plaintiff in this case is not similarly situated [*5] with employees in other city departments and she is not entitled to obtain discovery concerning departments that are not a part of the Plaintiff's employing unit. It asserts that the Court overlooked and failed to analyze case law concluding that the Plaintiff's allegation of a pattern of discrimination alone is not sufficient to expand the scope of discovery. The City also alleges that the Court ignored a case which held that a ten-year time period is an unreasonable amount of time to support an allegation regarding a pattern and practice of discriminatory hiring practices of the Springfield Police Department. The City notes that the statute of limitations for claims under sections 1981 and 1983 is two years. It contends, therefore, that the Court improperly allowed discovery to include documents dating back to 1995. The City claims that the Court's decision to expand discovery to a ten-year period is contrary to numerous court decisions. Moreover, the City notes that the Court cites no

supporting authority in expanding discovery. Consequently, the City alleges that given the substantial possibility that the Seventh Circuit will disagree with the decision regarding the scope of discovery, this issue [*6] should be certified for appeal.

Next, the City contends that allowing an interlocutory appeal would materially advance this litigation. It alleges that the resolution of this issue will speed up the litigation because the Plaintiff will not be able to prolong it by using the practices of other city departments to prove her allegations of widespread discrimination within the City of Springfield. The City asserts that if allowed to obtain discovery regarding other city departments, the Plaintiff will prolong the litigation by serving numerous interrogatories and requests to produce about other current and former city employees who were not employed in the Plaintiff's department. It contends that the Court's previous Order will also prolong discovery by justifying the need for interrogatories, requests to produce and depositions of employees and former employees in order to produce the allegations of a pattern and practice of discrimination. The City alleges, therefore, that the Court should certify the interlocutory appeal because the controlling legal issue will "materially advance the ultimate termination of the litigation."

In her response, the Plaintiff contends that permission to [*7] allow an interlocutory appeal should be granted sparingly and with discrimination. She claims that the Court correctly defined the scope of discovery in this case. The Plaintiff further asserts that the City has failed to demonstrate that the Court abused its discretion in determining the scope of discovery. Consequently, the City has failed to show there is a substantial likelihood that the Order would be reversed on appeal. Additionally, the Plaintiff alleges that an interlocutory appeal would serve only to delay the litigation during the appeal process.

The Court is unable to find that the issues presented for certification are seriously contestable in that it cannot conclude, pursuant to *§ 1292(b)*, there is a "substantial ground for difference of opinion." Most of the cases on which the City relies are district court cases wherein those courts were simply exercising their discretion in defining the scope of discovery. That is precisely what this Court did in granting the motion to compel. The Court concludes that the possibility that another district court may have decided the issue differently is not by itself sufficient to grant permission for an interlocutory appeal. For this reason and [*8] because the Court

2005 U.S. Dist. LEXIS 56560, *8

finds that an interlocutory appeal will serve only to delay this litigation, the Court will DENY the City's motion for certification for leave to appeal the previous Order granting the Plaintiff's motion to compel.

<u>Ergo</u>, the Defendant's motion for certification for leave to appeal the Order of June 23, 2005 [d/e 26] is DENIED. The Plaintiff's second motion to compel pursuant to *Federal Rule of Civil Procedure 37* [d/e 23] is ALLOWED. The Defendant is Directed to provide the requested information to the Plaintiff within 30 days of the entry of this Order. ENTER: August 9, 2005

FOR THE COURT:

/s/ Richard Mills

United States District Judge

---

# Tab 10

## *Hollinger Int'l v. Hollinger Inc.*

United States District Court for the Northern District of Illinois, Eastern Division

February 3, 2005, Decided

Case No. 04 C 0698

**Reporter**

2005 U.S. Dist. LEXIS 4511 *

HOLLINGER INTERNATIONAL, INC. Plaintiff, v. HOLLINGER INC., et al. Defendants.

**Subsequent History:** Motion denied by *Hollinger Int'l, Inc. v. Hollinger Inc., 2005 U.S. Dist. LEXIS 21305 (N.D. Ill., Mar. 11, 2005)*

**Prior History:** *Hollinger Int'l, Inc. v. Hollinger Inc., 2005 U.S. Dist. LEXIS 30420 (N.D. Ill., Jan. 19, 2005)*

**Disposition:** Plaintiff's motion to certify an immediate appeal denied.

**Counsel:** [*1] For Hollinger International, Inc., Plaintiff: Mark V. Chester, Joan M. Meyers, Steven Lawson, Johnson & Colmar, Chicago, IL; Abby F. Rudzin, Andrew J Geist, Jonathan Rosenberg, O'Melveny & Myers, New York, NY; Henry C Thumann, Ian Simmons, O'Melveny & Myers LLP Washington, DC; Robert M Schwartz, O'Melveny & Myers, LLP, Los Angeles, CA.

For Hollinger Inc., Defendant: Nathan P. Eimer, Adam B. Deutsch, Andrew George Klevorn, Linda P. Kurtos, Vanessa G Jacobsen, Eimer Stahl Klevorn & Solberg, LLP, Chicago, IL.

For Ravelston Corporation Limited, The, Ravelston Management, Inc., Defendants: Allan Tracy Slagel, Brian L. Crowe, Cary E. Donham, Douglas Michael Ramsey, Shefsky & Froelich, Ltd, Chicago, IL.

For Conrad M Black, Defendant: David H Braff, James V Masella, III, John L Warden, Laurent S Wiesel, Robin D Fessel, Sullivan and Cromwell, New York, NY; Alex J Bourelly, Jennifer E. Owens, William H Jeffress, Baker Botts LLP, Washington, DC; Maureen Reid, Baker Botts LLP, New York, NY; Paula Enid Litt, Veronica Gomez, William Butler Berndt, Schopf & Weiss, Chicago, IL.

For F David Radler, Defendant: Richard A Rothman, Anthony Albanese, Greg A Danilow, Weil, Gotshal & Manges, [*2] New York, NY; Joseph J. Duffy, Stetler & Duffy, Ltd., Chicago, IL.

For John A Boultbee, Defendant: Ira Lee Sorkin, Donald A Corbett, Carter, Ledyard & Milburn, New York, NY;

Stephen C. Voris, Burke, Warren, MacKay & Serritella, P.C., Chicago, IL.

For Daniel W Colson, Defendant: James R. Figliulo, Gregory L. Stelzer, Peter A. Silverman, Figliulo & Silverman, Chicago, IL.

For Barbara Amiel-Black, Defendant: Paula Enid Litt, Veronica Gomez, Schopf & Weiss, Chicago, IL; Douglas J. Pepe, Gregory P. Joseph, Gregory P. Joseph Law Offices, LLC, New York, NY.

For Richard N Perle, Defendant: John Friedrich Zabriskie, Miki Vucic Tesija, Phillip M. Goldberg, Foley & Lardner, Chicago, IL; Martin L Seidel, Cadwalader, Wickersham and Taft, New York, NY; Gregory A Markel, Jasmine Khalili, Cadwalader, Wickersham & Taft, LLP, New York, NY.

**Judges:** Hon. Blanche M. Manning.

**Opinion by:** BLANCHE M. MANNING

# Opinion

### *MEMORANDUM AND ORDER*

Plaintiff Hollinger International, Inc. ("International" or "the Company") has moved this Court, pursuant to *28 U.S.C. § 1292(b)*, to certify an immediate appeal of this Court's October 8, 2004 Memorandum and Order ("the October Order"), [*3] which dismissed International's claims under the *Racketeer Influenced and Corrupt Organization Act ("RICO")*. For the reasons set forth herein, this motion is DENIED.

### BACKGROUND

1

---

[1] The facts in the Background section are derived from the

2005 U.S. Dist. LEXIS 4511, *3

International brought the instant action alleging that Hollinger Inc. ("Inc.") and individual and corporate defendants (collectively, "Defendants") used their positions as officers, directors, and controlling shareholders of International to "loot" over $ 380 million from the Company. [2] In its First Amended Complaint ("the Complaint"), International alleged violations of RICO, *18 U.S.C. §§ 1962* and *1964*, and state law claims for breach of fiduciary duty, unjust enrichment, and civil conspiracy. By alleging RICO violations, [*4] International sought to recover treble damages -- $ 1.25 billion -- plus attorneys' fees and costs. In support of its RICO claims (Counts I and II), International set forth "predicate acts" which alleged that Defendants caused International "to transfer to them sham non-compete payments, sell them valuable newspaper assets at below market prices, and pay them other unwarranted, excessive, and unauthorized payments."

In the October Order, this Court granted Defendants' Motion to Dismiss on the grounds that *18 U.S.C. § 1964(c)* [*5] ("the RICO Bar") precludes International's RICO claims. [3] [*6] Under *section 1964(c)*, a party may not bring a RICO claim if the conduct "would have been actionable as fraud *in the purchase or sale of securities*." (Emphasis added.) Based on the above statutory language, the legislative history, and the decisions interpreting the scope of the RICO Bar, this Court found that *section 1964(c)* should be broadly construed to preclude wire and mail fraud from forming predicate acts under RICO "if such conduct would also

be actionable as securities fraud." (October Order at 10.) [4] In applying this test, courts carefully examine the predicate acts in relation to the overall fraudulent conduct to determine if they are part of a scheme that operated as a fraud on sellers or purchasers of securities. (*Id.* at 11.) The *section 1964(c)* bar should also be broadly applied to prevent the plaintiffs from "artfully pleading" around the RICO Bar. (*Id.* at 11-12.)

Applying the above standards, this Court found that the predicate acts in the Complaint were "actionable" as security fraud and thus barred by *section 1964(c)*. (*Id.* at 18-19.) In reaching [*7] this conclusion, the Court rejected International's contention that the RICO predicate acts do not constitute actionable securities fraud because they did not involve the "purchase or sale of securities." (*Id.* at 15.) While the predicate acts themselves did not actually involve the sale or purchase of securities, this Court found that they were nevertheless actionable as securities fraud because they were an "integral part" of Defendants' scheme to defraud and mislead International's majority non-controlling shareholders, who then purchased or sold securities based on Defendants' misstatements and/or omissions. (*Id.* at 18.) This conclusion is further supported by the fact that the SEC Actions and the Shareholder Actions allege violations of securities laws against many of the Defendants in this case based on much of the same conduct alleged in this action. (*Id.* at 17-18.)

International now moves under *28 U.S.C. § 1292(b)* to certify the following two issues for immediate appeal to the Seventh Circuit:

> 1. Whether the RICO Claims based on predicate acts that: (i) "are not per se violations of securities

_____

First Amended Complaint, the Second Amended Complaint, and the October Order. Because the Court thoroughly discussed the facts in the October Order, this opinion will only briefly review the facts relevant to the *Section 1292(b)* motion.

[2] The alleged conduct in the present action is also the basis for several other cases in this district against many of the litigants in this case: (1) two SEC enforcement actions ("the SEC Actions") -- *SEC v. Hollinger International, Inc., 2004 U.S. Dist. LEXIS 3240, No. 04 C 336* (Manning, J.) and *SEC v. Conrad Black, David Radler, and Hollinger, Inc., 2005 U.S. Dist. LEXIS 12884, No. 04 C 7377* (Hart, J.); and (2) three shareholder class actions ("the Shareholder Actions") -- *2004 U.S. Dist. LEXIS 10259, Nos. 04 C 0834*, 1276, and 2505 (Coar, J.).

[3] In dismissing the RICO counts, International's sole basis for federal jurisdiction, this Court refused to exercise supplemental jurisdiction over the remaining state law claims. The Court, however, permitted International to file a Second Amended Complaint to bring their state law claims under diversity jurisdiction. These state law claims are the only counts currently pending before the Court.

_____

[4] In reaching this conclusion, the Court noted that neither the Seventh Circuit nor any courts in this district have interpreted the scope of the RICO Bar. (*Id.* at n.7.) Therefore, the October Order relied on decisions from other circuits such as *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 329-30 (3d Cir. 1999)*; *Gatz v. Ponsoldt, 297 F. Supp. 2d 719, 730 (D. Del. 2003)*; *In re Enron Corp. Sec. Lit., 284 F. Supp. 2d 511, 619 (S.D. Tex. 2003)*; *Fla. Evergreen Foliage v. E.I. duPont de Nemours & Co., 165 F. Supp. 2d 1345, 1356-58 (M.D. Fla. 2001)*; *Burton v. Ken-Crest Servs., Inc., 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001)*; *In re Ikon Office Solutions, Inc., 86 F. Supp. 2d 481, 486 (E.D. Pa. 2000)*; *Tyrone Area Sch. Dist. v. Mid-State Bank & Trust Co., 1999 U.S. Dist. LEXIS 23192, 1999 WL 703729, at *4 (W.D. Pa. Feb. 9, 1999)*.

2005 U.S. Dist. LEXIS 4511, *7

laws," October Order at 16; (ii) "do [*8] not directly involve the sale of purchase of securities," *id.* at 9; and (iii) are transactions on which Plaintiff lacks standing to bring a securities fraud claim, nevertheless "would have been actionable as fraud in the purchase of securities" within the meaning of § 1964(c) and are therefore barred by the PSLRA.

2. Whether the PSLRA bars RICO claims when none of the predicate acts is a violation of the securities laws, but where the predicate acts are "part of an overreaching scheme to defraud" a public company "by misappropriating and usurping the Company's assets for [Defendants'] personal enrichment," October Order at 18.

(International's Motion for Certification at 3.)

## ANALYSIS

*Section 1292(b)* permits district courts to certify an order for immediate appeal if the order sought to be appealed involves: (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Ahrenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000).* [5] To prevail, the party seeking certification must [*9] demonstrate all the factors. *Id.* The fact that an immediate appeal will advance the litigation is not sufficient in and of itself. *Id.*

Before addressing the three statutory factors, the Court will first review the standards governing interlocutory appeals. Certification under *1292(b)* "is the exception, not the rule," and therefore, courts should only "sparingly" grant permission. *In re Brand Name Prescription, Drugs Antitrust Litig. , 1998 U.S. Dist. LEXIS 18120, 1998 WL 808992, at * 3 (N.D. Ill. Nov. 17, 1998).* The movant thus "bears a heavy burden" of demonstrating that "exceptional circumstances justify a departure from the basic policy of postponing [*10] appellate review until after entry of a final judgment." *Id.*

With these standards in mind, the Court now turns to the three statutory requirements. The Seventh Circuit

defines a "controlling question of law" as an issue "the court of appeal could decide quickly and cleanly without having to study the record," such as "the meaning of a statutory . . . provision." *Ahrenholz, 219 F.3d at 676-77.* Additionally, a ruling "which substantially limit[s] the damages the plaintiffs [could have] recovered" has been held to be a "controlling question of law." *Mister v. Illinois C. G. R. Co., 790 F. Supp. 1411, 1426 (S.D. Ill. 1992). See also In re Brand Name Prescription, Drugs Antitrust Litig., 1998 U.S. Dist. LEXIS 18120, 1998 WL 808992, at * 5* (in orders disposing of a large percentage of the plaintiff's recoverable damages, "the proper measure of damages is always a controlling question of law").

Here, after applying the above standards to the October Order and the issues International seeks to certify, this Court finds that International has met the "controlling question of law" requirement. The October Order barring the RICO claims reduced Defendants' potential liability [*11] by two-thirds (from roughly $ 1.2 billion to $ 400 million). Thus, the Order "substantially limited" the amount of damages International could potentially be awarded. Additionally, the issues International seeks to certify involve the interpretation of the scope of *section 1964(c)* -- *e.g.*, whether this section should be interpreted so as to encompass RICO predicate acts which do not directly involve the sale or purchase of securities but are instead part of an overreaching scheme to defraud and mislead the non-controlling majority shareholders. In this Court's view, the Seventh Circuit would be able to resolve this "purely legally issue" very quickly without having to delve into the record, other than the Amended Complaint. Accordingly, the first *section 1292(b)* factor is met.

The Court next turns to whether there exists a "substantial ground for difference of opinion" on the legal issues to be certified. To demonstrate that there is a substantial difference of opinion on a question of law, the movant must show that "there are substantial conflicting opinions regarding the claimed controlling issue," *or* where the controlling question "is not settled by controlling authority, [*12] " there is "a substantial likelihood" that the district court's decision will be reversed on appeal. *Gamboa v. City of Chicago, 2004 U.S. Dist. LEXIS 25105, 2004 WL 2877339, at *4 (N.D. Ill. Dec. 13, 2004).* The movant thus may not prevail by simply showing a "lack of judicial precedent" or that the issue is one of first impression. *See In re Bridgestone/Firestone, Inc., 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002); Phoenix Container, Inc. v. Goodman (In re Demert & Dougherty, Inc.), 2001 U.S. Dist. LEXIS*

---

[5] Although *subsection (b)* does not contain a time in which the party must move for certification, the motion must be filed "within a reasonable time after the order sought to be appealed was entered." *Id.* Here, Defendants do not assert that the motion is untimely. As this motion was filed within 21 days of the October Order, this Court finds that it was filed within a reasonable time.

*19848, 2001 WL 1539063, at \*6 (N.D. Ill. Nov. 30, 2001)*. Instead, the party seeking certification must show "substantial conflicting positions regarding the issue of law proposed for certification." *In re Bridgestone/Firestone, Inc., 212 F. Supp. 2d at 909-10*.

Here, International contends that there is "substantial grounds for difference of opinion" on whether the RICO Bar applies where the predicate acts do not directly involve the sale or purchase of securities. As set forth in the October Order neither the Seventh Circuit nor any court in this district has addressed this issue. In fact, no court has addressed the application of the RICO Bar to facts on point with this case.

The lack of precedent, however, is [*13] not dispositive. Defendants must still show that there are "substantial conflicting authorities" or that there is a "substantial likelihood" that the October Order will be reversed on appeal. In support of this position, Defendants contend that: (1) the cases which this Court relied on in the October Order -- *Gatz* and *Enron* -- are distinguishable from this case because the plaintiffs in those cases had standing to bring a securities fraud action, whereas International does not; and (2) there are two "lines of decisions" and the following cases "substantially conflict" with the October Order because they have "more narrowly applied the PSLRA bar than did this Court": *Bald Eagle Area School Dist. v. Keystone Fin., Inc., 189 F.3d 321 (3d Cir. 1999)*; *Howard v. America Online, Inc., 208 F.3d 741 (9th Cir. 2000)*; *District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Rep. v. Prudential Sec., Inc., 925 F. Supp 1551 (N.D. Ga. 1996)*; *Gintowt v. TL Ventures, 226 F. Supp. 2d 672 (E.D. Pa. 2002)*; *Gintowt v. TL Ventures, 239 F. Supp. 2d 580 (E.D. Pa. 2002)*; *Petters Co. v. Stayhealty, Inc., 2004 U.S. Dist. LEXIS 11872, 2004 WL 1465830 (D. Minn. June 1, 2004)* [*14] .

These contentions, however, do not support a finding that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal. For example, as explained in the October Order, the fact that International does not have standing does not affect the validity of this Court's decision. The courts in both *Gatz, 297 F. Supp. 2d at 731* and *In re Enron Corp. Sec. Lit., 284 F. Supp. 2d at 619*, held that the *section 1964(c)* bar applies regardless of whether the plaintiff has standing to bring a securities fraud action. International has not set forth any decisions which conflict with this proposition.

Additionally, after carefully reviewing the proposed conflicting authorities cited by International, the cases cited in the October Order, the facts of this case, and the SEC and the Shareholder Actions, this Court finds that International has not sufficiently demonstrated that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal. Indeed, many of the opinions which International cites as "conflicting authorities," in fact support the October Order or [*15] are factually distinguishable so as not to constitute "substantially conflicting" opinions. The one opinion (*District 65, 925 F. Supp. 1551*) which could be characterized as "conflicting" with the October Order does not cite any authority for its narrow interpretation of *section 1964(c)*, which conflicts with the broad interpretation adopted by the other decisions in the October Order and implied in the legislative history of the PSLRA.

For example, in *Bald Eagle, 189 F.3d at 323-25*, the plaintiff brought a RICO action to recover money lost as a result of a Ponzi scheme. Affirming dismissal of the RICO claims under *section 1964(c)*, the Third Circuit rejected the plaintiff's contention that the RICO predicate acts did not constitute actionable securities fraud. *Id. at 329*. The predicate acts consisted of the defendants "obtaining deposits of funds, failing to maintain collateral, failing to maintain custody of funds, paying out more funds to withdrawing clients than the fair value of their account, providing false statements, and lying to bank regulators." *Id.* Although the court acknowledged that these predicate acts might not themselves [*16] be actionable as securities fraud, it rejected the plaintiffs "surgical presentation" of the facts to avoid the RICO Bar. *Id. at 330*. The plaintiff "ignored the hard reality that the [RICO predicate acts] [were] an integral part of [the Defendants'] securities fraud scheme." *Id. at 330*. The predicate acts thus "were so closely connected to and dependent upon conduct undertaken in connection with the purchase or sale of securities that it was actionable as securities fraud." *Id.*

Relying on *Bald Eagle*, the court in *Petters Co., 2004 U.S. Dist. LEXIS 11872, 2004 WL 1465830, at \*3-4*, held that the predicate acts were not "so closely connected to and dependent upon conduct undertaken in connection with the purchase or sale of securities that it was actionable as securities fraud." The plaintiff in *Peters Co.* made a loan to the defendant which included a security agreement granting the plaintiff an option to purchase stock in the defendant. *2004 U.S. Dist. LEXIS 11872, [WL] at \*1*. The plaintiff alleged that the defendant made misrepresentations in securing the financing. *Id.* On the plaintiff's motion to amend its

2005 U.S. Dist. LEXIS 4511, *16

complaint to include a RICO count, the defendant asserted [*17] that any RICO claims were barred by *section 1964(c)*. *2004 U.S. Dist. LEXIS 11872, [WL] at *2*.

Applying the test in *Bald Eagle*, the court held that the misrepresentation which was the basis of the RICO claim was related to the loan, not the purchase or sale of securities. *2004 U.S. Dist. LEXIS 11872, [WL] at *3*. Therefore, "the connection between the alleged fraud and the securities transaction is tenuous at best." *Id.* In support of this decision, the court noted that: (1) many of the cases cited by the defendant which applied the RICO Bar involved conduct "that was the basis for an SEC investigation"; and (2) the defendant failed to establish "that any private plaintiff" would have standing to bring a securities action based on the alleged conduct because the conduct was "not independently actionable." *2004 U.S. Dist. LEXIS 11872, [WL] at *3-4*.

In *Howard, 208 F.3d at 747*, subscribers sued their internet service provider alleging improper billing, fraudulent stock manipulation, and failure to timely cancel subscriptions. In determining whether *section 1964(c)* barred the RICO claims, the Ninth Circuit held that the RICO predicate acts (*e.g.*, improper billing, false advertising) were not related to the alleged securities fraud allegations [*18] (*e.g.*, stock manipulation and illegal accounting). *Id. at 749*. The RICO claims and the securities fraud claims "shared the same participants" but had a "different purpose, result, victim and method." *Id.* Accordingly, because the RICO predicate acts were "not related" to the securities fraud, the *section 1964(c)* bar was not applicable. *Id.*

International also relies on *Gintowt, 226 F. Supp. 2d at 673-74*, in which a shareholder of a privately held company, brought a RICO claim against the company alleging that it denied his access to company records and improperly transferred the company's assets. Denying the defendant's *section 1964(c)* motion to dismiss, the court noted that the defendants "failed to identify any tangible relationship between the alleged predicate act and any sale or purchase of securities by the plaintiff." *Id.* The court thus held that the RICO bar was not applicable because the alleged RICO acts were not "undertaken with the purchase or sale of securities." *Id.* The court did, however, note that the defendant could reassert this contention on summary judgment if it could show a "purchase or sale of securities." [*19] *Id.*

The one opinion International cites which actually conflicts with the October Order, *District 65*, does not

cite any authority for its narrow interpretation of *section 1964(c)*, which conflicts with the broad interpretation adopted by other decisions and set forth in the legislative history of the PSLRA. In *District 65, 925 F. Supp. at 1556-58*, a pension fund sued its investment company alleging breach of fiduciary duty and RICO claims. The defendant moved to dismiss the RICO claims under *section 1964(c)*. In response, the plaintiff contended that "the predicate acts . . . [were] not based solely upon conduct that would have been actionable as fraud in the purchase or sale of securities." *Id. at 1567*. In support of this contention, the plaintiffs asserted that the RICO predicate acts alleged misrepresentations regarding the value and details of the plaintiff's investments, such as its liquidity, value, cause of losses, and stating that certain actions would be taken when they were not. *Id. at 1568*. The court noted, without citation to any authority, that the "scope" of the term "in connection with" in *section 1964(c)* "is [*20] a debated issue" and that the "question is whether the actions underlying the mail and wire fraud are so remote as to not be in connection with the purchase or sale of securities." *Id.* Applying this standard, the court concluded that the RICO predicate acts "related to the business relationship between [the parties] rather than the purchase or sale of securities." *Id.*

In *Tyrone Area Sch. Dist. v. Mid-State Bank & Trust Co., 1999 U.S. Dist. LEXIS 23192, 1999 WL 703729, at *4-6 (W.D. Pa. Feb. 9, 1999)*, the plaintiff cited *District 65* in support of its contention that *section 1964(c)* should be narrowly interpreted and not applied unless the RICO predicate acts involved the sale or purchase of securities. The plaintiff in *Tyrone* brought state law and RICO claims against its investment advisor and a bank after it lost millions of dollars in a Ponzi scheme. *1999 U.S. Dist. LEXIS 23192, [WL] at *1*. The defendants moved to dismiss the RICO claims on the grounds that they were barred by *section 1964(c)*. *1999 U.S. Dist. LEXIS 23192, [WL] at *2*. In response, the plaintiff, citing *District 65*, contended that *section 1964(c)* was not applicable because the RICO predicate acts were unrelated to the purchase or sale of securities. *1999 U.S. Dist. LEXIS 23192, [WL] at *3-4* [*21] .

After reviewing the legislative history of *section 1964(c)*, the court held that plaintiff's proposed reading of the statute and reliance on *District 65* were without merit. *Id.* Despite "artfully crafting" the RICO allegations to "avoid any mention of securities fraud," the court found that the "racketeering activities were done in furtherance of the Ponzi Scheme," and were "inextricably linked" to securities fraud. *1999 U.S. Dist. LEXIS 23192, [WL] at*

*5-6. In reaching this conclusion, the court found that its decision was supported by the fact that the SEC brought an action against the defendants alleging securities fraud based on much of the same conduct alleged in plaintiff's RICO claims. *1999 U.S. Dist. LEXIS 23192, [WL] at *6*.

Here, similar to *Bald Eagle* and *Tyrone* but in contrast to *Peters Co.*, *Howard*, *Gintowt*, and *District 65*, this Court held in its October Order that the RICO predicate acts were: (1) "an integral part of Defendants' scheme" to defraud the non-controlling shareholders; and (2) the basis for the SEC Actions and the Shareholder Actions. Specifically, this Court found that:

> International's predicate acts [were] part of an overreaching scheme to defraud International (and [*22] thus also its majority non-controlling shareholders) by misappropriating and usurping the Company's assets for their personal enrichment at the expense of International and the other shareholders. To facilitate and disguise this scheme, Defendants used the mails and wires (the predicate acts) and caused International to make material misstatements and omissions in its financial records and public filings with the SEC.

(October Order at 18-19.) So "integral" to Defendants' scheme were the predicate acts that "without the use of the mails and wires, Defendants would not have been able to loot over $ 380 million from International." (*Id.* at 16.) Additionally, in an attempt to hide their fraudulent scheme, Defendants falsified its corporate books and records and failed to disclose material information in International's SEC filings. (*Id.* at 18.) These misstatements, as demonstrated by the Shareholder Actions, "deceived the investing public . . . and caused them to purchase [International's] securities at artificially inflated prices." (*Id.* at 8.) Accordingly, this Court finds that neither *Bald Eagle, Peters Co., Howard, Gintowt*, nor *District 65* are "substantial [*23] conflicting authorities" or that they present a basis for a "substantial likelihood" of reversal.

Accordingly, after carefully reviewing the cases cited by International, the cases cited in the October Order, the facts of this case, and the SEC Actions and the Shareholder Actions, this Court finds that International has not sufficiently demonstrated that there are "substantial conflicting authorities" or that there is a "substantial likelihood" of reversal.

