**EXHIBIT 1**

**STIPULATED FINAL ORDER**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, STATE OF ARIZONA, ATTORNEY GENERAL DANA NESSEL on behalf of THE PEOPLE OF MICHIGAN, STATE OF MINNESOTA, and STATE OF WISCONSIN, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEERE & COMPANY, <br><br> *Defendant*. | Case No. 3:25-cv-50017 <br><br> Hon. Iain D. Johnston |

## STIPULATED ORDER FOR PERMANENT INJUNCTION AND OTHER RELIEF

The Federal Trade Commission ("Commission" or "FTC") and the states of Illinois, Arizona, Minnesota, and Wisconsin, acting by and through their respective Attorneys General, and Plaintiff Attorney General Dana Nessel, on behalf of the People of Michigan (together, "Plaintiff States," and together with the FTC, "Plaintiffs"), filed an Amended Complaint ("Complaint") for a permanent injunction and other relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 16 of the Clayton Act, 15 U.S.C. § 26, and applicable state laws. Plaintiffs and Defendant Deere & Company ("Deere" or "Defendant") stipulate to the entry of this Stipulated Order for Permanent Injunction and Other Relief ("Stipulated Order") to resolve all matters in dispute in this action between them. Further, as part of the settlement of this matter, Defendant agrees to comply with this Stipulated Order pending its entry or rejection by the Court.

## FINDINGS

1. This Court has jurisdiction over the parties.

2. The Court has subject matter jurisdiction over this action pursuant to Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. § 26, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c) and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

1

4. The Complaint charges that Defendant engaged in monopolization and unfair methods of competition in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a); and state antitrust laws.

5. Defendant neither admits nor denies any of the allegations in the Complaint. For purposes of this action only, Defendant admits the facts necessary to establish jurisdiction.

6. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Stipulated Order, and agrees to bear its own costs and attorneys' fees.

7. Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Stipulated Order.

8. Entry of this Stipulated Order is in the public interest.

## STIPULATIONS

1. Defendant stipulates that venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c), and (d), and under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and that, for purposes of this Stipulated Order alone, the Court has jurisdiction over Defendant.

2. Defendant waives all rights to appeal or otherwise challenge or contest validity of this Stipulated Order.

3. Defendant stipulates that it shall comply with the provisions of this Stipulated Order pending its entry by the Court.

4. Defendant and the FTC have agreed to entry of this Stipulated Order to fully and finally resolve all claims between the FTC and Defendant arising from the specific events giving rise to the allegations described in the Complaint and to preclude further litigation between FTC and Defendant on such matters except for purposes of enforcing or modifying this Stipulated Order.

5. The Attorneys General of Illinois, Minnesota, Arizona, Michigan, and Wisconsin release Deere from all claims that the Plaintiff States brought or could have brought against Deere arising from the specific events giving rise to the allegations described in the Complaint (except for any parens patriae claim for damages on behalf of persons residing in their states or any claim on behalf of any county, city, town, or other local governmental entity within their respective states). For the avoidance of doubt, the Office of the Arizona Attorney General did not bring, and/or does not have authorization unilaterally to settle or release, claims that could have been but were not brought in this matter on behalf of any other state agency or political subdivision pursuant to Arizona Revised Statutes § 41-192(A)(5) or (B)(4). For the avoidance of doubt, the Office of the Wisconsin Attorney General does not represent any other state department, official, employee or agent in this matter and does not release claims that could have been but were not brought in this matter on behalf of any other state department, official,

2

employee or agent pursuant to Wis. Stat. §§ 165.25(1m) or (4). Further, the Attorneys General of Illinois, Minnesota, Arizona, Michigan, and Wisconsin covenant not to pursue against Deere any cause of action, suit, or proceeding they could bring arising from the specific events giving rise to the allegations described in the Complaint (except for purposes of enforcing or modifying this Stipulated Order), to the extent allowed by law.

6.  Except as provided in Section III, the Commission, the Plaintiff States, and the Defendant shall each bear their own costs, including attorneys' fees, of this action.

## I. Definitions

**IT IS ORDERED** that, as used in this Stipulated Order, the following definitions shall apply:

A.  "Commission" or "FTC" means the Federal Trade Commission.

B.  "Plaintiff States" means the states of Illinois, Arizona, Minnesota, and Wisconsin, acting by and through their respective Attorneys General, and Plaintiff Attorney General Dana Nessel, on behalf of the People of Michigan.

C.  "Deere" or "Defendant" means Deere & Company, its directors, officers, employees, agents, representatives, successors, and assigns; the joint ventures, subsidiaries, partnerships, divisions, groups, and affiliates controlled by Deere & Company, and the respective directors, officers, employees, agents, representatives, successors, and assigns of each.

D.  "CCMS" means Deere's Case Contact Management System, or any successor system(s) thereto.

E.  "Company A" means the company named in nonpublic Appendix F, a manufacturing company that provides engines to Deere utilized in a limited number of Deere Agricultural Equipment models.

F.  "Company A Approval" means a communication from Company A to Deere approving the provision by Deere to Owners and Independent Repair Providers of Repair Resources that enable the capabilities listed under parts (c), (d), (i), (j), and (k) of Appendix A, as incorporated in the definition of "Repair Resources," in relation to Company A ECUs or Embedded Software installed on Deere Agricultural equipment.

G.  "Company A Date" means the date 90 days after Deere's receipt of Company A Approval.

H.  "Dealer Business Resources" means administrative and business systems and resources provided by Deere to Deere Dealers that are neither Repair Resources nor Future Repair Resources, such as sales and marketing tools, recordkeeping systems, and cost estimation software.