The final *section 1292(b)* requirement is whether an immediate appeal may "materially advance the ultimate termination of the litigation." International contends that an immediate appeal will "materially advance" this case because it will ensure that the RICO claims will not need to be retried after a trial on the current issues. This contention, however, even if correct is not sufficient to grant certification. *See Kirkland & Ellis v. CMI Corp., 1996 U.S. Dist. LEXIS 17542, 1996 WL 674072, at *4 (N.D. Ill. Nov. 19, 1996)*; *Resolution Trust Corp. v. Gravee, 1995 U.S. Dist. LEXIS 16987, 1995 WL 678518, at *2 (N.D. Ill. Nov. 7, 1995)*. The risk of litigation after the remaining issues in a case are tried is present in all cases where the court dismisses some [*24] claims before trial. *Id.* Accordingly, this Court finds that International has not met the third *section 1292(b)* requirement.

Therefore, because this Court finds that International has not met all three of the *section 1292(b)* requirements, it must DENY the motion for immediate certification.

## CONCLUSION

For the reasons discussed herein, this Court DENIES Plaintiff International's Motion for *Section 1292(b)* Certification for Immediate Appeal of the October 8, 2004 Order [146-1]. It is so ordered.

**ENTER:**

**BLANCHE M. MANNING**

**U.S. DISTRICT COURT JUDGE**

**DATE:** *2-3-05*

# Tab 11

## *In re Broiler Chicken Antitrust Litig.*

United States District Court for the Northern District of Illinois, Eastern Division

September 28, 2017, Decided; September 28, 2017, Filed

Case No. 1:16-cv-08637

**Reporter**
2017 U.S. Dist. LEXIS 160411 *; 2017-2 Trade Cas. (CCH) P80,143

IN RE BROILER CHICKEN ANTITRUST LITIGATION.
This Document Relates To: All Actions

**Prior History:** *In re Broiler Chicken Antitrust Litig., 2017 U.S. Dist. LEXIS 73219 (N.D. Ill., Apr. 21, 2017)*

**Counsel:** [*1] For Maplevale Farms, Inc., individually and on behalf of all others similarly situated, Plaintiff: Brian D. Clark, LEAD ATTORNEY, Lockridge Grindal Nauen P.l.l.p., Minneapolis, MN; Daniel Warshaw, LEAD ATTORNEY, PRO HAC VICE, Pearson, Simon & Warshaw < LLP, Sherman Oaks, CA; Elizabeth R. Odette, LEAD ATTORNEY, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN; Heidi M. Silton, LEAD ATTORNEY, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN; Joseph C Kohn, LEAD ATTORNEY, PRO HAC VICE, Kohn, Swift & Graf, P.C., Philadelphia, PA; Robert John McLaughlin, LEAD ATTORNEY, Hart McLaughlin & Eldridge, LLC, Chicago, IL; Steven Alan Hart, LEAD ATTORNEY, Hart McLaughlin & Eldridge, LLC, Chicago, IL; W. Joseph Bruckner, LEAD ATTORNEY, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN; William Ernest Hoese, LEAD ATTORNEY, PRO HAC VICE, Kohn, Swift & Graf, Philadelphia, PA; Adam J Pessin, PRO HAC VICE, Fine, Kaplan and Black, RPC, Philadelphia, PA; Benjamin Michael Shrader, Hart McLaughlin & Eldridge, LLC, Chicago, IL; Bobby Pouya, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Brian H Eldridge, Hart McLaughlin & Eldridge, LLC, Chicago, IL; Bruce L Simon, PRO HAC VICE, Pearson Simon [*2] & Warshaw LLP, San Francisco, CA; CLIFFORD HARRIS PEARSON, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Garrett D Blanchfield, Jr., PRO HAC VICE, Reinhardt Wendorf & Blanchfield, St. Paul, MN; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Jeffrey J. Corrigan, PRO HAC VICE, SPECTOR ROSEMAN & KODROFF, P.C., Philadelphia, PA; Jonathan M Jagher, PRO HAC VICE, SPECTOR ROSEMAN & KODROFF, P.C., Philadelphia, PA; Kyle Pozan, Hart McLaughlin & Eldridge, LLC, Chicago, IL; Linda P. Nussbaum, PRO HAC VICE, Nussbaum Law

Group, P.C., New York, NY; Mark Reinhardt, PRO HAC VICE, Reinhardt Wendorf & Blanchfield, St. Paul, MN; Michael H. Pearson, PRO HAC VICE, Pearson, Simon & Warshaw LLP, Sherman Oaks, CA; Neil J Swartzberg, PRO HAC VICE, Pearson Simon & Warshaw, LLP, San Francisco, CA; RACHEL ELLEN KOPP, PRO HAC VICE, SPECTOR ROSEMAN & KODROFF, P.C., SUITE; Roberta D. Liebenberg, PRO HAC VICE, Fine, Kaplan and Black, R.P.C., Philadelphia, PA; Sharon S Almonrode, The Miller Law Firm, P.C., Rochester, MI; Simeon Andrew Morbey, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN.

For Daniel M. Percy, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, [*3] LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Elizabeth A. Fegan, Hagens Berman Sobol Shapiro LLP, Chicago, IL.

For Gloria J. Lathen, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Elizabeth A. Fegan, Hagens Berman Sobol Shapiro LLP, Chicago, IL.

For Jonas Dimas, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Elizabeth A. Fegan, Hagens Berman Sobol Shapiro LLP, Chicago, IL.

For John Gross and Company, Inc., Plaintiff: Steven Alan Hart, LEAD ATTORNEY, Hart McLaughlin & Eldridge, LLC, Chicago, IL; Allan Steyer, Steyer, Lowenthal, Boodrookas & Walker, LLP, San Francisco, CA; Bobby Pouya, PRO HAC VICE, PEARSON, SIMON

2017 U.S. Dist. LEXIS 160411, *3

& WARSHAW, LLP, Sherman Oaks, [*4] CA; CLIFFORD HARRIS PEARSON, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; D. Scott Macrae, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, San Francisco, CA; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Jill M. Manning, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, San Franisco, CA; Kevin B Love, PRO HAC VICE, Criden & Love, P.A., South Miami, FL; Michael Jerry Freed, Freed Kanner London & Millen, LLC, Bannockburn, IL; Neil J Swartzberg, PRO HAC VICE, Pearson Simon & Warshaw, LLP, San Francisco, CA; Robert J. Wozniak, Freed Kanner London & Millen, LLC, Bannockburn, IL; Simeon Andrew Morbey, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN; Steven A Kanner, Freed Kanner London & Millen, LLC, Bannockburn, IL.

For Fargo Stopping Center LLC, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Daniel E Gustafson, LEAD ATTORNEY, Gustafson Gluek PLLC, Minneapolis, MN; Daniel C Hedlund, LEAD ATTORNEY, Gustafson Gluek PLLC, Minneapolis, MN; Joyce Chang, LEAD ATTORNEY, PRO HAC VICE, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; Mark Francis Ram, LEAD ATTORNEY, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; [*5] Steven N. Williams, LEAD ATTORNEY, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; Brittany N. Resch, Gustafson Gluek PLLC, Minneapolis, MN; Dianne M Nast, NastLaw LLC, Philadelphia, PA; Erin C. Burns, NastLaw LLC, Philadelphia, PA; Joshua J. Rissman, Gustafson Gluek PLLC, Minneapolis, MN; Kenneth A. Wexler, Wexler Wallace LLP, Chicago, IL; Michelle J. Looby, Gustafson Gluek PLLC, Minneapolis, MN; Richard Michael Hagstrom, Hellmuth & Johnson, PLLC, Edina, MN; Thomas Arthur Doyle, Wexler Wallace LLP, Chicago, IL.

For Sargent's, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Daniel E Gustafson, LEAD ATTORNEY, Gustafson Gluek PLLC, Minneapolis, MN; Daniel C Hedlund, LEAD ATTORNEY, Gustafson Gluek PLLC, Minneapolis, MN; Joyce Chang, LEAD ATTORNEY, PRO HAC VICE, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; Mark Francis Ram, LEAD ATTORNEY, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; Steven N. Williams, LEAD ATTORNEY, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA; Brittany N. Resch, Gustafson Gluek PLLC, Minneapolis, MN; Dianne M Nast, NastLaw LLC, Philadelphia, PA; Erin C. Burns, NastLaw LLC,

Philadelphia, PA; Joshua J. Rissman, [*6] Gustafson Gluek PLLC, Minneapolis, MN; Kenneth A. Wexler, Wexler Wallace LLP, Chicago, IL; Michelle J. Looby, Gustafson Gluek PLLC, Minneapolis, MN; Richard Michael Hagstrom, Hellmuth & Johnson, PLLC, Edina, MN.

For Dorothy Monohan, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA.

For Frank Coe, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Lester Patterson, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Dorothy Monahan, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Pamela Tierney, Plaintiff: Bobby Pouya, [*7] LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Linda Cheslow, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Natalie Wilbur, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Jeannie Y Evans, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, LEAD

ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Bodega Brew Pub, Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Timothy D Battin, LEAD ATTORNEY, PRO HAC VICE, Straus & Boies, LLP, Fairfax, VA; Christopher Le, PRO HAC VICE, Straus & Boies, LLP, Fairfax, VA; Daniel Zemans, Law Offices of Daniel Zemans, LLC, Chicago, IL; Nathan Cihlar, PRO HAC VICE, Straus & Boies, LLP, Fairfax, VA.

For Don Chavas [*8] Mexican Restaurant, Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA.

For Christopher G Glover, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Christopher Vallaro, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Barters International LLC, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Dana Statsky Smith, PRO HAC VICE, Bernstein Liebhard LLP, New York, NY; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA.

For William E. Stack, [*9] Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Terry Rose Saunders, The Saunders Law Firm, Chicago, IL.

For Cedar Farms Co., Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Thomas Cusack Cronin, Cronin & Co., Ltd., Chicago, IL.

For Ferraro Foods, Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Robert G. Eisler, Grant & Eisenhofer P.A., Wilmington, DE.

For Ferraro Foods of North Carolina, LLC, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Robert G. Eisler, Grant & Eisenhofer P.A., Wilmington, DE.

For Joe Christiana Food Distributors, Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Goldich A. Marc, Axler Goldich Llc, Philadelphia, PA; Robert G. Eisler, Grant & Eisenhofer [*10] P.A., Wilmington, DE.

For Sullott Corporation, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Kevin S Landau, PRO HAC VICE, Taus Cebulash & Landau LLP, New York, NY.

For Abraham Drucker, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Ilana Harwayne-Gidansky, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Sabrina Majernik, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman [*11] Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Christopher Nelson, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Amy Veaner, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Carl V. Malmstrom, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL; Fred T Isquith, Wolf Haldenstein Adler Freeman & Herz Llp, New York, NY; Theodore Beloyeannis Bell, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL.

For Cheryl Brenchley, [*12]  Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Matthew Hayward, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Wayne Deshotel, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Tracy Newman, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Ray Wieters, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Marilyn Stangeland, [*13]  Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON,

SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Jason Liebich, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Carmen Ocasio, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Debra Piette, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Steve Mizera, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Joshua Madsen, [*14]  Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Vern Peter Gardner, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Michael Perry, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Kirk Evans, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W.

2017 U.S. Dist. LEXIS 160411, *14

Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For David Weidner, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, [*15] Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Catherine Senkle, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Alison Pauk, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Vern Gardner, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Jennifer Wallace, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, [*16] WA; J Gerard Stranch, IV, PRO HAC VICE, Branstetter, Stranch & Jennings, PLLC, Nashville, TN.

For Jonathan Glover, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Andrew Evans, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Christopher Gilbert, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON &

WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For James Flasch, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA.

For Leslie Weidner, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, [*17] LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC, Washington, D.C., DC; Daniel H. Silverman, Cohen Milstein Sellers & Toll, PLLC, Chicago, IL; Kit A. Pierson, Cohen Milstein Sellers & Toll Pllc, Washington, DC.

For Margo Stack, Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Terry Rose Saunders, The Saunders Law Firm, Chicago, IL.

For Alpine Special Treatment Center, Inc., Plaintiff: Bobby Pouya, LEAD ATTORNEY, PRO HAC VICE, PEARSON, SIMON & WARSHAW, LLP, Sherman Oaks, CA; Robert J Gralewski, Jr., PRO HAC VICE, Kirby McInerney LLP, San Diego, CA.

For Koch Foods, Inc., Defendant: Stephen Novack, LEAD ATTORNEY, Novack and Macey LLP, Chicago, IL; Christopher S. Moore, Novack and Macey, LLP, Chicago, IL; Lally A Gartel, Novack and Macey LLP, Chicago, IL; Marie Velinda Lim, Novack and Macey LLP, Chicago, IL; Stephen J. Siegel, Novack and Macey LLP, Chicago, IL.

For JCG Foods of Alabama, LLC, Defendant: Stephen Novack, LEAD ATTORNEY, Novack and Macey LLP, Chicago, [*18] IL; Christopher S. Moore, Novack and Macey, LLP, Chicago, IL; Lally A Gartel, Novack and Macey LLP, Chicago, IL; Marie Velinda Lim, Novack and Macey LLP, Chicago, IL; Stephen J. Siegel, Novack and Macey LLP, Chicago, IL.

For JCG Foods of Georgia, LLC, Defendant: Stephen Novack, LEAD ATTORNEY, Novack and Macey LLP, Chicago, IL; Christopher S. Moore, Novack and Macey,

LLP, Chicago, IL; Lally A Gartel, Novack and Macey LLP, Chicago, IL; Marie Velinda Lim, Novack and Macey LLP, Chicago, IL; Stephen J. Siegel, Novack and Macey LLP, Chicago, IL.

For Koch Meats Co., Inc., Defendant: Stephen Novack, LEAD ATTORNEY, Novack and Macey LLP, Chicago, IL; Christopher S. Moore, Novack and Macey, LLP, Chicago, IL; Lally A Gartel, Novack and Macey LLP, Chicago, IL; Marie Velinda Lim, Novack and Macey LLP, Chicago, IL; Stephen J. Siegel, Novack and Macey LLP, Chicago, IL.

For Tyson Foods, Inc., Defendant: David H Suggs, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, New York, NY; Jeremy K. Ostrander, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Palo Alto, CA; John Mark Gidley, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Washington, DC; Amy Beth Manning, McGuireWoods LLP, Chicago, IL; Christina M. Egan, [*19] McGuire Woods LLP, Chicago, IL; Kristen J. Mcahren, White & Case Llp, Washington, DC; Peter J. Carney, PRO HAC VICE, White & Case LLP, Washington, DC; Robert A Milne, PRO HAC VICE, White & Case, New York, NY.

For Tyson Chicken, Inc., Defendant: David H Suggs, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, New York, NY; Jeremy K. Ostrander, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Palo Alto, CA; John Mark Gidley, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Washington, DC; Amy Beth Manning, McGuireWoods LLP, Chicago, IL; Christina M. Egan, McGuire Woods LLP, Chicago, IL; Kristen J. Mcahren, White & Case Llp, Washington, DC; Peter J. Carney, PRO HAC VICE, White & Case LLP, Washington, DC; Robert A Milne, PRO HAC VICE, White & Case, New York, NY.

For Tyson Breeders, Inc., Defendant: David H Suggs, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, New York, NY; Jeremy K. Ostrander, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Palo Alto, CA; John Mark Gidley, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Washington, DC; Amy Beth Manning, McGuireWoods LLP, Chicago, IL; Christina M. Egan, McGuire Woods LLP, Chicago, IL; David H Suggs, PRO HAC VICE, White & Case LLP, New York, NY; Kristen [*20] J. Mcahren, White & Case Llp, Washington, DC; Peter J. Carney, PRO HAC VICE, White & Case LLP, Washington, DC; Robert A Milne, PRO HAC VICE, White & Case, New York, NY.

For Tyson Poultry, Inc., Defendant: David H Suggs, LEAD ATTORNEY, PRO HAC VICE, White & Case

LLP, New York, NY; Jeremy K. Ostrander, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Palo Alto, CA; John Mark Gidley, LEAD ATTORNEY, PRO HAC VICE, White & Case LLP, Washington, DC; Amy Beth Manning, McGuireWoods LLP, Chicago, IL; Christina M. Egan, McGuire Woods LLP, Chicago, IL; Kristen J. Mcahren, White & Case Llp, Washington, DC; Peter J. Carney, PRO HAC VICE, White & Case LLP, Washington, DC; Robert A Milne, PRO HAC VICE, White & Case, New York, NY.

For Pilgrim's Pride Corporation, Defendant: Carrie C. Mahan, PRO HAC VICE, Weil, Gotshal & Manges LLP, Washington, DC; Clayton E. Bailey, PRO HAC VICE, Bailey Brauer PLLC, Dallas, TX; Daniel E. Antalics, PRO HAC VICE, Weil, Gotshal & Manges LLP, Washington, DC; Kevin J Arquit, Weil, Gotshall & Manges LLP, New York, NY; Michael Lee McCluggage, Eimer Stahl LLP, Chicago, IL.

For Perdue Farms, Inc., Defendant: Andrew Thomas Hernacki, LEAD ATTORNEY, PRO HAC VICE, Venable LLP, Washington, [*21] DC; James Douglas Baldridge, LEAD ATTORNEY, Venable LLP, Washington, DC; Robert Paul Davis, LEAD ATTORNEY, PRO HAC VICE, Venable LLP, Washington, DC, DC; Danielle R Foley, PRO HAC VICE, Venable LLP, Washington, DC; Kirstin Beth Ives, Falkenberg Fieweger & Ives LLP, Chicago, IL; Leonard L. Gordon, PRO HAC VICE, Venable LLP, New York, NY; Lisa Jose Fales, PRO HAC VICE, Venable LLP, Washington, DC.

For Sanderson Farms, Inc., Defendant: Christa Cynthia Cottrell, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Daniel E. Laytin, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Stacy L Pepper, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Martin Louis Roth, Kirkland & Ellis LLP, Chicago, IL.

For Sanderson Farms, Inc. (Foods Division), Defendant: Christa Cynthia Cottrell, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Daniel E. Laytin, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Stacy L Pepper, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Martin Louis Roth, Kirkland & Ellis LLP, Chicago, IL.

For Sanderson Farms, Inc. (Production Division), Defendant: Christa Cynthia Cottrell, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Daniel E. Laytin, LEAD ATTORNEY, Kirkland & Ellis [*22] LLP, Chicago, IL; Stacy L Pepper, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Martin Louis Roth, Kirkland & Ellis LLP, Chicago, IL.

For Sanderson Farms, Inc. (Processing Division),

Defendant: Christa Cynthia Cottrell, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Daniel E. Laytin, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Stacy L Pepper, LEAD ATTORNEY, Kirkland & Ellis LLP, Chicago, IL; Martin Louis Roth, Kirkland & Ellis LLP, Chicago, IL.

For Wayne Farms, LLC, Defendant: Peter Duffy Doyle, LEAD ATTORNEY, Proskaver Rose, New York, NY; Adrian Fontecilla, PRO HAC VICE, Proskauer Rose LLP, Washington, DC; Christopher E Ondeck, PRO HAC VICE, Proskauer Rose LLP, Washington, DC; Marc Eric Rosenthal, Proskauer Rose LLP, Chicago, IL; Stephen R Chuk, PRO HAC VICE, Proskauer Rose LLP, Washington, DC.

For Mountainaire Farms, Inc., Defendant: John W. Treece, LEAD ATTORNEY, Sidley Austin LLP (Chicago), Chicago, IL; Amy L Stewart, PRO HAC VICE, Rose Law Firm, Little Rock, AR; Jacob Dylan White, PRO HAC VICE, Rose Law Firm, Little Rock, AR.

For Mountainaire Farms, LLC, Defendant: John W. Treece, LEAD ATTORNEY, Sidley Austin LLP (Chicago), Chicago, IL; Amy L Stewart, PRO HAC VICE, Rose [*23] Law Firm, Little Rock, AR; Jacob Dylan White, PRO HAC VICE, Rose Law Firm, Little Rock, AR.

For Mountainaire Farms of Delaware, Inc., Defendant: John W. Treece, LEAD ATTORNEY, Sidley Austin LLP (Chicago), Chicago, IL; Amy L Stewart, PRO HAC VICE, Rose Law Firm, Little Rock, AR; Jacob Dylan White, PRO HAC VICE, Rose Law Firm, Little Rock, AR.

For Peco Foods, Inc., Defendant: Boris Bershteyn, LEAD ATTORNEY, PRO HAC VICE, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY; Patrick Joseph Fitzgerald, LEAD ATTORNEY, Skadden, Arps, Slate, Meagher & Flom LLP, Chicago, IL; Lara A Flath, Skadden Arps Slate Meagher & Flom, LLP CH, Chicago, IL.

For Foster Farms, LLC, Defendant: Carmine R. Zarlenga, LEAD ATTORNEY, Mayer Brown LLP, Washington, DC; Oral Pottinger, PRO HAC VICE, Mayer Brown LLP, Washington, DC; William Stallings, PRO HAC VICE, Mayer Brown LLP, Washington, DC.

For House of Raeford Farms, Inc., Defendant: Gregory Gene Wrobel, LEAD ATTORNEY, Vedder Price P.C., Chicago, IL; Henry W. Jones, Junio, PRO HAC VICE, Jordan Price, Raleigh, NC; Michael James Waters, Vedder Price P.C., Chicago, IL.

For Simmons Foods, Inc., Defendant: Lynn Hagman Murray, LEAD ATTORNEY, Shook, Hardy & Bacon LLP, [*24] Chicago, IL; Andrew M. Meerkins, Shook, Hardy & Bacon LLP, Chicago, IL; John R Elrod, Conner & Winters, LLP, Fayetteville, AK.

For Fieldale Farms Corporation, Defendant: Brendan J. Healey, Mandell Menkes LLC, Chicago, IL; Brian Parker Miller, PRO HAC VICE, Alston & Bird LLP, Atlanta, GA; James Butler Cash, Jr., PRO HAC VICE, Alston & Bird LLP, Atlanta, GA; Max Paul Marks, PRO HAC VICE, Alston & Bird LLP, Atlanta, GA; Roger Brent Hatcher, Jr., PRO HAC VICE, Smith, Gilliam, Williams & Miles, P.A., Gainesville, GA; valarie cecile williams, PRO HAC VICE, Alston & Bird LLP, Atlanta, GA.

For George's Inc., Defendant: William L. Greene, LEAD ATTORNEY, PRO HAC VICE, Stinson Leonard Street LLP, Minneapolis, MN; Gary V Weeks, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; K.C. Dupps Tucker, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; Kristy Elizabeth Boehler, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; Ruth S. Shnider, PRO HAC VICE, Stinson Leonard Street, Minneapolis, MN; Sondra A. Hemeryck, Riley Safer Holmes & Cancila LLP, Chicago, IL; Zachary H Hemenway, PRO HAC VICE, Stinson Leonard Street, Kansas City, MO. [*25]

For George's Farms, Inc., Defendant: William L. Greene, LEAD ATTORNEY, PRO HAC VICE, Stinson Leonard Street LLP, Minneapolis, MN; Gary V Weeks, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; K.C. Dupps Tucker, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; Kristy Elizabeth Boehler, PRO HAC VICE, The Law Group of Northwest Arkansas LLP, Fayetteville, AR; Ruth S. Shnider, PRO HAC VICE, Stinson Leonard Street, Minneapolis, MN; Sondra A. Hemeryck, Riley Safer Holmes & Cancila LLP, Chicago, IL; Zachary H Hemenway, PRO HAC VICE, Stinson Leonard Street, Kansas City, MO.

For O.K. Foods, Inc., Defendant: John P. Passarelli, LEAD ATTORNEY, PRO HAC VICE, Kutak Rock LLP, Omaha, NE; Robin Stewart, LEAD ATTORNEY, PRO HAC VICE; J.R. Carroll, PRO HAC VICE, Kutak Rock, LLP, Fayetteville, AR; James M. Sulentic, PRO HAC VICE, Kuak Rock LLP, Omaha, NE; Kimberly Michelle Hare, Kutak Rock Llp, Chicago, IL; Scott Jackson, PRO HAC VICE, Kutak Rock LLP, Fayetteville, AR.

For O.K. Farms, Inc., Defendant: John P. Passarelli, LEAD ATTORNEY, PRO HAC VICE, Kutak Rock LLP,

Omaha, NE; Robin Stewart, LEAD ATTORNEY, PRO HAC VICE; J.R. Carroll, PRO HAC VICE, Kutak Rock, [*26] LLP, Fayetteville, AR; James M. Sulentic, PRO HAC VICE, Kuak Rock LLP, Omaha, NE; Kimberly Michelle Hare, Kutak Rock Llp, Chicago, IL; Scott Jackson, PRO HAC VICE, Kutak Rock LLP, Fayetteville, AR.

For O.K. Industries, Inc., Defendant: John P. Passarelli, LEAD ATTORNEY, PRO HAC VICE, Kutak Rock LLP, Omaha, NE; Robin Stewart, LEAD ATTORNEY, PRO HAC VICE; J.R. Carroll, PRO HAC VICE, Kutak Rock, LLP, Fayetteville, AR; James M. Sulentic, PRO HAC VICE, Kuak Rock LLP, Omaha, NE; Kimberly Michelle Hare, Kutak Rock Llp, Chicago, IL; Scott Jackson, PRO HAC VICE, Kutak Rock LLP, Fayetteville, AR.

**Judges:** Jeffrey T. Gilbert, United States Magistrate Judge.

**Opinion by:** Jeffrey T. Gilbert

# Opinion

## ORDER

This matter is before the Court on Plaintiffs' request that certain Defendants produce documents those Defendants have provided or will provide to the Office of the Florida Attorney General in connection with an investigation concerning potential anticompetitive conduct in the Broiler Chicken industry and potential manipulation of the Georgia Dock Index. [415 at 56-61]. The parties raised this issue in their Status Report and Letter Brief filed on June 14, 2017. [415]. At the Court's request [420, ¶ 3], the parties then filed additional [*27] briefs [435, 436] on the question of whether the documents should be produced at this time. The Court will characterize Plaintiffs' request for the documents they are seeking as a "motion to compel" for ease of reference. Plaintiffs ask the Court to order the immediate production of the documents they are seeking. Defendants argue the documents should not be produced, if at all, until after their fully-briefed motions to dismiss have been decided.. All parties acknowledge that discovery is not formally stayed in this case. For the reasons stated below, Plaintiffs' deemed-motion to compel is granted in part and denied in part.

I.

At least six defendants in this lawsuit—Fieldale Farms

Corp.; Koch Foods, Inc.; Wayne Farms, LLC; Sanderson Farms, Inc.; Tyson Foods, Inc.; and Pilgrim's Pride Corp. (collectively, "CID Defendants")—have received Antitrust Civil Investigative Demands ("CIDs") from the Office of the Florida Attorney General ("Florida AG"). [415 at 56]. During a status hearing held on June 16, 2017, the Court asked whether all Defendants had provided documents to the Florida AG in response to a CID. [430 at 163]. Counsel for Sanderson Farms, Inc. said that "[s]ome defendants have not [*28] produced any documents to the Florida AG." Id. This statement implies, in the Court's view, that at least some CID Defendants already have responded to a CID while some may not have. CID Defendants' filings shed no more light on that issue. The Court assumes, therefore, what Plaintiffs assume: at least some CID Defendants have produced or will produce to the Florida AG the documents requested by the CIDs.

Plaintiffs have obtained copies of the six CIDs that they know have been served on CID Defendants. [415 at 57; 415-6]. According to Plaintiffs' unrebutted representation, "each of the CIDs . . . contain[s] nearly identical requests." [415 at 57]. Plaintiffs have attached to one of their filings a copy of the CID served on Defendant Wayne Farms, LLC. [415-4]. The Schedule of Documents to Be Produced contains 15 requests. Requests 1 and 2 demand the production of documents furnished or to be furnished to a governmental entity relating to potential anticompetitive activity within the Broiler industry and documents related to internal investigations of such activity. Id. at 7. Request 2 also demands the production of documents furnished or to be furnished to a governmental entity relating to potential manipulation [*29] of the Georgia Dock Index ("GDI"). Id. Requests 3 through 6 demand the production of documents relating to certain communications or agreements regarding (1) the GDI, GDI Submissions, or GDI Calculations; (2) the price, supply, or production of Broilers; (3) Broiler production cuts; or (4) the reduction in or liquidation of Broiler breeder flocks. Id. Requests 7 through 9 demand the production of documents relating to GDI Calculations and GDI Submissions. Id. at 8. Finally, requests 10 through 15 demand the production of documents related to the identification of employees; Broiler sales to "Florida Purchasers;" transactions with Florida Purchasers affected by, based upon, or linked to the GDI; negotiations with Florida Purchasers relating to the GDI; and technology use policies and document retention policies.