I.      "Deere Agricultural Equipment" means any past, current, or future product manufactured or sold by Deere for use in farming or other forms of agriculture that depends for its functioning, in whole or in part, on digital electronics embedded in or attached to it. Agricultural Equipment includes tractors, combines, harvesting equipment, tillage, planting, irrigation or cultivating implements, balers, and other off-road vehicles and implements primarily designed for use in an agricultural operation. *Provided, however*, Deere Agricultural Equipment does not include motor vehicles designed and sold primarily for passenger or property transportation on public roadways.

J.      "Deere Dealer" means a current or future independently owned business or affiliate of Deere in the United States that is authorized by Deere to sell or lease Deere Agricultural Equipment to Owners and to provide maintenance, diagnostic, or repair service, or parts to Owners, for Deere Agricultural Equipment.

K.      "Designated State Representatives" means the following named individuals, as may be modified by a Plaintiff State by notice to Deere and Plaintiffs:

Elizabeth Odette, Assistant Attorney General, Manager Antitrust Division, Office of the Minnesota Attorney General, 445 Minnesota Street, Suite 600, Saint Paul, MN 55101, Elizabeth.Odette@ag.state.mn.us;

Elizabeth L. Maxeiner, Chief, Antitrust Bureau, Office of the Illinois Attorney General, 115 S. LaSalle St., Floor 35, Chicago, IL 60603, Elizabeth.Maxeiner@ilag.gov;

Sarah Pelton, Assistant Attorney General, Arizona Attorney General's Office, 2005 N. Central Avenue, Phoenix, AZ 85004, consumer@azag.gov, sarah.pelton@azag.gov;

Caitlin M. Madden, Assistant Attorney General, State of Wisconsin Department of Justice, 17 W. Main St. Madison, WI 53703, caitlin.madden@wisdoj.gov;

LeAnn D. Scott, Assistant Attorney General, Corporate Oversight Division, Michigan Department of Attorney General, Williams Building, 5th Floor, 525 West Ottawa Street, Lansing, MI 48909, ScottL21@michigan.gov.

L.      "DTAC" means Deere's Dealer Technical Assistance Center or any successor or similar entity or system.

M.      "DTAC Solution" means a troubleshooting, diagnostic, or repair solution or guidance generated by DTAC or CCMS, *provided, however*, DTAC Solution does not include any Deere Dealer submission to DTAC or any related communication between submitting Deere Dealers and Deere prior to publication of such a solution or guidance.

N.      "Embedded Software" means any programmable instructions provided on firmware (a software program or set of instructions programmed on Deere Agricultural Equipment, or on a part of such Deere Agricultural Equipment, to allow the Deere Agricultural Equipment or part to communicate within itself or with other computer hardware)

4

delivered with, loaded onto, or to be loaded onto Deere Agricultural Equipment, with respect to Deere Agricultural Equipment operation, including all relevant updates, patches, and fixes made by Deere, including items described as "basic internal operating system," "internal operating system," "machine code," "payload files," "assembly code," "root code," and "microcode."

O.  "Emissions Inducement Override" means resetting an engine final inducement, including in relation to a fault in an engine selective catalytic reduction ("SCR") emission control system, so as to permit equipment to return to full operation in connection with or following equipment repair.

P.  "Fair and Reasonable Terms" shall be assessed based on the following factors: (1) the net cost (accounting for any discounts, rebates, or other incentive programs) to a Deere Dealer, for similar items obtained from Defendant; (2) the cost to Defendant of preparing, maintaining, and distributing the item; (3) the price charged by other manufacturers of agricultural equipment for similar items; (4) the ability of Owners and IRPs to afford the item; (5) the means by which the item is distributed; (6) the extent to which the item is used, which includes the number of users, and frequency, duration, and volume of use; and (7) inflation.

Q.  "Future Repair Resources" means (1) any successor products, versions, improvements, additions, upgrades, or updates to Repair Resources; or (2) any Repair Tool that Deere makes available to Deere Dealers after this Stipulated Order is entered that (a) performs any of the same or essentially the same functions as Repair Resources or (b) is reasonably necessary to diagnose, maintain, update, or repair Deere Agricultural Equipment. A Repair Tool is reasonably necessary to diagnose, maintain, update, or repair Deere Agricultural Equipment if the Deere Agricultural Equipment will not operate in fully functional condition in accordance with factory specifications without that Repair Tool.

R.  "IRP" means an independent repair provider that is an individual or business that is not a Deere Dealer and that is engaged in or wishes to engage in diagnosing, maintaining, or repairing Deere Agricultural Equipment in the United States, whether or not that individual or business is an Owner.

S.  "Owner" means any Person that owns or leases Deere Agricultural Equipment in the United States.

T.  "Person" means both natural and artificial persons, including corporations, partnerships, and unincorporated entities.

U.  "Repair Resources" include John Deere Operations Center™ PRO Service and each of the functions and capabilities, whether onboard or remote, (1) listed in Appendix A, as applicable, or (2) reasonably necessary to maintain, diagnose, and repair Deere Agricultural Equipment. A function or capability is reasonably necessary to maintain, diagnose, and repair Deere Agricultural Equipment if the Deere Agricultural Equipment will not operate in fully functional condition in accordance with factory specifications without that function or capability.

V.      "Repair Tool" means any software, interactive software tool, hardware implement (specialty or otherwise), category of information, or other apparatus manufactured or provided by Deere and used to diagnose, maintain, update, repair, or re-activate Deere Agricultural Equipment or to bring Deere Agricultural Equipment back to fully functional condition in accordance with factory specifications; *provided, however*, that Repair Tool does not include (i) information not distributed outside of Deere or (ii) ordinary course communications between Deere and Deere Dealers regarding sales and marketing, inventory management, warranty administration, recordkeeping, financial performance, or other functions whose primary purpose is related to the administrative operations of Deere or Deere Dealers.