On February 28, 2017, Plaintiffs served their First Set of

Requests for Production of Documents to All Defendants. [415-3]. In Request No. 35(a), Plaintiffs seek the production of, among other things, all documents provided to, and all communications with, governmental entities regarding alleged violations of antitrust laws, which would cover documents produced by CID Defendants to the [*30] Florida AG and these Defendants communications with the Florida AG. Id. at 19-20. Additional requests for production in Plaintiffs' First Set of Requests for Production of Documents to All Defendants also cover the topics encompassed by the CIDs. See, e.g., Request Nos. 1, 3, 12, 17, 19-21, 27, 29, 34, 35(b), 57.

After Defendants responded to Plaintiffs' First Set of Requests for Production of Documents, Plaintiffs renewed their request for the production of the Florida AG documents in the parties' Joint Status Report and Letter Brief for June 16, 2017 Status Conference. [415 at 56-61]. Plaintiffs ask the Court to order CID Defendants to produce the Florida AG documents within 14 days. Id. at 59. Defendants, as noted above, argue all document production should await the resolution of the pending motions to dismiss. Id. at 61. At the status hearing held on June 16, 2017, the Court and the parties discussed the issue at some length, and the Court ordered additional briefing. [430 at 159-76; 420, ¶ 3]. Consistent with the schedule set by the Court, CID Defendants have filed a response brief [435] and Plaintiffs have filed a reply brief [436].[1] This matter thus is ripe for resolution.

II.

Plaintiffs argue the benefits [*31] of producing the Florida AG documents now outweigh the burden of doing so. Plaintiffs note the Court has not stayed all discovery or document production. They assert the documents they seek are discoverable and can be

---

[1] In the June 16, 2017 Joint Status Report and Letter Brief, Plaintiffs focused solely on documents produced or to be produced by CID Defendants to the Florida AG in response to an already-served CID. Understandably, only CID Defendants filed a response brief on this issue. [435 at 20-22]. Yet, in their reply brief, Plaintiffs ask the Court to order all defendants to simultaneously serve Plaintiffs with future productions to the Florida AG made in response to any CID. [436 at 10]. Not only have non-CID Defendants not had an opportunity to litigate this issue, but the Court also has no way of knowing whether CIDs served by the Florida AG in the future will be similar in scope to those already served on CID Defendants. For these reasons, the Court will address Plaintiffs' initial, more narrowly focused request for relief.

produced without undue burden, expense, or delay. Plaintiffs also contend they will be prejudiced if production is delayed until after the motions to dismiss are resolved while CID Defendants will not be harmed by immediate production. According to Plaintiffs, production of the Florida AG documents now will go a long way toward reducing the "informational asymmetries" that have hampered Plaintiffs' ability to, among other things, discuss intelligently the identification of key word search terms in preparation for fulsome discovery after the motions to dismiss are decided. Implicit in this argument is that the motions to dismiss will be denied in whole or substantial part so that discovery eventually will be allowed to proceed unchecked or at least as permitted by the Federal Rules of Civil Procedure. For all of these reasons, Plaintiffs say the Florida AG documents should be produced in short order since those documents or a large percentage of them eventually will be [*32] produced in any event.

CID Defendants argue Plaintiffs' request for the production of the Florida AG documents is premature, unreasonable, and disproportionate to the needs of the case. CID Defendants say the Court should stay all document production until the Court rules on the motions to dismiss to avoid the first slide down the slippery and expensive slope of document production in a large and complex antitrust case. CID Defendants also contend Plaintiffs do not have a right to "cloned discovery" (by which they apparently mean the wholesale, reflexive production of documents previously produced to a governmental entity) because some of the documents produced to the Florida AG may not be discoverable in this case, particularly if the Court grants in part or in whole the pending motions to dismiss. CID Defendants further assert producing the documents now will prejudice them without benefiting Plaintiffs. Therefore, CID Defendants say, the Court should deny Plaintiffs' request for production of the documents at this time.

The Court recognizes that discovery in an antitrust case quickly can become enormously expensive. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also id. at 573 (Stevens, J., dissenting); Nexstar Broad., Inc. v. Granite Broad. Corp., 2011 U.S. Dist. LEXIS 105056, 2011 WL 4345432, at *2-3 (N.D. Ind. Sept. 15, 2011); DSM Desotech Inc. v. 3D Sys. Corp., 2008 U.S. Dist. LEXIS 87473, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) [*33] . These hefty costs do not justify a full stay of discovery simply because a defendant has moved to

2017 U.S. Dist. LEXIS 160411, *33

dismiss all of a plaintiff's claims. *DSM Desotech, 2008 U.S. Dist. LEXIS 87473, 2008 WL 4812440, at *3*. Courts must consider the expense of litigating complex antitrust cases and tailor discovery accordingly while motions to dismiss are pending. *Methodist Health Servs. Corp. v. OSF Healthcare Sys., 2014 U.S. Dist. LEXIS 62168, 2014 WL 1797674, at *2 (C.D. Ill. May 6, 2014)*; *Coss v. Playtex Prod., LLC, 2009 U.S. Dist. LEXIS 42933, 2009 WL 1455358, at *5 (N.D. Ill. May 21, 2009)*; *DSM Desotech, 2008 U.S. Dist. LEXIS 87473, 2008 WL 4812440, at *3*.

In light of the procedural posture of this case, the Court has discussed with the parties at length what should (and should not) be done before a decision on the motions to dismiss. The Court has charted the course of discovery while those motions are pending during status hearings held on December 9, 2016, and March 2, April 21, and June 16 of this year. The Court's decisions and guidance can be summarized as follows. The Court has neither stayed discovery completely nor allowed full discovery to proceed. The Court is placing a priority on identifying specific discovery-related tasks that the parties can complete before a decision on the motions to dismiss without substantial burden or expense (both of which the Court understands are relative concepts in a case like this). The Court's focus is on those tasks that will set the table so that discovery [*34] will not begin from a complete standing stop if the motions to dismiss are denied in whole or in part. [336 at 12, 15; 384 at 52]. In other words, the Court is trying to identify preparatory tasks that must be completed before the parties can respond to written and oral discovery and that do not impose undue burden or expense on a party or parties. Some of these tasks can take many months or even a year or more in a large case like this. If preparatory steps can be taken now, with due regard to the proportionality analysis required under *Federal Rule of Civil Procedure 26(b)*, that will further expedite the process and avoid unnecessary delay later in the case. The Court will assess what should be done before a decision on the motions to dismiss by balancing the benefit and the burden of completing a given discovery-related task as well as the benefit and burden of the work being done overall. [384 at 52-53]. The Court, though, is willing to draw a clear line if this incremental balancing approach proves unworkable. [384 at 52, 64; 430 at 166].

To date in this case, the Court has focused on completing preparatory discovery tasks that are relatively less expensive, at least in the context of a complex antitrust case like [*35] this that includes three putative plaintiff classes and nearly 30 defendants from 14 corporate families, involves multiple theories of liability, covers conduct spanning nearly a decade, and targets an industry with $20 to $30 billion in annual revenue. The Court has entered orders requiring the disclosure of limited information the parties agreed to exchange [264], denying without prejudice a request to issue document preservation subpoenas [382], setting an interim schedule [388], granting a *Rule 30(b)(6)* deposition to remedy misleading initial discovery disclosures by one defendant group [449], encompassing significant components of an ESI protocol [459], and concerning the appointment of a special master for ESI discovery issues [474]. The Court also has ruled on matters ranging from the number of interrogatories the parties can serve to the appropriate method for preparing a privilege log. *See* [245; 336; 384; 430]; *see also* [243; 387; 420]. The parties have agreed to an overall schedule for discovery, class certification, and summary judgment; significant portions of an ESI protocol; and identification of most document sources. The parties also have served initial disclosures, and served and [*36] objected to an initial set of *Rule 34* requests. This is not an exhaustive list of what the Court and the parties have done so far in this case on the discovery or scheduling front, but it is a representative sample.

The Court's approach to requests for production under *Federal Rule of Civil Procedure 34* has been consistent with its broader approach to discovery. Early this year, the parties served their initial *Rule 34* requests. On April 27, 2017, the Court entered an agreed scheduling order that laid out the next steps with respect to *Rule 34* requests. Consistent with that order, the parties served their objections to their counterparts' requests during the following month. [388 at 2]; *see also* [430 at 187]. During the June 16, 2017 status hearing, the Court said it did not want to resolve *Rule 34* objections in a piecemeal fashion and ordered the parties to exchange letters regarding their *Rule 34* requests on or before June 30 and to meet and confer on or before July 31. [420, ¶ 5; 430 at 187]. Interim Scheduling Order on Agreed Dates No. 1, which sets a date for the substantial completion of document production, does not require the production of any documents in response to a *Rule 34* request before a ruling on the pending motions to dismiss. *See* [388 at [*37] 2].

The Court will continue to apply the benefit-burden balancing approach outlined above that has guided other discovery decisions in this case unless it proves to be unworkable. The Court understands that ordering full

document production at this juncture would significantly ratchet up costs for all parties. Cognizant of this expense, the Court has not yet ordered any party to produce documents in response to a *Rule 34* request. The Court, though, also has not stayed all document production. [384 at 53; 430 at 166]. The Court does not "subscribe to the notion . . . that nothing should be produced" before a ruling on the motions to dismiss. [384 at 52]. An objection based solely on the position that there should not be any document production before a ruling is "not as persuasive." *Id.* at 53; *see also* [430 at 166] (noting the Court does "not buy the argument completely that because a motion to dismiss is pending, no documents shall be produced").

III.

As the Court acknowledged during a recent status hearing, there is more than a little overlap between the Florida AG's document requests, the allegations in Plaintiffs' operative complaints, and the categories of documents covered by Plaintiffs' First Set [*38] of Requests for Production of Documents to All Defendants. The CIDs request documents for the time period of January 1, 2007 to the date of production. [415-4 at 4]. The agreed ESI protocol entered by the Court identified the general time period for discovery as ranging from January 1, 2007 to September 2, 2016. [459 at 12]. Almost all of the CID requests seek documents related to potential anticompetitive conduct or the GID. The few requests that are not in this vein seek documents related to basic corporate information or to the identification of employees or sales figures. Subject to potential limitations as to time periods and particular products, if a Defendant: remains in the case, the documents produced in response to requests 3 through 10 of the CIDs' Schedule of Documents appear to be relevant to the claims and defenses in this case. CID Defendants do not argue otherwise. Requests 3 through 10 of the CIDs' Schedule of Documents cover: (1) certain communications and agreements related to (a) the GDI, GDI submissions, or GDI calculations, (b) the price, supply, or production of Broilers, (c) Broiler production cuts, or (d) the reduction in or liquidation of Broiler breeder flocks; [*39] (2) certain documents related to GDI Calculations and GDI Submissions; and (3) documents sufficient to identify employees with responsibility for these things. Again, as far as the Court can tell, these documents also are encompassed in multiple *Rule 34* requests for production that Plaintiffs have served upon Defendants.

In every case in which a motion to dismiss is filed, the

scope of discovery could change if the motion is granted in part or in whole. In some cases, such as those under the Private Securities Litigation Reform Act, automatic discovery stays are mandatory while a motion to dismiss is pending. But this is not a PSLRA case. Even the cases cited by CID Defendants recognize that courts need not stay discovery in antitrust cases solely because a motion to dismiss has been filed. *Nexstar, 2011 U.S. Dist. LEXIS 105056, 2011 WL 4345432, at *2*; *DSM Desotech, 2008 U.S. Dist. LEXIS 87473, 2008 WL 4812440, at *2*; *In re Graphics Processing Units Antitrust Litig., 2007 U.S. Dist. LEXIS 57982, 2007 WL 2127577, at *3-4 (N.D. Cal. July 24, 2007)*. Typically, courts that stay some or all discovery in antitrust cases look to the burden involved in conducting that discovery. As explained above, this Court is doing the same by balancing the benefit and burden of certain steps or tasks preparatory to full discovery.

During the status hearing held in this case on June 16, 2017, the Court identified certain facts that would be relevant to its consideration [*40] of the burden on CID Defendants of producing the Florida AG documents— such as the volume of documents involved and the expense of producing them now—and it invited Defendants to address those issues in their filing so as to inform the burden analysis. [430 at 166-67, 173-74]. CID Defendants, however, declined in their response brief to quantify, or even describe, the economic or administrative burden of producing the Florida AG documents.

Instead, CID Defendants make other arguments. They maintain the Florida AG documents contain highly sensitive business information. They say not all documents produced to or communications with governmental entities are subject to production in this case. They contend Plaintiffs will not be prejudiced if production of these documents is stayed until after a decision on the motions to dismiss. They assert their motions to dismiss stand a good chance of being granted. And they worry production of these documents will mark the first slip down the inevitably expensive document production slope. The Court is not persuaded that these arguments, separately or together, justify CID Defendants' position that none of the Florida AG documents should be produced [*41] while the motions to dismiss are pending. The Court will deal with each of these arguments in turn.

CID Defendants argue that their confidential information will be disclosed if they produce the Florida AG documents. As Plaintiffs point out, the Court has

entered a protective order in this case. [202]. Generally, material designated "Confidential" or "Highly Confidential" under the protective order cannot be used or disclosed for any purpose other than the prosecution, defense, or settlement of this case. *Id.* at 5. When material designated Highly Confidential is produced, the receiving party cannot even share that material with another party. *Id.* at 5-6. That means CID Defendants' documents designated Highly Confidential will not be shared with their competitors. In light of Plaintiffs' willingness to allow CID Defendants to bulk-tag all Florida AG documents as Highly Confidential [436 at 9-10], there is no self-evident reason why the protective order will prove insufficient to prevent harmful disclosures of highly sensitive information. In fact, CID Defendants implicitly concede that they can "ensure appropriate protection for their documents in this case" by designating them under the protective order. [*42] [435 at 7].

The Court agrees with CID Defendants that reflexive production of documents previously provided to governmental entities is not appropriate. This argument, though, sets up somewhat of a straw man. The dispute now before the Court turns not on whether documents must be "reflexively" produced but whether the benefit of producing a specific set of documents that appear to be relevant to Plaintiffs' claims outweighs the burden of doing so. In the Court's view, a subset of the documents CID Defendants have produced to the Florida AG appears to be relevant to the claims in this case and production of those documents to Plaintiffs at this time would not impose an undue or unreasonable burden on CID Defendants. In particular, the documents provided to the Florida AG in response to requests 3 through 10 of the CIDs' Schedule of Documents appear to be relevant to Plaintiffs' allegations here and Defendants do not argue that the expense of producing them is undue. The Court will not abandon its benefit-burden approach simply because the documents Plaintiffs are requesting previously have been provided to a governmental entity.

CID Defendants are correct that some of these documents [*43] might not be subject to production in this case if a Defendant is dismissed, a particular product is excluded from the definition of "Broilers," or the relevant time period at issue is shortened. Again, though, that is true in every case where a defendant has moved to dismiss all or some of the claims alleged against it. There is no bright line rule that, while a motion to dismiss is pending that may change the scope of the case if granted in whole or in part, no document production should occur unless and until the parties

know the exact contours of the case.

Plaintiffs would be prejudiced by delaying production of the Florida AG documents if they can be produced now at a relatively modest additional expense to CID Defendants (again, these Defendants have not argued expense as a reason the documents should not be produced). For example, the Court has encouraged the parties to negotiate key word search terms that can be used to identify documents that will be subject to production if full discovery moves forward. The parties and the Court also are involved in the process of resolving various disputes regarding search methodologies, including those related to the use of Technology Assisted [*44] Review ("TAR"). In a case like this, the process of identifying key words and crafting search methodologies could take many months, if not longer. If all of these efforts are delayed until after the motions to dismiss are decided, that in turn will significantly delay this case.

Plaintiffs also are correct that there is an informational asymmetry between the parties at this time that hampers Plaintiffs' ability to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters. If there is at most minimal burden involved in producing the Florida AG documents and the documents are relevant to the claims made in Plaintiffs' operative complaints, then the benefits of producing those documents now in terms of moving the case forward to a fair and efficient resolution consistent with *Rule 1 of the Federal Rules of Civil Procedure* weigh in favor of not putting off production until after the motions to dismiss are decided. *Fed. R. Civ. P. 1* ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")[2]

Again the [*45] Court acknowledges that CID Defendants say the motions to dismiss could result in complete and total dismissal, resolving this case on the merits without the need for any discovery. The Court also recognizes that Defendants' motions raise serious, nontrivial issues. *See* [336 at 12]. But the possibility that CID Defendants could prevail on their motions to dismiss does not justify staying all document production in this case even when the benefit of producing the

---

[2] The Court recognizes that the term "inexpensive" in the context of a multidistrict antitrust case is a relative term.

documents now would outweigh any burden associated with that production. If the Court adopted Defendants' construct, meaningful discovery or preparatory steps necessary to engage in meaningful discovery would be delayed indefinitely. In addition, if Defendants' motions to dismiss are granted in part (without prejudice, which is often the case) and denied in part, then the Court can envision Defendants arguing that production of the Florida AG documents should continue to be delayed until the parameters of the case are more firmly set and as necessary to avoid piecemeal and successive productions. The Court does not see the need to continue to kick that can down the road.

In the Court's view, the benefit to Plaintiffs of obtaining [*46] access to the relatively discrete set of documents they have requested, as further limited by the Court in this Order, so that Defendants and they can begin the process of intelligently discussing the appropriate parameters of more fulsome discovery that may come in time, including key word search terms that can be used to cull from extraordinarily large document sets potentially relevant documents and appropriate search methodologies, outweighs the incremental expense and burden to CID Defendants of producing these documents which they already have produced to the Florida AG. Plaintiffs also have successfully rebutted the other arguments Defendants have advanced in their effort to defeat Plaintiffs' request for these documents. In addition, production of these documents now will further the interest of the court system and the parties in the expeditious and eventual resolution of this case on the merits or otherwise. *Fed. R. Civ. P. 1*. This limited production, in the Court's view, is justified as a partial and early response to Plaintiffs' Request No. 35(a) of Plaintiffs' First Set of Requests for Production of Documents to All Defendants. [415-3].

The Court will not, however, order production of all [*47] the documents CID Defendants have produced to the Florida AG or all of the CID Defendants' communications with that governmental entity which are encompassed within Request No. 35(a) of Plaintiffs' First Set of Requests for Production of Documents to All Defendants. [415-3]. As discussed above, the CIDs also request documents produced to any governmental entity, documents related to internal investigations, and documents related to "Florida Purchasers," among other things. Production of documents in those categories is broader than the Court will allow at this point. The production encompassed by this Order will be limited to the documents produced in response to requests 3 through 10 of the CIDs' Schedule of Documents. Those

documents are at the core of Plaintiffs' allegations in this case. Defendants do not raise a relevance objection to production of these documents other than to say that some or all of the documents may not be relevant if Defendants' motions to dismiss are granted in whole or in part, thereby limiting the time frame covered by Plaintiffs' complaints or the products at issue, or eliminating a Defendant from the case. No CID Defendant argues that these documents [*48] are not relevant to Plaintiffs' claims as currently filed. As discussed above, the possibility that Plaintiffs' claims will be narrowed or even dismissed in whole or in part does not justify delaying production of a relatively discrete set of relevant documents whose production will benefit Plaintiffs and the judicial process in the ways described above, and will not impose an undue or unreasonable burden on CID Defendants. As Plaintiffs suggest, the documents may be produced as "Highly Confidential" under the previously-entered protective order. [202].

IV.

For all of the reasons stated in this Order, Plaintiffs' deemed-motion to compel is granted in part and denied in part. Within 21 days of the date of this Order, each CID Defendant shall produce to Plaintiffs, as Highly Confidential documents under the protective order previously entered in this case [202], the documents already produced to the Florida AG in response to requests 3 through 10 of the respective CIDs' Schedule of Documents. If any CID Defendant: produces additional documents in the future to the Florida AG in response to these particular requests, that CID Defendant shall produce those additional documents to Plaintiffs [*49] within 7 days of the date of production to the Florida AG.

It is so ordered.

/s/ Jeffrey T. Gilbert

Jeffrey T. Gilbert

United States Magistrate Judge

Dated: September 28, 2017

**End of Document**

# Tab 12

# *In re Graphics Processing Units Antitrust Litig.*

United States District Court for the Northern District of California

July 24, 2007, Decided; July 24, 2007, Filed

No. C 06-07417 WHA, MDL No. 1826

**Reporter**
2007 U.S. Dist. LEXIS 57982 *; 2007 WL 2127577

IN RE GRAPHICS PROCESSING UNITS ANTITRUST LITIGATION; This Order Relates To: ALL ACTIONS

**Subsequent History:** Motion granted by, Complaint dismissed at, Motion to strike granted by, Motion granted by, in part, Motion denied by, in part, Motion denied by *In re Graphics Processing Units Antitrust Litig., 2007 U.S. Dist. LEXIS 76601 (N.D. Cal., Sept. 27, 2007)*

Stay lifted by, Motion granted by, in part, Motion denied by, in part, Motion granted by, Request denied by *In re Graphics Processing Units Antitrust Litig., 2007 U.S. Dist. LEXIS 85533 (N.D. Cal., Nov. 7, 2007)*

**Counsel:** [*1] For Henry Truong, on behalf of himself and all others similarly situated, Trong Nguyen, on behalf of himself and all others similarly situated, Judd Eliasoph, on behalf of himself and all others similarly situated, Stephanie Truong, on behalf of herself and all others similarly situated, Plaintiffs: Christopher Lee Lebsock, LEAD ATTORNEY, Henry A. Cirillo, LEAD ATTORNEY, Jon T. King, LEAD ATTORNEY, Thomas Patrick Dove, LEAD ATTORNEY, The Furth Firm LLP, San Francisco, CA; Michael Paul Lehmann, LEAD ATTORNEY, Cohen Milstein Hausfeld & Toll, PLLC, San Francisco, CA.

For Rhonda Aldrich, individually and on behalf of all others similarly situated, Justus Austin, individually and on behalf of all others similarly situated, Plaintiffs: Juden Justice Reed, LEAD ATTORNEY, Robert C. Schubert, LEAD ATTORNEY, Willem F. Jonckheer, LEAD ATTORNEY, Aaron H. Darsky, Schubert & Reed LLP, San Francisco, CA.

For Kevin Connolly, on behalf of himself and all others similarly situated, Plaintiff: Cadio Zirpoli, Geoffrey Conrad Rushing, Guido Saveri, Richard Alexander Saveri, Saveri & Saveri Inc., San Francisco, CA; Gary Laurence Specks, Jason Allen Zweig, Laurence D. King, Lori Sambol Brody, Robert N. Kaplan, [*2] Kaplan Fox & Kilsheimer LLP, New York, NY.

For Michael Bensignor, on behalf of himself and all others similarly situated, Plaintiff: William G. Caldes, LEAD ATTORNEY, Eugene A. Spector, Jay S. Cohen, Jeffrey J. Corrigan, Spector, Roseman & Kodroff, P.C., Philadelphia, PA.

For Kathryn Saunders, on behalf of herself and all others similarly situated, Plaintiff: Andrew Jones Ogilvie, Kemnitzer Anderson Barron Ogilvie & Brewer, LLP, San Francisco, CA; Benjamin F. Johns, James R. Malone, Jr., Joseph G. Sauder, Michael D. Gottsch, Chimicles & Tikellis LLP, Haverford, PA.

For Vincent Andella, on behalf of himself and all others similarly situated, Plaintiff: Aaron H. Darsky, Juden Justice Reed, Robert C. Schubert, Schubert & Reed LLP, San Francisco, CA; Daniel D'Angelo, Kenneth George Gilman, Gilman and Pastor, LLP, Boston, MA; David Pastor, Gilman & Pastor, Boston, MA.

For Brett M. Johnson, on behalf of himself and all others similarly situated, Plaintiff: Arthur L. Shingler, III, Scott + Scott, LLC, San Diego, CA; Dennis James Johnson, Johnson & Perkinson, South Burlington, VT.

For Elie Mizrahi, individually and on behalf of all others similarly situated, Plaintiff: Aaron H. Darsky, Juden Justice [*3] Reed, Robert C. Schubert, Willem F. Jonckheer, Schubert & Reed LLP, San Francisco, CA; Christopher Lovell, Craig Essenmacher, Keith Essenmacher, Lovell Stewart Halebian LLP, New York, NY.

For Daniel Perkel, on behalf of himself and all others similarly situated, Plaintiff: Henry A. Cirillo, LEAD ATTORNEY, Christopher Lee Lebsock, Jon T. King, Thomas Patrick Dove, The Furth Firm LLP, San Francisco, CA; Andrew B. Bullion, Cohen, Michael D. Hausfeld, Milstein, Hausfeld & Toll, Washington, DC; Charles E. Tompkins, Patrick Allard Tillou, Cohen Milsten Hausfeld & Toll, P.L.L.C., Washington, DC; Michael Paul Lehmann, LEAD ATTORNEY, Cohen Milstein Hausfeld & Toll, PLLC, San Francisco, CA.

For Joseph Clofine, on behalf of himself and all others similarly situated, Heather Daughtrey, on behalf of herself and all others similarly situated, Ronald Herold,

on behalf of himself and all others similarly situated, Marilyn Nasta, on behalf of herself and all others similarly situated, Merle Carey, on behalf of himself and all others similarly situated, Plaintiffs: Christopher M. Burke, Lerach Coughlin Stoia Gellar Rudman & Robbins LLP, San Diego, CA; Elisabeth Anne Bowman, Lerach Coughlin et al LLP,  [*4] San Diego, CA; Mary Jane Edelstein Fait, Wolf Haldenstein Adler Freeman Herz LLP, Chicago, IL; Patrick J. Coughlin, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA; Ronald B. Kowalczyk, Kowalczyk Law Offices P.C., Geneva, IL.

For Roy Jacobs, individually and on behalf of all others similarly situated, Plaintiff: Blake M. Harper, Kirk B. Hulett, Hulett Harper LLP, San Diego, CA; Randall R. Sjoblom, Attorney at Law, Hulett Harper Stewart LLP, San Diego, CA.

For Karol Juskiewicz, on behalf of himself and all others similarly situated, Plaintiff: Joseph Marid Patane, Law Office of Joseph M. Patane, San Francisco, CA; Lauren Clare Russell, Mario Nunzio Alioto, Trump, Alioto, Trump & Prescott, LLP, San Francisco, CA.

For Advanced Technology Distributors, Inc., a California corporation, on behalf of itself and all others similarly situated, Plaintiff: Fred A. Silva, Kathy Lee Monday, Damrell, Nelson, Schrimp, Pallios, Pacher & Silva, Modesto, CA; Roger M. Schrimp, Damrell, Nelson, Schrimp, Pallios, Pache, Modesto, CA.

For Joseph Salazar, on behalf of himself and all others similarly situated, Plaintiff: Adam C. Belsky, Monique Alonso, Terry Gross, Gross & Belsky LLP, San  [*5] Francisco, CA.

For Edna L. Gallegos, on behalf of herself and all others similarly situated, Plaintiff: Daniel Joseph Mulligan, Jenkins Mulligan & Gabriel LLP, San Francisco, CA; Derek G. Howard, Gilmur Roderick Murray, Scott Justin Yundt, Murray & Howard, LLP, Oakland, CA; Larry Gabriel, Jenkins, Mulligan & Gabriel, San Francisco, CA.

For Scott Erickson, on behalf of himself and all others similarly situated, Plaintiff: Henry A. Cirillo, LEAD ATTORNEY, Christopher Lee Lebsock, Jon T. King, Thomas Patrick Dove, The Furth Firm LLP, San Francisco, CA; Michael Paul Lehmann, Cohen Milstein Hausfeld & Toll, PLLC, San Francisco, CA; Elizabeth R. Odette, W. Joseph Bruckner, Lockridge Grindal Nauen P.L.L.P, Minneapolis, MN.