W.      "Rollout Schedule" means the schedule set forth in Appendix B.

## II. Access to Repair Resources

**IT IS FURTHER ORDERED** that Deere shall:

A.      Make available to every Owner and IRP on Fair and Reasonable Terms, on a license, subscription, or purchase basis, Repair Resources equivalent to those Deere then makes available to Deere Dealers, subject to the Rollout Schedule;

B.      Exercise reasonable best efforts to obtain Company A Approval as soon as reasonably practicable and thereafter make available the relevant Repair Resource capabilities in accordance with Paragraph II.A and the Rollout Schedule;

C.      Make available to every Owner and IRP on Fair and Reasonable Terms, on a license, subscription, or purchase basis, Future Repair Resources as soon as access is granted to over 50 percent of Deere Dealer locations in the United States; and

D.      Instruct Deere Dealers, as directed in Section IV and Appendix E of this Order, (1) to promote and support Repair Resources and Future Repair Resources and to sell them to all Owners and IRPs that request them, regardless of whether the Owner or IRP purchases repair services from the Deere Dealer; and (2) not to discriminate or retaliate in any way, including in the sales, financing, or servicing of Deere Agricultural Equipment, tools, or parts, against any Owner or IRP that purchases Repair Resources or Future Repair Resources or engages in repair of Deere Agricultural Equipment, subject in each case to Deere Dealers' reasonable business judgment related to the cost of serving a customer due to such customer's geographic location, creditworthiness, or compliance with law.

*Provided, however*, that the license, subscription, or purchase of Repair Resources need not include title to or ownership of any of Deere's intellectual property rights.

*Provided further, however,* that it shall not, of itself, constitute a violation of this Stipulated Order for Defendant to provide to Deere Dealers Dealer Business Resources that it does not provide to Owners and IRPs.

6

*Provided further, however*, that for good cause shown Deere may seek an extension of any deadline contained in this Section II.

*Provided further, however*, that Deere may condition the ability of an IRP to use Repair Resources or Future Repair Resources with respect to a particular piece of Deere Agricultural Equipment on obtaining the Owner's express or implied consent. Deere shall not, however, impose unreasonable barriers or conditions to obtaining such consent.

*Provided further, however*, that nothing in this Section II shall be construed to require Deere to act in a manner inconsistent with any applicable local, state, or federal laws, rules, regulations, or guidance.

### III. Payment to Plaintiff States

**IT IS FURTHER ORDERED** that Deere shall within 30 calendar days of the Court's entry of this Stipulated Order, pay the Plaintiff States collectively a monetary payment of one million dollars ($1,000,000) for the Plaintiff States' costs and attorneys' fees, which shall be used for defraying the expenses of each Plaintiff State's antitrust and consumer protection enforcement and for such other expenditures at the discretion of each Plaintiff State's Attorney General. Deere will make this monetary payment 30 days after the Stipulated Order is entered by the Court via electronic deposit per instructions from the Plaintiff States to be provided by the State of Illinois to Deere. The monetary payment will be apportioned among the Plaintiff States at the sole discretion of the Plaintiff States as may be agreed upon among them. This payment is not a penalty.

*Provided, however,* that this Stipulated Order shall have no effect upon claims or causes of action of any persons other than the FTC and the Plaintiff States' Attorneys General. Nothing in this Stipulated Order shall be construed to create, waive, limit, settle, release, or resolve any private right of action, including the claims or causes of actions that have been brought or could be asserted in *In re Deere & Company Repair Services Antitrust Litig.*, Case No. 3:22-cv-50188 (N.D. Ill.).

### IV. Notice to Deere Authorized Repair Providers and Owners

**IT IS FURTHER ORDERED** that Deere shall:

A.   No later than 30 days from the date this Stipulated Order is entered, post a notice on the home page of the Deere website informing visitors of this Stipulated Order with links to Appendix C on the Deere website and to this Stipulated Order on the Commission's website. Such notice shall remain in place for the term of this Stipulated Order;

B.   No later than 30 days from the date this Stipulated Order is entered, deliver to each Owner and IRP that has purchased Agricultural Equipment, service, or parts from Deere or a Deere Dealer, or submitted or had submitted on its behalf a warranty claim to Deere, in the 3 years prior to the date of this Stipulated Order a letter in the form of Appendix D and a copy of this Stipulated Order:

  1.   By U.S. Mail, return receipt requested; or

2.      Via email transmittal with proof of read-receipt; or
3.      Hand delivered with proof of delivery.

C.     Provide the notice required in Paragraph IV.B to each purchaser of Deere Agricultural Equipment or Deere parts sold by Deere or a Deere Dealer within 30 days of the date of purchase.

D.     No later than 30 days from the date this Stipulated Order is entered, deliver to each Deere Dealer a letter in the form of Appendix E and a copy of this Stipulated Order:

1.      By U.S. Mail, return receipt requested; or
2.      Via email transmittal with proof of read-receipt; or
3.      Hand delivered with proof of delivery.

## V. Compliance Obligations

**IT IS FURTHER ORDERED** that Deere shall:

A.     No later than 30 days after the date on which this Stipulated Order is entered, provide a copy of this Stipulated Order and the Complaint to Deere's directors, officers, and employees with responsibility for marketing, selling, or supporting Repair Tools, Repair Resources, or Future Repair Resources in the United States.

B.     Provide a copy of this Stipulated Order and the Complaint to any Person who becomes a director, officer, or employee of Deere with responsibility for marketing, selling, or supporting Repair Tools, Repair Resources, or Future Repair Resources in the United States within 30 days of the commencement of such Person's employment or term as a director or officer.

C.     Require each Person to whom a copy of this Stipulated Order is furnished pursuant to Paragraphs V.A and V.B to sign and submit to Deere within 30 days of the receipt thereof a statement that (1) represents that the undersigned has read this Stipulated Order, and (2) acknowledges that the undersigned has been advised and understands that noncompliance with this Stipulated Order may subject Deere to being held in contempt of court.