For Albert Cella, individually and on behalf of all others similarly situated, Plaintiff: Henry A. Cirillo, LEAD ATTORNEY, Christopher Lee Lebsock, Jon T. King, The Furth Firm LLP, San Francisco, CA; Amir Stark, Lee Albert, Mager & Goldstein LLP, Philadelpia, PA; Jayne Arnold Goldstein, Mager & Goldstein LLP, Weston, FL; Michael Paul Lehmann, Cohen Milstein Hausfeld & Toll, PLLC, San Francisco, CA.

For FME Architecture + Design, on behalf ofitself and all others similarly situated,  [*6] Plaintiff: Josef D. Cooper, Tracy R. Kirkham, Cooper & Kirkham, P.C., San Francisco, CA; Kelly Ann Horne, Cooper & Kirkham, San Francisco, CA.

For Angela Roark, on behalf of herself and all others similarly situated, Plaintiff: Christopher M. Burke, Lerach Coughlin Stoia Gellar Rudman & Robbins LLP, San Diego, CA; Christopher Collins, Elisabeth Anne Bowman, Lerach Coughlin et al LLP, San Diego, CA; Mary Jane Edelstein Fait, Wolf Haldenstein Adler Freeman Herz LLP, Chicago, IL; Patrick J. Coughlin, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, CA.

For Fred Williams, on behalf of himself and all others similarly situated, Plaintiff: Donald Chidi Amamgbo, Esq., Amamgbo & Associates, Oakland, CA; Judith Blackwell, Blackwell & Blackwell, Oakland, CA; Lawrence Dumzo Nwajei, Law Offices of Lawrence D. Nwajei, Los Angeles, CA; Reginald Von Terrell, THE TERRELL LAW GROUP, Richmond, CA.

For Jordan Walker, on behalf of himself and all others similarly situated, Plaintiff: David William Shapiro, LEAD ATTORNEY, John F. Cove, Jr., Kevin James Barry, Boies, Schiller & Flexner LLP, Oakland, CA; Philip J Iovieno, LEAD ATTORNEY, Boies, Schiller & Flexner LLP, Washington, DC; William  [*7] A. Isaacson, LEAD ATTORNEY, Boies Schiller & Flexner, Washington, DC.

For Alan Holtzman, Plaintiff: Anthony D. Shapiro, George W. Sampson, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA; Jason Allen Zweig, Laurence D. King, Lori Sambol Brody, Kaplan Fox & Kilsheimer LLP, New York, NY; Ronnie Seidel Spiegel, Hagens Berman Sobol Shapiro, Seattle, WA.

For Yury Furman, Plaintiff: Zev Benjamin Zysman, Weiss & Lurie, Los Angeles, CA.

For Bryan Schindelheim, Plaintiff: Clifford H. Pearson, Daniel L. Warshaw, Gary Scott Soter, Pearson, Simon, Soter, Warshaw & Penny LLP, Sherman Oaks, CA.

For Christopher C. Crawford, on behalf of himself and all others similarly situated in South Dakota, Plaintiff: Eric James Pickar, Bangs, McCullen, Butler, Foye & Simmons, L.L.P., Rapid City, SD.

2007 U.S. Dist. LEXIS 57982, *7

For Tabbatha Benson, Scott Friedson, Michael Brooks, Joe Solo, Brittany Chung, onn behalf of themselves and all others similarly situated, Plaintiffs: Gordon Ball, Ball & Scott, Knoxville, TN.

For Allen Nassiff, on behalf of himself and all others similarly situated, Plaintiff: Mary Gilmore Kirkpatrick, Kirkpatrick & Goldsborough, PLLC, South Burlington, VT.

For Stephanie Lueckel, Plaintiff: Garrett J. Bradley, [*8] Thronton & Naumes LLP, Boston, MA.

For Joseph Peirano, Plaintiff: Christopher Thomas Micheletti, Craig C. Corbitt, Francis Onofrei Scarpulla, Judith A. Zahid, Qianwei Fu, Zelle Hofmann Voelbel Mason & Gette LLP, San Francisco, CA; Douglas John Rovens, Zelle, Hofmann, Los Angeles, CA; Steven Andrew Lamb, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Los Angeles, CA.

For Paul Smith, Plaintiff: Christopher Lovell, Craig Essenmacher, Keith Essenmacher, Lovell Stewart Halebian LLP, New York, NY; Michael David Braun, BRAUN LAW GROUP, P.C., Los Angeles, CA.

For Jean McClellan-Chambers, Plaintiff: Craig C. Corbitt, Francis Onofrei Scarpulla, Judith A. Zahid, Matthew Rutledge Schultz, Qianwei Fu, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA; Daniel E. Gustafson, Jason S. Kilene, Renae D. Steiner, Gustafson Gluek PLLC, Minneapolis, MN; Dianne M. Nast, Roda & Nast PC, Lancaster, PA; Douglas John Rovens, Zelle, Hofmann, Los Angeles, CA; Michael L. Roberts, Roberts Law Firm, Little Rock, AR; Richard Quintus, Roberts Law Firm, PA, Little Rock, AR; Steven Andrew Lamb, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Los Angeles, CA.

For Yury Furman, Plaintiff: Jordan Laurence Lurie, Zev Benjamin [*9] Zysman, Weiss & Lurie, Los Angeles, CA.

For Jennifer Tomaino, Plaintiff: Christine Pedigo Bartholomew, Finkelstein Thompson LLP, San Francisco, CA.

For Woodrow Clark, II, Plaintiff: Brian Joseph Barry, Esq., Law Offices of Brian Barry, Los Angeles, CA; Randy R. Renick, Law Offices of Randy Renick, Pasadena, CA.

For Ann Scott, Plaintiff: Craig C. Corbitt, Francis Onofrei Scarpulla, Judith A. Zahid, Matthew Rutledge Schultz, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA; Daniel E. Gustafson, Jason S. Kilene, Renae D. Steiner, Gustafson Gluek PLLC, Minneapolis,

MN; Dianne M. Nast, Roda & Nast PC, Lancaster, PA; Marc J. Shrake, Squire, Sanders & Dempsey, LLP, Los Angeles, CA; Michael L. Roberts, Roberts Law Firm, Little Rock, AR; Richard Quintus, Roberts Law Firm, PA, Little Rock, AR.

For Ann L. Scott & Company, Plaintiff: Craig C. Corbitt, Francis Onofrei Scarpulla, Judith A. Zahid, Matthew Rutledge Schultz, Qianwei Fu, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA; Daniel E. Gustafson, Jason S. Kilene, Renae D. Steiner, Gustafson Gluek PLLC, Minneapolis, MN; Dianne M. Nast, Roda & Nast PC, Lancaster, PA; Marc J. Shrake, Squire, Sanders & Dempsey, LLP, Los [*10] Angeles, CA; Michael L. Roberts, Roberts Law Firm, Little Rock, AR; Richard Quintus, Roberts Law Firm, PA, Little Rock, AR.

For Scott Martin, Plaintiff: Isaac L. Diel, LEAD ATTORNEY, Sharp McQueen, Shawnee Mission, KS; Daniel R. Karon, Goldman Scarlato and Karon, PC, Cleveland, OH; Frank Jablonski, Progressive Law Group, LLC, Madison, WI; Gordon Ball, Ball & Scott, Knoxville, TN; Ilan Joel Chorowsky, Chorowsky Law Offices, Progressive Law Group LLC - Of Counsel, Chicago, IL; Krishna B. Narine, Law Offices of Krishna B. Narine, Elkins Park, PA.

For Thomas Y. Huh, Plaintiff: Craig C. Corbitt, Francis Onofrei Scarpulla, Judith A. Zahid, Matthew Rutledge Schultz, Qianwei Fu, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA; Daniel E. Gustafson, Jason S. Kilene, Renae D. Steiner, Gustafson Gluek PLLC, Minneapolis, MN; Douglas John Rovens, Zelle, Hofmann, Los Angeles, CA; Irwin Levin, Scott D. Gilchrist, Cohen & Malad, Indianapolis, IN; Steven Andrew Lamb, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Los Angeles, CA.

For Alan Holtzman, on behalf of himself and all others similarly situated, Plaintiff: Anthony D. Shapiro, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, [*11] WA; Elaine T. Byszewski, Hagens Berman LLP, Los Angeles, CA; Gary Laurence Specks, Jason Allen Zweig, Kaplan Fox & Kilsheimer LLP, New York, NY; Richard Jo Kilsheimer, Kaplan Fox & Kilsheimer LLP, New York, NY; Robert N. Kaplan, Kaplan Kilsheimer & Fox LLP, New York, NY.

For James Allee, Plaintiff: Allan Steyer, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, San Francisco, CA.

For James Matson, on behalf of himself and all others similarly situated, Plaintiff: Daniel D'Angelo, Kenneth George Gilman, Gilman and Pastor, LLP, Boston, MA.

For Chad Klebs, Plaintiff: Christopher Thomas Micheletti, Craig C. Corbitt, Francis Onofrei Scarpulla, Matthew Rutledge Schultz, Qianwei Fu, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA; Douglas John Rovens, Zelle, Hofmann, Los Angeles, CA; Steven Andrew Lamb, Zelle, Hofmann, Voelbel, Mason & Gette LLP, Los Angeles, CA.

For Mike Kinkade, on behalf of himself and all others similarly situated, Plaintiff: James G. Stranch, III, Branstetter Stranch & Jennings, PLLC, Nashville, TN; James G. Stranch, IV, Branstetter Kilgore Stranch & Jennings, Nashville, TN.

Scott Redpath, Plaintiff, Pro se.

For Nvidia Corporation, Defendant: James Donato, LEAD [*12] ATTORNEY, Jeffrey Gutkin, LEAD ATTORNEY, Whitty Somvichian, LEAD ATTORNEY, Cooley Godward Kronish LLP, San Francisco, CA; John C. Dwyer, LEAD ATTORNEY, Stephen Cassidy Neal, LEAD ATTORNEY, Cooley Godward Kronish LLP, Palo Alto, CA; Sarah P. Kelly, Nutter, McClennen & Fish, LLP, Boston, MA.

For ATI Technologies, Inc., Advanced Micro Devices, Inc., Defendant: Charles H. Samel, LEAD ATTORNEY, Latham & Watkins LLP, Los Angeles, CA; Margaret M. Zwisler, LEAD ATTORNEY, Latham & Watkins LLP, Washington, DC; Amanda P Reeves, Latham & Watkins, Washington, DC; Jennifer Anne Carmassi, LATHAM & WATKINS LLP, Los Angeles, CA.

For U.S. DOJ, Antitrust Antitrust Division, Department of Justice, Interested Party: Alexandra Jill Shepard, U.S. Department of Justice, San Francisco, CA.

**Judges:** WILLIAM ALSUP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** WILLIAM ALSUP

# Opinion

**PRETRIAL ORDER No. 4**

**ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY AND DISCLOSURES**

**INTRODUCTION**

In this antitrust multi-district litigation, defendants move to stay discovery and disclosures pending the resolution of their motions to dismiss. Plaintiffs have asked that defendants be required to turn over all documents already produced to the Antitrust Division of the [*13] Department of Justice pursuant to its pending and unindicted criminal investigation. Contrary to defendants, *Federal Rule of Criminal Procedure 6(e)* does not forbid the production of such documents. Also contrary to defendants, the recent *Twombly* decision does not compel a blanket stay of all discovery in antitrust cases pending resolution of motions to dismiss. Defendants have, however, shown that the facts surrounding this case warrant a temporary stay of discovery until the current round of motions to dismiss is resolved. Accordingly, a stay of all discovery and all disclosures is entered. This is without prejudice to revisiting the issue of focused, limited discovery in the event the motions to dismiss are granted.

**STATEMENT**

Defendants Nvidia Corporation and ATI Technologies, Inc., manufacture, market, sell, and distribute graphics processing units. ATI merged with defendant Advanced Micro Devices, Inc., in October 2006. GPUs are dedictated graphics rendering devices used for displaying computer graphics in computers, game consoles, and mobile devices. Allegedly, there are only two majors players in the GPU market -- AMD and Nvidia.

On November 30, 2006, AMD and Nvidia separately [*14] announced that they had received subpoenas asking for documents regarding pricing and customer agreements from the Antitrust Division of the United States Department of Justice. AMD later confirmed in SEC filings that the investigation was criminal in nature. Thus far the investigation has not resulted in any indictments.

The first of these civil antitrust actions was filed on December 4, 2006. Many others quickly followed. A majority of the complaints were filed by indirect purchasers of GPUs; the remainder of them were filed by direct purchasers. By order of the Judicial Panel on Multidistrict Litigation, a number of these actions were consolidated for pretrial purposes on April 18, 2007, pursuant to *28 U.S.C. 1407*. Other tag-along actions have been transferred and consolidated into this multi-district litigation proceeding.

An initial case management conference was held on

May 24, 2007, in which parties first discussed the issue of discovery and its relationship to defendants' anticipated motions to dismiss. A briefing schedule for both the motion to stay and the motions to dismiss was set at the conference. After the conference, an order dated May 30, 2007, appointed interim class [*15] counsel for the indirect and direct purchaser plaintiffs. The motion for a stay of discovery was filed on June 7, 2007, and complaints for both the direct and indirect purchasers were filed on June 14, 2007. The complaints allege that AMD and Nvidia entered into price-fixing agreements in violation of *Section 1* of the Sherman Act and various other state-law claims. The motions to dismiss will be heard on September 20, 2007.

A lengthy hearing on the motion to stay discovery was held on July 10, 2007. Attorney Alexandra Shepard appeared specially on behalf of the Antitrust Division of the Department of Justice. She addressed some of the Court's questions regarding the status of the government investigation and stated that the government neither favored nor opposed a stay. Also, parties were invited to submit supplemental briefing on the issue of prejudice to plaintiffs and the effect of the statute of limitations if a blanket stay of discovery were granted.

## ANALYSIS

Under *Rule 26(c)*, the Court may, on a showing of good cause, enter an order to stay discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." District courts have [*16] broad discretion to stay discovery pending the resolution of dispositive motions, including motions to dismiss under *Rule 12(b)(6)*. *Jarvis v. Regan, 833 F.2d 149, 155 (9th Cir. 1987)*.

## 1. *FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)*.

Defendants contend that rules governing secrecy during a grand jury proceeding support a stay of all discovery. Grand jury secrecy is governed by *Federal Rule of Criminal Procedure 6(e)*. Under *Rule 6(e)(2)(A)*, "[n]o obligation of secrecy may be imposed on any person except in accordance with *Rule 6(e)(2)(B)*." In turn, *Rule 6(e)(2)(B)* states that unless provided otherwise, grand jurors, interpreters, court reporters, operators of recording devices, persons transcribing recorded

testimony, and attorneys for the government must not disclose matters occurring before the grand jury. Simply put, defendants are *not* in the *Rule 6(e)* list. They are free to reveal the subpoena itself as well as all documents produced in response to it. Indeed, a witness appearing before a grand jury is thereafter free to hold a press conference and reveal everything that was asked of him or her and what his or her answers were. The fact of any subpoena and its requests may likewise be published [*17] by the recipient. Since defendants are free to volunteer the information, a court may compel a disclosure. Nothing in *Rule 6(e)* is otherwise.

Defendants next argue that allowing discovery at this time could disrupt the Antitrust Division's ongoing investigation. As stated, however, Attorney Shepard appeared for the government at the hearing and voiced no such objection. She explained that a grand jury had been empaneled on this matter. She also stated that the Antitrust Division had not discussed the pending motion to stay with the parties. The government took no position on the pending motion and presently has no plans to intervene in this action. Since the Antitrust Division appears to believe discovery in this action can coexist with its grand jury investigation, defendants' argument that discovery here would somehow derail the Antitrust Division's efforts fails.

Defendants next argue that *Rule 6(e)*, as interpreted in case law, supports a general policy of not requiring defendants to disclose documents produced in a grand jury investigation. Requiring disclosure, the argument goes, would open up defendants to scandal merely on account of a grand jury investigation that may go nowhere. [*18] This argument is overblown. The records will show only what the records will show. If they show antitrust scandal, then they would reveal nothing more than the facts.

*Rule 6(e)* has not been interpreted as a complete bar on producing documents given to the grand jury. "[I]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, *Rule 6(e)* does not prohibit its release." *United States v. Dynavac, 6 F.3d 1407, 1411-12 (9th Cir. 1993)*. The Ninth Circuit later explained that "the only exception to *Dynavac* is if the material reveals a secret aspect of the grand jury's workings." *Kersting v. United States, 206 F.3d 817, 821 (9th Cir. 2000)*. Defendants' policy argument fails because Ninth Circuit decisions reflect a concern in protecting the grand jury

proceedings themselves, not the reputations of targets of investigations. Here, plaintiffs do not ask for documents related to any actual proceedings before a grand jury.

Defendants cite _In re Sealed Case, 255 U.S. App. D.C. 340, 801 F.2d 1379, 1381-82 (D.C. Cir. 1986)_, in support of their view. _First,_ this decision is not binding here as it is [*19] out-of-circuit authority. _Second,_ in that decision, the documents sought by the SEC were wide-ranging, and affidavits in connection with the requests failed to establish a need for any specific document. _Id. at 1382_. The D.C. Circuit held that such broad requests were inappropriate. Had the SEC shown particularized need for specific, identifiable documents, the SEC could have possibly received them.

Finally, defendants contend that the decision _In re Sulfuric Acid Antitrust Litigation, 2004 U.S. Dist. LEXIS 6194, 2004 WL 769376 (N.D. Ill. 2004)_, forbids turning over the documents produced earlier to the Department of Justice. That decision acknowledged that _Rule 6(e)_ does not explicitly allow defendants to resist document production in a civil case, recognizing that civil defendants are not named in the rule. There, a grand jury was in session concurrently with a parallel civil antitrust action. A motion to compel production of _any and all_ documents produced to or received from _any_ federal or state government entity was denied. _2004 U.S. Dist. LEXIS 6194, [WL] at *1_. Perhaps this was a sound outcome but nothing in _Rule 6(e)_ requires the result.

In short, contrary to defendants, _Rule 6(e)_ simply does not authorize a blanket prohibition on civil [*20] production of documents already given to a grand jury. Nor does it bar compliance with a request to make a duplicate set of all documents given to a grand jury.

## 2. THE _TWOMBLY_ DECISION.

Defendants next argue that a recent Supreme Court decision, _Bell Atlantic Corp. v. Twombly, U.S. , 127 S.Ct. 1955, 167 L. Ed. 2d 929 (May 21, 2006)_, holds by implication that no discovery may proceed in an antitrust action before the complaint is held viable.

The Supreme Court's decision in _Twombly_ addressed pleading standards for antitrust complaints alleging conspiracy under the Sherman Act. It noted that "[w]hile a complaint attacked by a _Rule 12(b)(6)_ motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." The decision criticized a common interpretation of the hoary "no set of facts" language from _Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)_. _Twombly_ noted that "[o]n such a focused and literal reading of Conley's 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever [*21] the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." _Id. at 1968_.

Specific to antitrust actions, the Supreme Court held that merely pleading parallel conduct or interdependence of behavior, even when consistent with antitrust conspiracy, was not sufficient to state a claim for conspiracy. _Id. at 1964_. Stating a claim under _Section 1_ of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." _Id. at 1965_. On the facts in _Twombly,_ the defendant telecom companies' behavior could have been conceivably construed as consistent with illegal activity, however, their behavior also supported a conclusion that the telecom companies were merely acting rationally in accordance with past behavior. _Id. at 1971-73_. The plaintiffs had "not nudged their claims across the line from conceivable to plausible," so the complaint [*22] was dismissed. _Id. at 1974_.

_Twombly_ also discussed discovery in antitrust actions. The decision noted that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." _Id. at 1967_ (internal citations omitted). The action involved "a putative class of at least 90 percent of all subscribers to local telephone or high-speed Internet service in the continental United States, in an action against America's largest telecommunications firms (with many thousands of employees generating reams and gigabytes of business records) for unspecified (if any) instances of antitrust violations that allegedly occurred over a period of seven years." _Ibid._ The Court concluded that "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery]

process will reveal relevant evidence." *Id. at 1967*.

Defendants' statement that "*Twombly* stands for the proposition that antitrust plaintiffs cannot subject defendants to *any* discovery [*23] until the Court determines that the plaintiffs have articulated a 'plausible entitlement to relief' on the face of the complaint" is incorrect (Reply Br. at 2) (emphasis in original). This order does not read *Twombly* to erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss. Defendants' argument upends the Supreme Court's holding; the decision used concerns about the breadth and expense of antitrust discovery to identify pleading standards for complaints, it did not use pleading standards to find a reason to foreclose all discovery.

To be sure, to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome. When, however, the discovery would not be so burdensome, a closer question is presented, a question calling for the exercise of discretion and the balancing of competing factors.

## 3. CALIBRATING DISCOVERY IN TANDEM WITH THE DISMISSAL MOTIONS.

Having rejected the arguments for an automatic, blanket stay of all antitrust discovery pending identification of a viable claim, the issue remains whether discovery should, [*24] on the instant record, be postponed pending the resolution of the motions to dismiss. This order concludes that first resolving the motions to dismiss is the better course. After full ventilation of the viability *vel non* of the complaint, we will all be in a much better position to evaluate how much, if any, discovery to allow. If, among other possible outcomes, the complaint proves to be solid save for perhaps a single soft element for which evidence would normally be outside the reach of plaintiffs' counsel without discovery, then it may be that a narrowly-directed and less burdensome discovery plan should be allowed with leave to amend to follow. If, however, the complaint proves to be so weak that any discovery at all would be a mere fishing expedition, then discovery likely will be denied. Of course, if the complaint is sustained, then discovery will proceed apace. The immediate point is that adjudicating the motions to dismiss will shed light on the best course for discovery.

Our immediate circumstances omit any compelling need

for prompt discovery, such as might be the case if provisional relief were being sought or if testimony needed to be preserved due to ill health of a witness. [*25] It is true that the Court has indicated that it will try to manage this case so that it will end at least by the end of 2008. The leisurely briefing schedule on the motions to dismiss was recommended by both sides -- neither side should now try to capitalize on that schedule to advance or to delay discovery. In sum, we have no urgent need for immediate discovery. We have time enough to critique the complaint and to then consider the best course for discovery.

Nor is this a case where it is almost certain that the complaint is viable, such as is often true where guilty pleas have already been entered in a parallel criminal case. Of course, in such conditions, at least some discovery should ordinarily proceed despite any pending motion to dismiss (unless civil discovery would interfere with a criminal case). Here, there has been no indictment, much less any guilty plea by any defendant. This factor seems to distinguish the circumstances in the unreported decision of Judge Claudia Wilken in the SRAM case where she ordered the records given to the Antitrust Division to be produced to plaintiffs' counsel.

It is true that the discovery sought at this time is the same discovery already gathered, [*26] assembled, and produced to the government. Therefore, the incremental cost to produce a duplicate set to plaintiffs' counsel would be minor in the overall picture. Still, there would be the issue of various objections (based, for example, on employee privacy) that might be assertable against plaintiffs that were unasserted against the government. Defendants would be entitled to interpose possibly valid objections that would take time to evaluate. And, regardless of the foregoing, the compelled act of turning records over to the government pursuant to the subpoena does not mean that everyone else has an equal right to rummage through the same records. Defendants have a legitimate interest in maintaining the confidentiality of their records. Without question, this interest may eventually have to yield to civil discovery interests but, for the reason stated, whether and the extent to which this should occur will be best decided after ruling on the *Rule 12* motions. All other considerations raised by the parties, including issues of prejudice and burden, may be re-asserted at that time, the foregoing being persuasive and dispositive at this juncture.

## CONCLUSION

2007 U.S. Dist. LEXIS 57982, *26

For all of the above-stated [*27] reasons, defendants' motion to stay all discovery and disclosures pending the resolution of the motions to dismiss is **GRANTED** subject to a new evaluation after the motions to dismiss are decided.

**IT IS SO ORDERED.**

Dated: July 24, 2007.

WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

---

**End of Document**

# Tab 13

## *Mahajni v. Vu Do*

United States District Court for the Eastern District of Wisconsin

March 10, 2025, Decided; March 10, 2025, Filed

Case No. 24-cv-416-pp

**Reporter**

2025 U.S. Dist. LEXIS 42426 *; 2025 LX 235005; 2025 WL 753144

MARWAY MAHAJNI, Plaintiff, v. DEPUTY VU DO, DEPUTY SCOTT WOIDA, JOHN DOE DEFENDANTS 1-5 and ABC INSURANCE COMPANY, Defendants.

**Counsel:** [*1] For Marwan Mahajni, Plaintiff: Annalisa Pusick, Antonique C Williams, Madison M Bedder, Nathaniel Cade, Jr, Cade Law Group LLC, Milwaukee, WI; Kimberley C Motley, Motley Legal Services, Kimberley Motley, Matthews, NC.

For Milwaukee County, Deputy Vu Do, Deputy Scott Woida, David Clarke, Defendants: Benjamin James Nichols, Brianna J Meyer, Zachary J Flood, Crivello Nichols & Hall SC, Milwaukee, WI; Karen L Tidwall, Office of Corporation Counsel, Milwaukee, WI; Samuel C Hall, Jr, Crivello, Nichols & Hall SC, Milwaukee, WI; William G Davidson, Milwaukee County, Office of Corporation Counsel, Milwaukee, WI.

**Judges:** HON. PAMELA PEPPER, Chief United States District Judge.

**Opinion by:** PAMELA PEPPER

# Opinion

### ORDER GRANTING DEFENDANTS' MOTION TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL (DKT. NO. 42)

On November 27, 2024, the defendants filed a motion, dkt. no. 42, asking the court to certify the following issue for interlocutory appeal:

> For purposes of the statute of limitations, did Plaintiff's *42 U.S.C. § 1983* claims against Defendants Do and Woida accrue:
> (1) at the time Plaintiff's underlying criminal convictions were invalidated and vacated on March 11, 2020; or
>
> (2) at the time Plaintiff's underlying criminal case

was dismissed with prejudice [*2] on October 24, 2022.

Id. The court will grant the motion.

### I. Background

On August 6, 2024, the plaintiff filed a complaint raising claims against Milwaukee County, Deputy Vu Do, Deputy Scott Woida, former Sheriff David Clarke, John Doe Defendants 1-5 and ABC Insurance Company. Dkt. No. 1 at ¶¶9-14. Broadly, the plaintiff alleges that the bailiffs at his criminal trial—Deputies Do and Woida—improperly instructed jurors that "they *must* reach a unanimous verdict and cannot be deadlocked on any counts." Id. at ¶¶1-2 (emphasis in original). The plaintiff explains that after the deputies' wrongful interference, the jury found him guilty of one count of kidnapping and one count of 2nd degree sexual assault. Id. at ¶¶30-40. The trial court sentenced the plaintiff; on appeal, the Wisconsin Court of Appeals remanded the case so that the trial court could conduct an evidentiary hearing to determine whether the jury was prejudiced by extraneous information. Id. at ¶¶72, 77, 89. Because of testimony presented at the evidentiary hearing, "[t]he government conceded and the trial court concluded on March 11, 2020 that 'this court must find that at least one juror received prejudicial extraneous information [*3] and that a new trial is required as a remedy.'" Id. at ¶93. On March 11, 2020, the state trial court vacated the plaintiff's two convictions and the plaintiff entered a not guilty plea. Id. at ¶¶93-94. "On October 24, 2022, the State noted that they would be unable to meet their burden of proof against [the plaintiff], and then the state moved to dismiss all counts against [the plaintiff]." Id. at ¶97. "Based on the State's motion, the court dismissed all of the criminal charges against [the plaintiff] with prejudice." Id.

After answering the federal complaint, dkt. no. 16, the defendants filed a motion for judgment on the pleadings, dkt. no. 20. The defendants argued that (1) all the plaintiff's claims are barred by the relevant statute of

limitations, (2) Deputy Woida is entitled to absolute immunity, (3) Deputies Do and Woida are entitled to qualified immunity, (4) the plaintiff failed to comply with the notice requirements of *Wis. Stat. §893.80(1d)*, (5) the plaintiff failed to state a <u>Monell</u> claim and (6) former Sheriff Clarke is not a proper party. Dkt. No. 21 at 4-22.