D.     Deere shall retain documents and records sufficient to record Deere's compliance with the obligations set forth in Paragraphs V.A–C.

## VI. Compliance Reports

**IT IS FURTHER ORDERED** that Defendant shall file verified written reports ("Compliance Reports") with the Commission and with each Designated State Representative in accordance with the following:

A.     Defendant shall submit:

1.  Compliance Reports 30 days after the date this Stipulated Order is entered and every 60 days thereafter until the Rollout Schedule is complete;

2.  Annual Compliance Reports one year after the date this Stipulated Order is entered, and annually for the next 9 years on the anniversary of that date; and

3.  An interim Compliance Report no later than 10 days after Deere makes any new Repair Tool available after the date of this Stipulated Order to more than 50 percent of Deere Dealer locations in the United States without making or planning on making a Repair Tool with equivalent capabilities available to all Owners and IRPs; and

4.  Additional Compliance Reports at other times as the Commission, its staff, or a Plaintiff State may request.

B.  Each Compliance Report and interim Compliance Report shall contain sufficient information and documentation to enable the Commission and the Plaintiff States to determine independently whether Deere is in compliance with this Stipulated Order. Conclusory statements that Deere has complied with its obligations under this Stipulated Order are insufficient.

1.  For all Compliance Reports submitted pursuant to Paragraphs VI.A.1, VI.A.2, and VI.A.4, Deere shall include in its reports, among other information or documentation that may be necessary to demonstrate compliance, a full description of the measures Deere has implemented and plans to implement to comply with each paragraph of this Stipulated Order for the period subsequent to the last Compliance Report submitted pursuant to Paragraphs VI.A.1, VI.A.2, and VI.A.4, including detailed descriptions of: (a) the status of progress with respect to the Rollout Schedule; (b) any new Repair Tools or Future Repair Resources released after the date of this Stipulated Order to more than 50 percent of Deere Dealer locations in the United States, including: (i) the name and capabilities of the new Repair Tool or Future Repair Resource, (ii) the purpose of the new Repair Tool or Future Repair Resource, and, (iii) if applicable, all reasons and justifications for withholding the new Repair Tool's capabilities from Owners and IRPs; (c) Owner or IRP complaints relating to repairability of Deere Agricultural Equipment or access to Repair Resources received or acted upon through Deere's counsel or Deere's Customer Contact Center since the preceding Compliance Report; (d) Owner or IRP complaints related to Deere Dealers' dissemination of information about Repair Resources or Future Repair Resources, and any complaints or reports of discriminatory or retaliatory behavior by Deere Dealers related to an Owner's or IRP's use or contemplated use of Repair Resource or Future Repair Resource received or acted upon through Deere's counsel or Deere's Customer Contact Center since the preceding Compliance Report; (e) the date, counterparty, and price and terms of all licenses, purchases, and subscriptions of Repair Resources or Future Repair Resources since the preceding Compliance Report; and (f) an explanation of how Deere determined the price and terms to Owners and IRPs of Repair Resources or Future Repair

Resources released or whose price or terms changed since the preceding Compliance Report with reference to the factors set out in Paragraph I.P, as applicable.

2. For all interim Compliance Reports submitted pursuant to Paragraph VI.A.3, Deere shall include in its reports, among other information or documentation that may be necessary to demonstrate compliance, detailed descriptions of: (a) the name and capabilities of the new Repair Tool; (b) the purpose of the new Repair Tool; and (c) all reasons and justifications for withholding the new Repair Tool from Owners and IRPs. Deere shall not be required to include in such reports ordinary course updates of Dealer Business Resources existing as of the date of entry of this Stipulated Order.

C. For a period of 5 years after filing a Compliance Report, Defendant shall retain all material written communications with each party identified in each Compliance Report and all non-privileged internal memoranda, reports, and recommendations concerning fulfilling Defendant's obligations under this Stipulated Order during the period covered by such Compliance Report. Defendant shall provide copies of these documents to Commission staff upon request.

D. Defendant shall verify each Compliance Report in the manner set forth in 28 U.S.C. § 1746 by its Chief Executive Officer or another officer or employee specifically authorized to perform this function. Defendant shall file its Compliance Reports with the Secretary of the Commission at ElectronicFilings@ftc.gov, the Compliance Division of the Commission's Bureau of Competition at bccompliance@ftc.gov, and with the Plaintiff States by email transmittal to each of the Designated State Representatives.

## VII. Change in Defendant

**IT IS FURTHER ORDERED** that Defendant shall notify the Commission and the Plaintiff States at least 30 days prior to:

A. The dissolution of Deere & Company;

B. The acquisition, merger, or consolidation of Deere & Company; or

C. Any other change in Defendant, including assignment and the creation, sale, or dissolution of subsidiaries, if such change might affect compliance obligations arising out of this Stipulated Order.

## VIII. Access

**IT IS FURTHER ORDERED** that, for the purpose of determining or securing compliance with this Stipulated Order, and subject to any legally recognized privilege, and upon written request and upon 5 days' notice to Defendant, Defendant shall, without restraint or interference, permit any duly authorized representative of the Commission or the Plaintiff States:

10

A.  Access, during business office hours of Defendant and in the presence of counsel, to all facilities and access to inspect and copy all books, ledgers, accounts, correspondence, memoranda, and all other records and documents in the possession, or under the control, of Defendant related to compliance with this Stipulated Order, which copying services shall be provided by Defendant at its expense; and

B.  To interview directors, officers, or employees of Defendant, who may have counsel present, regarding compliance with this Stipulated Order.

### IX. Jurisdiction

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this matter for purposes of construction, modification, and enforcement of this Stipulated Order.