On November 20, 2024, this court held a hearing, granting in part and denying in part the motion for judgment on the pleadings. Dkt. [*4] Nos. 38-39. The court granted the defendants' motion to the extent that it dismissed the plaintiff's state law claims, his *42 U.S.C. §1983* municipal liability claims against the City of Milwaukee and David Clarke and his *42 U.S.C. §1983* individual capacity claims against David Clarke. <u>Id.</u> The court denied the defendants' motion regarding the statute of limitations, absolute immunity on behalf of defendant Do and qualified immunity on behalf of defendants Do and Woida.[1] <u>Id.</u>

Regarding the statute of limitation issue, the court observed that "both parties agree that the *Heck* doctrine in some way or another tolled the accrual of the plaintiff's claims, but they disagree about when that tolling occurred, or, I suppose, more to the point, when it ended." Dkt. No. 47 at 20 (citing *Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)*). The court explained that the defendants contend that the plaintiff's claim began accruing on March 11, 2020 (when the trial court vacated the plaintiff's convictions) while the plaintiff argued that his claim began accruing on October 24, 2022 (when the state conceded it did not have sufficient evidence to convict the plaintiff and the trial court dismissed all of the criminal charges against the plaintiff with prejudice). <u>Id.</u> at 20-21. The [*5] court opined that it was "not entirely . . . clear that *Heck* answers the question here." <u>Id.</u> at 23. The court stated, "I don't get a whole lot more guidance from the more recent cases, the <u>McDonough</u> decision and—and the Seventh Circuit's decision in <u>Camm</u>, I'm not entirely sure that they're any more helpful." <u>Id.</u> at 24 (citing

---

[1] The court determined that the plaintiff sufficiently had alleged that defendant Do violated the clearly established right to have a jury free of prejudicial extraneous information. Dkt. No. 47 at 37. But the court observed that the qualified immunity question was "a little more complicated" with defendant Woida because "neither party separated out the [failure to intervene] allegations against Woida from the allegations against Do." <u>Id.</u> at 38. Ultimately, the court decided not to extend qualified immunity to defendant Woida, but clarified that it made that decision without prejudice so that the defendants could raise the argument at the summary judgment stage. <u>Id.</u> at 39-40.

*McDonough v. Smith, 588 U.S. 109, 139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019)*; *Camm v. Faith, 937 F.3d 1096 (7th Cir. 2019)*). But the court opined that the instant case required "a more practical and pragmatic determination[,]" before explaining:

> If there were a parallel civil lawsuit going on at the same time, and let's say the defendants in the civil lawsuit wanted, for example, to get the plaintiff's testimony about his injuries, well, he'd have the right to plead the Fifth, and so the civil suit wouldn't be going anywhere. Maybe there would be evidence, other evidence that the defendants in the civil lawsuit would seek that could cause issues for the plaintiff in the criminal lawsuit.
>
> I agree that—that, you know, the same issue wouldn't be coming up in the criminal lawsuit, that is, an issue of bailiffs allegedly behaving improperly with the jury, but from a practical standpoint, I don't see how those two suits could have run parallel to each other without in some way or another endangering the [*6] plaintiff's trial rights in the criminal case and pretty much requiring the civil case probably to be stayed until the civil case was resolved.

<u>Id.</u> at 24-26. The court stated that "[s]ome of this circles back to the policy that underlies the *Heck* doctrine," and noted that, "[i]n *McDonough*, the Supreme Court was talking about the *Heck* doctrine, and it said that forcing a criminal defendant to kind of hurry up and file their 1983 in federal court before all the criminal proceedings had finished on the state court level would expose a defendant to risk." <u>Id.</u> at 26. After reading several quotations from the *McDonough* decision, the court held the following:

> Now, again, I don't think that this—the plaintiff's claim here necessarily questioned the validity of the retrial in the state case, but I do think that this issue of sort of filing a civil case that could be dormant could be unripe due to a risk that it would impede the plaintiff's rights in his civil case—in his criminal case in state court applies here.
>
> So I think even if *Heck* itself is not fully applicable or on all fours with the situation that we have here, I think that some of the policy ideas that underlie *Heck*, that underlie *McDonough*, counsel in favor of my finding that [*7] the plaintiff's claims accrued in October of 2022 when finally all of the criminal charges against him were dismissed by the Milwaukee County Circuit Court with prejudice.

It was at that point on October 24th of 2022 that the plaintiff knew that he no longer had *Fifth Amendment* concerns, he no longer had *Sixth Amendment* concerns, and he could bring a *1983* claim without fear that that claim would somehow impinge on his criminal rights or that he'd be required to give testimony or produce discovery that could impinge on his criminal rights.

Id. at 27-28. For these reasons, the court denied the defendants' motion for judgment on the pleadings as to their statute of limitation argument. Id. at 28.

On November 27, 2024, the defendants filed a notice of interlocutory appeal, dkt. no. 44, and a motion to certify issue for interlocutory appeal, dkt. no. 42. In their *Seventh Circuit Rule 3(c)* docketing statement, the defendants explained that because the denial of qualified immunity is a "final" order under *28 U.S.C. §1291*, they are "appeal[ing] the denial of qualified immunity on the claims against Deputy Woida for alleged violations of Plaintiff's *Fourth*, *Sixth*, and *Fourteenth Amendment* rights[.]" Dkt. No. 45 at 2-3. The defendants also stated that they are "seek[ing] interlocutory review of the [*8] denial of judgment as a matter of law based on the statute of limitations, which is subject to a motion to certify in the district court." Dkt. No. 45 at 3. As stated above, in their motion to certify, the defendants explained that they are seeking to certify the following issue for interlocutory appeal:

> For purposes of the statute of limitations, did Plaintiff's *42 U.S.C. § 1983* claims against Defendants Do and Woida accrue:
> (1) at the time Plaintiff's underlying criminal convictions were invalidated and vacated on March 11, 2020; or
> (2) at the time Plaintiff's underlying criminal case was dismissed with prejudice on October 24, 2022?

Dkt. No. 42. The plaintiff opposes the defendants' motion to certify the statute of limitations issue for interlocutory appeal. Dkt. No. 52.

## II. Legal Standard

Interlocutory appeal is allowed by *28 U.S.C. §1292(b)*, which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is

substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he [*9] shall so state in writing in such order.

*28 U.S.C. §1292(b)*. The Seventh Circuit has explained that "[t]here are four statutory criteria for the grant of a *section 1292(b)* petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)* (emphasis in original). "There is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Id. at 675-76* (emphasis in original) (citing *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc., 202 F.3d 957, 958 (7th Cir. 2000)*). "Unless *all* these criteria are satisfied, the district court may not and should not certify its order to [the appellate court] for an immediate appeal under *section 1292(b)*." *Id. at 676* (emphasis in original). The Seventh Circuit has "emphasize[d] the duty of the district court and of [the Seventh Circuit] as well to allow an immediate appeal to be taken when the statutory criteria are met . . . ." *Id. at 677*.

## III. Discussion

Although the plaintiff opposes the defendants' motion to certify the statute of limitation question, he concedes that the defendants have satisfied several of *§1292(b)*'s requirements. See Dkt. No. 52. The plaintiff concedes that the defendants filed their petition within a reasonable [*10] time. Id. at 3-4. The plaintiff concedes that the statute of limitation issue presents a controlling question of law, which may materially advance the ultimate termination of the litigation. Id. at 5-6, 13-14. The parties dispute only whether the statute of limitation issue is "contestable." Id. at 6-13.

A question of law is "contestable" if "there is substantial ground for difference of opinion." *28 U.S.C. §1292(b)*. "Courts have differed as to the degree of 'contest' required to make an issue 'contestable' under *§ 1292(b)*." *F.D.I.C. v. Mahajan, Case No. 11 C 7590, 2013 U.S. Dist. LEXIS 99450, 2013 WL 3771419, at *4 (N.D. Ill. July 16, 2013)*. Some courts have determined that "the relevant question is not whether there exists controlling judicial precedent, but rather whether 'other courts have adopted conflicting positions regarding the issue of law proposed for certification.'" *Anderson v. Foster, Case No. 13-CV-256, 2013 U.S. Dist. LEXIS*

121847, 2013 WL 4523228, at *3 (E.D. Wis. Aug. 27, 2013) (quoting In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig., 212 F. Supp. 2d 903, 909-10 (S.D. Ind. 2002)); see also Marshall v. Amsted Rail Co. Inc., Case No. 10 C 011, 2011 U.S. Dist. LEXIS 130690, 2011 WL 5513204, *3 (S.D. Ill. Nov. 11, 2011) (finding a question "contestable" because "various federal courts (district and appellate) have followed different paths and reached opposite conclusions" on an issue). Other courts have concluded that an issue is "contestable" for purposes of §1292(b) "if there is a 'difficult central question of law which is not settled by controlling authority,' and a 'substantial likelihood' exists that the district court's ruling will be reversed [*11] on appeal." City of Joliet v. Mid-City Nat'l Bank, Case No. 05 C 6746, 2008 U.S. Dist. LEXIS 48710, 2008 WL 4889038, *2 (N.D. Ill. June 13, 2008) (quoting In re Brand Name Drugs, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995)).

The defendants argue that the limitation issue is contestable because it "presents a matter of first impression within the alleged factual context of Plaintiff's Complaint," "conflicting authority on the issue exists" and there is "apparent confusion posed by this question of law[.]" Dkt. No. 53 at 4. The court will address these in turn.

Although it appears that there is not controlling authority addressing this specific set of facts,' that necessarily render the issue "contestable." Courts in this circuit have held that just because an issue is a matter of first impression does not mean that there is a substantial ground for differences of opinion. See Manitowoc Cranes LLC v. Sany Am. Inc., Case No. 13-C-677, 2018 U.S. Dist. LEXIS 13825, 2018 WL 582334, at *2 (E.D. Wis. Jan. 29, 2018) ("The fact that this is an issue of first impression and has not been addressed in this or any other circuit in itself does not demonstrate a substantial ground for difference of opinion."); Kisting v. Gregg Appliances, Inc., Case No. 16-CV-141, 2017 U.S. Dist. LEXIS 835, 2017 WL 44832, at *3 (E.D. Wis. Jan. 4, 2017) ("The fact that there is no Seventh Circuit precedent on the issue, however, does not establish substantial ground for difference of opinion." (citing Anderson, 2013 U.S. Dist. LEXIS 121847, 2013 WL 4523228, at *3); Hollinger Intern., Inc. v. Hollinger, Inc., Case No. 04-C-0698, 2005 U.S. Dist. LEXIS 4511, 2005 WL 327058, at *3 (N.D. Ill. Feb. 2, 2005) ("The movant thus may not prevail by simply showing a 'lack of judicial precedent' or that the issue is one of first impression."). Although the novelty of an [*12] issue may be a factor in demonstrating the contestability of an issue, novelty alone is not dispositive. See Aspen Am. Ins. Co. v.

Charmoli, Case No. 23-CV-0610, 2023 U.S. Dist. LEXIS 122217, 2023 WL 4562548, at *3 (E.D. Wis. July 17, 2023) (observing that "cases treat novelty as a factor bolstering the 'substantial likelihood' of reversal on appeal" before determining that "[j]ust because an issue is novel, though, does not necessarily mean it is contentious" (emphasis in original)). The defendants must demonstrate there is a substantial ground for differences of opinion.

Although the defendants have not presented clearly conflicting authority, the court believes that the defendants' arguments sufficiently demonstrate the confusion posed by the limitation question. Boone v. Ill. Dep't of Corr., 71 F.4th 622, 625 (7th Cir. 2023) (determining that a question of law was contestable based on the district court's comments showing "the confusion posed by the question presented to us for review"). As the defendants detail in their briefing, the Heck doctrine primarily has been applied to §1983 claims that imply the invalidity of a conviction or sentence, like malicious prosecution claims or fabrication of evidence claims. Dkt. Nos. 43 at 17-20; 53 at 8-13. In its oral ruling, the court acknowledged that the current case does not fit that typical mold of a Heck case:

> I—I have to confess, I'm—I'm [*13] really not entirely—entirely clear that Heck answers the question here. You know, Heck—Heck comes up most frequently in circumstances where the—the plaintiff is trying in some way or another to use a civil lawsuit, a 1983 lawsuit, to do an end run around what he or she fears will be an unsuccessful motion to reconsider or an unsuccessful appeal in the state court. And in those cases we apply that sort of time worn standard in Heck that says that if a decision in the civil case would somehow invalidate a conviction in the criminal case, then the Heck bar applies.
>
> That clearly is not the case here. The defendants correctly point out that if on March 12th the plaintiff had filed a lawsuit making the claims that it make[s]—that he makes here against Do and Woida and there had been a decision that Do and Woida violated his constitutional rights in the way they behaved with the jury, that wouldn't have invalidated a second—a conviction that might've resulted from a second trial.

Dkt. No. 47 at 23-24 (emphasis added). Despite these observations, the court determined that the "practical

and pragmatic" concerns underlying *Heck* and its progeny called for the court to apply the favorable-determination rule [*14] to the current case. Id. at 24-28. But the court acknowledges that there may be substantial ground for differences of opinion as to how courts may address these practical and pragmatic concerns. See *Towne v. Donnelly, 44 F.4th 666, 674 (7th Cir. 2022)* ("We agree with Mr. Towne that many of *the practical concerns* expressed in *McDonough*, apply also to *First Amendment* retaliatory prosecution claims that challenge ongoing state prosecutions[;] [n]evertheless, we are no*t convinced that these interests justify extending the favorable-termination requirement* to retaliatory prosecution claims arising under the *First Amendment*." (emphasis added)). Because, in this court's view, the legal question posed by the unique facts of the current case is not clearly answered by *Heck* or its progeny, the court concludes that the issue is "contestable."

Because the court finds that the defendants have satisfied all of *§1292(b)*'s requirements, the court will grant their motion.

## IV. Conclusion

The court **GRANTS** the defendants' motion to certify issue for interlocutory appeal. Dkt. No. 42.

Dated in Milwaukee, Wisconsin this 10th day of March, 2025.

**BY THE COURT:**

/s/ Pamela Pepper

**HON. PAMELA PEPPER**

**Chief United States District Judge**

---

**End of Document**

# Tab 14

## *Midwest Gas Servs., Inc. v. Indiana Gas Co.*

United States District Court for the Southern District of Indiana, Indianapolis Division

March 7, 2000, Decided

Cause No. IP 99-690-C-D/F

**Reporter**
2000 U.S. Dist. LEXIS 8098 *; 2000 WL 760700

MIDWEST GAS SERVICES, INC. and MIDWEST GAS STORAGE, INC., Plaintiffs, vs. INDIANA GAS COMPANY, Defendant.

**Disposition:** [*1] Plaintiffs' motion to Compel (doc. no. 19) DENIED.

**Counsel:** For MIDWEST GAS SERVICES INC, MIDWEST GAS STORAGE INC, plaintiffs: GARY HANNER, HANNER, HANNER & HANNER, ROCKVILLE, IN.

For MIDWEST GAS SERVICES INC, MIDWEST GAS STORAGE INC, plaintiffs: TODD A RICHARDSON, LEWIS & KAPPES, INDIANAPOLIS, IN.

For MIDWEST GAS SERVICES INC, MIDWEST GAS STORAGE INC, plaintiffs: PETER M KING, CANEL DAVIS AND KING, CHICAGO, IL.

For INDIANA ENERGY SERVICES INC, defendant: JOSEPH J JACOBI, BARNES & THORNBURG, INDIANAPOLIS, IN.

For PROLIANCE ENERGY LLC, defendant: WAYNE C TURNER, MCTURNAN & TURNER, STEVEN M SHERMAN, PROLIANCE ENERGY, LLC, INDIANAPOLIS, IN.

**Judges:** KENNARD P. FOSTER, Magistrate Judge.

**Opinion by:** KENNARD P. FOSTER

# Opinion

**ENTRY AND ORDER on Plaintiffs' Motion to Compel (doc. no. 19).**

In this Cause, the plaintiffs allege that the defendant violated federal and state antitrust laws through its formation of a marketing affiliate and its denial of access to its essential facilities to the plaintiffs. The defendant received a Civil Investigative Demand ("C. I. D.")

requesting information relating to the defendant and the affiliate from the United States Department of Justice ("D. O. [*2] J."). The plaintiffs served a request for production on the defendant for "any and all documents received from or provided to the United States Justice Department from 1995 to the present." The defendant objects on the grounds of relevancy, work product privilege, attorney-client privilege, and *15 U.S.C. § 1313(c)(3)*.

"Cloned discovery", requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the instant case. The plaintiffs in this Cause have not shown that the fact that any particular document was produced by the defendant to the D. O. J. or received by defendant from the D. O. J. is relevant to the subject matter of this Cause. Instead, the plaintiffs are interested in the content of documents and for that they must make proper requests describing the information in which they are interested. The plaintiffs' counsel must do their own work and request the information they seek directly. The motion to compel is therefore denied.

Alternatively, the Court makes the following rulings [*3] and comments regarding the discovery issues surrounding a C. I. D. which will likely be reasserted should the plaintiffs serve revised requests for production.

The defendant argued that *15 U.S.C. § 1313(c)(3)* establishes a privilege for the documents requested by the plaintiffs. Although *§ 1313(c)(3)*'s text prohibits the United States from disclosing documents that are produced in compliance with a C. I. D., the defendants argue that the privilege should extend to the same documents in the hands of the producer and should extend to documents received from the United States in relation to the C. I. D. in the same way that *Fed.R.Crim.P. 6(e)* prohibits disclosures by grand jury targets. The analogy is not convincing. The interests in maintaining the secrecy of grand jury criminal

2000 U.S. Dist. LEXIS 8098, *3

investigations are significantly more important than for civil investigations by officers of the D. O. J.. We agree with the authorities cited by the plaintiff holding that § 1313(c)(3) does not create a privilege for C. I. D. materials in the hands of a private person. The defendant cited no decision holding that § 1313(c)(3) created such a privilege and the Court concludes that it [*4] does not.

The defendant also contended that the documents produced to the D. O. J. in response to the C. I. D. constitute work product and attorney-client privileged material. We are unable to determine whether the privileges apply based on the defendant's inadequate privilege log and, at any rate, we will wait to confront the issue if and when the plaintiffs move to compel compliance with a new request for production. The Court notes at this time that any pre-existing documents that were produced in compliance with the C. I. D. do not gain any additional privileged status because of that production. In fact, production in response to a C. I. D. might have effected a waiver of any pre-existing work product and attorney-client protections because such privileges apply to C. I. D. requests just as they apply in federal court. 15 U.S.C. § 1312(c); In re Steinhardt Partners, L.P., 9 F.3d 230 (2nd Cir. 1993). Further, there is a split of authority on whether documents newly created or acquired in order to respond to a governmental agency's civil investigation qualifies as work product under Fed.R.Civ.P. 26(b)(3). Compare Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 513 (D. N.H. 1996) [*5] (parties reasonably anticipate litigation from fact of agency investigation), with State of Florida v. Industrial Chemicals, Inc., 145 F.R.D. 585, 587-88 (N.D. Fla. 1991) (agencies can issue civil investigative demands for purely investigative purposes without any reasonable anticipation of litigation); Abel Investment Co. v. United States, 53 F.R.D. 485, 489-90 (D. Neb. 1971). We prefer to receive briefing on this question if and when the plaintiffs move again to compel production of these documents.

If, on any future motion to compel, the defendant claims privileges with respect to documents submitted to the D.O.J., and the documents number no more than those listed in their current privilege log, then the defendant may submit the documents to the Court for in camera inspection along with a revised privilege log better describing the subject matter without revealing privileged content (e.g., "Civil Investigative Demand No. 18460" is too thin), with a copy of the log served on the plaintiffs. The defendant should provide full legal and factual support for any claim of privilege.

The plaintiffs' motion is DENIED.

Done this 7 day of March, [*6] 2000.

KENNARD P. FOSTER, Magistrate Judge.

**End of Document**

# Tab 15

## *Moomaw v. Geosnapshot Pty Ltd.*

United States District Court for the Southern District of Illinois

March 6, 2025, Decided; March 6, 2025, Filed

Case No. 3:23-cv-1321-DWD

**Reporter**

2025 U.S. Dist. LEXIS 41010 *; 2025 LX 149780; 2025 WL 721130

ADAM MOOMAW, REGAN MOOMAW, and SARAH GUSTAFSON Individually and on behalf of all others similarly situated, Plaintiffs, vs. GEOSNAPSHOT PTY LTD, an Australian proprietary limited company, Defendants.

**Prior History:** *Moomaw v. GeoSnapShot PTY Ltd., 2024 U.S. Dist. LEXIS 40480, 2024 WL 991531 (S.D. Ill., Mar. 7, 2024)*

**Counsel:** [*1] For Adam Moomaw, individually and on behalf of others similarly situated, Regan Moomaw, individually and on behalf of others similarly situated, Plaintiffs: Matthew Joseph Limoli, LEAD ATTORNEY, The Driscoll Firm, P.C., Raleigh, NC; John J. Driscoll, Driscoll Firm, LLC, San Juan, PR.

For Sarah Gustafson, individually and on behalf of others similarly situated, Plaintiff: Matthew Joseph Limoli, The Driscoll Firm, P.C., Raleigh, NC.

For Geosnapshot Pty Ltd, an Australian proprietary limited company, Defendant: Josh M. Kantrow, Thomas M. Wolf, PRO HAC VICE, Cameron Liljestrand, Lewis Brisbois, et al. - Chicago, Chicago, IL; Penelope Kathryn Parmer, Lewis Brisbois Bisgaard & Smith LLP, Edwardsville, IL.

**Judges:** DAVID W. DUGAN, United States District Judge.

**Opinion by:** DAVID W. DUGAN

## Opinion

### MEMORANDUM & ORDER

#### DUGAN, District Judge:

Plaintiffs Adam Moomaw, Regan Moomaw, and Sarah Gustafson, bring this putative class action, individually and on behalf of all other similarly situated persons,

against Defendant GeoSnapShot PTY LTD ("GeoSnap" or "GeoSnapShot"), asserting claims under the *Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq.* ("BIPA").[1] Presently before the Court is GeoSnap's Motion for Reconsideration (Doc. 63) of the Court's Order Denying its Motion to Dismiss for [*2] Lack of Personal Jurisdiction ("Original PJ Order"). (Doc. 38).[2]

## I. JURISDICTIONAL FACTS

### A. Overview

GeoSnap created and owns and operates an online photo platform on a globally accessible website: www.GeoSnap.com ("Website"). (Doc. 26-1 ¶ 5). Photographers who register with GeoSnap ("Photographers") can use the Website to upload photos they take at events (and in some instances, license to Website users). (Doc. 26-1 ¶ 5). Website users can use the Website to search for, view, download (and in some cases, purchase licenses to) the photos. (Doc. 26-1 ¶

---

[1] Defendants removed this action from the Circuit Court of St. Clair County, Illinois pursuant to *28 U.S.C. §§ 1332, 1441, 1446,* and *1453.*

[2] On April 12, 2024, GeoSnap and former defendant GeoSnapShot Inc. moved to reconsider the Court's Order denying its Motion to Dismiss or, alternatively, to Modify the Order to Make it Appealable. Thereafter, Plaintiff filed a First Amended Complaint. The First Amended Complaint dropped GeoSnapShot Inc as a defendant and added Sarah Gustafson as a plaintiff. (Doc. 58). As a result, the Court denied the initial motion to reconsider as moot. (Doc. 59). The Court then granted GeoSnap's motion seeking an extension of time to respond to the Amended Complaint to allow GeoSnap to provide time to investigate the additional plaintiff's claims. (Docs. 60 and 61). On August 21, 2024, GeoSnap filed the instant motion indicating that Gustafson's claims are substantially similar to those raised by the original plaintiffs and do not impact the personal jurisdiction arguments previously raised.

5).

GeoSnap's business model is dependent on its collection and use of the biometrics of the people depicted in its online photo platform. (Doc. 58 ¶ 5). GeoSnap encourages event participants to find photos of themselves by uploading a "selfie" and allowing its artificial intelligence to compare that photo with the others in its database. (Doc. 58 ¶ 5). This can only be done by extracting from each photo data representing the unique geometry of each facial image so that comparisons can be made. (Doc. 58 ¶ 5). Under BIPA, "scan[s] of . . . face geometry" are biometrics, *740 ILCS 14/10*. Accordingly, Plaintiffs argue, GeoSnap cannot collect or use such scans [*3] unless it complies with BIPA.

In April 2019, GeoSnap contracted with Tough Mudder, an endurance event company, to allow Photographers to attend and take photographs of participants in Tough Mudder events. (Doc. 58 ¶ 34). On August 24, 2019, Plaintiffs Adam and Regan Moomaw attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. (Doc. 58 ¶ 40). Plaintiff Sarah Gustafson attended Tough Mudder events held in Rockford Illinois, in 2019, 2021, and 2022. (Doc. 58 ¶ 46). Thereafter, Plaintiffs used GeoSnap's Website to locate pictures of themselves participating in the event. Plaintiffs "purchased" complimentary licenses to those photographs and downloaded the same, receiving a receipt from GeoSnap.

**B. GeoSnap**

GeoSnap is a proprietary limited company under the laws of Australia and is based in Sydney, Australia. (Doc. 58 ¶ 10; Doc. 26-1 ¶¶ 2-3). GeoSnap does not maintain a place of business in Illinois. (Doc. 26-1 ¶ 3). GeoSnap does not employ anyone in Illinois. (Doc. 26-1 ¶ 3). GeoSnap does not own, lease, or occupy any property in Illinois, and it does not own any investments in Illinois. (Doc. 26-1 ¶ 3). GeoSnap employs seven full-time employees, and none of those [*4] employees are based in Illinois. GeoSnap's Website is not hosted in Illinois and GeoSnap does not process photographs in Illinois. (Doc. 26-1 ¶ 3; Doc. 27 p. 3).

**C. GeoSnap Website**

GeoSnap.com is a globally accessible website created and owned and operated by GeoSnap. (Doc. 26-1 ¶ 5). The Website includes an online photo platform that is operated by GeoSnap. (Doc. 58 ¶ 4; Doc. 26-1 ¶ 5). GeoSnap markets its platform to both event organizers and photographers. (Doc. 58 ¶ 21).

**D. Photographers**[3]

Photographers must register to use the Website. (Doc. 27-1 §§ 3, 4.1). Once registered, Photographers may utilize GeoSnap's Website services which include "[GeoSnap's] event calendar, [GeoSnap's] business name, [GeoSnap's] relationship with event organizers," and "other Site services." (Doc. 27-1, §§ 8.1, 8.3). Additionally, once registered, Photographers may upload photos to the Website. (Doc. 27-1 § 8.3). For Photographers to be able to upload photos, an "event organizer" (who is not a GeoSnap employee) first must create an event on the Website. (Doc. 26-1 ¶ 7). Alternatively, if an event has not been created, Photographers may create the event themselves and invite other Photographers to attend [*5] the event. (Doc. 27-1, pg. 10 § 8.4).

Photographers agree to GeoSnap's Terms and Conditions by (1) registering for the Website (Doc. 27-1 § 4.1.5); (2) accessing the Website, using the Website, or using any services available on the Website; (Doc. 27-1, § 1); (3) uploading photos to the Website (Doc. 27-1 § § 4.2.10, 4.3); and (4) selling photos on the Website (Doc. 27-1 §§ 1, 4). The Terms and Conditions also state that Photographers must read, understand, and agree to the Terms and Conditions before selling photos on or using the Website. (Doc. 27-1, pg. 2).

**E. GeoSnap Terms and Conditions**

Pursuant to the Terms and Conditions, photographers agree to the following:

> **4.3 Use of the Content and Grant of License**
> By uploading Media Material to the Site the Seller has accepted these Terms and Conditions and agrees to the following conditions:
> 4.3.1. The Site and the Company will use your Media Material for the purpose of licensing your Media Material to customers of the Site in such formats as we may, from time to time make available to Customers, including without limiting the generality of the foregoing, via electronic

---

[3] GeoSnap's Terms and Conditions also refer to Photographers as "Sellers." (Doc. 27-1).

download;

4.3.2. In connection with the foregoing, in addition to the licenses [*6] you grant to the Site elsewhere in these Terms and Conditions, you grant to the Site and the Company a non-exclusive, transferable, fully paid, worldwide license (with the right to sublicense) to use, publish, copy, publicly perform, publicly display, reformat, translate, excerpt (in whole or in part) and distribute copies of your Media Material;

4.3.3. The license includes the right for the Site to use screen resolution images and thumbnails of your Media Material for display and promotional purposes on the Site and any third-party sites, and in connection with internet search results, and embeddable codes;

4.3.4. Media Material will be licensed to customers by the Site in accordance with the Site Terms and Conditions in effect at the time.