### X. Enforcement

**IT IS FURTHER ORDERED** that:

A.  The Commission and the Plaintiff States retain and reserve all rights to enforce the provisions of this Stipulated Order, including the right to seek an order of contempt from the Court. Defendant agrees that, in a civil contempt action, a motion to show cause, or a similar action brought by the Commission or a Plaintiff State relating to an alleged violation of this Stipulated Order, the Commission or Plaintiff State may establish a violation of this Stipulated Order and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendant waives any argument that a different standard of proof should apply.

B.  This Stipulated Order shall be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Commission and Plaintiff States alleged was harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and that the Court may enforce, any provision of this Stipulated Order that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Stipulated Order should not be construed against any party as the drafter.

C.  In an enforcement proceeding in which the Court finds that Defendant has violated this Stipulated Order, the Plaintiffs may apply to the Court for an extension of this Stipulated Order, together with other relief that may be appropriate.

D.  For a period of 4 years following the expiration of this Stipulated Order, if the Commission or any Plaintiff State has evidence that Defendant violated this Stipulated Order before it expired, it may file an action against Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Stipulated Order for an additional term of at least 4 years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Defendant complies with the terms of this Stipulated Order; and (4) fees or expenses as called for by this Section X.

## XI. Term

**IT IS FURTHER ORDERED** that this Stipulated Order shall terminate 10 years from the date on which it is entered.

## XII. Interpretation

**IT IS FURTHER ORDERED** that no agreement, understanding, representation, or interpretation not contained in this Stipulated Order may be used to vary or contradict the terms hereof.


**SO ORDERED** this _____ day of _____, 2026.


_____

THE HONORABLE IAIN D. JOHNSTON

12

SO STIPULATED AND AGREED this 8th day of July, 2026:

COUNSEL FOR PLAINTIFF FEDERAL
TRADE COMMISSION

*/s/ Laura R. Hall*
LAURA R. HALL
JOSEPH R. BAKER
ROBERT Y. CHEN
JOSEPH M. CONRAD
GEOFFREY M. GREEN
AUSTIN HEYROTH
ALOK NARAHARI
JACK PARKE
SOPHIA QASIR
MELISSA WESTMAN-CHERRY
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, N.W.
Washington, DC 20580
Telephone: (202) 326-3282
Email: lhall1@ftc.gov

RACHEL F. SIFUENTES
Federal Trade Commission
230 South Dearborn St., Suite 3030
Chicago, IL 60604
Telephone: (312) 960-5617
Email: rsifuentes@ftc.gov


COUNSEL FOR PLAINTIFF STATE OF
ILLINOIS

KWAME RAOUL
Attorney General
*/s/ Brian M. Yost*
BRIAN M. YOST
Supervising Attorney, Antitrust
JENNIFER M. CORONEL
Deputy Bureau Chief, Antitrust
ELIZABETH L. MAXEINER
Bureau Chief, Antitrust
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603

DEFENDANT DEERE & COMPANY

DENVER CALDWELL
Vice President, Global Aftermarket and
    Customer Support
Deere & Company
6400 NW 86th Street
Johnston, IA 50131
Telephone: (612) 968-2397
Email: CaldwellDenverD@JohnDeere.com


COUNSEL FOR DEFENDANT DEERE &
COMPANY

*/s/ Lin W. Kahn*
LIN W. KAHN
CHRISTINA N. FULPONI
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:      +1.415.626.3939
Facsimile:      +1.415.875.5700
Email: lkahn@jonesday.com
Email: cfulponi@jonesday.com

JOHN M. MAJORAS
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001.2113
Telephone:      +1.202.879.3939
Facsimile:      +1.202.626.1700
Email: jmmajoras@jonesday.com

TIFFANY D. LIPSCOMB-JACKSON
Jones Day
325 John H. McConnell Boulevard
Suite 600
Columbus, OH 43215-2673
Telephone:      +1.614.469.3939
Facsimile:      +1.614.461.4198
Email: tdlipscombjackson@jonesday.com

13

Telephone: (872) 276-3598
Email: Brian.yost@ilag.gov
Email: Jennifer.coronel@ilag.gov
Email: Elizabeth.maxeiner@ilag.gov


COUNSEL FOR PLAINTIFF STATE OF
ARIZONA

KRISTIN K. MAYES
Attorney General
 /s/ Sarah Pelton
SARAH PELTON
ROBERT A. BERNHEIM
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Email: Sarah.Pelton@azag.gov
Email: Robert.Bernheim@azag.gov


COUNSEL FOR PLAINTIFF DANA
NESSEL ON BEHALF OF THE PEOPLE OF
MICHIGAN

DANA NESSEL
Attorney General
 /s/ LeAnn D. Scott
LEANN D. SCOTT
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov


COUNSEL FOR PLAINTIFF STATE OF
MINNESOTA

KEITH ELLISON
Attorney General
JAMES CANADAY

COREY A. LEE
Jones Day
North Point
901 Lakeside Ave E
Cleveland, OH 44114-1190
Telephone:        +1.216.586.3939
Facsimile:        +1.216.579.0212
Email: calee@jonesday.com


RYAN THOMAS
LAUREN MILLER FORBES
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC  20001.2113
Telephone:        +1.202.879.3939
Facsimile:        +1.202.626.1700
Email: rcthomas@jonesday.com
Email: lmillerforbes@jonesday.com

14

Deputy Attorney General
 /s/ Elizabeth Odette
KATHERINE A. MOERKE
Assistant Attorney General, Antitrust Division
ELIZABETH ODETTE
Manager, Assistant Attorney General,
Antitrust Division

Office of the Minnesota Attorney General
Suite 1400
445 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 757-1257
Email: katherine.moerke@ag.state.mn.us
Email: elizabeth.odette@ag.state.mn.us


COUNSEL FOR PLAINTIFF STATE OF
WISCONSIN

JOSHUA KAUL
Attorney General
 /s/ Caitlin M. Madden
CAITLIN M. MADDEN
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: Caitlin.Madden@wisdoj.gov