(Doc. 27-1 pp. 6-7).

## 8. Usage of the Site

8.1. Sellers may have alternative photography business/brands that they use. The Site supports the sellers right for Sellers to carry on their own photography businesses, however we do not allow you to use the Site services (our event calendar, our business name, our brand, our relationship with other photographers, our relationship with event organizers, or any other Site services) to compete with the Site [*7] or any services that the Site provides.

8.2. Many of the events on the Sites calendar of events are nonexclusive, there may be non-GeoSnap photographers at the event. If you book onto a GeoSnap event you are deemed to be representing GeoSnap at that event and you must upload photos to the GeoSnap platform for sale. You may not advertise that photos from a GeoSnap event are for sale through any other platform or service other than the Site.

8.3. To upload photos to an event on the GeoSnap calendar you must be a registered photographer for that event. The number of photographers who can upload from an event is determined by the event organizer.

8.4. If the event is not on the Sites calendar you can create the event on GeoSnap yourself. You can be a seller at that event and request other Sellers (through the GeoSnap platform) to attend your event and upload photos for sale if you choose.

8.5. The Site events calendar is for the use of Sellers and is a service provided by the Site for its Sellers and Users. The calendar information is to be used solely by Sellers to register onto and attend events as a GeoSnap photographer. The Site calendar should not be used for any other purpose including, [*8] but not limited to; finding events to attend as a non-GeoSnap photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as a non-GeoSnap photographer, passing calendar information to a different company, copying, duplicating, linking to, redirecting to or otherwise using the information for any other purpose.

8.6. If you attend a GeoSnap event you cannot offer an alternative purchasing option for photos other than the Site. You cannot advertise your own website or other place to purchase the photos from the GeoSnap event other than the Site.

8.7. Any photographer who has breached or is deemed by GeoSnap to have breached these terms may have their photographer account suspended or terminated immediately at the sole discretion of GeoSnap inline with the "Termination" clause.

8.8. Some Events and Event Organizers may require you to have a Working with Children Check (WWCC) or similar document determined by your country or state to prove that you are certified to be working around minors). If you book on to an event that requires a WWC then you must ensure that you have a valid WWCC, that it is up-to-date and present a [*9] copy to the event organizer upon arrival at the event.

(Doc. 27-1 pp. 10-11).

Website users, typically individuals who participated in the events, purchase[4] and/or license photos from the events. (Doc. 58 ¶ 4; Doc. 26-1 ¶ 5; Doc. 27-1 p. 3).[5] Individuals who purchase or license photos from the Website also agree to the Website's terms and conditions. (Doc. 27-1 p. 8). The following terms and conditions are applicable to individuals who purchase or license photos from the Website ("Buyers"):

_____

[4] When photos are licensed through the Website, GeoSnap receives 30% of the proceeds. (Doc. 58 ¶ 25).

[5] Initially, photos are only viewable in a lower quality or format to that of the original photo. (Doc. 27-1 p. 3). The original content is only accessible after the buyer successfully purchases or licenses the photos. (Doc. 27-1 p. 3).

**6. Buyers**

By purchasing Media Material from the Site you have understood, accepted and are bound by all these Terms and Conditions.

For clarity you have also read, understood and accepted all the Terms and Conditions laid out for the Sellers.

Media Material viewed on the site is shown in low resolution. Upon purchase of Media Material you will be given a link to download the full resolution Media material to be sued solely for the purposes outlined in these Terms and Conditions.

You understand that by using the Site you may be exposed to Media material that is offensive, indecent or objectionable.

By purchasing the Media Material you have accepted these Terms and Conditions and agrees [sic] to the following: [*10]

6.1.1. By purchasing Media Material you are entering into an agreement with the Seller of the Media Material your purchase of that Media Material gives you a non-transferable, non-resalable, non-exclusive world-wide license to the Media Material;

6.1.2. You may not alter the purchased Media material in any way;

6.1.3. That agreement states that the Seller of the Media Material owns the exclusive world-wide copyright and the Media Material.

6.1.4. You do not have the rights nor may you on-license, on-sell, resell, alter, modify, share, gift or use the Media material for marketing, promotional or sales purposes. The Media material is [to] be used solely for the personal use and not broadcast, displayed to the public or otherwise consumed by anyone other than you;

6.1.5. No endorsement is given that the actual Media Material is true, correct, valid or otherwise authentic in any way or that the Media Material was taken in the place it is positioned on the map;

6.1.6. You will pay the amount associated with each item purchased via PayPal or other mechanism offered through the Site;

6.1.7. After successful payment you will immediately download the Media material which will be presented as a download [*11] link to you. Failure to download the Media Material immediately may result in that Media material no longer being available. Failure to downloaded [sic] immediately will be the sole responsibility of the Buyer and no liability, compensation or damages may be sought from the Company, the Site or the Buyer.

(Doc. 27-1 pp. 8-9).

**F. GeoSnap and Tough Mudder**

In 2019, GeoSnap contracted with Tough Mudder for Photographers to attend and take photographs of participants in Tough Mudder events. (Doc. 58 ¶ 34). Tough Mudder promotes endurance events where participants attempt 10-to-12-mile-long obstacle courses that feature hazards such as fields of mud and tanks of cold water. (Doc. 58 ¶ 35). In an article promoting the partnership between GeoSnap and Tough Mudder, GeoSnap founder and chief executive Andy Edwards ("Edwards") emphasized that GeoSnap's biometric-based Selfie Search feature was central to the agreement. (Doc. 58 ¶ 37). As Edwards stated in the article, because Tough Mudder participants "come out from the muddy depths, face recognition is the only thing that will find photos of them." (Doc. 58 ¶ 37). In the same article, Edwards touted that the Tough Mudder partnership would help [*12] GeoSnap realize "500% growth" in 2019. (Doc. 58 ¶ 38). Between August 2019 and December 2022, GeoSnap's Website has hosted thousands of photographs from at least eleven Tough Mudder events located in Illinois. (Doc. 58 ¶¶ 52, 53).

**G. Plaintiffs**

On August 24, 2019, Plaintiffs Adam and Regan Moomaw attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. (Doc. 58 ¶ 40). At the event, photographers took photographs of Plaintiffs and uploaded them to GeoSnap. (Doc. 58 ¶¶ 42-43). During the upload process, GeoSnap extracted facial biometrics from the photographs. (Doc. 58 ¶¶ 41-42). The Moomaws were never informed that GeoSnap would collect, store, or use their biometrics in the form of data representing the unique geometry of their facial images or that GeoSnap would profit from the use of their biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the Website. (Doc. 58 ¶¶ 43-44). Regan Moomaw later used the GeoSnap website to "purchase" and download complimentary licenses to the photographs and was issued a receipt from GeoSnap (Doc. 26-1 ¶ 13, Doc. 27 p. 2). The receipt confirmed that each photograph was from [*13] the "Tough Mudder Chicago Saturday" event. (Doc. 27-2).

Plaintiff Sarah Gustafson attended Tough Mudder

events held in Rockford, Illinois, in 2019, 2021, and 2022. (Doc. 58, pg. 10). During the events, one or more photographs containing Gustafson's facial image were taken and subsequently uploaded to the GeoSnap website. (*Id.*). Gustafson was never informed that GeoSnap would collect, store, or use their biometrics in the form of data representing the unique geometry of their facial images or that GeoSnap would profit from the use of their biometrics by using them to enable the Selfie Search feature that facilitates the sale of photographs through the Website. (Doc. 58 ¶¶ 49-50).

## II. Personal Jurisdiction Order

On March 7, 2024, this Court found that it has personal jurisdiction over GeoSnap. (Doc. 38). The Court found, in pertinent part, specific jurisdiction exists because GeoSnap's Website structured its commercial activity to invite business from Illinois. Further, as the owner and operator of such a Website, GeoSnap stood "ready and willing" to do business with Illinois residents and then knowingly did business with Illinois residents. The Court also found ample evidence demonstrating [*14] that GeoSnap reasonably should have foreseen that it would be licensing, and in some cases selling, photographs from its online photo platform to Illinois residents such as the Plaintiffs.

The Court rejected the contention that GeoSnap is merely a technology vendor and that any contacts it has with Illinois are the result of a third party's conduct and/or a Website user's unilateral conduct. In so holding, the Court noted that, unlike the cases relied on by GeoSnap, GeoSnap "was not merely involved in a one-off transaction with a third party who, without GeoSnap's knowledge, utilized GeoSnap's technology in Illinois for its own purposes." (Doc. 38, pg. 15). Instead, "GeoSnap created and operated a self-hosted interactive website and allowed users, including Illinois users, to engage in commerce on that website. (*Id.*). The Court also found GeoSnap's contacts with Illinois were the result of decisions made by GeoSnap, and that the contacts demonstrated GeoSnap "purposely exploited the Illinois market in a way that it should have reasonably foreseen its technology being used by, and its photographs being licensed to, Illinois residents." (Doc. 38, pgs. 17-18).

The Court also considered [*15] the relationship between GeoSnap and Photographers attending Tough Mudder events as a basis for personal jurisdiction. The Court found that GeoSnap's Terms and Conditions demonstrate the Photographers were acting as GeoSnap's agents when they photographed events in Illinois and that the Photographers' physical presence in Illinois was attributable to GeoSnap. (Doc. 38, pg. 20). Accordingly, the Court explained, the relationship between GeoSnap and the Photographers provided an alternative basis for establishing purposeful availment.

## III. LEGAL STANDARD

### A. *Federal Rule of Civil Procedure 54(b)*

A court may reconsider an interlocutory order under *Federal Rule of Civil Procedure 54(b)*. The Rule provides that any order that does not resolve all claims as to all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Fed. R. Civ. P. 54(b)*. Motions for reconsideration serve a limited function and are only granted where "the court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)*. "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.*

The [*16] purpose of allowing motions to reconsider is not "to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless." *Frietsch v. Refco Inc., 56 F.3d 825, 828 (7th Cir. 1995)* (refusing to consider argument that a party did not raise until after the court had dismissed the suit). Additionally, reconsideration "is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)*.

### B. Personal Jurisdiction

While there are two forms of jurisdiction, only specific jurisdiction is at issue here. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation and internal quotation marks omitted). Specific jurisdiction "may be condensed to three essential requirements...." *Felland v. Clifton, 682*

*F.3d 665, 673 (7th Cir. 2012)*. First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." *Id.* (citation omitted). Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. [*17] *Id.* Third, any exercise of personal jurisdiction must "comport with traditional notions of fair play and substantial justice." *Id.* (citations omitted). Here, GeoSnap challenges the Court's finding at to the first element — purposeful availment.

## IV. DISCUSSION

### A. Purposeful Availment

### 1. Purposeful Contacts Between GeoSnap and Illinois

GeoSnap contends the Court erred in finding that GeoSnap purposefully directed any activities toward Illinois. In support of this argument, GeoSnap argues the Court's reliance on *NBA Props., Inc. v. Hanwjh, 46 F.4th 614 (7th Cir. 2022)* ("*NBA Properties*") and *Curry v. Revolution Labs., LLC., 949 F.3d 385, 399 (7th Cir. 2020)* ("*Curry*") was improper because these cases are factually distinguishable from the instant case.

According to GeoSnap, *Curry* is distinguishable because GeoSnap (1) did not ship a physical product to Illinois, (2) had no way of knowing where Tough Mudder events would occur, (3) had no control over where Tough Mudder events would take place, and (4) had no reason to know individuals attending Tough Mudder events in Illinois resided in Illinois. (Doc. 63, pgs. 6-7). GeoSnap raised these arguments in connection with its original motion to dismiss for lack of personal jurisdiction. (Doc. 33, pg. 4, arguing that *Curry* is "easily distinguishable because GeoSnap has [*18] no control over where the Tough Mudder events would occur, does not use shipping addresses in Illinois, does not actually deliver any 'product' in Illinois, and does not provide to [sic] a written acknowledgement to any Illinois consumers."). Nonetheless, GeoSnap contends, it is proper to reassert the same arguments in a motion to reconsider because they were "mistakenly overlooked" by the Court. (Doc. 63, pg. 7).

The Court did not overlook these arguments; they were

discussed in the Original PJ Order (Doc. 38, pgs. 14-18), but consideration of additional jurisdictional facts led the Court to conclude that GeoSnap reasonably should have foreseen that it would be licensing (and in some cases selling) photographs from its online photo platform to Illinois residents. (*Id.*). GeoSnap may not now invoke *Rule 54(b)* to revisit arguments that have been previously raised and rejected. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)* ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments...").

GeoSnap's attempt to distinguish *NBA Properties* is also improper in the context of a *Rule 54(b)* motion. Plaintiffs' response to GeoSnap's original personal jurisdiction motion extensively discussed *NBA Properties*. (Doc. 27, pgs. 11-18). [*19] GeoSnap could have presented argument regarding *NBA Properties* in its reply brief but chose not to. GeoSnap cannot now, for the first time in a motion for reconsideration, "raise arguments which could, and should, have been made before [the order being challenged] issued." *FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)*.

The Court therefore rejects GeoSnap's arguments regarding *Curry* and *NBA Properties* as being improperly raised in a motion to reconsider. That being said, GeoSnap's rehashed arguments regarding *Curry* and belated arguments regarding *NBA Properties* fall flat. As the Court previously explained, "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum. *Curry v. Revolution Lab'ys, LLC, 949 F.3d 385, 399 (7th Cir. 2020)*. Likewise, the claim that GeoSnap did not know each user's address does not defeat personal jurisdiction because, at a minimum, Given GeoSnap's purposeful business activity, it has reason to know that it would be transacting business with individuals in Illinois.

GeoSnap contracted with Tough Mudder, an entity that has a market presence both nationally and world-wide, including in Illinois, to provide its product — the [*20] online photo array — to athletes attending Tough Mudder events. GeoSnap held itself out as open for business in Illinois by allowing photographers attending Tough Mudder events, including events in Illinois, to invite attendees to use GeoSnap's Website to license or purchase photographs from GeoSnap's online photo array — in fact, participating photographers were prohibited from distributing event photographs on any

other forum. The photographs available on GeoSnap's Website were grouped by the date and location of the Tough Mudder event. For example, GeoSnap's Website hosted over 22,000 photographs from an event identified as "Tough Mudder Chicago 2022 Saturday." When a customer purchases or licenses a photograph hosted on GeoSnap's Website, the receipt specifies the date and location of the event where the photograph was taken. Given these facts, GeoSnap can hardly complain it did not know some of its photographs would be licensed or purchased by Illinois residents. Therefore, it can be said that GeoSnap reasonably anticipated it would be licensing or selling its product to Illinois residents, such that GeoSnap purposefully availed itself of the benefits of doing business in Illinois. [*21]

The fact that a physical product was not shipped to Illinois does not alter the Court's analysis. See *uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 429 (7th Cir. 2010)* (fact that physical product was not shipped to the forum does not defeat personal jurisdiction when contacts are otherwise sufficient). Nor does the fact that GeoSnap did not charge for licensing Tough Mudder photographs. Like the defendant in *Howell v. Bumble, Inc., No. 21 CV 6898, 2023 U.S. Dist. LEXIS 166243, 2023 WL 6126492 (N.D. Ill. Sept. 19, 2023)*, the aim of GeoSnap's partnership with Tough Mudder was not to generate revenue from licensing photographs at Tough Mudder events, but to increase the company's market share by gaining users who might eventually become paying customers. See *2023 U.S. Dist. LEXIS 166243, [WL] at *9-10* (finding personal jurisdiction even though defendant did not sell or ship products to the forum state and noting that the defendant's goal was to "gain users, preferably those who pay for premium features..." and to "solicit ongoing use" of defendant's dating app).

The Court also is not convinced by the contention that GeoSnap's hosting of over 22,000 photographs from a 2022 Illinois event is irrelevant because the Moomaw's claims arise from an event held in Illinois in 2019. First, this argument was not raised in GeoSnap's original motion to dismiss for lack of personal jurisdiction and has been waived. [*22]  *See Terese 396 F.Supp. 3d at 794*. Second, the record reflects that the Website hosts photos taken from eleven other Illinois events, including the 2019 event the Moomaws attended. (Doc. 58, ¶ 52). Third, the Seventh Circuit has held that contacts arising after a cause of action accrues are relevant to the personal jurisdiction analysis. See *Logan Prods., Inc. v. Optibase, Inc., 103 F.3d 49, 53 (7th Cir. 1996)*; *Dehmlow v. Austin Fireworks, 963 F.2d 941, 948 n.6*

*(7th Cir. 1992)*.

Finally, GeoSnap contends the Court "overlooked" three cases cited in GeoSnap's underlying briefing: (1) *Stein v. Clarifai, 526 F.Supp.3d 339 (N.D. Ill 2021)*, *Gutierrez v. Wemagine.ai LLP, 2022 U.S. Dist. LEXIS 14831 (N.D. Ill. 2022)*, and *Webber v. Armslist LLC, 70 F.4th 945 (7th Cir. 2023)*. But the fact that the Court did not expressly address every single case cited in GeoSnap's initial briefing does not mean those cases were overlooked. The Court was not required to specifically address in its opinion each and every argument asserted by GeoSnap. In denying GeoSnap's motion to dismiss for lack of personal jurisdiction, the Court implicitly rejected GeoSnap's arguments pertaining to these decisions. Moreover, as highlighted in Plaintiffs' briefing, *Stein* and *Gutierrez* are distinguishable and not controlling. And, *Webber* is inapposite. GeoSnap contends that in *Webber*, the Seventh Circuit held that "designing a website that could be used in the forum state" and "solicit[ing] business in [*23]  that state" is insufficient to create jurisdiction." (Doc. 63, pg. 9). Not so. As noted by Plaintiff, in *Webber* the issue was not whether the defendant's commercial website targeted the forum state, but whether the website's contacts with the forum could be attributed to the website's designer, a natural person sued individually.

In summary, GeoSnap's contacts clearly signal a willingness to do business with Illinois and indicate that GeoSnap reasonably should have anticipated that some of its photographs would be licensed or purchased by Illinois consumers. GeoSnap's arguments on reconsideration are unavailing, and the Court finds sufficient contacts to support an exercise of specific personal jurisdiction over GeoSnap.

## 2. Relationship Between GeoSnap and the Photographers

The acts of an agent may be attributed to the principal to establish personal jurisdiction over the principal. *Stein v. Rio Parismina Lodge, 296 Ill.App.3d 520, 231 Ill.Dec. 1, 695 N.E.2d 518, 522 (1998)*; *see Walden v. Fiore, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)* ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact"). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent [*24]  and whether the alleged agent can affect the legal

relationships of the principal." *Chemtool, Inc., v. Lubrication Techs., 148 F.3d 742, 745 (7th Cir. 1998)* (applying Illinois law).

GeoSnap contends there is no principal-agent relationship between GeoSnap and Photographers who worked at the Tough Mudder events in Illinois, and that the Court misunderstood or failed to consider GeoSnap's arguments regarding why the Photographers are not GeoSnap agents and/or employees. (Doc. 63, pgs. 10-11). Specifically, GeoSnap reiterates the following: (1) GeoSnap has no part in the selection of Photographers and is not aware of who they are while they work the events; (2) GeoSnap does not control when Photographers show up to the event, how long they stay, how many photographs they take and would not even know who these photographers are until *after* the event is completed; (3) Tough Mudder recruits the Photographers, not GeoSnap; (4) images uploaded to the GeoSnap website are controlled by the Photographers; and (5) Photographers do not have to agree to GeoSnap's Terms and Conditions before an event, but do so when they upload photo to the Website. (Doc. 63, pg. 12).

The Court, however, did not misunderstand or overlook these arguments. The Court acknowledged, for instance, [*25] that GeoSnap's Terms and Conditions attempt to disclaim any legal relationship with Photographers. (Doc. 38, pg. 20 n.14). But, as the Court explained in the challenged order, "when determining whether an agency relationship exists, 'the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship.' " (*Id.*) (citing *McNerney v. Allamuradov, 2017 IL App (1st) 153515, 416 Ill. Dec. 455, 84 N.E.3d 437, 454 (Ill. App. Ct. 2017)*. The bottom line is, despite GeoSnap's arguments to the contrary, as previously explained by the Court, GeoSnap's Terms and Conditions demonstrate that:

(1) GeoSnap exercises control over the "manner and method" in which Photographers conduct their work;[6] (2) Photographers affect the legal relationships of GeoSnap when they upload

photographs to its Website;[7] and (3) GeoSnap identifies Photographers as being representatives of GeoSnap.[8]

(Doc. 38, pg. 20).

Further, a review of GeoSnap's Terms and Conditions in their entirety, does not support the assertion that GeoSnap could not have exercised control over the Photographers because Photographers do not agree to the Terms and Conditions until they upload photos *after* an event. The Court specifically notes the following:

Before buying or selling items through [*26] GeoSnapShot or using the GeoSnapShot website you are required to read, understand and agree to all these Terms and Conditions. You may not use GeoSnapShot and buy or sell items through GeoSnapShot after thoroughly reading, understanding, agreeing, and accepting all of the Terms and Conditions. (Doc. 27-1, pg. 2).

The Site facilitates the sale of Media Material between the Seller and the Buyer. By accessing the Site, being a User of the Site, or using any services available on the Site you are agreeing to be bound by these Terms and Conditions. If you disagree with any part of the terms then you may not access the Site. (*Id.*) (emphasis added).

As a condition to using the Site you must:

4.1.1. Register with a valid email address and password...(*Id.* at pg. 3).

By registering for the Site you are agreeing to all of the Terms and Conditions set out within this document and available from the registration page. If you do not agree with the Terms and Conditions do not register for the Site and stop using the site immediately. Use the contact information to ask for your registration details to be removed. (*Id.* at pg. 4).

8.1. Sellers may have alternative photography

---

[6] Photographers who "book onto a GeoSnap event" "must upload photos to the GeoSnap platform for sale" and cannot sell or advertise the photos through any other platform. Similarly, GeoSnap prohibits photographers from using the "Site services" (which GeoSnap says include its "event calendar," "business name," and "relationship with event organizers") for their own benefit.

[7] Photographers who upload to the Website "Media Material," including photos, "grant to the Site and [GeoSnap] a non-exclusive, transferrable, fully paid, worldwide license . . . to use, publish, copy, publicly perform, publicly display, reformat, translate, excerpt . . . and distribute copies of your Media Material." (Doc. 27-1 § 4.3.2).

[8] The Terms of Service state that photographers who "book onto a GeoSnapShot event . . . are deemed to be representing GeoSnapShot at that event."

business/brands that they use. [*27] The Site supports the sellers right for Sellers to carry on their own photography businesses, however we do not allow you to use the Site services (our event calendar, our business name, our brand, our relationship with other photographers, our relationship with event organizers, or any other Site services) to compete with the Site or any services that the Site provides. (*Id.* at pg. 10).

8.2. Many of the events on the Sites calendar of events are non-exclusive, there may be non-GeoSnapShot photographers at that event. If you book onto a GeoSnapShot event you are deemed to be representing GeoSnapShot at that event and you must upload photos to the GeoSnapShot platform for sale. You may not advertise that photos from a GeoSnapShot event are for sale through any other platform or service other than the Site. (*Id.*).

8.3 To upload photos to an event on the GeoSnapShot calendar you must be a registered photographer for that event. The number of photographers who can upload from an event is determined by the event organizer. (*Id.*).

8.4 If the event is not on the Sites calendar you can create the event on GeoSnapShot yourself. You can be a seller at that event and request other Sellers (through [*28] the GeoSnapShot platform) to attend your event and upload photos for sale if you choose. (*Id.*).

8.5. The Site events calendar is for the use of Sellers and is a service provided by the Site for its Sellers and Users. The calendar information is to be used solely by Sellers to register onto and attend events as a GeoSnapShot photographer. The Site calendar should not be used for any other purpose including, but not limited to; finding events to attend as non-GeoSnapShot photographer, passing calendar information to a different company, copying, duplicating, linking to, redirecting to or otherwise using the information for any other purpose. (*Id.*).

8.6. If you attend a GeoSnapShot event you cannot offer an alternative purchasing option for photos other than the Site. You cannot advertise your own website or other place to purchase the photos from the GeoSnapShot event other than the Site. (*Id.*).

8.7. Any photographer who has breached or is deemed by GeoSnapShot to have breached these

terms may have their photographer account suspended or terminated immediately at the sole discretion of GeoSnapShot inline with the "Termination" clause. (*Id.*).

8.8. Some Events and Event Organizers may require [*29] you to have a Working with Children Check (WWCC) (or similar document determined by your country or state to prove that you are certified to be working around minors). If you book on to an event that requires a WWCC then you must ensure that you have a valid WWCC, that it is up-to-date and present a copy to the event organizer upon arrival at the event. (*Id.* at pgs. 10-11).

These provisions, read together, contradict the assertion that Photographers *only* agree to the Terms and Conditions *after* an event when photographs are uploaded to the Website. The Terms and Conditions expressly state that, to use the Website, a photographer must register using a valid email address and password, and by registering, that user agrees to GeoSnap's Terms and Conditions. A photographer also agrees to the Terms and Conditions anytime he or she accesses or uses the Website. GeoSnap would have the Court believe that registration and use of the Website only occur after an event is completed at the time a photograph is uploaded. But the Terms and Conditions reveal that uploading photographs following an event is not necessarily the first time a Photographer will access or use the Website. For instance, one [*30] of the services provided by the Website is access to GeoSnap's calendar of events. Photographers may access and use the calendar of events to locate upcoming events they would like to attend and "book onto" the event. Thus, there are instances where photographers access and use the Website prior to an event. In those instances, the photographer has agreed to the Terms and Conditions prior to the event, by registering as a user, by accessing and using the Website's calendar of events, and by "booking onto" an event. Considering these provisions, the contention that the relationship between GeoSnap and the Photographers is not formed until after an event falls flat.[9]

_____

[9] Further, as noted by Plaintiffs, to the extent there is tension between some facts in the record, Plaintiffs are entitled to resolution in their favor. See e.g., *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 781 (7th Cir. 2003)* ("In evaluating whether the prima facie standard has been

2025 U.S. Dist. LEXIS 41010, *30

## B. In the Alternative, GeoSnap Asks the Court to Modify its Order

Having considered and rejected GeoSnap's arguments seeking reconsideration, the Court moves on to GeoSnap's request for the Court to modify the Original PJ Order. First, GeoSnap contends the Court should modify the Order to allow for an interlocutory appeal. Second, GeoSnap contends the Court should modify the Order to defer ruling on personal jurisdiction pending jurisdictional discovery into GeoSnap's Illinois contacts. The Court addresses each argument in [*31] turn.

## 1. Certification for Interlocutory Appeal

GeoSnap contends there are substantial grounds for a difference of opinion as to whether Plaintiffs have established personal jurisdiction and requests a certification of interlocutory order for appeal pursuant to *28 U.S.C. § 1292(b)*. (Doc. 63). Plaintiffs contend the request should be denied because the Court's ruling was correct and because the Court's ruling does not present a "pure" question of law that can be resolved by interlocutory appeal. (Doc. 64). At the Court's request, the parties have filed additional briefing on this issue. (Docs. 75 and 76). Based on the following, the Court denies the request for certification.

*Section 1292(b)* states that when a district court judge believes an order for an interlocutory appeal involves (1) a controlling question of law, (2) to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation, then the district judge may certify the request for such an appeal. Thereafter, the Court of Appeals has discretion to permit an appeal from the order "if application is made to it within ten days after the entry of the order." [*32]  *Id.* If a court does not include a *§ 1292(b)* certification in its original order, it may amend the order to include such a certification. See *FED. R. APP. P. 5(a)(3)*.

GeoSnap, as the party seeking interlocutory review, bears the heavy burden of persuading the Court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers v. Lybrand v.*

*Livesay, 437 U.S. 463, 475, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978)*. The Seventh Circuit has cautioned that *§ 1292(b)* must be used sparingly "lest interlocutory review increase the time and expense required for litigation," *Asher v. Baxter Int'l., Inc., 505 F.3d 736, 741 (7th Cir. 2007)*, and that interlocutory appeals are "frowned on in the federal judicial system," *Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535, 536 (7th Cir. 2012)*.

As noted above, to certify an order for interlocutory appeal under *§ 1292(b)* there must be "a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. Of Trs., 219 F.3d 674, 675 (7th Cir. 2000)* (emphasis in original). The criteria are "conjunctive, not disjunctive," therefore, the Court should not grant a motion to certify if the movant does not meet its burden as to any one of these criteria. *Id. at 676*.