15

**APPENDIX A**

**[Repair Resources]**

a.       secure authentication of software tool user credentials and confirmation of user authorization to access PIN-specific equipment details;

b.       viewing of operator and technical manuals;

c.       viewing of diagnostic trouble codes ("DTCs") and related diagnostic information;

d.       clearing and refreshing of DTCs and related diagnostic information;

e.       performance of interactive tests to confirm diagnosis or repair success, including aftertreatment NOx sensor tests;

f.       disabling and resetting any electronic lock, immobilizer, or security-related function to permit equipment diagnosis, maintenance, or repair;

g.       calibration of all equipment settings consistent with factory specifications;

h.       viewing of live and stored equipment readings and data points;

i.       fluid sampling;

j.       replacement of existing and future electronic control units ("ECUs" or "controllers");

k.       programming, reprogramming, and reinstallation of Embedded Software, including with respect to existing and future ECUs;

l.       replacement of engines;

m.       updating of Modular Telematics Gateway ("MTG"), display, and Combine Grain Quality Monitor;

n.       wireless updating of Embedded Software on MTG-enabled equipment;

o.       updating of Embedded Software via an Electronic Data Link ("EDL");

p.       viewing and searching (including any AI-enhanced search functions) of operator and technical manuals, diagrams, schematics or other guidance or information useful for equipment diagnosis, maintenance, repair, or upgrade;

q.       access to Deere's Customer Contact Center for support with respect to diagnostic and repair software issues, advice on applicable materials in technical manuals, and direction to potentially applicable DTAC Solutions, and to report potential defects in design and manufacturing;

16

r.  viewing and searching of DTAC Solutions;

s.  set up of customized maintenance plans for equipment;

t.  viewing of equipment's GPS location on a map;

u.  notice and viewing of open recalls and product improvement programs for equipment, including both mandatory PIPs and those designated as "fix as fail";

v.  viewing and management of equipment fleet;

w.  viewing of PIN-specific information about factory configurations and components;

x.  viewing of equipment-specific warranty and extended warranty coverage information;

y.  near real time receipt of Deere Machine Health Insights™ for equipment;

z.  performance of Emissions Inducement Overrides in connection with repair following an engine final inducement; and

aa.  performance of reprogramming and diagnostics in offline mode.

17

## APPENDIX B

### [Rollout Schedule]

|  | Date | Repair Resources |
|---|---|---|
| (1) | Date of Stipulated Order | All Repair Resources not subject to a contingency or a later deadline pursuant to paragraphs (2) through (8) below. |
| (2) | August 1, 2026 | With respect to the following Deere Agricultural Equipment:<br><br>(i) Air Seeding Tools equipped with DICKEY-john® Blockage system on MY2009 to MY2021 Air Seeders<br>(ii) Planters equipped with (a) Hydraulic ground drive on MY2004 to MY2021 Planters and (b) SeedStar™ Gen II, SeedStar XP, or SeedStar™ 2 on MY2004 to MY2021 Planters,<br><br>the capability, under part (k) of Appendix A, as incorporated in the definition of "Repair Resources," to perform programming, reprogramming, and reinstallation of Embedded Software, including with respect to existing and future ECUs. |
| (3) | Company A Date | The capability, under parts (d), (e), (j), (k), and (l) of Appendix A, as incorporated in the definition of "Repair Resources," to perform the relevant diagnostic and repair functions in relation to Company A ECUs or Embedded Software installed on Deere Agricultural Equipment as described in Paragraph II.C of this Stipulated Order; for the avoidance of doubt, all other capabilities falling under parts (d), (e), (j), (k), and (l) shall be made available as of the date of this Stipulated Order. |
| (4) | December 31, 2026 | The capability, under part (y) of Appendix A, as incorporated in the definition of "Repair Resources," to receive Deere Machine Health Insights™. |
| (5) | December 31, 2026 | The capability, under part (r) of Appendix A, as incorporated in the definition of "Repair Resources," to access and view DTAC Solutions *other than* those related to repairs requiring reprogramming; for the avoidance of doubt, the ability to access and view DTAC Solutions related to repairs requiring reprogramming shall be made available as of the date of this Stipulated Order. |

18

(6)     December 31, 2026          The capability, under part (i) of Appendix A, as incorporated in the definition of "Repair Resources," to perform fluid sampling for applicable equipment.

(7)     December 31, 2026          The capability, under part (u) of Appendix A, as incorporated in the definition of "Repair Resources," to receive notice of and view "PIPs" or "Product Improvement Programs" for equipment.

(8)     December 31, 2026          The capability, under part aa of Appendix A, as incorporated in the definition of "Repair Resources," to perform "offline mode" reprogramming and diagnostics.

19

**APPENDIX C**

**[Website Notice]**

On [DATE], the Federal District Court for the Northern District of Illinois, Western Division entered a consent order ("Stipulated Order") imposing certain obligations on Deere & Company to provide agricultural equipment repair resources to Deere equipment owners and independent repair providers.

The Stipulated Order resolves a January 2025 lawsuit brought by the United States Federal Trade Commission ("Commission") and the states of Illinois, Arizona, Minnesota, and Wisconsin, acting by and through their respective Attorneys General, and Attorney General Dana Nessel, on behalf of the People of Michigan ("Plaintiff States," and together with the Commission, "Plaintiffs"). The lawsuit alleged that Deere has withheld diagnostic and repair resources from equipment owners and independent repair providers, and that this violates Section 2 of the Sherman Act, 15 U.S.C. § 2 (monopolization); Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (unfair method of competition); and various state antitrust laws. To settle this case, Deere entered, without admitting any violation of the law, into the Stipulated Order.