GeoSnap contends that requirements under *§ 1292* are met. Specifically, GeoSnap contends that personal jurisdiction is a question of law that has the potential to be dispositive and [*33] is therefore a controlling question of law. GeoSnap further contends that, given the facts of this case, whether personal jurisdiction exists is contestable and resolution of the question in GeoSnap's favor could prevent protracted litigation.

Here, the Court's analysis begins and ends with *section 1292(b)*'s first requirement. To be a "question of law" as used in *section 1292(b)*, the question must be a "pure" question of law, "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine ..." *Id. at 676-677*. Application of a legal standard is a question of law. *In re Text Messaging Antitrust Litigation, 630 F.3d at 626*. However, the determination here does not involve a pure question of law. Instead, it involves mixed questions of law and fact concerning GeoSnap's conduct and its contacts with Illinois.

GeoSnap insists this case involves a pure question of law because GeoSnap "is arguing that the Court's legal conclusions drawn from the facts in the record were incorrect and contrary to well-established precedent from this Circuit." (Doc. 63, pg. 17). GeoSnap further argues that this Court's opinion is at odds with other district court [*34] opinions that "declined personal jurisdiction and are closer to the facts in this case than

---

satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts present in the record."

[the facts in] the cases cited by the Court. GeoSnap's supplemental briefing further details how the *facts* of this case are similar to other cases where personal jurisdiction has been declined and dissimilar to other cases where courts found that the exercise of personal jurisdiction was proper. (Doc. 75).

But these arguments only serve to demonstrate that GeoSnap's alleged question of law is inextricably intertwined with an analysis of the factual allegations in this case. The determination here necessarily requires examination of the facts. Indeed, resolving GeoSnap's initial motion to dismiss and its subsequent motion for reconsideration, required an extensive review of the relevant jurisdictional facts. The same will be true for the Seventh Circuit; determining whether GeoSnap's contacts with Illinois are sufficient to establish personal jurisdiction will necessarily require the Appellate Court to dig through the record, reviewing facts, Terms and Conditions, and declarations. See e.g., *Shepherd Investments Int'l, Ltd. v. Verizon Commc'ns, Inc., 373 F. Supp. 2d 853, 2005 WL 1475323, at *2 (E.D. Wisc. June 22, 2005)* (finding that review of personal jurisdiction order did not involve an abstract legal issue because the [*35] court of appeals would have to "study the record, decide which facts were relevant and measure the facts against a somewhat imprecise legal standard, that of minimum contacts."); *Burton v. American Cyanamid, Case No. 07-CV-0303, 2016 U.S. Dist. LEXIS 9596, 2016 WL 311286, at *3 (E.D. Wis. Jan. 26, 2016)* (finding that "the purposeful availment inquiry requires the application of facts to a legal standard and thus is not a pure question of law.").

Under these circumstances, GeoSnap cannot meet the standard for a "question of law" ripe for appellate review under *§ 1292*. Because *all* four criteria must be satisfied in order to certify an order for immediate appeal under *§ 1292(b)*, and at least one is not satisfied, the Court need not address the remaining criteria. See *Ahrenholz, 219 F.3d at 675*.

## 2. Jurisdictional Discovery

In support of its argument for jurisdictional discovery, GeoSnap first contends the Court erred by "prioritize[ing] inferences it drew from GeoSnap's Terms and Conditions over GeoSnap's Declaration." (Doc. 63, pg. 17). But, on a motion to dismiss for lack of personal jurisdiction, district courts must resolve all factual disputes in plaintiff's favor; only unrefuted facts in a defendant's declaration will be taken as true. *Northern*

*Grain Marketing, LLC v. Greving, 743 F.3d 487, 491 (7th Cir.2014)*; *GCIU-Emp. Ret. Fund v. Goldfarb Corp., 565 F.3d 1018, 1020 n. 1 (7th Cir. 2009)*. Thus, to the extent there is a dispute between GeoSnap's declaration and the Terms and Conditions (the affirmative [*36] evidence supporting the exercise of jurisdiction), the Court properly resolved that dispute in Plaintiff's favor.

Next, GeoSnap criticizes the Court for noting that "the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship." (Doc. 38, pg. 20 n.14) (citing *McNerney v. Allamuradov, 2017 IL App (1st) 153515, 416 Ill. Dec. 455, 84 N.E.3d 437, 454 (Ill. App. Ct. 2017)*. GeoSnap contends that, at this early stage and without the presence of a counter-declaration, it was improper to rely on this case because *McNerney* was decided on summary judgment on a more fully developed record. GeoSnap misconstrues the Court's Order. The Court's citation to *McNerney* is not intended to refer to a "declaration" under *28 U.S.C. § 1746*. Rather, the Court was emphasizing that, if the conduct of the parties demonstrates an agency relationship, the fact that the parties' contract disavowed an agency relationship by "declaring" no such relationship exists is not determinative.

Finally, GeoSnap's citation to *B.D. ex rel. Myer v. Samsung SDI Co., 91 F.4th 856, 859 (7th Cir. 2024)* for the proposition that the Court erred in denying the motion to dismiss without allowing for jurisdictional discovery is unpersuasive. In *B.D.*, the district court relied primarily on the stream-of-commerce theory to find specific jurisdiction. *Id. at 862*. The Seventh [*37] Circuit chose to remand the case for jurisdictional discovery because (1) the parties agreed that the defendant sold some products, but not the product in issue (18650 batteries), directly to the forum (Indiana), and (2) although the record indicated defendant sold 18650 batteries to Indiana consumers through third-party websites and vendors, whether the defendant knew or expected that these third parties would cause the product to enter Indiana was unclear. *Id. at 863*. But the same issue is not present in this case. GeoSnap was not transacting business with users via a third party, and thus there is no question regarding whether GeoSnap knew that a third party would cause its product to enter Illinois. Rather, given GeoSnap's purposeful conduct (as previously described herein), Plaintiff has made a prima facie showing that specific personal jurisdiction exists.

**V. CONCLUSION**

For the reasons set forth herein, Defendant GeoSnap PTY LTD's Motion for Reconsideration or, Alternatively, to Modify the Order to Make it Appealable Pursuant to *28 U.S.C. 1292(b)* (Doc. 63) is **DENIED**.

**SO ORDERED**.

Dated: March 6, 2025

/s/ David W. Dugan

DAVID W. DUGAN

United States District Judge

**End of Document**

# Tab 16

# *Patrick v. Pyod, LLC*

United States District Court for the Southern District of Indiana, Indianapolis Division

October 20, 2014, Decided; October 20, 2014, Filed

1:14-cv539-RLY-TAB

**Reporter**

2014 U.S. Dist. LEXIS 149483 *; 2014 WL 5343284

STACY PATRICK, formerly known as COMPTON, individually and on behalf of all others similarly situated, Plaintiff, vs. PYOD, LLC, a Delaware LLC, and RESURGENT CAPITAL SERVICES, LP a Delaware limited partnership, Defendants.

**Prior History:** *Patrick v. PYOD, LLC, 39 F. Supp. 3d 1032, 2014 U.S. Dist. LEXIS 116092 (S.D. Ind., 2014)*

**Counsel:** [*1] For STACY PATRICK individually and on behalf of all others similarly situated formerly known as COMPTON, Plaintiff: Angie K. Robertson, Mary E. Philipps, David J. Philipps, PHILIPPS AND PHLIPPS, LTD, Palos Hills, IL; John Thomas Steinkamp, JOHN T. STEINKAMP AND ASSOCIATES, Indianapolis, IN.

For PYOD, LLC, a DE LLC, RESURGENT CAPITAL SERVICES, LP, a DE limited partnership, Defendants: Jeanine R. Kerridge, BARNES & THORNBURG LLP, Indianapolis, IN; John P. Boyle, MOSS & BARNETT, P.A., Minneapolis, MN.

**Judges:** RICHARD L. YOUNG, Chief United States District Judge.

**Opinion by:** RICHARD L. YOUNG

# Opinion

### ENTRY ON DEFENDANTS' MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL PURSUANT TO *28 U.S.C. § 1292(b)*

Plaintiff, Stacy Patrick, alleges that Defendants Pyod, LLC ("PYOD") and Resurgent Capital Services, LP ("Resurgent") violated the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692e(5)*, by filing two proofs of claim that were barred by the Indiana statute of limitations. Defendants filed a motion to dismiss, arguing that a proof of claim cannot form the basis of an FDCPA claim. The court, persuaded by the Eleventh Circuit's recent decision in *Crawford v. LVNV Funding,*

*LLC, 758 F.3d 1254, 2014 WL 3361226 (11th Cir. 2014)* denied the motion to dismiss and found that a proof of claim can form the basis of an FDCPA claim. (Filing No. [*2] 31). Defendants now move the court for leave to file an interlocutory appeal pursuant to *28 U.S.C. § 1292(b)* and a stay pending that appeal. For the reasons set forth below, the court **GRANTS** the motion.

## I. Standard

According to *28 U.S.C. § 1292(b)*, the court may certify a case for interlocutory appeal if each of the following criteria are met: "(1) [it] involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Sauter v. Perfect North Slopes, 993 F. Supp. 2d 926, 935 (S.D. Ind. 2014)*.

## II. Discussion

### A. Controlling Question of Law

The first criterion requires a "pure question of controlling law," which is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* (citing *Ahrenholz v. Bd. Of Trust. of the Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2002)*. In other words, the issue must be an abstract legal issue. *See Ahrenholz, 219 F.3d at 677*.

Although the Plaintiff does not dispute that the present issue is a controlling question of law, the court must ensure that all three criterion are satisfied. *See e.g., id.* The issue here is clearly an abstract legal issue — a record of facts is not needed to determine if the filing of a proof of claim in a bankruptcy proceeding on a time-barred debt can [*3] constitute a violation of the FDCPA. Additionally, this question is controlling because the entire action would be dismissed if this court's opinion is reversed. Therefore, the court finds that the first criterion is met.

## B. Substantial Ground for Difference of Opinion

Defendants allege that there is a substantial ground for difference of opinion because this court's ruling is contrary to several other district courts and the Seventh Circuit has not definitely ruled on this issue. As the court has previously stated, "'the mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion.'" *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 212 F. Supp. 2d 903, 909 (S.D. Ind. 2002)* (quoting *In re Demert & Dougherty, Inc., No. 01CV7289, 2001 U.S. Dist. LEXIS 19848, 2001 WL 1539063, * 6 (N.D. Ill. 2001)*. Rather, to evaluate this factor the court examines "the strength of the arguments in opposition to the challenged ruling." *In re Bridgestone/Firestone, 212 F. Supp. 2d at 909.* "This analysis includes examining whether other courts have adopted conflicting positions regarding the issue of law proposed for certification." *Id. at 909-910.*

As the court acknowledged in its Entry, several other district courts have reached the opposite conclusion of this court and the Eleventh Circuit. Therefore, the court finds that the strength of the arguments in opposition is strong enough to create a substantial ground for difference [*4] of opinion. The court finds that the second criterion is satisfied.

## C. Materially Advance the Ultimate Termination of the Litigation

Defendant argues that an interlocutory appeal will materially advance the termination of this matter because the case would be dismissed should the Defendants prevail on appeal. Additionally, Defendants note that this case is a putative class action, which, if allowed to proceed, will require costly discovery and other litigation expenses that could be spared with an immediate appeal. Because the present case involves a putative class action involving a single legal claim, the court agrees that an interlocutory appeal would materially advance the ultimate termination of the litigation. Therefore, the court finds that the third and final criteria is met.

## D. Request for Stay Pending Review

Finally, Defendants seek a stay of further proceedings in the matter pending Seventh Circuit review. In support,

Defendants rely on a case from the Southern District of New York holding that in granting certification, the court should also stay all proceedings pending appeal. *See O'Brien v. Avco Corp., 309 F. Supp. 703, 704-05 (S.D.N.Y. 1969).* While it is true that a district court must stay an interlocutory appeal on the issue of qualified [*5] immunity, the court is not required to stay all interlocutory appeals. Nevertheless, Plaintiff does not object to the stay. Therefore, the court **GRANTS** the stay pending appellate review.

## III. Conclusion

In conclusion, the court **GRANTS** the motion for leave to file an interlocutory appeal and for a stay pending that appeal. The court certifies the following issue to the Seventh Circuit: whether the filing of a proof of claim in a bankruptcy proceeding on a time-barred debt can constitute a claim under the FDCPA.

**SO ORDERED** this 20th day of October 2014.

/s/ Richard L. Young

RICHARD L. YOUNG, CHIEF JUDGE

United States District Court

Southern District of Indiana

---

**End of Document**

# Tab 17

# *Patterson v. Burge*

United States District Court for the Northern District of Illinois, Eastern Division

January 5, 2005, Decided ; January 6, 2005, Docketed

Case No. 03 C 4433

**Reporter**

2005 U.S. Dist. LEXIS 1331 *; 33 Media L. Rep. 1200

Aaron Patterson, Plaintiff, v. Former Chicago Police Lt. Jon Burge, et al., Defendants.

**Subsequent History:** Motion denied by *Patterson v. Burge, 2006 U.S. Dist. LEXIS 55768 (N.D. Ill., Aug. 10, 2006)*

**Prior History:** *Patterson v. Burge, 328 F. Supp. 2d 878, 2004 U.S. Dist. LEXIS 15321 (N.D. Ill., 2004)*

**Disposition:** News organizations' Motion to Quash granted.

**Counsel:** [*1] For AARON PATTERSON, Plaintiff: Michael Edward Deutsch, G. Flint Taylor, Jr., Joey L. Mogul, People's Law Offices, Chicago, IL; Standish E. Willis, Law Office of Standish E. Willis, Chicago, IL; Demitrus Evans, Evanston, IL.

For JON BURGE, FORMER CHICAGO POLICE LT., # 338, JOHN BYRNE, FORMER CPD SGT., # 1453, JAMES PIENTA, FORMER CPD, WILLIAM MARLEY, # 9886, RAYMOND MADIGAN, # 1471, DANIEL F MCWEENY, # 14367, JOSEPH DANZL, # 12568, ASSISTANT COOK COUNTY STATE'S ATTORNEY, Defendants: Richard Thomas Sikes, Jr., Michael Paul Kornak, Terrence J. Sheahan, Jennifer Louise Koger, Richard Bruce Levy, Freeborn & Peters, Chicago, IL; Oran Fresno Whiting, Sedgwick, Detert, Moran & Arnold, Chicago, IL.

For WILLIAM PEDERSEN, # 8553, Defendant: Richard Thomas Sikes, Jr., Michael Paul Kornak, Terrence J. Sheahan, Jennifer Louise Koger, Richard Bruce Levy, Freeborn & Peters, Chicago, IL.

For PETER TROY, FORMER ASSISTANT COOK COUNTY STATE'S ATTORNEY, RICHARD DEVINE, CHICAGO POLICE SUPERINTENDENT, COOK COUNTY STATE'S ATTORNEY'S OFFICE, COUNTY OF COOK, ILLINOIS, Defendants: Jennifer Louise Koger, Freeborn & Peters, Chicago, IL; Patrick T. Driscoll, Jr., Stephen L. Garcia, Jeffrey S. McCutchan, [*2] Paul Anthony Castiglione, Cook County State's Attorney, Chicago, IL; Louis R. Hegeman, Cook County State's Attorney's Office, Chicago, IL.

For WILLIAM LACY, COOK COUNTY STATE'S ATTORNEY, Defendant: Jennifer Louise Koger, Freeborn & Peters, Chicago, IL; Patricia Campbell Bobb, Patricia C. Bobb & Associates, Chicago, IL.

For TERRY HILLARD, FORMER CHICAGO POLICE SUPERINTENDENT, THOMAS NEEDHAM, CITY OF CHICAGO, Defendants: William J. Holloway, Steven M. Puiszis, Charles Robert Schmadeke, Robert Thomas Shannon, James Constantine Vlahakis, Elizabeth F. Lienau, William Yu, Corinne Cantwell Heggie, Kourtney A Mulcahy, Hinshaw & Culbertson, Chicago, IL; John Patrick Goggin, Joseph R. Curcio, Ltd., Chicago, IL; Jennifer Louise Koger, Freeborn & Peters, Chicago, IL; Terrence Michael Burns, Harry N. Arger, Paul A. Michalik, Daniel Matthew Noland, Dykema Gossett Rooks Pitts PLLC, Chicago, IL.

For LEROY MARTIN, FORMER OPS DIRECTOR, GAYLE SHINES, FORMER COUNSEL TO THE SUPERINTENDENT, Defendants: Jennifer Louise Koger, Freeborn & Peters, Chicago, IL; Eileen Marie Letts, Kevin Thomas Lee, Terry Miller, Greene & Letts, Chicago, IL.

**Judges:** Honorable Joan B. Gottschall.

**Opinion by:** Joan B. Gottschall

# Opinion

[*3] **Memorandum Opinion and Order**

On August 5, 2004, plaintiff Aaron Patterson was arrested on federal drug and weapons charges. Patterson's arrest and comments about it he made in interviews with a number of journalists have been highly publicized. On October 18, 2004, defendants in this lawsuit served subpoenas on various news organizations, specifically, the Chicago Tribune Company, WGN Continental Broadcasting Company

and WMAQ-TV ("the news organizations") seeking all videotape and audiotape footage, including outtakes, and any and all documents, including notes and transcripts, reflecting statements made by Patterson between August 6, 2004 and August 19, 2004. [1] The three news organizations have moved to quash the subpoenas, arguing that the subpoenas violate the *Illinois Reporter's Privilege Act*, the *First Amendment to the United States Constitution* and the Illinois Constitution, and further require quashing or modification under *Rule 45(c)*. In their Response to the Motion to Quash, the defendants have withdrawn their request for notes, having learned that there are sufficient video and audiotapes to render any interview notes cumulative. In addition, the court is under [*4] the impression that the news organizations have already made available to the defendants all broadcast footage and published interviews. If that is not the case, such materials should immediately be turned over since none of the arguments advanced by the subpoena respondents justify the withholding of any previously-published materials. [2]

In *McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003)*, the Seventh Circuit stated that it could find no basis, in law or fact, for recognizing a reporter's privilege under federal or state law cognizable in federal proceedings. Rather, it stated that instead of invoking a privilege, "courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces [*5] tecum, is reasonable in the circumstances." This court will therefore pretermit consideration of the news organizations' statutory and constitutional arguments and analyze the motion to quash under the standards of *Rule 45(c)*.

The Seventh Circuit has recently dealt with *Rule 45(c)* standards in *Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923 (7th Cir. 2004)*. Recognizing that "pretrial discovery is a fishing expedition and one can't know what one has caught until one fishes," the court noted that when the fish objects under *Rule 45(c)*, the fisherman is called upon to justify his pursuit. *362 F.3d at 931*. In this circumstance, the court must engage in a balancing process, balancing the burden of compliance

against the benefits of the requested production. *Id. at 927*. Put in a fish-free way, non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection. *See Builders Ass'n of Greater Chicago v. City of Chicago, 2001 U.S. Dist. LEXIS 7730, 2001 WL 664453 at *7 n. 4 (N.D. Ill. June 12, 2001)*. That protection encompasses [*6] weighing the need for the material subpoenaed against the burden involved in its production. Burden in this context means more than mere administrative hardship. It encompasses the interests that enforced production would compromise or injure. *Northwestern Hospital, supra, at 928-29*.

The justifications defendants have advanced for these subpoenas are meager, to say the least, and consist largely of arguing repeatedly, albeit in different verbal formulations, that the materials sought may contain relevant information. The defendants assert that the complaint alleges a continuing conspiracy to injure Patterson emotionally, and point out that in his statements to reporters, as well as in statements at his preliminary hearing, Patterson at times claimed that his 2004 arrest was part of that conspiracy. Defendants assert, "If plaintiff has made non-privileged statements about this alleged conspiracy, surely defendants are entitled to production of these statements so they can discover the basis for the claim." Response at 5. Defendants, however, suggest no basis for believing that there are statements other than those they already have and never explain why, if they are [*7] curious about the basis for this claim, they have not served a contention interrogatory asking for it. Further, defendants argue that because plaintiff may be claiming that the arrest was part of the conspiracy alleged in his complaint, "it is crucial that defendants be permitted access to statements made by Patterson to test his claims of conspiracy in this case." *Id.* This is obviously the same justification set forth above but stated in more urgent terms. Finally, defendants summarize their argument: "Given that the lawsuit contains a claim for an ongoing conspiracy to inflict emotional distress, Patterson's statements to the Journalists are absolutely relevant to this case." *Id.* The essence of this perseverative argument, as far as the court understands it, is that because Patterson has stated that his arrest relates to the allegations of his complaint, anything he may have said about his arrest is relevant to his civil case.

The remainder of defendants' argument appears to invoke other bases for discovery, but really does nothing

---

[1] This description generalizes the requests, although there were minor differences in the requests to each of the news organizations.

[2] If the parties cannot negotiate an agreement covering the costs of any such materials, they can seek the assistance of the court.

more than flesh out their relevance argument: "Patterson's statements are relevant for a host of other reasons as well. Among other things, they [*8] may be used for impeachment; or fodder for cross-examination; [3] or lead to other admissible evidence; or possibly deemed an admission under *Fed. Rule.Evid. 801(d)(2).*" If possible relevance were the standard for enforcing the subpoenas, defendants would surely prevail. No one is arguing that the interview records do not contain relevant statements by Patterson. Moreover, it is possible that Patterson said something during those interviews that could be used to cross-examine him in the civil suit or be used as an admission. Defendants are simply speculating, however, that the news organizations' non-published materials contain impeachment information or admissions. Defendants have apparently served these subpoenas before questioning Patterson, by deposition or interrogatories, about his statements to the news organizations or his conspiracy theory. Thus, defendants can establish relevance in its broadest and weakest sense. They cannot establish that their subpoenas seek information they do not already have or that is not readily available from other sources. Of course, the fact that what the defendants seek is Patterson's own statements adds something [*9] to the "mere relevance" of their requests.

Against these weak justifications, the burden on respondents is significant. Granted, simply turning over the tapes from which their published materials were drawn does not represent a major administrative burden. But requiring such production would establish that simply on the basis of a showing of relevance (and merely *possible* usefulness, since there is no reason to believe that Patterson told the reporters anything in private that he has not said publicly), private parties in a civil suit can call on the press to turn over the fruits of its investigative efforts. Since the press is involved in collecting information about all manner of things and circumstances that frequently end up in litigation, if there is no standard higher than [*10] mere relevance which civil lawyers must satisfy to help themselves to reporters' records, news organizations will be very busy responding to civil subpoenas. Similarly, the news organizations' efforts to maintain their independence and gain the trust of sources is an interest that will be severely impaired if mere relevance, meaning as it does

here a mere relationship to the subject matter of a civil suit, makes their non-public records available on request. Further, the journalistic and editorial judgments involved in deciding what to ask an interview subject, and in deciding what to use from the material gathered, are the commercial and intellectual stock in trade of the news organizations; surely some good justification should be advanced before these journalistic and editorial judgments can be examined by outsiders and made public in the context of a civil lawsuit. As Judge Brown stated in her September 16, 2004 ruling on the Chicago Reader's Motion to Quash Subpoena in *Hobley v. Burge,* No. 03 C 3678, *Rule 45(c)* explicitly permits the court to protect against the disclosure of trade secrets and other confidential commercial information, and "there is nothing in the Federal [*11] Rules that suggests that research for the purpose of news reporting [not to speak of editorial judgments about what should and should not be published] is to be given *less* protection than research for the purpose of product development." (Order, p. 13.)

In this case, where the subject matter of the civil suit raises issues of immense public importance, the press' efforts to shed light on the non-public recesses of certain police station activities has value to the entire City. To the extent the news organizations' resources are squandered providing information to civil litigants; or their ability to create sources hampered by judicial insensitivity to the value of their attempts to protect the confidentiality of the information they receive; or their motivation to develop their information and use it as they see fit; or the commercial value to the involved news organizations of the judgments involved in investigating and selecting material for publication dissipated as their "work product" becomes fair game for civil litigants in their relentless quest to "discover" everything, the news organizations become the indentured servant of the litigants, and their ability to do their [*12] important work will be severely impaired. The kind of discovery requested here not only burdens the news organizations but burdens the public interest in a robust press.

In *McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003),* the court affirmed an order of the district court requiring news organizations to produce to plaintiff McKevitt tape recordings of an interview conducted with David Rupert by journalists who were writing Rupert's biography. McKevitt was being prosecuted in Ireland for terrorism-related activities and wanted the tape recordings to assist him in cross-examining Rupert, who was expected to be a key prosecution witness. The Seventh

---

[3] Again, defendants assert little more than different verbal formulations for the same claim. There is not much difference between evidence useful for impeachment, fodder for cross-examination and admissions of a party opponent.

Circuit found that there was no interest in confidentiality being compromised, inasmuch as the source, Rupert, was known and had indicated that he did not object to disclosure. In the case at bar, similarly, the interest in confidentiality is weak, since the source, Patterson, is known. Further, his objection to disclosure is entitled to little weight if any weight at all inasmuch as he is the plaintiff in this case and has no cognizable interest in the privacy of things he says to third parties that bear, even tangentially, [*13] on the litigation. But the Seventh Circuit in *McKevitt* also cited the important public obligation to assist in criminal proceedings and the federal interest in cooperating in the criminal proceedings of friendly foreign nations as factors favoring disclosure. Neither of those interests is operative in the present context.

In requiring the Reader to turn over Hobley's letters but not its reporter Conroy's notes of his interview with Hobley, Judge Brown observed that Hobley's letters were analogous to the tape recordings ordered disclosed in *McKevitt.* This court agrees with Judge Brown that tape recordings and letters have in common that the administrative burden involved in producing them is very limited. Beyond that, however, the court disagrees with any implication in Judge Brown's decision, which did not involve audio or video recordings, that such recordings of a non-public interview by a journalist are otherwise analogous to the letters ordered disclosed in *Hobley.* In many respects, such recordings are much more like the reporter's notes as to which Judge Brown quashed the *Hobley* subpoena. They reflect the journalist's thought processes, his or her method of investigation, [*14] and his or her choices about what should be published and what withheld. As Judge Brown observed regarding the reporter's notes in *Hobley,* "The only value of the notes to the Individual Defendants is the possibility that they *might* reflect something that Hobley said to Conroy that *might* be helpful to the Defendants." Order of September 16 at 12. Moreover, Judge Brown observed, the notes are the reporter's confidential work product, as is the case with the recorded interviews sought here. *Id.* at 13. Granted, compelled disclosure of reporters' notes is more invasive than the production of recordings since, as Judge Brown observed, the reporter involved would almost certainly have to be deposed to interpret the notes before any use could be made of them. But this court is of the view that recordings of interviews are in almost all important ways much more like interview notes than like unsolicited letters, and Judge Brown's analysis, applied here, counsels strongly against compelling disclosure.

Given the weak showing of materiality made by defendants, the lack of any compelling public interest in disclosure such as was present in *McKevitt* and the significant burden [*15] on important private and public interests compelled production in this case would involve, this court, pursuant to the balancing of interests required by *Rule 45(c)*, grants the news organizations' Motion to Quash.

ENTER ORDER

Joan B. Gottschall

United States District Judge

DATED: January 5, 2005

---

**End of Document**

# Tab 18

## *Rogers v. BNSF Ry. Co.*

United States District Court for the Northern District of Illinois, Eastern Division

June 21, 2022, Decided; June 21, 2022, Filed

Case No. 19 C 3083

**Reporter**

2022 U.S. Dist. LEXIS 109394 *; 2022 WL 2208824

RICHARD ROGERS, individually and on behalf of similarly situated individuals, Plaintiff, vs. BNSF RAILWAY COMPANY, Defendant.

**Prior History:** *Rogers v. BNSF Ry. Co., 2019 U.S. Dist. LEXIS 188961, 2019 WL 5635180 (N.D. Ill., Oct. 31, 2019)*

**Counsel:** [*1] For Richard Rogers, individually, and on behalf of similarly situated individuals, Plaintiff: David Louis Gerbie, LEAD ATTORNEY, Brendan James Duffner, Mcguire Law, P.c., Chicago, IL.

For BNSF Railway Company, a Delaware corporation, Defendant: Elizabeth Brooke Herrington, LEAD ATTORNEY, Alex David Berger, Morgan, Lewis & Bockius LLP, Chicago, IL.