**How the Order Affects You**

Deere has recently launched Operations Center™ PRO Service, a repair tool that expands the resources available to owners and independent repair providers to use, maintain, diagnose, repair, and protect their equipment, including the ability to install software when replacing electronic components or controllers, also known as reprogramming.

The Stipulated Order requires us to:

1. continue to enhance our repair resource offerings so as to make equivalent repair resources available to owners, independent repair providers, and Deere authorized dealers;

2. make available to equipment owners and independent repair providers on fair and reasonable terms, diagnostic and repair resources that are reasonably necessary to diagnose, maintain, update, or repair Deere Agricultural Equipment; and

3. notify owners and independent repair providers that they have access to these more robust diagnostic and repair resources.

**Where To Get More Information**

To learn more about this case, please read the Stipulated Order [link] or visit [URL that goes to the ftc.gov press release]. This notice summarizes the main points of the matter, but the only official source of information is the Stipulated Order. The Stipulated Order reflects an agreement between Plaintiffs and Deere that settles Plaintiffs' allegations. It does not constitute

an admission by Deere that it has violated the law or that any of the facts alleged by Plaintiffs regarding Deere's conduct are true.

If you have concerns about whether Deere is complying with its obligations under the Order – or questions about how the Stipulated Order applies to you or your colleagues – contact Deere's Customer Contact Center at 1-800-537-8233, the Legal Department at Deere at (309) 765-0336, FTCOrderCompliance@JohnDeere.com, or one of the Plaintiff representatives indicated below:

## Federal Trade Commission

Bureau of Competition
Compliance Division
bccompliance@ftc.gov

Victoria Lippincott
(202) 326-2983
vlippincott@ftc.gov

Ken Libby
(202) 326-2694
klibby@ftc.gov

## Plaintiff States

Arizona
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-5763
consumer@azag.gov

Illinois
Office of the Illinois Attorney General
Antitrust Bureau
Public Interest Division
115 S. LaSalle St.
Chicago, Illinois 60603
Phone: (312) 814-3000
Email: antitrust@ilag.gov

Michigan
Michigan Department of Attorney General
Consumer Protection Division
P.O. Box 30213
Lansing, MI 48909-7713

(517)-241-3771
(517)-335-7599
https://secure.ag.state.mi.us/complaints/consumer.aspx

Minnesota
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Phone: (651) 296-3353
Toll Free: (800) 657-3787
https://www.ag.state.mn.us/Office/Complaint.asp
ag.antitrust@ag.state.mn.us

Wisconsin
Office of the Wisconsin Attorney General
Public Protection Unit
17 W. Main St.
Madison, WI 53703
Phone: (608) 266-1852
consumerprotection@wisdoj.gov

## APPENDIX D

### [Letter to Owners and Independent Repair Providers]

### [Deere letterhead]

[Name and email address of Owner or Independent Repair Provider]

VIA U.S. MAIL, EMAIL, or HAND DELIVERED

Re: Access to Deere Diagnostic and Repair Resources.

Dear Owner or Independent Repair Provider:

You are receiving this letter because you have purchased agricultural equipment or parts from Deere or a Deere Dealer and/or submitted a warranty claim to Deere in the last 3 years and may be affected by a consent order that we have entered into with the United States Federal Trade Commission ("Commission") and the states of Illinois, Arizona, Minnesota, and Wisconsin, acting by and through their respective Attorneys General, and Plaintiff Attorney General Dana Nessel, on behalf of the People of Michigan (together, "Plaintiff States," and together with the Commission, "Plaintiffs").

In January of 2025, Plaintiffs filed a lawsuit in the Federal District Court in the Northern District of Illinois, Western Division ("Federal District Court"), alleging that Deere has withheld diagnostic and repair resources from owners and independent repair providers, and that this violates Section 2 of the Sherman Act, 15 U.S.C. § 2 (monopolization); Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (unfair method of competition); and various state antitrust laws. To settle this case, Deere entered, without admitting any violation of the law, into a stipulated settlement agreement with Plaintiffs that the Federal District Court ordered on XXXX, 2026 ("Stipulated Order").

### How the Stipulated Order Affects You

Deere has recently launched Operations Center™ PRO Service, a repair tool that expands the resources available to owners and independent repair providers to use, maintain, diagnose, repair, and protect their equipment, including the ability to install software when replacing electronic components or controllers, also known as reprogramming.

The Stipulated Order requires us to:

1. continue to enhance our repair resource offerings so as to make equivalent repair resources available to owners, independent repair providers, and Deere authorized dealers;

2. make available to equipment owners and independent repair providers on fair and reasonable terms, diagnostic and repair resources that are reasonably necessary to diagnose, maintain, update, or repair Deere Agricultural Equipment; and

3. notify owners and independent repair providers that they have access to these more

23

robust diagnostic and repair resources.

**Where To Get More Information**

To learn more about this case, please read the attached Stipulated Order or visit [URL that goes to the ftc.gov press release]. This letter summarizes the main points of the matter, but the only official source of information is the Stipulated Order. This Stipulated Order reflects an agreement between Plaintiffs and Deere that settles Plaintiffs' allegations. It does not constitute an admission by Deere that it has violated the law or that any of the facts alleged by Plaintiffs regarding Deere's conduct are true.