**Judges:** MATTHEW F. KENNELLY, United States District Judge.

**Opinion by:** MATTHEW F. KENNELLY

# Opinion

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Richard Rogers has sued BNSF Railway Company on behalf of a putative class for violations of the *Illinois Biometric Information Privacy Act (BIPA)*. The Court assumes familiarity with this case's factual and procedural background. BNSF has moved to certify for interlocutory appeal under *28 U.S.C. § 1292(b)* the Court's decision denying BNSF's motion for summary judgment. The Court denies BNSF's motion for the reasons stated below.

## Discussion

In its summary judgment decision, the Court held that none of the federal statutes BNSF cited—the *Federal Railroad Safety Act (FRSA)*, the *Interstate Commerce Commission Termination Act (ICCTA)*, and the Federal Aviation Administration Authorization Act (FAAAA)— preempted Rogers's BIPA claim. *See Rogers v. BNSF Ry. Co., No. 19 C 3083, 2022 U.S. Dist. LEXIS 45578, 2022 WL 787955, at *3-6 (N.D. Ill. Mar. 15, 2022)*. BNSF also argued that the evidence showed that only its contractor Remprex, and not [*2] BNSF, had collected, obtained or stored the class members' biometric information. The Court disagreed, concluding that "a jury could find that BNSF, and not just Remprex, violated BIPA" in light of, among other things, evidence that BNSF employees were involved in the registration of drivers and that BNSF controlled Remprex's operations. *2022 U.S. Dist. LEXIS 45578, [WL] at *7*.

BNSF argues that the Court should certify the order for interlocutory appeal for two reasons. First, BNSF contends a later conflicting decision within the Northern District of Illinois on a similar issue of federal preemption shows a reasonable ground for difference of opinion, such that an interlocutory appeal should be allowed to avoid a "massive penalty," "massive financial liability," and "crippling liability" under BIPA. Def.'s Mot. at 1, 5, 11. Second, BNSF contends that the Court held that BNSF could be vicariously liable for the actions of Remprex, which, BNSF argues, is not authorized under BIPA.

Before certifying a matter for interlocutory appeal, a court must find that "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially [*3] advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*. The Seventh Circuit has described the criteria for granting a *section 1292(b)* motion as follows:

> There are four statutory criteria for the grant of a *section 1292(b)* petition to guide the district court: there must be a question of *law*, it must be

*controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation. There is also a nonstatutory requirement: the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed.

*Ahrenholz v. Bd. of Trs. of Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)* (citation omitted).

## A. Preemption

On the preemption point, BNSF cites to a recent decision by this Court's colleague, Chief Judge Pallmeyer, in which the court held that the Airline Deregulation Act (ADA) preempted the plaintiffs' BIPA claims. *See Kislov v. Am. Airlines, Inc., No. 17 C 9080, 2022 U.S. Dist. LEXIS 50841, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022)*. BNSF reasons that the logic of *Kislov* with regard to ADA preemption is equally applicable to FAAAA preemption because the two federal statutes have the same preemptive effect. *See 2022 U.S. Dist. LEXIS 50841, [WL] at *2*. Accordingly, BNSF contends that the two opinions cannot be squared: *Kislov* was decided correctly and *Rogers* incorrectly.

This is insufficient to establish a "substantial ground for difference of opinion" within the meaning of *section 1292(b)*. If a disagreement between two district [*4] judges sufficed, the floodgates would be opened to virtually unlimited interlocutory appeals given the number of sitting district judges. And this would be so even were the argument confined to a disagreement between two judges within a district, particularly when one considers that the Northern District of Illinois has twenty-one active and eleven senior district judges. *Cf. Flynn v. Exelon Corp., No. 19 C 8209, 2022 U.S. Dist. LEXIS 15806, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022)* ("a *substantial number* of decisions conflicting with the district court's order" could suffice under the contestability criterion (emphasis added)); *Shah v. Zimmer Biomet Holdings, Inc., No. 3:16-CV-815-PPS-MGG, 2019 U.S. Dist. LEXIS 27245, 2019 WL 762510, at *8 (N.D. Ind. Feb. 20, 2019)* ("A few conflicting district court opinions . . . [do] not satisfy *Section 1292(b)*'s contestability requirement.").

BNSF has also not demonstrated how an interlocutory appeal would "materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*. The Seventh Circuit has recognized that interlocutory appeals tend to cause unnecessary delays in proceedings and waste judicial resources. *See Herdrich*

*v. Pegram, 154 F.3d 362, 368 (7th Cir. 1998)*. Thus, the party seeking an interlocutory appeal must show that "exceptional circumstances justify the departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978)* (quoting *Fisons, Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir. 1972)*). BNSF has not attempted to show how an interlocutory appeal would speed up [*5] the litigation.

Furthermore, the Court issued its summary judgment opinion on March 15, 2022, and BNSF waited more than one month to file this motion on April 26, 2022. This delay adds further weight to the Court's conclusion that certification on the issue of preemption is inappropriate. The Court notes, in this regard, that the case was, on April 1, set for trial in mid-September 2022, meaning that if it does not prevail at trial BNSF will have an opportunity for appellate review in fairly short order in any event. This is another reason why allowing an interlocutory appeal, and the resulting delay, at this time would not materially advance the ultimate termination of the case.

Finally, the Court notes that a centerpiece of BNSF's argument—that absent preemption, BIPA will, in this case, impose "crippling" liability—is a point it makes for the first time in its motion to certify. BNSF repeatedly harps on this point in its motion, referring to the potential for "a massive penalty," Def.'s Mot. at 1, "massive financial liability," *id.* at 5, "'staggering' liability," *id.* at 7, "'potentially crippling financial liability,'" *id.* at 8, "a penalty of tens of millions of dollars," *id.*, and [*6] "crippling liability," *id.* at 11. But this point was made nowhere—not even once, not even in passing—in the two briefs BNSF filed on the motion for summary judgment. Rather, BNSF's argument on summary judgment focused on (among other things) the cost of compliance, not the amount of a potential award of damages after a trial. There's no basis to certify an order for interlocutory appeal based on a contention that the moving party did not advance when it argued the issue before the Court in the first instance.

## B. Vicarious liability

BNSF argues next that the Court erred in holding that BNSF could be vicariously liable for the actions of Remprex. That's a mischaracterization of the Court's ruling; it did no such thing. Rather, the Court denied summary judgment based on conflicting evidence

2022 U.S. Dist. LEXIS 109394, *6

regarding BNSF's direct involvement in registering drivers. *See Rogers, 2022 U.S. Dist. LEXIS 45578, 2022 WL 787955, at *7*. A misreading of a ruling is not a basis to allow an interlocutory appeal. That aside, BNSF did not argue the impropriety of vicarious liability in its summary judgment briefing. In his summary judgment response brief, Rogers argued that BNSF should not "escape liability because it hired Remprex to provide the labor required to [violate [*7] BIPA]." Pl.'s Mem. of L. in Opp'n. to Def.'s Mot. for Summ. J. at 23 (dkt. no. 129). But BNSF did not reply by arguing that BIPA does not permit vicarious liability. The point is forfeited, at least as a basis for certification under *section 1292(b)*. *See Sansone v. Brennan, 917 F.3d 975, 983 (7th Cir. 2019)* ("Forfeiture occurs when a party fails to make an argument because of accident or neglect.").

## Conclusion

For the foregoing reasons, the Court denies the defendant's motion to certify an interlocutory appeal under *28 U.S.C. § 1292(b)* [dkt. no. 147].

/s/ Matthew F. Kennelly

MATTHEW F. KENNELLY

United States District Judge

Date: June 21, 2022

---

**End of Document**

# Tab 19

## *Sante Fe Industries, Inc. v. Yorke*

United States District Court for the Northern District of Illinois, Eastern Division

February 7, 1991, Decided ; February 11, 1991, Docketed

No. 90 C 5359

**Reporter**
1991 U.S. Dist. LEXIS 1637 *; 1991 WL 18483

SANTE FE INDUSTRIES, INC., Appellants, v. NATHAN YORKE, as Trustee, Appellee

**Judges:** [*1] James B. Parsons, United States District Judge.

**Opinion by:** PARSONS

# Opinion

MEMORANDUM OPINION AND ORDER

When hearing an appeal from a bankruptcy court, the district court sits as an appelate court. *In re Neis, 723 F.2d 584 (7th Cir. 1983)*. In order to decide whether to grant appellants' motion for leave to file its appeal from the bankruptcy court's order compelling production of documents for which the appellant asserts privilege, this court must decide whether to exercise its discretion to assert jurisdiction to hear that appeal.

Appellate jurisdiction in this case is premised on *28 U.S.C. § 158(a)*, which confers jurisdiction over "final" orders. Generally, a final order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgement." *Catlin v. United States, 324 U.S. 229, 233 (1945)*. "Orders which merely allow 'the proposed litigation to go forward' are not final orders because they do not conclusively or effectively determine the outcome of the litigation." *In re Public Serv. Co., 110 Bankr. 100, 102 (D.N.H. 1989)*. For the purposes of bankruptcy appeals, an order is final when it "finally determines" a creditor's position. In re [*2] *Sandy Ridge Oil Co., 807 F.2d 1332, 1334 (7th Cir. 1986)*.

SFI is not a creditor of SFTT. Its position with relation to SFTT is not determined. The order merely requires it to produce documents for which it asserts privilege. Under these circumstances, the bankruptcy court's order is clearly not a "final order." See, *In re Bowers-Siemon Chemicals Company, 90 C 7086 (J.Bua, N.D. Ill., Feb 4, 1991)*.

Alternatively, the district court has the authority to hear appeals of an interlocutory order of the bankruptcy court under the standards set forth in *28 U.S.C. § 1292(b)*. That statute authorizes the court to hear appeals from interlocutory orders (1) when such orders involve a controlling question of law; (2) when there is substantial ground for difference of opinion as to such orders; and (3) when an immediate appeal of such oders may materially advance the ultimate termination of the litigation.

It is difficult to decipher how a discovery order could be a controlling question of law. Resolution of the discovery matter is not likely to be dispositive of any of the material issues in this case. See, *Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710, 712 (7th Cir. 1986)* [*3] ("The general and very salutory rule is that discovery orders are not appealable until the end of the case."); *Resnick v. American Dental Association, 95 F.R.D. 372 (N.D. Ill. 1982)* ("it is wholly inaccurate to call that privilege issue a "controlling question of law").

Also, though the parties may have argued differently than the analysis applied by the bankruptcy court, one bankruptcy court opinion is hardly revealing of "substantial ground for difference of opinion."

Additionally, it is unclear that an immediate appeal would advance the ultimate determination of this litigation. This determination requires a two-pronged analysis: it is satisfied where "the litigation involved is protracted and expensive and the probability of retrial is decreased by interlocutory review." *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Inc., 478 F.Supp. 889, 944-945 (E.D. Penn. 1980)*. The appellants assert, without citation to authority, that the bankruptcy court's determination to grant the trustee's motion to compel is reverseable error. This is not necessarily so. This is a novel issue which could possibly be tested under the 'harmless error' standard. Such an issue is not [*4] ripe for determination.

1991 U.S. Dist. LEXIS 1637, *4

For all the foregoing reasons, the court should decline to exercise its discretion, asserting interlocutory appellate jurisdiction over the bankruptcy court's order granting the trustee' motion to compel production of certain documents. By declining to exercise jurisdiction, the court does not mean in any way to express an opinion as to the propriety of the bankruptcy court's order.

ENTER:

The court does not find that the standard set out in *28 U.S.C. § 1292(b)* necessitates the certification of the bankruptcy court's order granting the trustee's motion to compel production of certain documents as an appealable interlocutory order. Accordingly, the court declines to exercise its discretion, asserting interlocutory appellate jurisdiction over the bankruptcy court's order.

*IT IS SO ORDERED*

**End of Document**

# Tab 20

# *United States v. Moglia*

United States District Court for the Northern District of Illinois, Eastern Division

June 2, 2004, Decided ; June 7, 2004, Docketed

No. 02 C 6131

**Reporter**

2004 U.S. Dist. LEXIS 10424 *; 53 Collier Bankr. Cas. 2d (MB) 459

UNITED STATES OF AMERICA, and PEOPLE OF THE STATE OF ILLINOIS, Plaintiffs, v. ALEX D. MOGLIA, not individually, but as Chapter 7 Trustee for the Estate of Outboard Marine Corp. and its related debtor entities, Defendant.

**Prior History:** *United States v. Outboard Marine Corp., 1997 U.S. Dist. LEXIS 10986 (N.D. Ill., July 21, 1997)*

**Disposition:** [*1] Trustee's motion for certification granted.

**Counsel:** For UNITED STATES OF AMERICA, plaintiff: Joel Robert Nathan, United States Attorney's Office, Chicago, IL. Thomas J. Martin, Susan M. Tennenbaum, United States Environmental Protection Agency, Chicago, IL. Joseph W.C. Warren, U.S. Department of Justice, Washington, DC. Francis J. Biros, United States Department of Justice, Washington, DC. Alan S. Tenenbaum, Department of Justice, Washington, DC.

For PEOPLE OF THE STATE OF ILLINOIS, plaintiff: Elizabeth A. Wallace, Rose-Marie E. Cazeau, Illinois Attorney General's Office, Chicago, IL.

For ALEX D MOGLIA, not individually, but as chapter 7 trustee for the estate of Outboard Marine Corporation and its related debtor entities, defendant: Michael Joseph Quinn, Seyfarth Shaw LLP, Chicago, IL. Steven Bennett Towbin, Kathleen Helen Klaus, Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, Chicago, IL.

**Judges:** CHARLES RONALD NORGLE, Judge, United States District Judge.

**Opinion by:** CHARLES RONALD NORGLE

# Opinion

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

Before the court is Trustee's Motion for Certification, brought pursuant [*2] to *28 U.S.C. § 1292(b)*. For the following reasons, the motion is granted.

## I. BACKGROUND

On July 16, 2002, the United States and the State of Illinois (collectively "the Governments") filed a First Amended Complaint against Alex D. Moglia, not individually but as Chapter 7 Trustee ("the Trustee") for the Estate of Outboard Marine Corporation and its related debtor entities ("the Estate"). The Complaint seeks, *inter alia,* injunctive relief to enforce against the Estate alleged regulatory obligations of the debtor, Outboard Marine Corporation, pursuant to the Resource Conservation and Recovery Act, *42 U.S.C. § 6901, et seq.* ("RCRA") and injunctive relief to enforce compliance with a Consent Decree entered pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, *42 U.S.C. § 9606* ("CERCLA").

The Trustee filed a motion to dismiss the Complaint, brought pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, claiming: (1) that the Estate cannot be forced to comply with RCRA because the Complaint in essence seeks a monetary claim, and (2) [*3] that the Governments are not entitled to injunctive relief as the Estate no longer owns the facility, which was abandoned pursuant *11 U.S.C. § 554* and approved by a Settlement Agreement in the bankruptcy court. As to the first contention, the Governments argued that the Complaint sought injunctive relief, which is not a dischargeable claim for bankruptcy purposes. As to the second contention, the Governments argued that abandonment of the property was irrelevant as *section 7003 of the RCRA* allows suit to be brought against "any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling,

2004 U.S. Dist. LEXIS 10424, *3

storage, treatment, transportation or disposal. . . ." *42 U.S.C. § 6973(a)*. According to the Governments' arguments, Outboard Marine Corporation was a "past or present owner" under *section 7003 of the RCRA*, and whether it continued to own the property was irrelevant. The Governments argued that the Trustee, as representative of the Estate, cannot be separated from Outboard Marine Corporation, [*4] because under general bankruptcy law the Trustee "stands in the shoes" of the debtor. Further, the Governments argued that *section 554 of the Bankruptcy Code*, *11 U.S.C. § 554*, refers only to abandonment of property and not abandonment of any liability that may attach as a result of past property ownership.

On September 23, 2003, the court denied the motion to dismiss, holding that the Complaint put the Trustee on notice that the Governments were seeking injunctive relief, and cited *AM Int'l., Inc. v. Datacard Corp., 106 F.3d 1342, 1348 (7th Cir. 1997)*, which held that claims for injunctive relief under the RCRA do not fall within the definition of a claim under the Bankruptcy Code, *11 U.S.C. § 101(5)*. See Minute Order of of September 23, 2003.

The Trustee filed the instant motion for certification pursuant to *28 U.S.C. § 1292(b)*, which is fully briefed and before the court. The Trustee seeks to have the following legal question certified for interlocutory appeal: Whether a Chapter 7 trustee may be directed under the RCRA to expend funds of a Chapter 7 estate to clean up real property contaminated [*5] by the debtor pre-petition, when the real property has been abandoned pursuant to *11 U.S.C. § 554* and is no longer property of the bankruptcy estate.

## II. DISCUSSION

### A. Standard of Decision

The movant seeking the grant of a motion to certify an interlocutory order for immediate appeal pursuant to *28 U.S.C. § 1292(b)* bears a heavy burden, as only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Fisons Limited v. United States, 458 F.2d 1241, 1248 (7th Cir.1972)*, *cert. denied 405 U.S. 1041, 31 L. Ed. 2d 581, 92 S. Ct. 1312 (1972)*. The statutory text of *28 U.S.C. § 1292(b)* provides, *inter alia:*

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing [*6] in such order.

"There are four statutory criteria for the grant of a *section 1292(b)* petition to guide the district court: there must be a question of *law,* it must be *controlling,* it must be *contestable,* and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of the Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000)* (emphasis in original). "There is also a nonstatutory requirement: the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *Id. at 675-76* (citing *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc., 202 F.3d 957, 958 (7th Cir. 2000))*. All of these criteria must be satisfied in order to certify an interlocutory order for immediate appeal. See *id. at 676* ("The criteria are conjunctive, not disjunctive."); see also *In re Hamilton, 122 F.3d 13, 14 (7th Cir. 1997)* (emphasizing proper standard of decision under *28 U.S.C. § 1292(b))*.

### B. Analysis of *28 U.S.C. § 1292(b)* Criteria

#### 1. Question of Law

The first statutory [*7] criterion under *§ 1292(b)* is that there must be a question of law. In *Ahrenholz,* the Seventh Circuit provided a definition of "question of law," stating that a "'question of law' as used in *section 1292(b)* has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine . . . ." *219 F.3d at 676*. The Seventh Circuit then emphasized that the framers of *§ 1292(b)* intended the term "question of law" to refer to "'pure' question[s] of law rather than merely to an issue that might be free from a factual contest." *Id. at 676-77*. The Seventh Circuit referred to orders denying immunity defenses as the paradigmatic example of such a "question of law." *Id. at 677* (citing *Johnson v. Jones, 515 U.S. 304, 317, 132 L. Ed. 2d 238, 115 S. Ct. 2151 (1995))*.

With regard to the instant opinion, the court finds that Trustee presents such a paradigmatic example of such a "question of law." The legal question of whether a Chapter 7 trustee may be directed under the RCRA to

expend funds of a Chapter 7 estate to clean up abandoned real property contaminated by the debtor pre-petition is in the nature [*8] of an immunity defense, and as such is a pure question of law.

*2. Controlling*

The second statutory criterion under *§ 1292(b)* is that the question of law must be controlling. A question of law is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp., v. Tushie-Montgomery Assocs., Inc., 86 F.3d 656, 659 (7th Cir 1996).*

With regard to the instant opinion, the court finds that the question of law is controlling. If Trustee is immune from suit under the RCRA, the case against him must be dismissed.

*3. Contestable*

The third statutory criterion under *§ 1292(b)* is that the question of law must be contestable, *i.e.,* that substantial grounds for a difference of opinion on the issue exist. A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal. See *Smith v. City of Chicago, 2003 U.S. Dist. LEXIS 7129, No. 94 C 920, 2003 WL 1989612, *1 (N.D. Ill. April 28, 2003).* [*9]

The Trustee argues that the question of whether a Chapter 7 trustee may be directed under the RCRA to expend funds of a Chapter 7 estate to clean up abandoned real property contaminated by the debtor pre-petition, is a matter of first impression. In response, the Governments argue that no substantial ground for a difference of opinion exists in light of the statutory text of the Solid Waste Disposal Act, *42 U.S.C. § 6973(a)*, and *section 554 of the Bankruptcy Code*, *11 U.S.C. § 554*, dealing with abandonment. The Governments' argument -- that *11 U.S.C. § 554* refers only to abandonment of property and not abandonment of any liability that may attach as a result of past property ownership -- is well-reasoned and placates the competing aims of bankruptcy and environmental law; however, the Governments have provided no direct authority on the issue as framed by the Trustee.

While the court denied the motion to dismiss based on the applicable notice pleading standard under *Federal Rule of Civil Procedure 12(b)(6)*, the court has not found any controlling authority directly addressing [*10] the issue as framed by the Trustee, and as such, the issue is contestable.

*4. Speed Up the Litigation*

The fourth statutory criterion under *§ 1292(b)* is that resolution of the question of law "may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b).*

With regard to the instant opinion, the court finds that resolution of the question of law "may materially advance the ultimate termination of the litigation." If the court's order denying the motion to dismiss was erroneous, the Trustee would be immune from suit under the RCRA, and the case would be dismissed.

*5. Timeliness of Motion to Certify*

The instant motion was filed within one week of the court's order of which certification of appeal is sought, and as such the motion is timely.

## III. CONCLUSION

For the foregoing reasons, the Trustee's motion for certification pursuant to *28 U.S.C. § 1292(b)* is granted. The following issue meets the requirements of *28 U.S.C. § 1292(b)*: Whether a Chapter 7 trustee may be directed under the RCRA to expend funds of a Chapter 7 estate to clean up real property contaminated by the [*11] debtor pre-petition, when the real property has been abandoned pursuant to *11 U.S.C. § 554* and is no longer property of the bankruptcy estate. Therefore, the court's order of September 23, 2003 is certified to the Seventh Circuit Court of Appeals for interlocutory review.

IT IS SO ORDERED.

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 6/2/04.

# Tab 21

# *Wise v. SLM Corp.*

United States District Court for the Southern District of Illinois

October 13, 2015, Decided; October 13, 2015, Filed

Case No. 14-CV-1426-SMY-DGW

**Reporter**

2015 U.S. Dist. LEXIS 139045 *

DIANA EILEEN WISE, individually and on behalf of all others similarly situated, Plaintiff, vs. SLM CORPORATION, NAVIENT CORPORATION and NAVIENT SOLUTIONS, INC., f/k/a SALLIE MAE, INC., Defendants.

**Counsel:** [*1] For Diana Eileen Wise, individually and on behalf of all others similarly situated, Rachel Javellana, individually and on behalf of all others similarly situated, Kelley Villano, individually and on behalf of all others similarly situated, Plaintiffs: Brandon Michael Wise, LEAD ATTORNEY, Wise Law Firm LLC, St. Louis, MO.

For Navient Corporation, Navient Solutions, Inc., formerly known as, Sallie Mae, Inc., Defendants: Lisa M. Simonetti, LEAD ATTORNEY, Vedder Price (CA), LLP, Los Angeles, CA; Beth A. Bauer, HeplerBroom LLC - Edwardsville, Edwardsville, IL; Charles J. Nerko, Vedder Price PC (New York), New York, NY.

**Judges:** STACI M. YANDLE, United States District Judge.

**Opinion by:** STACI M. YANDLE

# Opinion

## MEMORANDUM AND ORDER

### YANDLE, District Judge:

On July 22, 2015, Defendants' moved to disqualify Plaintiff's counsel asserting that counsel has a conflict of interest with the class because the named Plaintiff is his wife (Doc. 26). On August 19, 2015, this Court denied Defendants' motion as premature because Plaintiff had not yet applied for class certification (Doc. 31). Now pending before the Court is Defendants' Motion to Certify Question of Timing of Disqualification of Proposed Class Counsel for Interlocutory Review [*2] and to Stay Proceedings (Doc. 38). Defendants ask the

Court to certify, pursuant to *28 U.S.C. § 1292(b)*, the issue of when the district court should take up a motion to disqualify class counsel based on the marital relationship with a named plaintiff. For the foregoing reasons, Defendants' Motion is **DENIED**.

As a general rule, appellate courts may only hear appeals from "final decisions" of the district courts. *See 28 U.S.C. § 1291*. The court of appeals, in its discretion, may hear an interlocutory appeal after certification from the district court that the appeal presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *28 U.S.C. § 1292(b)*. In enacting *§ 1292(b)*, Congress "chose to confer on district courts first line discretion to allow interlocutory appeals." *Swint v. Chambers County Com'n, 514 U.S. 35, 46-47, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995)*. However, Congress "carefully confined the availability of such review," and "even if the district judge certifies the order under *§ 1292(b)*, the appellant still 'has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of [*3] a final judgment.'" *Coopers & Lybrand v. Livesay, 437 U.S. 463, 474-75, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978)*.

In *Ahrenholz v. Board of Trustees of University of Illinois, 219 F.3d 674, 675-76 (7th Cir. 2000)*, the Seventh Circuit concisely summarized the *§ 1292(b)*'s requirements:

> There are four statutory criteria for the grant of a *section 1292(b)* petition .... there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation....

There is also a non-statutory requirement—that the motion for interlocutory appeal was filed in the district court within a reasonable time after entry of the order sought to be appealed. *Ahrenholz, 219 F.3d at 676*,

citing *Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc., 202 F.3d 957, 958 (7th Cir. 2000)*. The Seventh Circuit emphasized in *Ahrenholz*: "Unless *all* these criteria are satisfied, the district court may not and should not certify its order ... under *section 1292(b)*." *Id.* (emphasis in original).

Here, Plaintiff asserts that Defendants did not file their motion in a reasonable amount of time, therefore, the motion must be denied as untimely (Doc. 46). *Section 1292(b)* does not provide an express timeline for filing a certification motion. *Richardson Elecs., Ltd. v. Panache Broad., 202 F.3d 957, 958 (7th Cir. 2000)* ("There is no time limit in the statute or in any applicable rules for seeking the district judge's permission to appeal under *1292(b)* ..."). Nonetheless, the Seventh Circuit has made clear that a certification motion must be filed in the district court within a reasonable time after [*4] the order sought to be appealed. *Ahrenholz, 219 F.3d at 675-76*.

Here, Defendants filed their motion for certification — which is essentially a regurgitation of the previous motion for disqualification — 35 days after this Court's ruling. No explanation was given for the delay. Accordingly, the Court finds that the motion was not filed within a reasonable time. *See Morton Coll. Bd. of Trustees of Illinois Cmty. Coll. Dist. No. 527 v. Town of Cicero, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998)* (denying motion for certification as untimely due to 30-day delay in requesting certification). However, even if Defendants' motion were timely filed, this Court would nonetheless deny the motion because Defendants fail to show that a question of law is at issue.

A "question of law" as used in *section 1292(b)* has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine; in other words, an "abstract legal issue" that the court of appeals could decide "quickly and cleanly without having to study the record." *Ahrenholz, 219 F.3d at 676*. Here, the question of whether and/or when class counsel should be disqualified is a fact-specific inquiry, which does not involve an abstract legal issue. Moreover, the law is settled that a motion to disqualify class counsel is premature absent the existence of the class. *See Rosen v. Mystery Method, Inc., 2008 U.S. Dist. LEXIS 10461, 2008 WL 410642, at *1 (N.D. Ill. Feb. 13, 2008)*; *Huricks v. Shopkick, Inc., 2014 U.S. Dist. LEXIS 140477, 2014 WL 4954662, at *2 (N.D. Cal. Oct. 1, 2014)*; *Maio v. Aetna Inc., 1999 U.S. Dist. LEXIS 15056, 1999 WL 800315, at *3 (E.D. Pa. Sept. 29, 1999)* aff'd, *221 F.3d 472 (3d Cir. 2000)*; *Williams v.*

*Cent. Transp. Int'l, Inc., 2014 U.S. Dist. LEXIS 158565, 2014 WL 5823112, at *4 (E.D. Mo. Nov. 7, 2014)*.

Nothing about [*5] this matter necessitates a departure from the normal requirement that parties await the final determination of their disputes before taking appeal. Accordingly, Defendants' Motion to Certify Question of Timing of Disqualification of Proposed Class Counsel for Interlocutory Review and to Stay Proceedings is **DENIED**.

**IT IS SO ORDERED**.

**DATED: October 13, 2015**

**/s/ Staci M. Yandle**

**STACI M. YANDLE**

**United States District Judge**

---

*End of Document*