If you have concerns about whether Deere is complying with its obligations under the Stipulated Order – or questions about how the Stipulated Order applies to you or your colleagues – contact Deere's Customer Contact Center at 1-800-537-8233, the Legal Department at Deere at (309) 765-0336, FTCOrderCompliance@JohnDeere.com, or one of the Plaintiff representatives indicated below:

**<u>Federal Trade Commission</u>**

Bureau of Competition
Compliance Division
bccompliance@ftc.gov

Victoria Lippincott
(202) 326-2983
vlippincott@ftc.gov

Ken Libby
(202) 326-2694
klibby@ftc.gov

**<u>Plaintiff States</u>**

<u>Arizona</u>
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-5763
consumer@azag.gov

<u>Illinois</u>
Office of the Illinois Attorney General
Antitrust Bureau
Public Interest Division
115 S. LaSalle St.
Chicago, Illinois 60603

24

Phone: (312) 814-3000
Email: antitrust@ilag.gov

Michigan
Michigan Department of Attorney General
Consumer Protection Division
P.O. Box 30213
Lansing, MI  48909-7713
(517)-241-3771
(517)-335-7599
https://secure.ag.state.mi.us/complaints/consumer.aspx

Minnesota
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Phone: (651) 296-3353
Toll Free: (800) 657-3787
https://www.ag.state.mn.us/Office/Complaint.asp
ag.antitrust@ag.state.mn.us

Wisconsin
Office of the Wisconsin Attorney General
Public Protection Unit
17 W. Main St.
Madison, WI 53703
Phone: (608) 266-1852
 consumerprotection@wisdoj.gov


Sincerely,



[name and title]

25

## APPENDIX E

### [Letter to Deere Dealers]

### [Deere letterhead]

[Name and email address of Deere Dealer]

VIA U.S. MAIL, EMAIL, or HAND DELIVERED

Re: Access to Deere Diagnostic and Repair Resources.

Dear Authorized Deere Dealer:

You are receiving this letter because, as an authorized dealer of Deere agricultural equipment, you may be affected by a consent order that we have entered into with the United States Federal Trade Commission ("Commission") and the states of Illinois, Arizona, Minnesota, and Wisconsin, acting by and through their respective Attorneys General, and Plaintiff Attorney General Dana Nessel, on behalf of the People of Michigan (together, "Plaintiff States," and together with the Commission, "Plaintiffs").

In January of 2025, Plaintiffs filed a lawsuit in the Federal District Court in the Northern District of Illinois, Western Division ("Federal District Court"), alleging that Deere has withheld diagnostic and repair resources from owners and independent repair providers, and that this violates Section 2 of the Sherman Act, 15 U.S.C. § 2 (monopolization); Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (unfair method of competition); and various state antitrust laws. To settle this case, Deere entered, without admitting any violation of the law, into a stipulated settlement agreement with Plaintiffs that the Federal District Court ordered on XXXX, 2026 ("Stipulated Order").

### How the Stipulated Order Affects You

Under the Stipulated Order, Deere is required, among other things, to make available to equipment owners and independent repair providers on fair and reasonable terms, diagnostic and repair resources that are reasonably necessary to diagnose, maintain, update, or repair Deere Agricultural Equipment.

Deere has recently launched Operations Center™ PRO Service, a repair tool that expands the resources available to owners and independent repair providers to use, maintain, diagnose, repair, and protect their equipment, including the ability to install software when replacing electronic components or controllers, also known as reprogramming.

In furtherance of Deere's obligations under the Stipulated Order and pursuant to your obligations under your John Deere Agricultural Dealer Agreement to promote the sale of equipment, parts, and service and to achieve performance standards specified by Deere from time to time, we are instructing you to actively and aggressively promote and support PRO Service and other diagnostic and repair resources made available by Deere and to sell them to all owners and independent repair providers that request them, regardless of whether the owner or independent repair provider is purchasing repair services from you. Further, you must not

26

discriminate or retaliate in any way, including in the sales, financing, or service of Deere Agricultural Equipment, tools, or parts, against any owner or independent repair provider that purchases PRO Service or other diagnostic and repair resources made available by Deere or engages in repair of Deere agricultural equipment. Each of these instructions is subject to your reasonable business judgment related to the cost of serving an owner or independent repair provider due to factors other than the foregoing considerations, such as the owner's or independent repair provider's geographic location, creditworthiness, or compliance with law.

### Where To Get More Information

To learn more about this case, please read the attached Stipulated Order or visit [URL that goes to the ftc.gov press release]. This letter summarizes the main points of the matter, but the only official source of information is the Stipulated Order. This Stipulated Order reflects an agreement between Plaintiffs and Deere that settles Plaintiffs' allegations. It does not constitute an admission by Deere that it has violated the law or that any of the facts alleged by Plaintiffs regarding Deere's conduct are true.

If you have concerns about whether Deere is complying with its obligations under the Stipulated Order – or questions about how the Stipulated Order applies to you or your colleagues – contact Deere's Customer Contact Center at 1-800-537-8233, the Legal Department at Deere at (309) 765-0336, FTCOrderCompliance@JohnDeere.com, or one of the Plaintiff representatives indicated below:

**<u>Federal Trade Commission</u>**

Bureau of Competition
Compliance Division
bccompliance@ftc.gov

Victoria Lippincott
(202) 326-2983
vlippincott@ftc.gov

Ken Libby
(202) 326-2694
klibby@ftc.gov

**<u>Plaintiff States</u>**

<u>Arizona</u>
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-5763
consumer@azag.gov

27

Illinois
Office of the Illinois Attorney General
Antitrust Bureau
Public Interest Division
115 S. LaSalle St.
Chicago, Illinois 60603
Phone: (312) 814-3000
Email: antitrust@ilag.gov

Michigan
Michigan Department of Attorney General
Consumer Protection Division
P.O. Box 30213
Lansing, MI  48909-7713
(517)-241-3771
(517)-335-7599
https://secure.ag.state.mi.us/complaints/consumer.aspx

Minnesota
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Phone: (651) 296-3353
Toll Free: (800) 657-3787
https://www.ag.state.mn.us/Office/Complaint.asp
ag.antitrust@ag.state.mn.us

Wisconsin
Office of the Wisconsin Attorney General
Public Protection Unit
17 W. Main St.
Madison, WI 53703
Phone: (608) 266-1852
consumerprotection@wisdoj.gov

Sincerely,


[name and title]

**NONPUBLIC APPENDIX F**

**[Company A]**